IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PDL BIOPHARMA, INC. <br><br> Plaintiff, <br><br> v. <br><br> ALEXION PHARMACEUTICALS, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: 07-CV-156-*** <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO BIFURCATE AND STAY DISCOVERY AND
TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

YOUNG CONWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (I.D. #1088)
Andrew Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
Telephone: (212) 446-4800

Dated: September 6, 2007

# TABLE OF CONTENTS

**Nature and Stage of the Proceedings** ...............................................................................................1

**Summary of the Argument** ..............................................................................................................2

**Statement of the Facts** .....................................................................................................................3

**Argument**........................................................................................................................................6
    A.    This Court Routinely Bifurcates Damages Issues To Promote Judicial Economy ..................................................................................................................6
    B.    Bifurcating and Staying Damages Issues In This Action Would Promote Judicial Economy................................................................................................7
    C.    Bifurcation Would Reduce Jury Confusion.........................................................8
    D.    Bifurcating and Staying Willfulness Would Eliminate Unfair Prejudice To Alexion..................................................................................................................9

**Conclusion** ....................................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Pharmacia Corp.*,
  No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002) .............................. 10

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) .............................................................................. 7, 8

*Corning Inc. v. SRU Biosystems, LLC*,
  223 F.R.D. 189 (D. Del. 2004) .................................................................................. 10

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) .................................................................................. 6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2d Cir. 1971) ............. 5, 7, 8

*Idzojtic v. Pa. R.R.*,
  456 F.2d 1228 (3rd Cir. 1972) .................................................................................. 6

*In re Calmar*,
  854 F.2d 461 (Fed. Cir. 1988) .................................................................................. 6

*In re Seagate Technology LLC*,
  Misc. No. 830, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007) .................................. 9, 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................. 6

*McCullough v. Kammerer Corp.*,
  331 U.S. 96 (1947) .................................................................................................... 6

*Novozymes v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007) ........................................................................ 10

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
  No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004) ........................ 10

*Quantum Corp. v. Tandon Corp.*,
  940 F.2d 642 (Fed. Cir. 1991) .................................................................................. 10

*Smith v. Alyeska Pipeline Serv. Co.*,
  538 F. Supp. 977 (D. Del. 1982) ........................................................................... 7, 8

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
  No. Civ.A.01-557-JJF, 2002 WL 1901268 (D. Del. Aug. 16, 2002) ........................ 10

**Rules**

Fed. R. Civ. P. 42(b) ............................................................................................................... 6

Defendant Alexion Pharmaceuticals, Inc. ("Alexion") respectfully moves the Court for an Order bifurcating and staying discovery and trial of all damages issues, including enhanced damages and willfulness, pending resolution of the underlying liability issues in this action.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff PDL Biopharma, Inc. ("PDL") filed its complaint against Alexion alleging infringement of U.S. Patents Nos. 5,693,761 ("the '761 patent"); 5,693,762 ("the '762 patent"); and 6,180,370 ("the '370 patent") on March 16, 2007. D.I. 1. Alexion filed its Answer and Counterclaims on June 4, 2007. D.I. 11. PDL filed its Answer to Alexion's Counterclaims on June 25, 2007. D.I. 14.

This case is still in the early stages of discovery. Alexion and PDL have served their respective initial disclosures pursuant to Rule 26. *See* D.I. 22, 30. The parties also have exchanged their initial discovery requests and responses. *See* D. I. 17-19, 28-30. To date, no documents have been produced.

On August 2, 2007, the parties submitted a proposed scheduling order for the Court's consideration, which the Court entered on August 21, 2007. D.I. 20, 24. The proposed order contained a single dispute—whether a date should be set by which Alexion must elect to rely on advice of counsel as a defense to PDL's claim of willful infringement. During the August 7, 2007 Rule 16 conference with the Court, Alexion indicated its intent to move for bifurcation of discovery and trial of damages issues, including willfulness and exceptional case, from liability issues. The Court ordered Alexion to brief the issue of bifurcation on or before September 6, 2007. This is Alexion's opening brief in support of its motion for bifurcation.

