IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-156 (***) |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PDL BIOPHARMA'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO BIFURCATE AND STAY DISCOVERY
AND TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE   19899-1347
(302) 658-9200
klouden@mnat.com
*Attorneys for Plaintiff PDL BioPharma, Inc.*

OF COUNSEL:

Matthew D. Powers
Vernon M. Winters
Eric P. Xanthopoulos
John D. Beynon
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

September 24, 2007

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

II.   SUMMARY OF THE ARGUMENT ................................................................... 1

III.  STATEMENTS OF FACTS ............................................................................... 3

      A.    The Technology At Issue ....................................................................... 3

      B.    Background Of This Action .................................................................... 4

IV.   ARGUMENT ................................................................................................... 5

      A.    Standards For Decision .......................................................................... 5

      B.    The Court Should Deny The Opening Brief's Request To Bifurcate And
            Stay Discovery Of Damages And Related Issues ..................................... 6

            1.    Bifurcation And Stay of Damages Issues Would Not Promote
                  Judicial Efficiency Because The Damages And Liability Issues Are
                  Intertwined .................................................................................. 7

            2.    Alexion's Motion Fails For The Separate And Independent Reason
                  That Alexion Has Not Demonstrated Prejudice ............................. 9

            3.    PDL, However, Would Be Prejudiced By A Bifurcation And Stay
                  Of Damages And Other Issues ...................................................... 9

                  a.    Bifurcation Would Delay The Litigated Resolution Of This
                        Case ................................................................................ 10

                  b.    Bifurcation Would Delay A Negotiated Resolution Of This
                        Case ................................................................................ 11

                  c.    Bifurcation Would Increase The Number Of Discovery
                        Disputes ......................................................................... 12

      C.    The Court Should Deny Alexion's Motion To Bifurcate Willfulness
            Discovery, Because Willfulness Overlaps With Inducement Of
            Infringement ....................................................................................... 13

      D.    The Court Should Deny Alexion's Motion To Bifurcate Issues For The
            March 2009 Trial ................................................................................. 13

            1.    This Request Is Premature ........................................................... 13

            2.    Alexion Has Not Even Decided Whether It Will Rely On Any
                  Opinion(s) Of Counsel ................................................................ 14

            3.    *St. Clair Intellectual Property*, On Which The Opening Brief
                  Mainly Relies, Does Not Apply .................................................... 15

V.    CONCLUSION ................................................................................................ 16

TABLE OF AUTHORITIES

Page

Cases

*Amgen, Inc. v. Hoechst Marion Roussell, Inc.*,
190 F.R.D. 287 (D. Mass. 2000)...................................................................................12

*Crown Pack'g Tech, Inc. v. Rexam Beverage Can Co.*,
C.A. No. 05-608-MPT, 2007 U.S. Dist. LEXIS 53363 (D.Del. July 24, 2007) .........6

*Datastrip (IOM) Ltd. v. Symbol Techs.*,
C.A. No. 97-70 (JJF), (D. Del. Jan. 7, 1998) ...............................................................7

*Dentsply Int'l, Inc. v. Minnesota Mining & Mfg. Co.*
C.A. No. 91-355-SLR (D.Del. July 26, 1993) .............................................................11

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ...................................................................................13

*General Signal v. Applied Materials*,
46 U.S.P.Q.2d 1160 (D. Del. 1997)..............................................................................15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ...................7

*Graham v. John Deere Co.*,
383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966) ....................................................7

*IJR, Inc. v. Sodick, Inc.*,
No. 87 C 6326, 1987 U.S. Dist. LEXIS 11087 (N.D. Ill. Nov. 24, 1987).................10

*Johns Hopkins Univ. v. Cellpro*,
160 F.R.D. 30 (D. Del. 1995) ...................................................................................5, 11

*Joy Techs. v. Flakt, Inc.*,
772 F. Supp. 842 (D. Del. 1991)..................................................................................10

*Laitram Corp. v. Hewlett-Packard Co.*,
791 F. Supp. 113 (E.D. La. 1992)................................................................................11

*Matsushita Elec. Indus. v. Cinram Int'l, Inc.*,
C.A. No. 01-882-SLR, (D. Del. Dec. 15, 2003) ......................................................6, 10

*Novartis Pharm. Corp. v. EON Labs Mfg.*, Inc.,
206 F.R.D. 396 (D. Del. 2002) ..............................................................................15, 16

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
604 F. Supp. 1485 (D. Del. 1985)................................................................................11

*Quantum Corp. v. Tandon Corp.*,
940 F.2d 642 (Fed. Cir. 1991) .....................................................................................14

*Read Corp. v. Portec, Inc.,*
    C.A. No. 88-29 (JRR) (D. Del. May 11, 1989) ..................................................... 7, 13

*Security and Access Ltd. v. Motorola, Inc.,*
    C.A. No. 96-287 (SLR) (D. Del. March 4, 1997) ................................................. 10

*St. Clair Intel'l Prop. Consultants, Inc. v. Sony Corp.,*
    No. Civ.A.01-557-JJF, 2002 WL 1901268 (D. Del. Aug. 16, 2002) ...................... 15

*Synopsys, Inc. v. Magma Design Autom'n,*
    C.A. No. 05-701 (GMS), 2006 U.S. Dist. LEXIS 33751 (D. Del. May 25, 2006).................. 14

*THK Am., Inc. v. NSK Corp.,*
    151 F.R.D. 625 (N.D. Ill. 1993)............................................................................ 12

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.,*
    431 F. Supp. 2d 834 (N.D. Ill. 2006)................................................................... 12

*Truswal Sys. v. Hydro-Air Eng'g,*
    813 F.2d 1207 (Fed. Cir. 1987) ........................................................................... 9

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D. Del. 1989)............................................................. 5, 6, 10, 11

<u>Statutes</u>

35 U.S.C. § 103............................................................................................................ 7

Fed.R.Civ.P I ............................................................................................................. 11

Fed.R.Civ.P. 42(b) ...................................................................................................... 5

I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent suit.   There are two parties:   the patentee plaintiff, PDL BioPharma, Inc. ("PDL"), and the defendant, Alexion Pharmaceuticals, Inc ("Alexion").   PDL asserts only three patents:   its U.S. Patent Nos. 5,693,760, 5,693,761, and 6,180,370, each of which derives from a common parent application.   Alexion has not asserted any patents against PDL.

The Court entered its Scheduling Order on August 21, 2007.[1]   The parties have exchanged initial disclosures, document requests, and interrogatories.   To date, PDL has produced approximately 50,000 pages of documents, in electronic form.   Alexion has not yet produced any documents.   A claim construction hearing is set for May 2008.   Fact discovery does not close until July 2008; expert discovery, in September 2008.   Case-dispositive motions will be heard in December 2008.   The Pretrial Conference is set for February 2009, and trial is scheduled for March 2009.

On September 6, 2007, Alexion filed a motion to bifurcate and stay discovery and trial of damages and willfulness issues.[2]   This is PDL's answering brief in opposition to that motion.

II.    SUMMARY OF THE ARGUMENT

1.    The opening brief seeks to delay the resolution of this action by moving to bifurcate and stay both *discovery* (of damages, willfulness, and exceptional case issues), and *trial* (of the same issues).   Both requests should be denied.

2.    The opening brief argues from legal and factual premises that are both incorrect.   As a legal matter, contrary to Alexion's assertions, bifurcation in patent cases is not a "routine" matter.   This Court has held that because bifurcation results in additional discovery, more pre-trial disputes, potential empaneling of a second jury, deposing or recalling the same witnesses, and the potential for multiple, additional post-trial motions and appeals, the case for

---

[1] D.I. 24 (Scheduling Order).
[2] D.I. 32 (Motion to bifurcate).

bifurcation must be particularly compelling and should prevail only in exceptional cases.   This is not such a case.

        3.     Even if Alexion had invoked the correct standard, the opening brief would have failed.   The opening brief argues that what it characterizes as "damages discovery," namely license agreements with third parties, are separable from the other issues in this case. What Alexion ignores is that those same license agreements are central to the commercial success of the patents-in-suit, which Alexion put at issue by alleging that the patents-in-suit are invalid due to obviousness.   Commercial success is central to discovery and adjudication of the objective indicia of nonobviousness, which the jury must consider in an obviousness inquiry. There is also substantial overlap between the evidence that will be relevant to willfulness and inducement of infringement.   Thus, there are large overlaps between the "damages" issues in this case and the liability issues in this case.

        4.     A party seeking to bifurcate and stay discovery must **demonstrate** prejudice.   The opening brief simply **argues** prejudice; it does not demonstrate it.   PDL, on the other hand, would be prejudiced by the delay that Alexion seeks.   Bifurcation would significantly postpone the litigated resolution of this case.   It would also postpone any potential negotiated resolution of this case, because (as the case law recognizes) "damages" discovery can assist the parties in assessing the risks associated with the lawsuit.   Bifurcation would also likely increase the number of discovery disputes, as the parties litigate disagreements over whether discovery is inside or outside of the boundaries of the stay.

        5.     The Court should also deny the request to bifurcate the trial as premature. Trial is not scheduled until March 2009.   The parties and the Court are not presently in a position, realistically, to know what the trial would look like.   Whether the trial should be phased is a decision much more sensibly made and assessed when the parties and the Court can assess the contours of the issues for trial – in connection, for example, with the Pretrial Conference.   If the Court is inclined to consider, at this early juncture, the merits of the motion to bifurcate trial, the Court should deny it for the same reasons that apply to the opening brief's

request to bifurcate and stay discovery.