1

## SUMMARY OF THE ARGUMENT

Bifurcation of this case would promote judicial economy, conserve the Court's and the parties' resources, reduce jury confusion, and eliminate any potential prejudice to Alexion.

Discovery for the liability phase of this trial will be extensive. PDL has asserted three patents with a total of 87 claims relating to the field of immunology and humanized antibody technology. Together, the parties have already propounded over 250 discovery requests that seek documents and information spanning the past two decades. Alexion also anticipates that non-party and extra-jurisdictional discovery will be important to Alexion's non-infringement and invalidity defenses and counterclaims.

Discovery related to damages issues will also be extensive, and is easily separable from discovery relating to liability. PDL has licensed the patents-in-suit and related technology to several biotechnology companies, and discovery on damages issues necessarily implicates those licenses. In addition, PDL seeks information concerning its allegation of willful infringement, such as the existence and content of any opinions of counsel Alexion may have obtained, when Alexion first learned of the patents-in-suit, and whether Alexion has established accounting reserves for this litigation. Such discovery is irrelevant to the primary liability issues of infringement and validity.

Bifurcation would promote judicial economy and efficiency and conserve the Court's and the parties' resources. Resolution of the liability issues would likely narrow or moot the damages issues to be discovered and tried. Moreover, at this early stage of discovery, where no documents have yet been exchanged, there is no risk of duplicative discovery.

In addition, bifurcation would narrow the issues to be tried to the jury, thus reducing jury confusion and conserving the Court's resources. It would also eliminate any

2

prejudice to Alexion that would result from a single trial where Alexion would be forced to either forgo reliance on advice of counsel, or waive privilege with respect to liability issues of infringement and/or validity.

Accordingly, Alexion requests that the Court bifurcate and stay the issue of damages, including willfulness and exceptional case, from liability.

### STATEMENT OF THE FACTS

This is a complex patent infringement case, involving three patents comprising a total of 87 claims, including 29 independent claims. The patents-in-suit concern "humanized antibody" technology. Humanized antibodies are comprised of part-human, part-animal (often mouse) components and are designed to specifically bind antigenic targets within the human body. As such, humanized antibodies may be used therapeutically for the treatment of disease or other pathologic conditions.

In March 2007, Alexion successfully launched Soliris™, the first FDA approved treatment for a rare and debilitating acquired genetic blood disorder called paroxysmal nocturnal hemoglobinuria ("PNH"). *See* Ex. 1. PDL accuses Soliris™ of infringing the '761, '762, and '370 patents, but has not yet asserted specific patent claims. D.I. 2.

Discovery in this action relating to liability issues will be extensive. Indeed, both parties are seeking discovery that dates back over twenty years. *See, e.g.,* Ex. 2 at Req. Nos. 45-47, 64; Ex. 3 at Req. Nos. 1, 4. Such discovery is appropriate here because the field of the purported inventions, antibody humanization, began in the 1980's.

Discovery will also be extensive because the patents-in-suit are part of a larger family of patents, including parents, continuations, continuations-in-part, and foreign counterparts of the patents-in-suit. Each member of the patent family has an extensive file

3

history[1] that may include, for example, declarations of non-parties that were submitted in support of patentability. In addition, although the patents-in-suit name at least six inventors, not all of them are controlled by PDL. Alexion, therefore, will likely seek non-party and extra-jurisdictional discovery that is directly relevant to the conception, reduction to practice, and patentability of the alleged inventions of the patents-in-suit. In addition, in support of its invalidity defense, Alexion also intends to seek discovery from non-party prior art authors or inventors, including, for example, Luiz Riechmann and Gregory Winter. *See* Ex. 4 at 2. Some of this discovery concerns foreign parties or individuals, and may require Alexion to proceed through the Hague Convention.