## III.    STATEMENTS OF FACTS

### A.    The Technology At Issue

PDL's three patents-in-suit disclose and claim certain "humanized antibodies" (also called "humanized immunoglobulins") and methods of making them. Antibodies are Y-shaped "proteins found in higher animals that recognize and bind to foreign proteins such as viruses and bacteria."[3]   Proteins are made up of amino acid sequences. At a very general level, the humanized antibodies of the patents are antibodies that have been genetically engineered so that particular amino acid sequences from a human antibody (called a "receptor antibody") have been replaced with amino acid sequences of a mammalian, but non-human, antibody (called a "donor antibody"). The resulting humanized antibodies are very useful in humans, because they bind to foreign proteins with generally the same strength as the non-human donor antibody, and are not rejected as foreign by the human immune system. Humanized antibody products with sales, in the aggregate, of billions of dollars per year are sold under license to the patents-in-suit by companies such as Genentech, Inc., MedImmune, Inc., Wyeth, and Elan Corporation, Plc.[4]    Alexion, however, has no license.[5]    This is the only lawsuit on the patents-in-suit that PDL has ever been forced to bring.

Alexion's infringing product is known by the trade name Soliris™. Alexion has described Soliris™ as a "humanized antibody that . . . is designed for the chronic treatment of . . . disorders such as PNH,"[6] which is a rare type of blood disorder that can lead to disability and premature death. On March 16, 2007, the FDA approved Soliris™ for the treatment of PNH. Later that day, PDL filed this lawsuit.[7]

---

[3]  Xanthopoulos Decl. Exh. 1 (K. Drlica, Understanding DNA and Gene Cloning:  A Guide for the Curious at 302 (3rd ed. 1997)).

[4]  Id. Exh. 2 (portions of PDL's March 1, 2007 SEC Form 10-K).

[5]  D.I. 11 ¶ 2 (Alexion's Answer and Counterclaims).

[6]  Xanthopoulos Decl. Exh. 3 (portions of Alexion's Feb. 23, 2007 SEC Form 10-K).

[7]  Id. Exh. 4 (FDA announcement of Soliris approval).

B.    Background Of This Action

Contrary to Alexion's suggestion, this is not a complex case, and certainly no more so than many of the 200 or so other patent cases on this Court's docket. There are only two parties, three patents (each asserted by PDL; none asserted by Alexion), and based on publicly available information, one accused Alexion product.[8] The patents are well-known to Alexion. Its answer admits that it was aware of them before the lawsuit.[9] Indeed Alexion cited PDL's '761 patent-in-suit in the U.S. patent application that it filed in 1995 and that issued as a patent in 2002.[10] In addition, Alexion also apparently has opinion(s) of counsel on some or all of the patents-in-suit.

Alexion alleges that it will assert prior art, citing a researcher, Luiz Riechmann, who worked in Dr. Gregory Winter's laboratory in England, whom it may wish to depose. The patent office examined art from Dr. Winter's laboratory (in articles, for example, by lead authors Riechmann, Jones, and Verhoeyen) and issued the patents-in-suit over them.[11] In any event, that an accused infringer wishes to depose prior artists is typical in patent cases, and bifurcation would not eliminate the alleged need for that discovery.

The opening brief also argues that the case is complex based on opposition proceedings in Europe. The European patents that are the subject of those proceedings are not part of this lawsuit, however, and PDL has already produced to Alexion the entire public record of the European opposition proceedings.[12]

What its motion omits are contextual facts surrounding Alexion's infringing product, Soliris™, that demonstrate the profits that Alexion expects to reap from its attempt to delay resolution of this lawsuit. The FDA approved Soliris™ on March 16, 2007, and PDL

---

[8] D.I. 1 at 3-5 (Complaint); see also D.I. 11 (Alexion's Answer and Counterclaims) (no affirmative counterclaims pleaded).

[9] D.I. 11 ¶¶ 14, 20, 26 (Alexion's Answer).

[10] Xanthopoulos Decl. Exh. 5 (U.S. Patent No. 6,355,245).

[11] D.I. 3, Exhs. A at 2:1,2, B at 1:2, 2:1, and C at 2:1,2, 3:1, 4:1 (U.S. Patents Nos. 5,693,761; 5,693,762; 6,180,370) (PTO considered these prior artists).

[12] Xanthopoulos Decl. Exh. 6 (Sep. 7 and 13, 2007 production letters) (the European opposition proceeding records were included within this production).

sued Alexion later that afternoon.[13]  Before then, Alexion had announced that it expected to price Soliris™ in the $100,000 to $200,000 per patient per year range.[14]  On March 26, 2007, Alexion announced that the price per patient per year would be $389,000.[15]  Some have projected that Alexion's annual revenues from Soliris™ will reach $1 billion.[16]  Alexion's stock has increased substantially since FDA approval.[17]

## IV.    ARGUMENT

The opening brief makes two broad requests:  (A) to bifurcate and stay *discovery* (of damages, willfulness, and exceptional case issues), ***and*** (B) to bifurcate the *trial* (of the same).  PDL addresses those issues in that order.

### A.    Standards For Decision

When deciding a motion to bifurcate, the court must weigh the "overall equities" of the three factors of Rule 42(b):  convenience, prejudice, and judicial economy.[18]  Although "trial courts are given a great deal of discretion when deciding motions to bifurcate[,] [i]t is usually *__not__* necessary to try different issues in the same case separately[.]"[19]  In assessing these three criteria, this Court has evaluated the following five factors:  (1) the likelihood that the moving party will prevail on liability; (2) the complexity, expense, or time required to conduct damages discovery and trial; (3) the likelihood that bifurcation will help resolve litigation within eighteen months of filing the complaint; (4) the risk of losing jurors between the first and second trial; and (5) the risk of postponing settlement by bifurcating damages discovery.[20]

---

[13] *Id.* Exh. 4 (FDA announcement of Soliris approval).

[14] *Id.* Exh. 7 at 2 (Forbes article) ("Alexion had said it expects to charge between $100,000 to $200,000 per patient per year.").

[15] *Id.* Exh. 8 at 2 (Analyst report) ("On March 26, 2007, ALXN announced the price per 300mg vial of Soliris would be $4,992, which translates to $389,000 treatment cost per year").

[16] *Id.* Exh. 9 at 1 (Reuters news article) ("Brokerage Cowen and Co. said it expects the drug to achieve peak annual sales of $500 million to $1 billion, based on the cost of therapy of $389,000 per patient per year.").

[17] *Id.* Exh. 10 (Yahoo! Finance chart showing stock appreciation).

[18] *Willemijn Houdstermaatschaavij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989) (citations omitted); *see also* Fed.R.Civ.P. 42(b).

[19] *Id.* (emphasis supplied).

[20] *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995).

Contrary to Alexion's assertion, bifurcation in patent cases is not a routine matter. Rather, "[b]ifurcation of trials, even in patent cases, should be the exception, not the rule."[21]   As this Court recently explained in *Crown Packaging & Technology, Inc. v. Rexam Beverage Can Co.*, the case for bifurcation should be particularly compelling and should prevail only in exceptional cases:

> dividing the ultimate resolution of a dispute into separate trials could inevitably lead to additional discovery, more pre-trial disputes, empaneling a second jury, deposing or recalling the same witnesses and the potential for multiple, additional post trial motions and appeals.  Those probable consequences must be weighed and therefore, *'bifurcation should be particularly compelling and prevail only in exceptional cases.'*[22]

The opening brief fails to meet these standards.

### B.    The Court Should Deny The Opening Brief's Request To Bifurcate And Stay Discovery Of Damages And Related Issues

Alexion, as movant, bears the burden to show that the relief it seeks is appropriate.[23]   As discussed below, Alexion did not even address factors (1), (3), (4), and (5) in its opening brief.   Its only argument was on factor (2), and that argument was simply wrong.

The linchpin of the opening brief's argument is its assertion that this Court "routinely bifurcates damages issues to promote judicial economy."[24]   In this section the opening brief cites only two cases for this broad proposition:  one from some 25 years ago, in 1982 (*Smith*), and one from 2002 (*Ciena Corp*).  Both of those cases addressed bifurcation of *trial*, not bifurcation and stay of *discovery*.   As this Court noted in *Crown Packaging*, a bifurcation and stay of discovery is in fact unusual, which squares with common sense:  it is unusual because it creates substantial inefficiencies and delay.

---

[21] *Matsushita Elec. Indus. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR, slip op. at 1 (D. Del. Dec. 15, 2003) (Exh. A hereto).

[22] *Crown Pack'g Tech,, Inc. v. Rexam Beverage Can Co.*, C.A. No. 05-608-MPT, 2007 U.S. Dist. LEXIS 53363, at *4 (D.Del. July 24, 2007) (emphasis supplied) (citation omitted).

[23] *Willemijn*, 707 F. Supp. at 1435 ("The burden of showing a significant risk of confusion is on the party requesting bifurcation.").

[24] D.I. 33 at 6-7 (Opening Brief).

1.    Bifurcation And Stay of Damages Issues Would Not Promote
Judicial Efficiency Because The Damages And Liability Issues Are
Intertwined

The opening brief's principal premise is that "[b]ifurcation is appropriate here because there is *little or no overlap* between the witnesses and documents related to damages issues and those relevant to the determination of liability."[25]    That premise is wrong, both legally and factually.   Evidence and witnesses relevant to damages overlap substantially with the witnesses and evidence relevant to infringement and validity.

For example, Alexion has alleged that the patents are obvious.[26]   To assess that defense, the jury must consider "secondary indicia of nonobviousness" such as *commercial success*, long-felt need, or failure of others.[27]   These factors are also important to, and deeply intertwined with, a reasonable royalty analysis for damages under *Georgia Pacific*.[28]   (PDL's complaint seeks at least a reasonable royalty).   Like the nonobviousness analysis of commercial success, a reasonable royalty damages analysis requires consideration of "[t]he established profitability of the product made under the patent; its *commercial success;* and its current popularity" (*Georgia Pacific* Factor 8).[29]

Hence, as a legal matter, there is substantial overlap between these two issues, and in assessing it, there will be largely common – indeed, overlapping – document and witness discovery on issues such as PDL's licensing of the patents-in-suit, sales under those licenses, Alexion's own sales, the extent of those sales as compared to projections of those sales, the success of Soliris™ as measured by its profitability to Alexion, and the like.   Discovery on such

---

[25] D.I. 33 at 7 (Opening Brief) (emphasis supplied).