Moreover, the foreign counterparts of the patents-in-suit were, and still are, involved in Opposition Proceedings in the European Patent Office ("EPO Proceedings"). The EPO Proceedings are relevant to this action because, for example, several prior art authors or inventors have submitted declarations in the EPO proceedings that speak directly to the scope and content of the prior art references that Alexion asserts render the claims of the patents-in-suit invalid. *See, e.g.,* Ex. 5 at Response to Int. No. 3. PDL, in its arguments to the EPO, has made statements concerning the scope of its alleged inventions and related technology. Accordingly, both PDL and Alexion seek discovery relating to the EPO Proceedings. *See* Ex. 2 at Req. Nos. 28-31; Ex. 3 at Req. Nos. 38-40.

Separate and additional discovery concerning damages issues will also be extensive. PDL has licensed the patents-in-suit and related technology to a number of non-parties. In its pleadings, PDL names at least eight companies that it alleges have licensed the

---

[1] Each of the file histories of the patents-in-suit comprise well over 1000 pages, as does the file history of the direct parent application. Other related applications that may have direct bearing on the nature and scope of the patents-at-issue also have extensive file histories.

4

patents-in-suit, including Genentech, Inc.; Hoffman-LaRoche, Inc.; MedImmune, Inc.; Wyeth; Biogen Idec and Elan Corp.; Abbott Laboratories; Eli Lilly and Company; GlaxoSmithKline, Inc.; Merck & Co., Inc. D.I. 1 at ¶ 6; D.I. 14 at 1. In addition, publicly available documents indicate that PDL has licensed the patents-in-suit or related technology to Progenics Pharmaceuticals, Inc., Tanox, Inc., BioTransplant, Inc., Seattle Genetics, Inc.; CoGenesys, Inc., and others. *See, e.g.,* Exs. 7-11. Alexion will need to discover all of these licenses, including any amendments, negotiations, or revisions thereof. Moreover, since PDL has alleged that it is entitled to a reasonable royalty on Alexion's accused product, the related damages issues, such as the profitability of the products made under the patents and the portion of such profits that are attributable to the patented inventions, may require additional non-party discovery of PDL's licensees. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified,* 446 F.2d 295 (2d Cir. 1971).

  PDL will also require, and has already requested, extensive discovery in support of its allegations of willful infringement and exceptional case. For example, PDL has directed discovery requests to how and when Alexion learned of the patents-in-suit and whether Alexion sought opinions of counsel concerning the alleged infringement or validity of the patents-in-suit or related patents. *See* Ex. 3 at Req. Nos. 21, 25, 35, 41, 105. PDL has also served requests regarding Alexion's highly sensitive financial and sales information, such as, for example, whether Alexion has established accounting reserves to pay any damages found in this case, whether Alexion has other licenses that cover its Soliris™ drug, and sales and marketing of the accused product. Ex. 3 at Req. Nos. 27, 28, 75, 76, 111, 112. None of this discovery is relevant to the infringement or validity of the patents-in-suit.

5

## ARGUMENT

A.  **This Court Routinely Bifurcates Damages Issues To Promote Judicial Economy**

A district court has the "power to stay proceedings" arising from its authority to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This inherent power includes broad discretion to achieve such economy by bifurcating issues and ordering separate trials. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987); *Idzojtic v. Pa. R.R.*, 456 F.2d 1228, 1230 (3rd Cir. 1972). In particular, a district court may bifurcate trial of discrete issues or claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b).

The Supreme Court has noted that bifurcation of liability and damages issues in patent cases promotes efficiency and economy because bifurcation "prevent[s] a great burden of expense to litigants in [patent] actions" and "obviate[s] the cost of an accounting in the event the case is reversed on appeal." *McCullough v. Kammerer Corp.*, 331 U.S. 96, 98 n.1 (1947) (commenting on predecessor to § 1292(c)(2)); *see also In re Calmar*, 854 F.2d 461, 463-64 (Fed. Cir. 1988) ("the purpose of ... § 1292(c)(2) ...was to *permit* a stay of a damages trial.").