[26] D.I. 11 ¶¶ 33 (Alexion's Answer) and 12, 19, 26 (Alexion's Counterclaims).

[27] *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966) (emphasis supplied).

[28] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[29] *Id.* (emphasis supplied); *see also Datastrip (IOM) Ltd. v. Symbol Techs.*, C.A. No. 97-70 (JJF), slip op at 7 (D. Del. Jan. 7, 1998) ("Evidence of 'commercial success' is relevant in the determination of obviousness under  35 U.S.C. § 103, and therefore, such evidence may be considered in assessing liability, as well as damages") (Exh. B hereto);   *Read Corp. v. Portec, Inc.*, C.A. No. 88-29 (JRR), slip op. at 6 (D. Del. May 11, 1989) ("[E]vidence of defendant's commercial success is relevant to issues of both liability and damages) (Exh. C hereto).

issues should be taken once, not twice.

Nonobviousness requires analysis of long-felt need; so does a reasonable royalty damages analysis, which requires consideration of "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" (*Georgia Pacific* Factor 9).[30]   In the nonobviousness analysis, "the old modes or devices, if any, that had been used for working out similar results" will be the prior art, and the testimony of prior artists served with subpoenas, to be analyzed in assessing Alexion's defenses that the patents were anticipated and are obvious.   Likewise, the failure of others is relevant to both the nonobviousness analysis and *Georgia Pacific* Factor 9.   Again, such discovery is central to both sets of issues (liability and damages), and the opening brief presents no compelling reason why such discovery should be taken twice.

The substantial overlap between liability and damages issues also extends to discovery about Alexion's anticipation defense.[31]   That defense will require discovery and analysis of the differences between the claimed anticipating art (which Alexion has yet to identify) and the patents-in-suit.   Such discovery and analysis overlaps substantially with damages discovery and analysis of "the utility and advantages of the patent property over the old modes or devices,"[32] whether that discovery is documentary or of witnesses.

Indeed, Alexion did not recognize or even refer in its Rule 26(a) initial disclosures the distinction it is now trying to draw.   In those disclosures, Alexion identified individuals or entities as "likely to have discoverable information that [Alexion] may use to support **its** claims or defenses."[33]   But damages – the issue that Alexion now seeks to delay – is not a claim or defense of Alexion; PDL bears the burden on damages.   Hence, the individuals or entities on Alexion's Rule 26(a) initial disclosures have knowledge relating to issues other than damages.

---

[30] *Georgia-Pacific*, 318 F. Supp. at 1120

[31] *Joy Techs. v. Flakt, Inc.*, 772 F. Supp. 842, 848 (D. Del. 1991) (denying bifurcation, in part, because there was at least a limited amount of overlapping evidence on the issue of evaluation of prior art, first as it pertains to validity and infringement, and secondly as it pertains to damages).

[32] 318 F. Supp. at 1120

[33] Xanthopoulos Decl. Exh. 11 at 1 (Alexion's Rule 26 Initial Disclosures) (emphasis supplied).

But many of those individuals and entities – in particular, PDL's third party licensees – are the very entities that Alexion now claims are relevant only to damages. In its Rule 26(a) Initial Disclosures, *Alexion did not identify a single individual or entity* as having knowledge limited only to damages.[34] In short, even according to Alexion's own Rule 26(a) Initial Disclosures, there is substantial overlap between the issues that Alexion seeks to parse from discovery and trial and those it seeks to include.

> 2.     Alexion's Motion Fails For The Separate And Independent Reason That Alexion Has Not Demonstrated Prejudice

Alexion fails to show – or even argue – that unified damages discovery and trial would cause prejudice. At most, it objects to the non-party discovery of licensees to PDL's patents-in-suit. But this discovery will not prejudice Alexion (i.e., favor PDL) because it is no more costly or timely for Alexion than for PDL, and that discovery will proceed based on the validity issues raised, regardless of whether damages discovery is bifurcated and stayed.[35]

At most, keeping in damages discovery will require that each party offer an expert report and testimony on damages. This is hardly the kind of "prejudice" that justifies the extraordinary step of bifurcation. Because the burden of expert damages testimony runs equally to both parties, it is not "prejudice" at all. Moreover, the parties' validity experts will need to address many of these same issues with respect to the objective indicia of nonobviousness.

> 3.     PDL, However, Would Be Prejudiced By A Bifurcation And Stay Of Damages And Other Issues

The opening brief did not demonstrate prejudice to Alexion if the case proceeds on the schedule that Alexion agreed to and submitted to the Court. PDL, however, would be prejudiced by the bifurcation and stay delay that the opening brief seeks. Even in the context of a motion to bifurcate only the trial (as opposed to *discovery* and trial), as this Court recognized in *Willemijn*, "[p]erhaps the most important consideration for a court ruling on a motion to bifurcate

---

[34] *Id.*

[35] *Truswal Sys. v. Hydro-Air Eng'g*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) (holding that commercial success is relevant to nonobviousness).

is whether separate trials would unduly prejudice the non-moving party."[36]  "[P]rejudice under these circumstances may simply amount to unfair delay."[37]  "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice."[38]

a.    Bifurcation Would Delay The Litigated Resolution Of This Case

It is beyond reasonable dispute that bifurcation will needlessly delay the final outcome of this action.  Under the opening brief's proposal, a trial on liability would be held first, separate and apart from the discovery and trial of damages and willfulness.  Only after Alexion's infringement is adjudicated by summary judgment or trial would discovery on damages and willfulness even begin and a second trial be held.  Alexion does not specify whether under its proposal the same or a different jury would hear the bifurcated issues, but either way, the litigated resolution of the case would be postponed, to PDL's prejudice.

If the *same* jury hears the case, there is the risk that jurors who sat in the first trial would die, move, or otherwise become unavailable.[39]  Also, witness recollections may fade and documents may be lost.  The opening brief does not even address this issue.  If a *different* jury hears the case, "no matter how carefully the court and the parties try to explain a patent case to [a second damages jury, that jury] will never understand the nature of the case as well as [a first liability jury] (which of course will have sat for the entire liability portion of the trial)."[40]  There is also a "danger of two separate juries finding conflicting facts" and 'inevitable delay and resulting prejudice to plaintiff, of two separate trials."[41]

---

[36] *Willemijn*, 707 F. Supp. at 1435.

[37] *Id.*

[38] *Matsushita Elec. Indus. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR, slip op. at 1-2 (D. Del. Dec. 15, 2003) (quoting *Willemijn*, 707 F. Supp. at 1433) (Exh. A hereto).

[39] *Security and Access Ltd. v. Motorola, Inc.*, C.A. No. 96-287 (SLR), slip op. at 2 (D. Del. March 4, 1997) ("Permitting a second discovery phase after a trial on liability and willful infringement would likely cause substantial inconvenience to jurors.") (Exh. D hereto).

[40] *IJR, Inc. v. Sodick, Inc.*, No. 87 C 6326, 1987 U.S. Dist. LEXIS 11087, at *9 (N.D. Ill. Nov. 24, 1987).

[41] *Joy Techs.*, 772 F. Supp. at 849.

Either way, this "start-and-stop" approach to discovery and trial undermines the goal of the Federal Rules of Civil Procedure to secure the just, speedy and inexpensive determination of every action.[42]   Such a piecemeal presentation of overlapping evidence delays the ultimate disposition of the case, increases costs to the parties, and consumes unnecessary court time.[43]

The piecemeal presentation of issues would likely be compounded if Alexion sought appellate review of the result of the bifurcated trial on infringement or validity, in which case Alexion would almost certainly seek to delay the damages trial pending that appeal.[44]   PDL also "should not be deprived of its 'legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action . . . brought into court.'"[45]

> b.    Bifurcation Would Delay A Negotiated Resolution Of This Case

Alexion's opening brief ignores entirely the practical reality of litigation: most cases settle before they reach trial.   Many courts, including this one, have noted that *damages discovery clarifies the issues and encourages settlement*:

> Finally, even if the court were inclined to order separate trials, it does not appear that staying discovery on damages pursuant to Federal Rule of Civil Procedure 26(c)(4) would be productive. Discovery on damages not only assists the parties in preparing for trial, it also educates each party on the other's view of the damages, which, in turn, assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision in the action. Consequently, it *can facilitate settlement discussions*.[46]

---

[42]  *See* Fed.R.Civ.P 1; *see also Johns Hopkins,* 160 F.R.D. at 36.

[43]  *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F. Supp. 1485, 1491-92 (D. Del. 1985) ("bifurcation will often be inadvisable if there would be a substantial overlap between the issues to be proved at both trials").

[44]  *Willemijn,* 707 F. Supp. at 1435 ("Moreover, the foreseeable appeal of the outcome of the liability trial might further delay the trial on damages.").

[45]  *Dentsply Int'l, Inc. v. Minnesota Mining & Mfg. Co.,* C.A. No. 91-355-SLR, slip op. at 8 (D.Del. July 26, 1993) (citations omitted) (Exh. E hereto).

[46]  *Johns Hopkins,* 160 F.R.D. at 35; *see also Laitram Corp. v. Hewlett-Packard Co.,* 791 F. Supp. 113, 117 (E.D. La. 1992) ("neither the plaintiff nor the defendant in such a case is likely to enter into serious settlement negotiations until they have done substantial discovery regarding damages.") (emphasis supplied).

Assuming rational participation by Alexion, one can foresee how normal, non-bifurcated discovery would help facilitate settlement. The patents-in-suit have been accepted by the industry; they have been widely licensed to such leading biotechnology companies as Genentech, MedImmune, Wyeth, and Hoffmann-La Roche, and billions of dollars of products are sold each year pursuant to licenses under the patents-in-suit. Alexion is the only company that PDL has been forced to sue. One can foresee how full discovery would lead Alexion back to the path that its sister companies have chosen.