Accordingly, this Court has routinely held that bifurcation of patent infringement cases into liability and damages trials simplifies and streamlines the resolution of patent cases:

> In the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury...In fact, bifurcation of complex patent trials has become common...Typically, courts bifurcate patent cases into liability and damage trials.

*Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (internal quotations and citations omitted). *See also Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982) (bifurcating trial on damages under Rule 42(b) until after resolution of liability issues).

**B.     Bifurcating and Staying Damages Issues In This Action Would Promote Judicial Economy**

Bifurcating discovery and trial of this case into a liability phase and a damages phase would promote judicial economy and conserve the resources of the Court and the parties.

Bifurcation is appropriate here because there is little or no overlap between the witnesses and documents related to damages issues and those relevant to the determination of liability. Alexion will seek discovery relating to liability that concerns primarily the conception and reduction to practice of the allegedly claimed inventions and the scope and content of the prior art. *See, e.g.,* Ex. 6 at Int. Nos. 2-5 ; Ex. 2 at Req. Nos. 2-4, 8. This will involve witnesses that include, for example, PDL scientists, the named inventors of the patents-in-suit, and authors of prior art references. Ex. 4 at 1-2. PDL's discovery for the liability phase will likely include the development and testing of the accused Alexion product, and will concern Alexion scientists and researchers. *See, e.g.* Ex. 3 at Req. Nos. 11-13, 18. Discovery on damages issues, on the other hand, will implicate PDL and Alexion business executives, documents concerning sales and marketing, and PDL's licensees. *See* Ex. 2 at Req. Nos. 35, 53-60; Ex. 3 at Req. Nos. 66-69, 71-74, 95-101.

For example, PDL's request for damages involves consideration of a reasonable royalty calculation based on an evaluation of at least a dozen different licenses. The damages calculation will necessarily involve a determination of the nature and scope of the presumably confidential licenses of at least the 8 non-parties named in PDL's Complaint, as well as several others that appear to have licenses to related PDL technology. *See Georgia-Pacific Corp.* 318 F.

7

Supp. at 1120. Indeed, it may be necessary for Alexion to proceed with non-party discovery to determine the nature, scope, enforceability and terms of these numerous licenses. Staying damages, therefore, may obviate the need for potentially intrusive non-party discovery and would save the Court, parties, and non-parties considerable time, effort and cost.

Moreover, staying discovery and trial on damages issues will promote judicial economy regardless of the outcome of the liability phase of the trial. A liability decision in Alexion's favor will obviate the need for a damages trial; whereas any resolution of liability in PDL's favor may encourage the parties to negotiate a settlement, thereby avoiding the need for discovery or trial of damages issues. *See Smith*, 538 F. Supp. at 984.

### C.     Bifurcation Would Reduce Jury Confusion

The inclusion of liability and damages issues in a single trial could create jury confusion. This Court recognizes the importance of streamlining complex legal and factual issues to avoid confusing and overwhelming the jury:

> [B]ifurcation is an important discretionary tool that district courts can use in patent cases to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them... Specifically, bifurcation might enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time.

*See Ciena*, 210 F.R.D. at 521. *See also Smith*, 538 F. Supp. at 983-84 (noting that trial of damages and liability together "would tend to clutter the record and to confuse the jury.").

Bifurcating and staying damages in this action would promote and enhance juror understanding by segregating the trial on liability issues of infringement and validity from damages and willfulness issues. For example, a determination of reasonable royalty damages requires the jury to consider 15 factors -- none related to liability -- such as the nature and scope of existing licenses, the extent of convoyed sales, and the profitability of products made under

8

the patent. *See Georgia-Pacific Corp.* 318 F. Supp. at 1120. Bifurcation of damages issues would limit the number of legal issues for the jury to consider, reduce the nature and scope of the evidence presented, and focus the jury on the scientific and technical facts necessary for determination of liability. Narrowing the issues for trial would also enable the parties' to present evidence regarding liability in a manner that is easier for the jurors to understand, and avoid the risk of jurors using evidence that relates solely to willfulness or damages as part of the infringement determination.