Moreover, there does not appear to be an economic reason why Alexion could not settle. Soliris™ is the only FDA-approved biologic for the disease (PNH) to which it is addressed, and Alexion has taken advantage of its monopoly position by employing monopoly pricing: although analysts had predicted pricing in the range of $100,000 per patient per year, Alexion has announced pricing of Soliris™ of $389,000 per patient per year.[47] Alexion's stock has risen dramatically since that announcement.[48] One would think that success level would give Alexion some room – and some incentive – to choose to negotiate a resolution to its infringement rather than let a jury control the economic aspects of Alexion's business.

     c.    Bifurcation Would Increase The Number Of Discovery Disputes

As this Court well knows, high-stakes patent cases can generate many discovery disputes. (As a sister district court observed, in such cases "[d]iscovery motions fall as the gentle rain."[49]) Bifurcation would generate more, not fewer, discovery disputes. "[A]s many courts before us have noted, bifurcation can lead to additional discovery disputes that actually add time and energy to a litigation."[50] Those additional disputes come in the form of litigated disagreements about whether discovery is inside or outside the boundaries of the bifurcation and stay: "if discovery during the first time period were limited solely to liability issues, 'the parties

---

[47] Xanthopoulos Decl. Exh. 8 at 2 (Analyst report).
[48] *Id.* Exh. 10 (Yahoo! Finance chart showing stock appreciation).
[49] *Amgen, Inc. v. Hoechst Marion Roussell, Inc.*, 190 F.R.D. 287, 288 (D. Mass. 2000).
[50] *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 840 (N.D. Ill. 2006).

are likely to come to the Court with repeated disputes over how requested material is related to liability, damages, state of mind, or all these issues, which will burden the Court time wise, and unduly increase the costs of litigation for both parties.'"[51]

  Alexion's motion should be denied on this separate basis.

  C. **The Court Should Deny Alexion's Motion To Bifurcate Willfulness Discovery, Because Willfulness Overlaps With Inducement Of Infringement**

  The complaint alleges that Alexion has induced others to infringe; Alexion denies this.[52]  Discovery and adjudication of that dispute will overlap with the dispute over whether Alexion (which admitted in its Answer that it knew of the patents-in-suit before PDL filed) willfully infringed.  For example, a willfulness determination involves factors including "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, . . and in general, whether the defendant acted prudently or recklessly in acting on notice of patent rights."[53]

  Similarly, an inducement determination assesses whether "'the alleged infringer's actions induced infringing acts and [whether] he knew or should have known his actions would induce actual infringements.'"[54]  Hence evidence – documents and testimony – about Alexion's awareness and assessment of the patents-in-suit, and its awareness about whether it was inducing others to infringe those patents, are issues that are intertwined into the willfull infringement and the inducing infringement issues in this case.

  D. **The Court Should Deny Alexion's Motion To Bifurcate Issues For The March 2009 Trial**

   1. **This Request Is Premature**

  The request is premature.  Case-dispositive motions are scheduled for December

---

[51] *THK Am., Inc. v. NSK Corp.*, 151 F.R.D. 625, 633 (N.D. Ill. 1993).

[52] *See, e.g.*, D.I. 11 ¶ 31 (Alexion's Answer).

[53] *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).

[54] *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc).

2008; the Pretrial Conference, for February 2009; and trial, for March 2009. At this juncture, neither the parties nor the Court are in a position to know realistically what this case will look like for trial. Hence the opening brief's summary conclusions about jury confusion cannot accurately be assessed at this juncture, because neither the parties nor the Court is in a position to assess the facts relevant to the issue.[55] By the time of the Pretrial Conference, the parties – and the Court – will be in a much better and much better-informed position about whether the trial should be phased in some way.

> 2.    Alexion Has Not Even Decided Whether It Will Rely On Any
>        Opinion(s) Of Counsel

The motion to bifurcate willfulness should be denied as premature because Alexion has not even decided whether it will waive the privilege and rely on the advice of counsel defense. Its opening brief carefully states that it may suffer prejudice "in the liability trial by choosing an historically effective opinion of counsel defense to willfulness and waiving the associated privilege[.]"[56] If its opinion of counsel is "effective," historically or otherwise, it is hard to see how electing to rely on it will prejudice Alexion. In any event, given that Alexion has not decided to waive the privilege, it is unnecessary for the Court to address bifurcation. If Alexion does not waive the privilege, then the opinions and related privileged documents will not be produced, witnesses will not be examined about the opinions in discovery or at trial, and the opinions and related documents will not be introduced into evidence.

Even if Alexion ultimately decides to waive privilege, its motion still should be denied because Alexion has not demonstrated that it will suffer prejudice absent bifurcation. There is no evidence, for example, that Alexion faces the so-called *Quantum* dilemma.[57] This dilemma can arise *only* when the opinions of counsel on which a party relies contain statements that are prejudicial on the question of liability, such as an opinion that the accused infringer

---

[55] D.I. 33 at 8-9 § C (Opening Brief).
[56] D.I. 33 at 10 (Opening Brief).
[57] *Id.* (citing *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991)).

14

infringes the patents.[58]   The opening brief makes no such representations.   The opening brief did not demonstrate that willfulness evidence will consume a substantial number of trial days. Nor did the opening brief explain why limiting jury instructions would not prevent prejudice.[59] Indeed, even in cases where opinions of counsel "state that some of [the accused infringer's] products literally infringe the relevant patents," this Court has denied motions to bifurcate willfulness because "by evidentiary rulings and instructions the jury can be guided as to the proper consideration it should give to the legal opinions."[60]

3. *St. Clair Intellectual Property*, On Which The Opening Brief Mainly Relies, Does Not Apply

In this section, the opening brief first cites *In re Seagate* as a reason to bifurcate. That is odd.   When Alexion first raised the issue of bifurcation of willfulness, it asserted that it could not make a decision whether to rely until *In re Seagate* issued because "the law regarding willfulness and reliance on advice of counsel is in its current state of flux."[61]   *In re Seagate* has now issued, and in it the Federal Circuit spoke *en banc*.   Alexion's claim that the law is in an un-navigable "state of flux" rings hollow.

The opening brief relies principally on *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.,* C.A. No. 01-557-JJF, 2002 WL 1901268, *2 (D. Del. Aug. 16, 2002), for support.   *St. Clair* does not support Alexion's position, however.

As an initial matter, Judge Farnan ***denied*** the motion to stay damages discovery or bifurcate damages for trial there.   Regarding willfulness, the Court ordered bifurcation for a unusual, case-specific reason that does not apply here.   In *St. Clair*, the Court had earlier issued an opinion holding that "defendant's election to rely on the opinion extended the waiver to trial

---

[58] *Quantum Corp.*, 940 F.2d at 644 (first prong of dilemma arises from "waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability").

[59] *Synopsys, Inc. v. Magma Design Autom'n*, C.A. No. 05-701 (GMS), 2006 U.S. Dist. LEXIS 33751, at *11 (D. Del. May 25, 2006) ("[Delaware] jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex legal scenarios.").

[60] *General Signal v. Applied Materials*, 46 U.S.P.Q.2d 1160 (D. Del. 1997).

[61] D.I. 20, Ex. 1 at 3 (proposed Scheduling Order).

counsel" because the defendant had "elected to engage in the unconventional and risky arrangement of having opinion and trial counsel from the same law firm..."[62]  In *St. Clair*, however, the election to rely had occurred *before* the *Novartis* decision.  Hence, Judge Farnan concluded that undue prejudice existed because the defendants and their trial counsel had communicated "without the knowledge that their communications on matters other than infringement could be revealed in litigation."[63]  Here, by contrast, the motion papers make no such showing; nor could they:  Alexion's election will come years after *Novartis*.  If Alexion "elected to engage in the unconventional and risky arrangement of having opinion and trial counsel from the same law firm,"[64] *Novartis* provided notice that the waiver may extend to trial counsel in such circumstances. The new "objective recklessness" standard of *Seagate*, also provides adequate guidance to Alexion in determining whether to rely on the advice of counsel.

## V.    CONCLUSION

For the reasons set forth above, PDL respectfully requests that the Court, as it has so many times before, deny Alexion's motion to bifurcate and stay discovery and trial on damages issues.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Matthew D. Powers
Vernon M. Winters
Eric P. Xanthopoulos
John D. Beynon
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

September 24, 2007

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE   19899-1347
(302) 658-9200
klouden@mnat.com

*Attorneys for Plaintiff PDL BioPharma, Inc.*

---

[62] *Novartis Pharm. Corp. v. EON Labs Mfg.*, Inc., 206 F.R.D. 396, 399 (D. Del. 2002).
[63] *St. Clair Intel'l Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A.01-557-JJF, 2002 WL 1901268, at *2 (D. Del. Aug. 16, 2002).
[64] *Novartis*, 206 F.R.D. at 399.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> Young, Conaway, Stargatt & Taylor

I also certify that copies were caused to be served on September 24, 2007, upon the following in the manner indicated:

### BY HAND AND EMAIL

Josy W. Ingersoll
Andrew A. Lundgren
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE   19801

### BY EMAIL

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
Kirkland & Ellis
153 East 53rd Street
New York, NY   10022-4611

*/s/ Karen Jacobs Louden*

Karen Jacobs Louden (#2881)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MATSUSHITA ELECTRICAL        )
INDUSTRIAL CO., LTD.,         )
                             )
        Plaintiff,            )
                             )
    v.                        )    Civ. No. 01-882-SLR
                             )
CINRAM INTERNATIONAL, INC.    )
                             )
        Defendants.           )

ORDER

At Wilmington, this 15th day of December, 2003, having

reviewed Cinram's motion for a protective order to stay discovery

on willfulness and to bifurcate willfulness until a determination

of liability/damages and the papers submitted in connection

therewith;

IT IS ORDERED that said motion (D.I. 150) is denied, for the

reasons that follow:

1.    The decision whether to bifurcate the liability and

damages phases of a patent infringement action is left to the

discretion of the trial court. Fed. R. Civ. P. 42(b); Lis v.

Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).