### D. Bifurcating and Staying Willfulness Would Eliminate Unfair Prejudice To Alexion

Bifurcating and staying discovery and trial of the damages issues, including willfulness and exceptional case, will promote fairness by avoiding presentation of unfairly prejudicial evidence to the jury during the liability trial.

Last month, the Federal Circuit, in *In re Seagate Technology*, announced a new standard for the determination of willfulness: "[T]o establish willful infringement, a patentee must show ... that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology LLC*, Misc. No. 830, 2007 WL 2358677, *5 (Fed. Cir. Aug. 20, 2007). In determining whether an alleged infringer is liable, the fact-finders need only consider whether the accused product reads on the asserted patent claims. They need not consider what constitutes an unreasonable risk, nor do they need to examine whether the defendant knew or should have known of such a risk. The issues of infringement and willfulness, therefore, remain factually distinct questions.

Moreover, although the recent *Seagate* decision changed the standard to determine willful infringement, it did not alter the potential prejudice that a defendant accused of willful infringement faces. Relying on opinions of counsel has historically been an essential defense against an accusation of willful infringement. *See Id.* at *3. Under *Seagate,* as under the

previous standard, disclosure of such opinions necessarily triggers a limited subject matter waiver of attorney-client privilege and attorney work product protection. *Id.* at *9-10.

As such, even under *Seagate*, a defendant who already possesses opinions of counsel is left with a dilemma no easier than the one enunciated in *Quantum Corp. v. Tandon Corp.*, namely, to prejudice itself in the liability trial by choosing an historically effective opinion of counsel defense to willfulness and waiving the associated privilege, or to prejudice itself in the willfulness trial by foregoing an available defense. *See* 940 F.2d 642, 643-44 (Fed. Cir. 1991). Thus, a defendant in a single liability and damages trial is forced to make a "lose-lose" choice. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A.01-557-JJF, 2002 WL 1901268, *2 (D. Del. Aug. 16, 2002).

The most effective means to avoid such a dilemma and resulting prejudice to the defendant has been and remains bifurcation of trial and discovery. Prior to *Seagate*, this Court routinely separated enhanced damages from liability for both discovery and trial, finding that "undue prejudice could result if ... otherwise privileged documents were exchanged and used during the trial of infringement and liability." *St. Clair,* 2002 WL 1901268, at *2. *See also Novozymes v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007); *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004); *Allergan, Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002). Because the *Seagate* decision did not eliminate the waiver of privilege that necessarily accompanies disclosure of opinions of counsel, this Court's reasoning remains sound under the new law. Thus, bifurcating willfulness and hearing it after the liability phase of the trial would eliminate the danger that

evidence regarding willfulness might unfairly prejudice the jury against the Defendant during the liability phase.[2]

## CONCLUSION

For all of the reasons set forth above, Alexion respectfully requests that the Court grant its motion and enter Alexion's proposed order bifurcating and staying discovery and trial on damages issues, including enhanced damages, pending resolution of the underlying liability issues.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew A. Lundgren*

Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY  1002
Telephone:  (212) 446-4800

Dated:  September 6, 2007

---

[2]   Should the Court, however, decide to hear this case in a single trial, Alexion requests that the date set for Alexion to disclose whether or not to rely on advice of counsel be after the *Markman* ruling so that Alexion may evaluate its need to rely on advice of counsel after the scope of the asserted claims has been determined.

11

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on September 6, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

I further certify that on September 6, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

> Matthew D. Powers, Esquire
> Vernon M. Winters, Esquire
> John D. Beynon, Esquire
> Weil, Gotshal & Manges LLP
> 201 Redwood Shores Parkway
> Redwood Shores, CA 94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Andrew A. Lundgren

Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant.*