"Bifurcation of trials, even in patent cases, should be the

exception, not the rule." Fuji Mach. Mfg. Co., Ltd. v. Hover-

Davis, Inc., 982 F. Supp. 923, 924 (W.D. N.Y. 1997). "The burden

is on the moving party to demonstrate that bifurcation is justified." Id. (citing Mellon v. Beecham Group PLC, 17 U.S.P.Q. 2D (BNA) 1149, 1154 (D. N.J. 1989)).  "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when  bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'" Laitram Corp. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992) (quoting Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1433 (D. Del. 1989)).  Courts, therefore, must balance the equities in ruling on a motion to bifurcate.  Laitram, 791 F. Supp. at 115.

2.    After balancing the equities, the court believes that neither a protective order nor bifurcation of willfulness from liability and damages is appropriate under the facts at bar. Cinram bears the burden to demonstrate that bifurcation is justified.  In attempting to do so, Cinram points out that it intends to rely upon an opinion of counsel, rendered after MEI brought suit, as an affirmative defense against Cinram's charge of willfulness.  Cinram claims that this opinion may include trial strategy such that it would be prejudicial to its defense to provide the opinion to MEI.  Cinram also makes the traditional arguments that a single jury may be overwelmed by liability and willfulness issues and that bifurcation will promote judicial economy because a verdict in its favor on the issue of liability

would obviate the need for a trial on damages. In this case, the liability issues are fairly narrowly drawn and the issue of willfulness is inextricably intertwined with those issues. As observed by the court in THK Am. Inc. v. NSK Co. Ltd., 151 F.R.D. 625, 630 (N.D. Ill. 1993):

> A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's knowledge of the inventor's patent rights, any good faith belief or invalidity or infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litiant.

Consequently, the court concludes that because willfulness is determined from the totality of the circumstances, it is most efficiently and expeditiously tried together with liability and damages.

3. The court further finds Cinram's motion to bifurcate untimely. MEI served document requests relating to willfulness on Cinram in July 2002, eleven months before the close of discovery. MEI served additional requests in May 2003. Cinram waited until June 3, 2003, three days prior to the close of fact discovery, to file its motion to bifurcate.

2

4.    Although the court closed expert discovery on August 15, 2003 pursuant to its scheduling order of June 10, 2003, discovery directed toward the issue of willful infringement may occur in accord with the instant order until trial commences.[1]

_____
United States District Judge

_____

[1]Cinram initially designated Mr. Lewis Ritchie as its witness on the willfulness issue.  Cinram scheduled his deposition originally during the last week of discovery and then rescheduled it until after the close of discovery.  Citing its motion to bifurcate, Cinram refused to allow any questions concerning specific opinions of counsel at the rescheduled deposition.  (See D.I. 154, tab H)

# EXHIBIT B

(84)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,          :

       Plaintiff,          :

       v.          :          C.A. No. 97-70-JJF

SYMBOL TECHNOLOGIES, INC. and          :
THE TRACKER CORPORATION          :
OF AMERICA,          :

       Defendants.          :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel:  Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire, and John H. Newcomer, Jr., Esquire
of BAYARD, HANDELMAN & MURDOCH, P.A., Wilmington, Delaware.
Of Counsel:  Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

---

## MEMORANDUM OPINION

January 7, 1998
Wilmington, Delaware

Farman, Chief Judge.

This is a patent infringement action brought by Plaintiff, Datastrip (IOM) Limited, against Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America. Presently before the Court is Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45). In their Motion, Defendants seek relief based upon Federal Rule of Civil Procedure 42(b), which grants district courts broad discretion to order separate trials to avoid prejudice and to promote judicial economy (D.I. 46). In opposition to Defendants' application, Plaintiff asserts that Defendants have failed to demonstrate that bifurcation will promote convenience or judicial economy and that Defendants have not established that any undue prejudice will result if their application is denied (D.I. 54).

For the reasons discussed, the Court will deny Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45).

## BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products. Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label. A bar code consists of a pattern of

1

printed bars and spaces which is used to input information into a
computer by means of optical scanning.

Plaintiff brought this action against Defendants for
infringement of the '221 Patent owned by Plaintiff.  The '221
Patent covers the invention of a two-dimensional bar code.
Plaintiff alleges that Defendant Symbol made certain
modifications and additions to the technology in the '221 Patent,
filed a patent application and in January, 1990, acquired United
States Patent No. 5,304,786 ("'786 Patent").  Plaintiff claims
that Defendant Symbol's other patents on technology used in
conjunction with printed bar codes have deprived Plaintiff of its
patent rights and induced infringement of the '221 Patent.
Meanwhile, Defendant Tracker has been making and selling kits
which Plaintiff claims incorporate a bar code of the type covered
by the '221 Patent and thus, directly infringe Plaintiff's '221
Patent.

The parties have exchanged their initial disclosures under
Rule 26(a)(1) and have served initial discovery requests.
Plaintiff has sought and received permission from the Court to
defer Rule 26(a)(1) disclosure of its damage theories until
January 1998.

2

## STANDARD OF REVIEW

In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial. <u>Johns Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 32-33 (D.Del. 1995) (citations omitted). However, in some instances, bifurcation may be worthwhile and is governed by Federal Rule of Civil Procedure 42(b):

> **(b) Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial is committed to the informed discretion of the trial judge based on the particular facts and circumstances of each case. <u>Lis v. Robert Packer Hosp.</u>, 579 F.2d 819, 824 (3d Cir. 1978). In exercising its discretion, a court must consider the arguments made by each side in light of the circumstances and equities of the case.

## DISCUSSION

Defendants offer two justifications for bifurcation in the instant case. First, Defendants contend that bifurcation will

3

promote judicial and legal economy.    Second, Defendants claim

that bifurcation will avoid prejudice by not requiring Defendants

to identify privileged attorney-client communications during the

liability phase of the trial.    In response, Plaintiff argues that

Defendants have failed to demonstrate that bifurcation would

promote convenience and judicial economy or avoid prejudice, and

that Defendants' Motion is merely an attempt to avoid their

discovery obligations.    In <u>Akzona Inc. v. E.I. DuPont De Nemours</u>

<u>& Co.</u>, 607 F.Supp. 227, 232 (D.Del. 1984), the Court outlined the

primary factors to be considered in ruling on a motion to

bifurcate, which include the potential for confusion, delay,

prejudice or the additional expense resulting from the grant or

denial of the motion.    Bifurcation may be advisable if the case

contains a large number of dissimilar or complex issues, or if

the trial of one issue is likely to be much shorter than the

others.    <u>Procter & Gamble Co. v. Nabisco Brands, Inc.</u>, 604

F.Supp. 1485, 1491 (D.Del. 1985).    Conversely, bifurcation will

not be warranted if there will be a substantial overlap among the

issues to be proven at both trials.    <u>Id.</u> at 1491-92.

Historically, courts have often found it worthwhile to hold

separate trials on liability and damage issues in patent cases.

Courts have found it to be more efficient to defer discovery and

4

trial on damages issues until after liability questions have been resolved at trial and on appeal. <u>John Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 33 (D.Del. 1995) (citations omitted). However, in a case relied upon by Defendants, although the court approved bifurcation, it went on to explain that:

> [t]here is an important limitation on ordering a separate trial of the issues under Rule 42(b): the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without justice.

<u>Swofford v. B. & W. Inc.</u>, 336 F.2d 406, 415 (5th Cir. 1964). Thus, bifurcation is not necessarily appropriate in every patent case and the Court's discretion in this regard must be exercised with caution. <u>Brad Ragan, Inc. v. Shrader's Incorporated</u>, 89 F.R.D. 548, 549-50 (S.D. Ohio 1981).

I.  <u>Defendants Must Demonstrate That Bifurcation Would Promote Convenience and Judicial Economy</u>

Since Defendants are seeking bifurcation, they have the burden of demonstrating that bifurcation is warranted in light of the general principle that a single trial tends to lesson the delay, expense and inconvenience to all the parties. <u>Mellon v. Beecham Group PLC</u>, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991). In this case, the Court concludes that Defendants have not provided sufficient reasons to demonstrate the efficiency of

5

bifurcating the damages and liability issues.

In their Motion, Defendants contend that judicial and legal economy will be promoted by bifurcation because the Court and the parties will have avoided discovery and trial on the damages issues if Defendants prevail. Further, Defendants point out that bifurcation will permit the jury to decide the already complicated liability issues in the case without being confused and distracted by the equally complicated damages issues.

The Court is not in a position at this time to fairly evaluate Defendants' claim that there is a substantial probability that they will prevail on liability. At this juncture, the Court does not have sufficient information to agree or disagree with such a proposition. Thus, the Court cannot consider this factor in determining bifurcation. Of course, in every case it may be said that a separate trial on a dispositive issue might save some time, however, a bare suggestion of efficiency cannot support the granting of a bifurcation request, and certainly judicial economy is not the only factor to be considered.

Further, the Court finds that in this case Defendants have not shown that discovery on damages will be complicated, expensive or time-consuming. This is a patent case, and

6

therefore, by its nature it can be described as complex, but Defendants have not convincingly shown that the benefits in saving time and expense in staying discovery on damages and ordering separate trials, outweighs the advantages of presenting these issues for resolution at one trial.

An additional factor that courts find significant in deciding whether to bifurcate is the overlapping of issues. Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F.Supp. 1429, 1434 (D.Del. 1989) (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F.Supp. 227, 233-34 (D.Del. 1984)). Plaintiff contends the following: (1) the evidence on commercial success of Defendant Symbol's products relates to both liability and damages; (2) the proof of liability and causation for damages will significantly overlap because Defendant Symbol is charged with inducing infringement; and (3) the proof on laches relates to both liability and damages. Accepting Plaintiff's assertions that the evidence on several issues may overlap, the Court agrees that bifurcation may not result in a more efficient presentation of the case. Evidence of "commercial success" is relevant in the determination of obviousness under 36 U.S.C. §103, and therefore, such evidence may be considered in assessing liability, as well as damages. In addition, general financial matters are likely to

7

be highly relevant to the liability and damages issues, resulting in a significant duplication in the presentation of evidence in both phases of the trial. Lastly, Defendants' assertion of the affirmative defense of laches may also weigh against bifurcation. In order to contest the laches defense, Plaintiff may have to inquire into damages claims during the liability phase of the trial. Thus, considering the issues cited by Plaintiff and the evidence that most likely will be presented at trial, the Court concludes that the testimony of probable witnesses and other evidence, will overlap on liability and damages issues and any time savings accomplished by bifurcation will be speculative.

Further, the Court finds that in this case it will be more efficient to work towards one trial and one appeal. Other than general assertions of potential efficiency, the Court finds that Defendants have not demonstrated that bifurcation will facilitate a single appeal, and, absent some strong evidence of the likelihood of one appeal, the Court concludes that one complete trial is the most efficient manner in which to timely dispose of this case.

II.    <u>Defendants Must Demonstrate That Bifurcation Will Prevent Prejudice</u>

Defendants assert that if bifurcation is not granted, they

8

will either have to waive the attorney-client privilege and share the opinions of their counsel with Plaintiff sooner than necessary or in the alternative, they will have to forego reliance upon the opinion of counsel in order to maintain the privileged status of the material. The attorney-client privilege protects a confidential communication between attorney and client when discovery is sought. The burden of proving that the privilege exists is on the party asserting the privilege. In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986). Clients waive the attorney-client privilege by deliberately injecting into the litigation the advice which the clients received from counsel. Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977, 979 (D.Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984). Similarly, the advice of counsel exception to the privilege states that where a party asserts as an essential element of their defense that it relied upon the advice of counsel, that party waives the privilege regarding communications pertaining to that advice. Mellon v. Beecham Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991).

In the instant case, staying discovery specifically on Defendants' advice of counsel defense by ordering a separate trial on liability and damages is not in the Court's view, an

9



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,                :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :        C.A. No. 97-70 (JJF)
                                        :
SYMBOL TECHNOLOGIES, INC. and           :
THE TRACKER CORPORATION                 :
OF AMERICA,                             :
                                        :
          Defendants.                   :

O R D E R

At Wilmington, this 7 day of January, 1998, for the

reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For

Separate Trials On Liability And Damages (D.I. 45) is DENIED.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE READ CORPORATION and             )
F.T. READ & SONS, INC.,              )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )       Civil Action No. 88-29-JRR
                                     )
PORTEC, INC. d/b/a                   )
PORTEC/KOLBERG DIVISION,             )
                                     )
                Defendant.           )

----------------------------------------------------------------

    Donald F. Parsons, Jr., Esquire and Paul P. Welsh,
      Esquire of Morris, Nichols, Arsht & Tunnell,
      Wilmington, Delaware
    OF COUNSEL:  Jack R. Pirozzolo, Esquire and Richard
      L. Binder, Esquire of Willcox, Pirozzolo & McCarthy,
      Boston, Massachusetts
                Attorneys for Plaintiffs


    Jeffrey B. Bove, Esquire of Connolly, Bove, Lodge & Hutz
      Wilmington, Delaware
    OF COUNSEL:  Dennis A. Gross, Esquire and Brett A.
      Valiquet of Hill, Van Santen, Steadman & Simpson,
      Chicago, Illinois
                Attorneys for Defendant

----------------------------------------------------------------


**MEMORANDUM OPINION**




Wilmington, Delaware

May 11, 1989

ROTH, District Judge

Plaintiffs Read Corporation and F.T. Read & Sons, Inc., have filed this action for patent infringement against defendant Portec, Inc., d/b/a Portect/Kolberg Division. Currently before the Court are defendant's motion to bifurcate the issues of liability and damages and its accompanying request for a stay of discovery on damages. It is the Court's conclusion that little stands to be gained from separating these two issues at the present time. Accordingly, neither bifurcation nor a stay of discovery will be ordered.

I.  **FINDINGS OF FACT.**

Plaintiffs filed this suit on January 22, 1988, alleging infringement of three mechanical patents and a design patent. The claims relate to the sale of portable screening devices manufactured by defendant. Plaintiffs have also alleged unfair competition based on the patent infringement claims.

For the first six months after this action was filed, the parties engaged in settlement negotiations. Pending discovery requests were extended by agreement during that period to limit expense during those discussions. By the end of June, however, it had become clear to the parties that no settlement agreement would be reached and that discovery would have to resume.

The Court conducted a scheduling conference with the parties on July, 11, 1988. At that time the Court approved a

joint scheduling order which indicated defendant's desire to bifurcate the trial and plaintiffs' opposition to bifurcation. D.I. 21.    Since July, discovery has proceeded in substantial conformity with the scheduling order.

At the intermediate status conference conducted by the Court on January 9, 1989, a discovery cut-off date was set for March 20, 1989.    That date was subsequently continued to April 21, 1988, by mutual agreement of the parties set out in a joint stipulation approved by the Court.    D.I. 106.    At the status conference the Court also requested briefing on the instant motion to bifurcate.

On April 24, 1989, a teleconference was conducted by the Court.    At that time, the parties were granted leave to conduct two or three more depositions apiece even though the discovery cut-off date had passed.    Those depositions notwithstanding, discovery in this case appears to be essentially finished.

Trial is scheduled to begin on September 26, 1989.    At the scheduling conference the parties estimated that the trial would last about ten days.

II.    <u>CONCLUSIONS OF LAW</u>.

Defendant has moved the Court to bifurcate the issues of liability and damages by conducting two separate trials or, in the alternative, by trying the two issues separately and serially

2

at the same trial.[1]  Defendant contends that in either case a stay of discovery relating to the issue of damages would be appropriate.

Plaintiffs have made clear their position that the Court should not bifurcate this action at the present time. Plaintiffs maintain that separate trials are unnecessary and that the Court need not decide whether to separate the issues to be considered at trial until the time of trial.  In either case, plaintiffs contend, a stay of discovery would be unwarranted.

## A. Bifurcation in General

Bifurcation in federal courts is governed by Federal Rule of Civil Procedure 42(b).[2]  Rule 42(b) authorizes bifurcation "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed.R.Civ.P. 42(b).  One commentator has stated that Rule 42(b) gives courts "virtually unlimited freedom to try the issues in whatever way trial convenience requires."  9 Wright & Miller, Federal Practice and Procedure: Civil § 2387.

---

1. This opinion will refer broadly to these two methods of separating issues as "bifurcation."

2. Fed. R. Civ. P. 42(b) provides, in pertinent part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue . . . always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

3

There is usually no need to try different issues in the same case separately. In fact, separate trials should not be ordered "unless such a disposition is clearly necessary." 5 Moore's Federal Practice ¶ 42.03[1] at 42-38. If a court determines that a single trial might prejudice one of the parties or that multiple trials would be significantly more convenient or economical, the court may order separate trials. Id. Alternatively, a court may consider different issues at the same trial separately by withholding presentation of evidence on one issue until the other issue has been decided.

This Court has observed in the past that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues. Smith v. Alyeska Pipeline Serv. Co., 538 F. Supp. 977, 983 (D. Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984), cert. denied, 471 U.S. 1066 (1985) (quoting Swofford v. B. & W., Inc., 34 F.R.D. 15, 19-20 (S.D. Tex. 1963), aff'd, 336 F.2d 406 (5th Cir. 1965)). But that does not mean that patent cases should be bifurcated as a matter of course; on the contrary, motions to bifurcate are to be determined on a case-by-case basis. Smith, 538 F. Supp. at 982 (quoting Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3d Cir.), cert. denied, 439 U.S. 955 (1978)). Failure to give adequate consideration to the specific facts underlying such a motion may constitute grounds for a new trial, regardless of whether prejudice has been shown. Lis, 579 F.2d at 825.

4

## B. Convenience and Judicial Economy

Consideration of two of the three criteria listed in Rule 42(b)--convenience and judicial economy--strongly disfavors bifurcating this action at the present time. Defendant points out that separating the issues could save time if the trial on liability came out in its favor, since under those circumstances trial on the damages issue would be unnecessary. However, the parties estimated at the intermediate status conference that trial of the damages issue would take only two of the ten days required for the entire trial.[3] Potentially saving 20 percent of the time allotted for trial is not a sufficient payoff to justify the inconvenience that the gamble of bifurcation would entail.[4]

The inconvenient aspects of bifurcating this action have been persuasively detailed by the plaintiffs. Plaintiffs point out that due to the close relationship between the liability and damages issues, bifurcation would require them to present the same evidence twice. Plaintiffs also contend that a stay of discovery as to damages would deprive them of evidence they need to meet their burden of proof at trial on the issue of liability; however, because the discovery cut-off date has passed, the latter argument is not persuasive.

---

3. While defendant is now trying to increase that figure, claiming that it had no idea that plaintiffs would name so many expert witnesses on damages, such excuses are not persuasive coming from a party represented by an experienced patent litigation firm.

4. With respect to discovery, no time or expense stands to be gained from bifurcation because the discovery cutoff date was April 21, 1989. D.I. 106. Consequently, bifurcation could only potentially save time or money at the trial stage.

A significant overlap between the issues to be proved at trial indicates that bifurcation would be inconvenient and inefficient and should therefore be denied. See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc., 604 F. Supp. 1485, 1493 (D. Del. 1985); H. B. Fuller Co. v. National Starch and Chem. Corp., 595 F. Supp. 622, 625 (D. Del. 1984); cf. Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F. Supp. 227, 233-34 (D. Del. 1984) (citation omitted). This Court has recently stated that "the degree to which issues overlap can often best be assessed by examining the amount of evidence and number of witnesses that would be presented at both trials." Willemijn Houdstermaatschaapij, B.V. v. Apollo Computer, Inc., C.A. No. 88-109-JRR, slip op. at 5 (D. Del., Feb. 17, 1989) (citation omitted).

In the present case, evidence of defendant's commercial success is relevant to the issues of both liability and damages. Willemijn, C.A. No. 88-109-JRR, slip op. at 6; cf. Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 587 F. Supp. 1112, 1116 (D. Del. 1984). In addition, evidence of the differences between the patented invention and the allegedly very cumbersome "prior art" could be found to bear not only upon liability issues relating to the scope of the claims and to the applicability of the doctrine of equivalents to what plaintiffs claim to be a "pioneer patent," but also upon calculation of a "reasonable royalty" which would compensate plaintiffs for the alleged infringement. See, e.g., Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116,

6

1120 (S.D.N.Y. 1970), modified on other grounds, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870 (1971).

The Court acknowledges that there is a "fundamental difference" between an overlap in issues and an overlap in evidence. Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1213 (Fed. Cir. 1987); Paine, Webber, 587 F. Supp. at 1117. Nevertheless, the significant overlap in evidence to be presented on liability and damages in the present case indicates that there is a significant degree of substantive overlap with respect to those issues, as well. Willemijn, C.A. No. 88-109-JRR, slip op. at 5; Organic Chemicals v. Carroll Products, Inc., 86 F.R.D. 468 (W.D. Mich. 1980). Accordingly, considerations of convenience and judicial economy oppose bifurcation at the present time.

Defendant maintains that any evidence of its past financial performance that could be introduced to show commercial success at the liability phase of this trial is of a markedly different character than that which would be proffered to prove damages and that, as a result, no meaningful evidentiary overlap exists. However, plaintiffs have demonstrated sufficient areas of overlap to persuade the Court otherwise.

Defendant has suggested that the Court could prevent plaintiffs from being handicapped by a stay of discovery at the liability phase by permitting limited, relevant discovery on damages and prior art. It is indeed conceivable that such a measure would better enable plaintiffs to try the issue of lia-

7

bility; however, because almost all discovery has been completed, the stay request is at this point essentially moot and will be denied.[5]

### C. Prejudice

Because it appears that this case will be tried to a jury, the type of prejudice mentioned in Rule 42(b) is also a factor to be considered. 5 Moore's Federal Practice ¶ 42.03[1]. Defendant argues that a single, non-bifurcated trial of these issues would be prejudicial for two reasons:  first, because trying both issues together would tend to confuse the jury; and second, because a jury that hears evidence on the issue of damages and various methods of calculating damages will be more inclined to conclude that defendant is liable.

Defendant has not met its burden of showing a significant risk of jury confusion.  Defendant cites the Smith case for the proposition that a single trial on the issues of liability and damages "would tend to clutter the record and confuse the jury."  Smith, 538 F. Supp. at 984.  However, in Smith the party requesting bifurcation expressly represented to Judge Latchum that resolution of the damages issue would entail a review of

---

5. Defendant's suggestion does, however, herald another disadvantage bifurcation would have: if the motion to bifurcate were granted as to discovery, the parties would no doubt spend a great deal of time arguing about whether or not various documents were properly discoverable as a part of the liability phase, thereby prolonging the resolution of this case.  Furthermore, if separate trials were held, the foreseeable appeal of the decision in the liability trial would further delay the trial on damages.  Such delays are prejudicial to the party opposing bifurcation.  Willemijn, C.A. No. 88-109-JRR, slip op. at 8.  See also Procter & Gamble, 604 F. Supp. at 1493; H.B. Fuller, 595 F. Supp. at 625.

millions of documents and would take an exceptionally large amount of time both during discovery and at trial. _Id_. at 983-84.

No such representations have been made in the present case. Defendant has done little more than warn the Court that the jury may be distracted from its central task of determining liability by the complex valuation theories that could be advanced at trial. In _Smith_, Judge Latchum was careful to distinguish cases in which the parties requesting bifurcation simply "rely on the proposition that the damage issue is complex" from cases in which more specific representations have been made. 538 F. Supp. at 983 (distinguishing in particular _Brad Ragan, Inc. v. Schrader's, Inc._, 89 F.R.D. 548 (S.D. Ohio 1981)). _Smith_ is therefore not applicable here.

Despite defendant's allegations to the contrary, the subject matter of this case does not appear to be particularly complex. In light of the fact that the parties originally agreed that ten days would be sufficient for trial, they apparently did not think that the issues were unusually complicated, either. Accordingly, bifurcation is not warranted. _Cf_. _Procter & Gamble_, 604 F. Supp. at 1492; _Smith_, 538 F. Supp. at 983.

With respect to any stigma that may flow from the information that the jury will receive on the issue of damages, a curative instruction should be adequate to prevent any prejudicial inferences. If an assertion that the jury was going to hear argument and be instructed on the issue of damages constituted a

9

showing of a risk of prejudice sufficient to warrant bifurcation, then the issues of liability and damages would be separated in all jury trials. If for some reason it later becomes apparent to the Court that there is a greater risk of prejudice than was formerly thought to exist, the Court may bifurcate trial of the issues at that time.

III.    CONCLUSION.

Defendant has not shown that bifurcation of the present action would promote convenience or judicial economy or is necessary to prevent prejudice at trial. Plaintiffs, on the other hand, have persuaded the Court that bifurcation at this time might very well cause unnecessary delay or inconvenience. Accordingly, defendant's motion will be denied. Because discovery in this case is essentially finished, defendant's request for a stay of discovery will also be denied.

An appropriate order will follow.

10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE READ CORPORATION, et al.,    )
                                 )
              Plaintiffs,         )
                                 )
      v.                          )      Civil Action No. 88-29-JRR
                                 )
PORTEC, INC. d/b/a               )
PORTEC/KOLBERG DIVISION,          )
                                 )
              Defendant.          )

### O R D E R

ON this 11th day of May, 1989, for the reasons set forth in the Court's Memorandum Opinion of this date,

IT IS ORDERED that defendant's motion for bifurcation is hereby denied.

UNITED STATES DISTRICT JUDGE

# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SECURITY AND ACCESS        )
(ELECTRONIC MEDIA) LTD.,   )
TANIS PATRICIA WAKEFIELD, and )
TERENCE JOHN NEWELL,       )
                           )
         Plaintiffs,       )
                           )
         v.                )    Civil Action No. 96-287-SLR
                           )
MOTOROLA, INC.             )
                           )
         Defendant.        )

O R D E R

At Wilmington this  4th  day of March 1997, having
reviewed defendant's motion for separate trials on liability,
damages and enhanced damages and for a stay of discovery on those
issues (D.I. 27) and the papers filed in connection therewith;

IT IS ORDERED that said motion is denied, for the
following reasons.

1.  The decision to order separate trials on different
issues in the same case is left to the sound discretion of the
trial judge.  Separate trials are favored only when bifurcation is
"conducive to expedition and economy," furthers convenience, or
avoids prejudice.  Fed. R. Civ. P. 42(b).

2.  This is a complex patent case which has been
scheduled for trial in December 1997.  The court's primary case
management goals are to try the case as scheduled and in such a

manner as to promote the efficient and effective presentation of evidence at a minimal inconvenience to jurors.

    3.  Keeping those goals in mind, the court declines to stay discovery.  The court disagrees with defendant's contention that there is no overlapping evidence.  Permitting a second discovery phase after a trial on liability and willful infringement would likely cause substantial inconvenience to jurors.  Moreover, defendant's attorney client privilege will not be compromised by discovery proceeding on all issues.  If, as defendant attests, defendant's disclosure of counsel's opinions in defense of plaintiff's willful infringement claim results in "endless battles about the scope and intent of the waiver" (D.I. 28 at 10) of such privilege, the court is quite prepared to settle them as they arise.

    4.  The court will reconsider bifurcation of the trial after the case and issue dispositive motions have been resolved.

                               _____
                          United States District Judge

EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DENTSPLY INTERNATIONAL, INC.   )
a Delaware corporation,          )
                                 )
           Plaintiff,        )
                                 )
          v.              )   Civil Action No. 91-355-SLR
                                 )
MINNESOTA MINING AND           )
MANUFACTURING COMPANY,       )
a Delaware corporation,          )
                                 )
           Defendant.       )

-------------------------------------------------------

Steven J. Balick, Esquire, of Ashby & Geddes, Wilmington,
Delaware; attorneys for plaintiff. Of Counsel: Michael C. Elmer,
Esquire, and Stephen T. Sullivan, Esquire, of Finnegan,
Henderson, Farabow, Garrett & Dunner, Washington, D.C.

Robert K. Payson, Esquire, and William J. Marsden, Esquire, of
Potter, Anderson & Corroon, Wilmington, Delaware; attorneys for
defendant. Of Counsel: Frank P. Porcelli, Esquire, John R.
Schiffhauer, Esquire, and Mary D. Mosley-Goren, Esquire, of Fish
& Richardson, Boston, Massachusetts; and Terryl K. Qualey,
Esquire, and Carolyn A. Bates, Esquire, of Minnesota Mining and
Manufacturing Co., St. Paul, Minnesota.

-------------------------------------------------------


**<u>MEMORANDUM OPINION</u>**


Dated: July 26, 1993

Wilmington, Delaware

ROBINSON, District Judge

## I.  INTRODUCTION

Dentsply International, Inc. ("Dentsply") commenced this action seeking a declaratory judgment that its manufacture and sale of certain state-of-the-art dental adhesive systems do not infringe Minnesota Mining and Manufacturing Company's ("3M") U.S. Patent No. 4,719,149 (the "'149 patent").  The patent in suit pertains to a "primer" used in said dental adhesive systems. Both parties presently sell and manufacture such systems. Dentsply's action is grounded on its claim that the '149 patent is invalid and unenforceable.  Dentsply also claims 3M threatened it with patent infringement in "bad faith."  3M counterclaims that its patent is valid and infringed by Dentsply.  3M further claims Dentsply willfully infringed the '149 patent and accordingly seeks increased damages.  Both parties request payment of their attorneys' fees in connection with this litigation.  3M demands a jury trial on all issues so triable.

Before the Court is Dentsply's motion for bifurcation into sequential jury trials.  Dentsply's request contemplates a two-stage jury trial process: The first stage on liability and, depending on the outcome therein, a second stage, immediately after the first and before the same jury, either on Dentsply's claim of bad faith assertion of patent enforcement or on 3M's willful infringement claim and damages.  3M opposes the motion. For reasons that follow, Dentsply's motion to bifurcate will be denied.

## II.  STANDARD OF REVIEW

Rule 42(b) of the Federal Rules of Civil Procedure governs the motion at bar.  Under Rule 42(b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separate issue or of any number of claims...."  Trial courts are given broad discretion when deciding a motion to bifurcate.  <u>Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.</u>, 707 F. Supp. 1429, 1433 (D. Del. 1989).  Decisions under Rule 42(b) essentially involve a weighing of "the 'overall equities' of the case."  <u>Id.</u> at 1433-34. "[B]ifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis."  <u>Id.</u> at 1434.  Although this Court has "observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues,"[1] it remains true that "[i]n patent cases, as in others, separate trials should be the exception, not the rule."  <u>Laitram Corp. v. Hewlett-Packard Co.</u>, 791 F. Supp. 113, 114 (E.D. La. 1992) (citing cases).

## III.  DISCUSSION

In support of its motion to bifurcate, plaintiff argues that "[o]f primary concern to Dentsply is the unfair prejudice that would result if the jury hears all of 3M's inflammatory

---

1.  <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1433 (citing <u>Smith v. Alyeska Pipeline Serv. Co.</u>, 538 F. Supp. 977, 982 (D. Del. 1982)).

2

willful infringement allegations at the same time the jury decides the liability issues." (D.I. 92 at 11) Dentsply suggests bifurcation would alleviate any such "unfair prejudice" since 3M, under Dentsply's requested procedure, would present its evidence supporting willful infringement, if at all, in the second phase of the case after the jury reaches a verdict finding liability against Dentsply.

3M counters that bifurcation is inappropriate in the instant case because, according to 3M, there are substantial areas of overlapping evidence and issues making bifurcation inefficient, inconvenient and unfair to 3M.

This Court previously has recognized "that an overlapping of issues is significant to the decision whether to bifurcate." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F. Supp. 227, 233-34 (D. Del. 1984)). "The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Organic Chemicals v. Carroll Products, Inc., 86 F.R.D. 468, 469 (W.D. Mich. 1984)).

Although 3M asserts that several areas of overlap are present, of particular concern is the question of whether evidence supporting 3M's claim against Dentsply for willful infringement properly would be introduced during the liability stage of a bifurcated trial. Since "unfair prejudice that would

3

result if the jury hears ... 3M's inflammatory willful

infringement allegations at the same time the jury decides the

liability issues" is Dentsply's "primary concern" in moving to

bifurcate (D.I. 92 at 11), and since bifurcation would not

alleviate this prejudice if 3M nonetheless was entitled to

present evidence of willful infringement during the liability

trial, resolution of this question is of substantial importance

in deciding the motion at bar.

          3M represents that its case both on willful

infringement and on patent validity will include evidence of

Dentsply's alleged "copying":

>                    3M expects to prove Dentsply
>                    evaluated 3M's patented products,
>                    saw how valuable the innovation
>                    would be in the marketplace, and
>                    saw that its current products could
>                    not compete with the new 3M
>                    technology. Therefore, Dentsply
>                    was motivated to copy and did copy
>                    the innovation and willfully
>                    infringe 3M's patent, taking sales
>                    away from 3M, the extent of which
>                    sales helps to prove the value and
>                    validity of the patents -- the
>                    motivation for Dentsply's copying.

(D.I. 97 at 10)

          In opposing this argument, Dentsply contends that

evidence of "copying" and associated evidence of an alleged

infringer's intent to infringe "relates primarily to a claim for

increased damages, not to liability." (D.I. 107 at 6-7 (citing

authorities)) Although this form of evidence may "relate[]

primarily" to a claim for willful infringement and increased

damages, it is settled that "[c]opying is an indicium of

4

nonobviousness, and is to be given proper weight." <u>Diversitech Corp. v. Century Steps, Inc.</u>, 850 F.2d 675, 679 (Fed. Cir. 1988) (citing <u>Windsurfing International, Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1000 (Fed. Cir.), <u>cert. denied</u>, 477 U.S. 905 (1986) (copying of patented invention is indicative of nonobviousness)).

Since 3M apparently will rely on evidence of Dentsply's alleged copying in support of its willful infringement and its patent validity claims, it appears that this "inflammatory" evidence would be presented during both stages of a bifurcated trial. Therefore, the alleviation of "unfair prejudice" which Dentsply seeks with this motion would not be accomplished, or would be partially accomplished only, by permitting bifurcation.

3M points out that various evidentiary matters relating to the commercial success of the patented technology would be relevant both to patent validity and to damages. In response Dentsply contends, relying upon <u>Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 587 F. Supp. 1112 (D. Del. 1984), that this Court has rejected "the argument that commercial success, as related to nonobviousness, is intertwined with the issue of damages." (D.I. 107 at 9) Contrary to Dentsply's argument, this Court has held that evidence of "'commercial success' is a relevant secondary consideration in a determination of obviousness under 36 U.S.C. section 103, [<u>Paine, Webber</u>, 587 F. Supp. at 1116]; and it is indisputable that such evidence will be considered by a court

5

assessing damages." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434.

Dentsply further contends that "[c]ommercial success for obviousness purposes is of a sharply different character than use of financial information during [the] damages phase [of a patent infringement trial]." (D.I. 107 at 9)  The Court "acknowledges that the issue of commercial success is not ordinarily determined by a detailed analysis of exhaustive and detailed financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and a big seller." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434 (quoting <u>Paine, Webber</u>, 587 F. Supp. at 1116.  Nonetheless, it is clear from the record that bifurcation in the instant case would require 3M to present at least some, if not a substantial amount of evidence twice, and "although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434.

Accordingly, the Court concludes that the presence of overlapping evidence weighs against bifurcation.  The Court further finds that the requested bifurcation procedure will not serve the "primary" purpose underlying Dentsply's motion, alleviation of "unfair prejudice," since much of the purportedly "inflammatory" allegations relating to willful infringement are

included in the overlapping evidence which properly would be presented during both stages of a sequential trial.

Dentsply's second general argument in support of its motion to bifurcate is that sequential trials will increase jury comprehension and ameliorate confusion arising from the complexities of this patent case. "The burden of showing a significant risk of confusion is on the party requesting bifurcation." <u>Id.</u> at 1435. The Court finds, for reasons stated below, that Dentsply has not met its burden in this regard.

Dentsply contends that this is a "highly complex" case. The Court disagrees. As to the technology at issue, while there are technical complexities which the jury will be required to confront, fundamentally this case is comprehensible because the products involved are to some extent familiar to laymen. As Dentsply concedes, the patent in suit "deals with products that are used to pre-treat [a] tooth before a filling is placed [in] or a material is bonded to the t[oo]th." (D.I 107 at 12) Furthermore, although it is true, as Dentsply argues, that the jury in this case will have to consider "varied evidentiary presentations," that is true of almost any civil case, certainly of any patent case, and it does not provide a sufficient basis for bifurcation. Likewise, the numerous and to some extent complex issues which the jury will tackle in this case are not so unusual or compelling as to warrant bifurcation.

Dentsply's final argument is that bifurcation will promote expedition and judicial economy. The Court is

7

unpersuaded by this argument for the following reasons.  First, as discussed above, there are substantial areas of overlapping evidence and presentation of the same evidentiary materials twice, even to a minor extent, certainly will not promote efficiency and economy.  Second, the Court foresees that bifurcation in this case will result in substantial delays as a result of disputes regarding the admissability of evidence during either stage of a sequential trial.  See Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1435.  Indeed, the briefing presently before the Court amply supports this prediction.  Additionally, it cannot be disputed that two trials are likely to consume more time than one, and under the procedure requested by Dentsply, there will be a second trial irrespective of which party prevails during the first stage of proceedings.

Finally, the Court finds persuasive 3M's contention that it should not be deprived of its "legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action ... brought into the court."  Nylok Fastener Corp. v. Industrial Nut Corp., 8 U.S.P.Q.2d 1092, 1093 (N.D. Ohio 1988) (quoting In re Beverly Hills Fire Litigation, 695 F.2d 207, 217 (6th Cir. 1982)).  The Court agrees that 3M should be entitled to "present to the jury the whole real-world picture of 3M's innovation and commercial success, Dentsply's [alleged use] of that innovation, and the benefits Dentsply [allegedly] achieved in terms of sales and profits from its [use], and should

8

not be required to break into pieces what is really one integrated story." (D.I. 97 at 25)

**IV.    CONCLUSION**

For the reasons stated above, Dentsply's motion to bifurcate will be denied.  An Order consistent with this Memorandum Opinion shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.    )
a Delaware corporation,         )
                                )
            Plaintiff,          )
                                )
        v.                      )    Civil Action No. 91-355-SLR
                                )
MINNESOTA MINING AND            )
MANUFACTURING COMPANY,          )
a Delaware corporation,         )
                                )
            Defendant.          )

## O R D E R

At Wilmington this 26th day of July 1993, for the
reasons set forth in the Court's accompanying Memorandum Opinion
issued this day;

IT IS ORDERED that Dentsply's motion to bifurcate,
Fed.R.Civ.P. 42(b), will be, and hereby is, DENIED.  (D.I. 91)[1]

_____
United States District Judge

_____

1.  Plaintiff's request for oral argument hereby is denied since
the facts and legal contentions are adequately presented in the
materials before the Court and argument would not significantly
aid the decisional process. (D.I. 109)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PDL BIOPHARMA, INC., | |
| Plaintiff, | C. A. No. 07-156 (***) |
| v. | |
| ALEXION PHARMACEUTICALS, INC., | |
| Defendant. | |

**[PROPOSED] ORDER DENYING DEFENDANT'S**
**MOTION TO BIFURCATE AND STAY DISCOVERY**
**AND TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

This ___ day of _____, 2007, upon consideration of Defendant's

Motion to Bifurcate and Stay Discovery and Trial of Damages and Willfulness Issues, IT IS

HEREBY ORDERED that Defendant's Motion is DENIED.

_____
Hon. Mary Pat Thynge
United States Magistrate Judge