IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 07-156-*** |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND ORDER

WHEREAS, the Court entered a scheduling order in August 2007 (D.I. 24) providing that all requests for leave to amend the pleadings shall be filed on or before December 7, 2007;

WHEREAS, Defendant Alexion Pharmaceuticals, Inc. ("Alexion") seeks leave to amend its Answer and Counterclaims (D.I. 11) pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 15.1;

WHEREAS, Plaintiff PDL Biopharma, Inc. ("PDL") does not oppose, as a procedural matter, the filing of Alexion's proposed Amended Answer and Counterclaims;

WHEREAS, PDL otherwise reserves its rights with respect to the amended allegations, as stated in the December 6, 2007, letter attached as Exhibit A;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by the parties, subject to the approval of the Court, that the attached Amended Answer and Counterclaims (Exhibit B, with blacklined version of same attached as Exhibit C) shall be deemed filed as of the date of this order.  The parties further stipulate, subject to the Court's entry of this Order, that the time by which PDL shall plead in response to the Amended Answer and Counterclaims shall be extended to the later of January 4, 2008 or 10 days after the Court's entry of this Order.

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Karen Jacobs Louden*

_____
Jack B. Blumenfeld, Esquire (No. 1014)
Karen Jacobs Louden, Esquire (No. 2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*klouden@mnat.com*

*Attorneys for Plaintiff*

Dated: December 7, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899
(302) 571-6600
*alundgren@ycst.com*

*Attorneys for Defendant*

SO ORDERED this _____ day of _____, 2007.

_____
United States Magistrate Judge

# EXHIBIT A

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
NEW YORK
PARIS
PRAGUE
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

*650-802-3174*
eric.xanthopoulos@weil.com

December 6, 2007

**VIA EMAIL**

Gregory Morris, Esq.
Kirkland & Ellis LLP
153 E. 53rd Street
New York, NY 10022-4611
*GMorris@kirkland.com*

Re:     **PDL BioPharma, Inc. v. Alexion Pharmaceuticals, Inc.**
          **D. Del. Case No. 07-156**

Dear Gregory:

       We have received Alexion's proposed Amended Answer and Counterclaims. Without conceding that the amended allegations therein state a defense or claim, that Alexion's prefiling investigation with respect to those allegations was adequate, or that there is any truth to those allegations, as a procedural matter PDL BioPharma, Inc., will not oppose the filing (tomorrow, as the Scheduling Order requires) of the attached Amended Answer and Counterclaims. PDL reserves all of its rights with respect to the amended allegations. If Alexion represents or states to the Court in any way (whether by motion, letter to the Court, or otherwise) that PDL does not oppose the filing of the attached Amended Answer and Counterclaims, please attach this letter to

(#285066)

WEIL, GOTSHAL & MANGES LLP

Gregory Morris, Esq.
December 6, 2007
Page 2

Alexion's letter or moving papers and quote this paragraph in Alexion's letter or memorandum of points and authorities, as appropriate, to the Court.

Best regards,

Eric P. Xanthopoulos

cc:     Josy Ingersoll, Esq. (via email) (*JIngersoll@ycst.com*)
        Karen Jacobs Louden, Esq. (via email) (*KLouden@MNAT.com*)
        Wendy Adams (via email) (*WAdams@kirkland.com*)

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PDL BIOPHARMA, INC.,

      Plaintiff,

v.

ALEXION PHARMACEUTICALS, INC.,

      Defendant.

C.A. No. 07-CV-156 -***

**DEFENDANT ALEXION PHARMACEUTICALS, INC.'S
AMENDED ANSWER AND COUNTERCLAIMS**

Defendant Alexion Pharmaceuticals, Inc. ("Alexion"), for its Amended Answer to the Complaint of Plaintiff PDL Biopharma, Inc. ("PDL"), hereby states as follows:

1.      On information and belief, Alexion admits that PDL is a biopharmaceutical company headquartered in Fremont, California. Alexion is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 1 of PDL's Complaint.

2.      Alexion admits that it has obtained FDA approval for its humanized antibody product, Soliris$^{TM}$ for the treatment of paroxysmal nocturnal hemoglobinuria ("PNH"), that it has launched Soliris$^{TM}$, and that it does not have a license with PDL. Except as expressly admitted herein, Alexion denies all averments of Paragraph 2 of PDL's Complaint.

3.      Alexion admits that its Form 10-K submitted to the United States Securities and Exchange Commission for the year ending December 31, 2006 contains statements about certain third party patents, which statements speak for themselves. Alexion also admits that Soliris$^{TM}$ for the treatment of PNH is projected by some to become a blockbuster drug. Except as expressly admitted herein, Alexion denies all averments of Paragraph 3 of PDL's Complaint.

4.      Alexion denies all averments of Paragraph 4 of PDL's Complaint.

5.      Alexion denies that PDL is entitled to injunctive relief. Alexion further denies all averments of Paragraph 5 of PDL's Complaint.

6.      Upon information and belief, Alexion admits that PDL is a corporation organized and existing under the laws of Delaware, with its principal place of business in Fremont, California.  Alexion is without knowledge or information sufficient to form a belief as to the nature, scope or parties to any alleged PDL licenses.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 6 of PDL's Complaint.

7.      Alexion admits the averments of Paragraph 7 of PDL's Complaint.

8.      Alexion neither admits nor denies the averments of Paragraph 8 of PDL's Complaint because they are legal conclusions to which no response by Alexion is required.  To the extent that any response by Alexion is required, Alexion does not contest subject matter jurisdiction in this action.

9.      Alexion admits that it is incorporated in the State of Delaware and that it conducts business in the State of Delaware.  Alexion does not contest personal jurisdiction in this action.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 9 of PDL's Complaint.

10.     Alexion neither admits nor denies the averments of Paragraph 10 of PDL's Complaint because they are legal conclusions to which no response by Alexion is required.  To the extent that any response by Alexion is required, Alexion does not contest venue in this action.

11.     Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

12.     Alexion admits that U.S. Patent No. 5,693,761 ("the '761 patent"), attached as Exhibit A to PDL's Complaint, is entitled "Polynucleotides Encoding Improved Humanized Immunoglobulins," names on its face PDL as assignee, and purports to have been issued on December 2, 1997.  Alexion denies that the '761 patent was duly and legally issued.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 12 of PDL's Complaint.

13.     Alexion denies all averments of Paragraph 13 of PDL's Complaint.

14.     Alexion admits that it was aware of the '761 patent prior to the filing of PDL's

Complaint. Except as expressly admitted herein, Alexion denies all averments of Paragraph 14 of PDL's Complaint.

15. Alexion denies all averments of Paragraph 15 of PDL's Complaint.

16. Alexion denies all averments of Paragraph 16 of PDL's Complaint.

17. Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

18. Alexion admits that U.S. Patent No. 5,693,762 ("the '762 patent"), attached as Exhibit B to PDL's Complaint, is entitled "Humanized Immunoglobulins," names on its face PDL as assignee, and purports to have been issued on December 2, 1997. Alexion denies that the '762 patent was duly and legally issued. Except as expressly admitted herein, Alexion denies all averments of Paragraph 18 of PDL's Complaint.

19. Alexion denies all averments of Paragraph 19 of PDL's Complaint.

20. Alexion admits that it was aware of the '762 patent prior to the filing of PDL's Complaint. Except as expressly admitted herein, Alexion denies all averments of Paragraph 20 of PDL's Complaint.

21. Alexion denies all averments of Paragraph 21 of PDL's Complaint.

22. Alexion denies all averments of Paragraph 22 of PDL's Complaint.

23. Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

24. Alexion admits that U.S. Patent No. 6,180,370 B1 ("the '370 patent"), attached as Exhibit C to PDL's Complaint, is entitled "Humanized Immunoglobulins and Methods of Making the Same," names on its face PDL as assignee, and purports to have been issued on January 30, 2001. Alexion denies that the '370 patent was duly and legally issued. Except as expressly admitted herein, Alexion denies all averments of Paragraph 24 of PDL's Complaint.

25. Alexion denies all averments of Paragraph 25 of PDL's Complaint.

26. Alexion admits that it was aware of the '370 patent prior to the filing of PDL's Complaint. Except as expressly admitted herein, Alexion denies all averments of Paragraph 26

3

of PDL's Complaint.

27.    Alexion denies all averments of Paragraph 27 of PDL's Complaint.

28.    Alexion denies all averments of Paragraph 28 of PDL's Complaint.

### Response To PDL's Prayer for Relief

29.    Alexion denies that PDL is entitled to any relief whatsoever from Alexion or the Court, either as prayed for in its Complaint or otherwise.

30.    Alexion further denies each and every averment contained in PDL's Complaint that was not specifically admitted, denied, or otherwise responded to in its Answer and Counterclaims.

### DEFENSES

Alexion asserts the defenses set forth below, undertaking the burden of proof on such defenses only to the extent required by law, and specifically reserves the right to amend its Answer and Counterclaims with additional defenses and/or counterclaims:

### Noninfringement

31.    Alexion has not infringed any claim of the '761 patent, the '762 patent or the '370 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

32.    To the extent that PDL asserts infringement of any claim of the '761 patent, the '762 patent or the '370 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

### Patent Invalidity

33.    Each claim of the '761 patent, the '762 patent and the '370 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103

and/or 112.

## Unenforceability Due To Inequitable Conduct

34.     Upon information and belief, each of the '761, '762, and '370 patents are unenforceable due to inequitable conduct in their procurement.

35.     All three patents, the '761 patent, the '762 patent, and the '370 patent, stem from the same parent application, U.S. Application No. 07/634,278 ("the '278 application"). Upon information and belief, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in inequitable conduct during the prosecution of the '278 parent application before the United States Patent and Trademark Office ("USPTO"). Because the inequitable conduct had occurred during the prosecution of the '278 parent application, it materially affected and tainted the prosecution of the '761 patent, the '762 patent, and the '370 patent, all of which stem from that application. *See, e.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804 (Fed. Cir. 1990).

36.     One or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '761 patent before the USPTO, rendering '761 patent completely and permanently unenforceable, including the inequitable conduct as follows:

a)      Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information. The false and misleading information included, but was not limited to: (1) misleading statements regarding the appropriate definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al."). For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by

Kabat et al. . . . . .  More recently Chothia et al. have given an alternate definition of the

hypervariable regions or CDRs." (¶ 5)  Queen further stated, for instance, that "although [amino

acids at positions 27 and 30] are part of the Kabat framework (i.e., not in a Kabat CDR), these

amino acids are in CDR H1 as defined by Chothia . . . .  Hence, the final humanized antibody of

Riechmann et al. contains the Kabat CDRs and the Chothia CDR H1 from the mouse

antibody . . . .  The double mutation was simply to transfer the whole Chothia CDR H1 to the

humanized antibody . . . .  The authors had evidently concluded that they had simply used the

wrong definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody,

and they corrected the error by also transferring Chothia CDR H1.  The extra amino acids 27,

and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore part of the

Kabat framework."  (¶¶ 9, 25-26)  This false and misleading material declaration was

deliberately used to overcome rejections over the prior art, which disclosed back mutations

outside the CDR as that term was used in the original patent application, and was submitted to

the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

      b)     Upon information and belief, during prosecution of the '278 application,

Applicants submitted Amendments and Responses that included false and misleading material

information, including, without limitation, those dated November 12, 1992 and October 4, 1993.

The false and misleading information included, but was not limited to: (1) misleading statements

regarding the appropriate definition of complementarity determining regions ("CDR") as set

forth in the original patent specification; and (2) misleading statements regarding the disclosures

of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988)

("Riechmann et al.").  For example, in October 4, 1993 Amendment, at *11, the applicants

stated: "The authors [Riechmann et al.] made changes only within the hypervariable loop

(Chothia CDR H1), and did not modify any framework residues outside the loop . . . indicating that Riechmann et al. does not teach that framework residues outside the CDR loop are important for maintaining binding affinity . . . .  Overall, Riechmann et al. teaches that it is only important to change residues within the CDR loop and does not suggest alternatives."  This false and misleading material representation was deliberately used to overcome rejections over the prior art and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

        c)     The false and material statements submitted during prosecution of the '278 patent application, the parent of the '761 patent, is part of the '761 file history and taints the prosecution of the '761 patent.  Moreover, during the prosecution of the '761 patent, Applicants specifically resubmitted the November 4, 1992 Queen Declaration in support of the patentability of the claims of the '761 patent.

        d)     Upon information and belief, during prosecution of the '761 patent, PDL counsel filed a Petition To Make Special under 37 C.F.R. § 1.102(d) ("Petition To Make Special") with the USPTO on January 16, 1992 that contained false and misleading information. For example, this Petition to Make Special was filed together with a Detailed Discussion of Most Closely Related References ("Detailed Discussion"), which purported to distinguish PDL's claims by mischaracterizing prior art references, including but not limited to, Riechmann et al.; Winter, European Patent No. 0 239 400 (filed March 23, 1987) ("Winter"); and Verhoeyen et al., *Reshaping Human Antibodies: Grafting an Antilysozyme Activity*, 239 Science 1534 (1988) ("Verhoeyen et al.").  For example, in the Detailed Discussion, at *6-*7, *11, the applicants stated that "Riechmann et al. . . . did not modify or replace any framework residues outside of the [CDR] loop . . . .  Riechmann taught that it is only important to change residues within the CDR

loop . . . none of the cited references taught or suggested the presently claimed polynucleotides which encode humanized immunoglobulins."  This false and misleading Petition To Make Special was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO into improperly issuing the '761 patent.

37.     One or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '762 patent before the United States Patent and Trademark office ("USPTO"), rendering the '762 patent completely and permanently unenforceable, including the inequitable conduct as follows:

a)     Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information.  The false and misleading information included, but was not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by Kabat et al. . . . .  More recently Chothia et al. have given an alternate definition of the hypervariable regions or CDRs." (¶ 5)  Queen further stated, for instance, that "although [amino acids at positions 27 and 30] are part of the Kabat framework (i.e., not in a Kabat CDR), these amino acids are in CDR H1 as defined by Chothia . . . .  Hence, the final humanized antibody of Riechmann et al. contains the Kabat CDRs and the Chothia CDR H1 from the mouse antibody . . . .  The double mutation was simply to transfer the whole Chothia CDR H1 to the humanized antibody . . . .  The authors had evidently concluded that they had simply used the

wrong definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody, and they corrected the error by also transferring Chothia CDR H1.  The extra amino acids 27, and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore part of the Kabat framework." (¶¶ 9, 25-26)  This false and misleading material declaration was deliberately used to overcome rejections over the prior art, which disclosed back mutations outside the CDR as that term was used in the original patent application, and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

b)      Upon information and belief, during prosecution of the '278 application, Applicants submitted Amendments and Responses that included false and misleading material information, including, without limitation, those dated November 12, 1992 and October 4, 1993. The false and misleading information includes, but is not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in October 4, 1993 Amendment, at *11, the applicants stated: "The authors [Riechmann et al.] made changes only within the hypervariable loop (Chothia CDR H1), and did not modify any framework residues outside the loop . . . indicating that Riechmann et al. does not teach that framework residues outside the CDR loop are important for maintaining binding affinity . . . .  Overall, Riechmann et al. teaches that it is only important to change residues within the CDR loop and does not suggest alternatives."  This false and misleading material representation was deliberately used to overcome rejections over the prior art and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

c)    The false and material statements submitted during prosecution of the '278 patent application, the parent of the '762 patent, is part of the '762 file history and taints the prosecution of the '762 patent.  Moreover, during the prosecution of the '762 patent, Applicants specifically resubmitted the November 4, 1992 Queen Declaration in support of the patentability of the claims of the '762 patent.

d)    Upon information and belief, during prosecution of '762 patent, PDL counsel filed a Petition To Make Special under 37 C.F.R. § 1.102(d) ("Petition To Make Special") with the USPTO on January 16, 1992 that contained false and misleading information. For example, this Petition to Make Special was filed together with a Detailed Discussion of Most Closely Related References ("Detailed Discussion"), which purported to distinguish PDL's claims by mischaracterizing prior art references, including but not limited to, Riechmann et al., Winter, and Verhoeyen et al.  For example, in the Detailed Discussion, at *6-7, 11, the applicants stated that "Riechmann et al . . . did not modify or replace any framework residues outside of the [CDR] loop . . . .  Riechmann taught that it is only important to change residues within the CDR loop . . . none of the cited references taught or suggested the presently claimed polynucleotides which encode humanized immunoglobulins."  This false and misleading Petition To Make Special was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO into improperly issuing the '762 patent.

38.    Upon information and belief, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '370 patent before the United States Patent and Trademark office ("USPTO"), rendering '370 patent completely and permanently unenforceable, including the inequitable conduct as follows:

a)      Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information.  The false and misleading information included, but was not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by Kabat et al. . . . .  More recently Chothia et al. have given an alternate definition of the hypervariable regions or CDRs." (¶ 5)  Queen further stated, for instance, that "although [amino acids at positions 27 and 30] are part of the Kabat framework (i.e., not in a Kabat CDR), these amino acids are in CDR H1 as defined by Chothia . . . .  Hence, the final humanized antibody of Riechmann et al. contains the Kabat CDRs and the Chothia CDR H1 from the mouse antibody . . . .  The double mutation was simply to transfer the whole Chothia CDR H1 to the humanized antibody . . . .  The authors had evidently concluded that they had simply used the wrong definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody, and they corrected the error by also transferring Chothia CDR H1.  The extra amino acids 27, and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore part of the Kabat framework." (¶¶ 9, 25-26)  This false and misleading material declaration was deliberately used to overcome rejections over the prior art, which disclosed back mutations outside the CDR as that term was used in the original patent application, and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

b)      Upon information and belief, during prosecution of the '278 application, Applicants submitted Amendments and Responses that included false and misleading material information, including, without limitation, those dated November 12, 1992 and October 4, 1993. The false and misleading information includes, but is not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in October 4, 1993 Amendment, at *11, the applicants stated: "The authors [Riechmann et al.] made changes only within the hypervariable loop (Chothia CDR H1), and did not modify any framework residues outside the loop . . . indicating that Riechmann et al. does not teach that framework residues outside the CDR loop are important for maintaining binding affinity . . . .  Overall, Riechmann et al. teaches that it is only important to change residues within the CDR loop and does not suggest alternatives."  This false and misleading material representation was deliberately used to overcome rejections over the prior art and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

c)      The false and material statements submitted during prosecution of the '278 patent application, the parent of the '370 patent, is part of the '370 file history and taints the prosecution of the '370 patent.

d)      Upon information and belief, during prosecution of the '370 patent, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 made false and misleading statements material to the USPTO concerning the prior art references of Verhoeyen et al. and Winter.  The false and misleading material statements included, but were not limited to, sequence identity calculations and the availability in the prior

art of the donor sequence used in these references.  For example, PDL through its attorneys stated the following to the USPTO in response to a November 18, 1997 Official Action during the prosecution of the '370 patent:

> Recently, it has been brought to Applicants' attention during the course of prosecution of the corresponding application in Japan that the framework of the humanized heavy chain described in Verhoeyen et al. (1988) *Science* 239:1534-1536, (which is of record in the present application) may be 65.5% identical to the donor heavy chain variable region.  This was not observed previously because the sequence of the donor antibody was not presented in Verhoeyen et al., and apparently was not published at the time, nor even at the priority dates of the present application.

That statement was not true.  The complete murine D1.3 sequence was shown in Figure 7 of Winter, which was published in 1987, more than one year before the earliest potential priority date of PDL's application.  The mischaracterization of these prior art references was knowing, willful, and done with the intent to deceive the USPTO into improperly issuing the '370 patent.

## COUNTERCLAIMS

Defendant Alexion Pharmaceuticals, Inc. ("Alexion"), in Counterclaim against Plaintiff PDL Biopharma, Inc. ("PDL"), hereby alleges and avers as follows:

1.  This is a declaratory judgment counterclaim for a declaration of noninfringement and invalidity of all of the asserted claims of U.S. Patent No. 5,693,761 ("the '761 patent"), U.S. Patent No. 5,693,762 ("the '762 patent"), and U.S. Patent No. 6,180,370 B1 ("the '370 patent"). This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

2.  Counterclaim Plaintiff Alexion is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 352 Knotter Drive, Cheshire, Connecticut 06410.

3.  On information and belief, Counterclaim Defendant PDL is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 34801

Campus Drive, Fremont, California 94555.

4.      This Court has subject matter jurisdiction over this Counterclaim pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. §§ 1331 and 1338(a).  As demonstrated by, *inter alia*, the Complaint filed by PDL in this action and Alexion's Answer and Counterclaims to that Complaint, an actual and justiciable controversy exists between PDL and Alexion regarding the noninfringement and invalidity of the '761, '762 and '370 patents.

5.      Counterclaim Defendant PDL is subject to personal jurisdiction in this Court, as evidenced by, *inter alia*, its consent to jurisdiction in this Court and its existence as a corporation incorporated under the laws of the State of Delaware.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, PDL has consented to venue in this judicial district, PDL resides in this district and PDL is subject to personal jurisdiction in this district.

7.      On March 16, 2007, PDL initiated a civil action by filing a Complaint against Alexion in this Court alleging that Alexion has infringed the '761, '762 and '370 patents.

**COUNT I**

**Declaratory Judgment Counterclaim for a
Declaration of Patent Noninfringement and Invalidity**

8.      Alexion incorporates and realleges Paragraphs 1-7 as if set forth herein.

9.      PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '761 patent.

10.     Alexion has not infringed any claim of the '761 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

11.     To the extent that PDL asserts infringement of any claim of the '761 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute

14

infringement under 35 U.S.C. § 271(e)(1).

12.     Each claim of the '761 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

13.     A judicial declaration of noninfringement of the '761 patent is necessary and appropriate to resolve this controversy.

14.     A judicial declaration of invalidity of the '761 patent is necessary and appropriate to resolve this controversy.

## COUNT II

### Declaratory Judgment Counterclaim for a
### Declaration of Patent Noninfringement and Invalidity

15.     Alexion incorporates and realleges Paragraphs 1-14 as if set forth herein.

16.     PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '762 patent.

17.     Alexion has not infringed any claim of the '762 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

18.     To the extent that PDL asserts infringement of any claim of the '762 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

19.     Each claim of the '762 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

20.     A judicial declaration of noninfringement of the '762 patent is necessary and appropriate to resolve this controversy.

21.     A judicial declaration of invalidity of the '762 patent is necessary and appropriate to resolve this controversy.

## COUNT III

### Declaratory Judgment Counterclaim for a
### Declaration of Patent Noninfringement and Invalidity

22.     Alexion incorporates and realleges Paragraphs 1-21 as if set forth herein.

23.     PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '370 patent.

24.     Alexion has not infringed any claim of the '370 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

25.     To the extent that PDL asserts infringement of any claim of the '370 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

26.     Each claim of the '370 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

27.     A judicial declaration of noninfringement of the '370 patent is necessary and appropriate to resolve this controversy.

28.     A judicial declaration of invalidity of the '370 patent is necessary and appropriate to resolve this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Alexion prays for entry of judgment:

A.     Dismissing PDL's Complaint, and all claims therein, with prejudice;

16

B.     Declaring that Alexion has not infringed any claim of the '761 patent;

C.     Declaring that Alexion has not infringed any claim of the '762 patent;

D.     Declaring that Alexion has not infringed any claim of the '370 patent;

E.     Declaring that each claim of the '761 patent is invalid;

F.     Declaring that each claim of the '762 patent is invalid;

G.     Declaring that each claim of the '370 patent is invalid;

H.     Holding that the '761 patent is unenforceable due to PDL's inequitable conduct in procuring it;

I.     Holding that the '762 patent is unenforceable due to PDL's inequitable conduct in procuring it;

J.     Holding that the '370 patent is unenforceable due to PDL's inequitable conduct in procuring it;

K.     Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any further action for infringement of the '761 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion's Soliris$^{TM}$;

L.     Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any further action for infringement of the '762 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion's Soliris$^{TM}$;

M.     Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any further action for

infringement of the '370 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion's Soliris$^{TM}$;

      N.     Declaring this case to be exceptional within the meaning of 35 U.S.C. § 285 and awarding Alexion the attorney fees, costs, and expenses that it incurs in connection with any of the issues raised by PDL's Complaint and/or Alexion's Answer and Counterclaims to that Complaint;

      O.     Awarding Alexion such other and further relief as the Court deems just and proper.

DATED:  December 7, 2007

YOUNG CONAWAY STARGATT & TAYLOR LLP

_Andrew A. Lundgren_

Josy W. Ingersoll (I.D. #1088)
Andrew Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

*Attorneys for Alexion Pharmaceuticals, Inc.*

*Of Counsel*:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PDL BIOPHARMA, INC.,

     Plaintiff,

v.                                 C.A. No. 07-CV-156 -***

ALEXION PHARMACEUTICALS, INC.,

     Defendant.

## DEFENDANT ALEXION PHARMACEUTICALS, INC.<u>.</u><sup>'</sup>S AMENDED ANSWER AND COUNTERCLAIMS

Defendant Alexion Pharmaceuticals, Inc. (<u>"</u>Alexion<u>"</u>), for its **Amended** Answer to the Complaint of Plaintiff PDL Biopharma, Inc. (<u>"</u>PDL<u>"</u>), hereby states as follows:

1.     On information and belief, Alexion admits that PDL is a biopharmaceutical company headquartered in Fremont, California. Alexion is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 1 of PDL's Complaint.

2.     Alexion admits that it has obtained FDA approval for its humanized antibody product, Soliris$^{TM}$ for the treatment of paroxysmal nocturnal hemoglobinuria (<u>"</u>PNH<u>"</u>), that it has launched Soliris$^{TM}$, and that it does not have a license with PDL. Except as expressly admitted herein, Alexion denies all averments of Paragraph 2 of PDL's Complaint.

3.     Alexion admits that its Form 10-K submitted to the United States Securities and Exchange Commission for the year ending December 31, 2006 contains statements about certain third party patents, which statements speak for themselves. Alexion also admits that Soliris$^{TM}$ for the treatment of PNH is projected by some to become a blockbuster drug. Except as expressly admitted herein, Alexion denies all averments of Paragraph 3 of PDL's Complaint.

4.     Alexion denies all averments of Paragraph 4 of PDL's Complaint.

5.     Alexion denies that PDL is entitled to injunctive relief. Alexion further denies all averments of Paragraph 5 of PDL's Complaint.

6.    Upon information and belief, Alexion admits that PDL is a corporation organized and existing under the laws of Delaware, with its principal place of business in Fremont, California.  Alexion is without knowledge or information sufficient to form a belief as to the nature, scope or parties to any alleged PDL licenses.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 6 of PDL's Complaint.

7.    Alexion admits the averments of Paragraph 7 of PDL's Complaint.

8.    Alexion neither admits nor denies the averments of Paragraph 8 of PDL's Complaint because they are legal conclusions to which no response by Alexion is required.  To the extent that any response by Alexion is required, Alexion does not contest subject matter jurisdiction in this action.

9.    Alexion admits that it is incorporated in the State of Delaware and that it conducts business in the State of Delaware.  Alexion does not contest personal jurisdiction in this action. Except as expressly admitted herein, Alexion denies all averments of Paragraph 9 of PDL's Complaint.

10.    Alexion neither admits nor denies the averments of Paragraph 10 of PDL's Complaint because they are legal conclusions to which no response by Alexion is required.  To the extent that any response by Alexion is required, Alexion does not contest venue in this action.

11.    Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

12.    Alexion admits that U.S. Patent No. 5,693,761 ("the '761 patent"), attached as Exhibit A to PDL's Complaint,  is entitled "Polynucleotides Encoding Improved Humanized Immunoglobulins," names on its face PDL as assignee, and purports to have been issued on December 2, 1997.  Alexion denies that the '761 patent was duly and legally issued.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 12 of PDL's Complaint.

13.    Alexion denies all averments of Paragraph 13 of PDL's Complaint.

14.    Alexion admits that it was aware of the '761 patent prior to the filing of PDL's

2

Complaint.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 14 of PDL's Complaint.

15.    Alexion denies all averments of Paragraph 15 of PDL's Complaint.

16.    Alexion denies all averments of Paragraph 16 of PDL's Complaint.

17.    Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

18.    Alexion admits that U.S. Patent No. 5,693,762 ("the '762 patent"), attached as Exhibit B to PDL's Complaint, is entitled "Humanized Immunoglobulins," names on its face PDL as assignee, and purports to have been issued on December 2, 1997.  Alexion denies that the '762 patent was duly and legally issued.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 18 of PDL's Complaint.

19.    Alexion denies all averments of Paragraph 19 of PDL's Complaint.

20.    Alexion admits that it was aware of the '762 patent prior to the filing of PDL's Complaint.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 20 of PDL's Complaint.

21.    Alexion denies all averments of Paragraph 21 of PDL's Complaint.

22.    Alexion denies all averments of Paragraph 22 of PDL's Complaint.

23.    Alexion repeats and incorporates by reference its answers to Paragraphs 1 through 10 above as if fully set forth herein.

24.    Alexion admits that U.S. Patent No. 6,180,370 B1 ("the '370 patent"), attached as Exhibit C to PDL's Complaint, is entitled "Humanized Immunoglobulins and Methods of Making the Same," names on its face PDL as assignee, and purports to have been issued on January 30, 2001.  Alexion denies that the '370 patent was duly and legally issued.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 24 of PDL's Complaint.

25.    Alexion denies all averments of Paragraph 25 of PDL's Complaint.

26.    Alexion admits that it was aware of the '370 patent prior to the filing of PDL's

Complaint.  Except as expressly admitted herein, Alexion denies all averments of Paragraph 26 of PDL's Complaint.

27.    Alexion denies all averments of Paragraph 27 of PDL's Complaint.

28.    Alexion denies all averments of Paragraph 28 of PDL's Complaint.

### Response To PDL's Prayer for Relief

29.    Alexion denies that PDL is entitled to any relief whatsoever from Alexion or the Court, either as prayed for in its Complaint or otherwise.

30.    Alexion further denies each and every averment contained in PDL's Complaint that was not specifically admitted, denied, or otherwise responded to in its Answer and Counterclaims.

### DEFENSES

Alexion asserts the defenses set forth below, undertaking the burden of proof on such defenses only to the extent required by law, and specifically reserves the right to amend its Answer and Counterclaims with additional defenses and/or counterclaims:

### Noninfringement

31.    Alexion has not infringed any claim of the '761 patent, the '762 patent or the '370 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

32.    To the extent that PDL asserts infringement of any claim of the '761 patent, the '762 patent or the '370 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

### Patent Invalidity

33.    Each claim of the '761 patent, the '762 patent and the '370 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements

specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

<u>**Unenforceability Due To Inequitable Conduct**</u>

<u>34.</u>     <u>Upon information and belief, each of the '761, '762, and '370 patents are unenforceable due to inequitable conduct in their procurement.</u>

<u>35.</u>     <u>All three patents, the '761 patent, the '762 patent, and the '370 patent, stem from the same parent application, U.S. Application No. 07/634,278 ("the '278 application"). Upon information and belief, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in inequitable conduct during the prosecution of the '278 parent application before the United States Patent and Trademark Office ("USPTO"). Because the inequitable conduct had occurred during the prosecution of the '278 parent application, it materially affected and tainted the prosecution of the '761 patent, the '762 patent, and the '370 patent, all of which stem from that application. *See, e.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804 (Fed. Cir. 1990).</u>

<u>36.</u>     <u>One or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '761 patent before the USPTO, rendering '761 patent completely and permanently unenforceable, including the inequitable conduct as follows:</u>

<u>a)</u>     <u>Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information. The false and misleading information included, but was not limited to: (1) misleading statements regarding the appropriate definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy,* 332 Nature 323</u>

(1988) ("Riechmann et al."). For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by Kabat et al. . . . . . More recently Chothia et al. have given an alternate definition of the hypervariable regions or CDRs." (¶ 5) Queen further stated, for instance, that "although [amino acids at positions 27 and 30] are part of the Kabat framework (i.e., not in a Kabat CDR), these amino acids are in CDR H1 as defined by Chothia . . . . Hence, the final humanized antibody of Riechmann et al. contains the Kabat CDRs and the Chothia CDR H1 from the mouse antibody . . . . The double mutation was simply to transfer the whole Chothia CDR H1 to the humanized antibody . . . . The authors had evidently concluded that they had simply used the wrong definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody, and they corrected the error by also transferring Chothia CDR H1. The extra amino acids 27, and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore part of the Kabat framework." (¶¶ 9, 25-26) This false and misleading material declaration was deliberately used to overcome rejections over the prior art, which disclosed back mutations outside the CDR as that term was used in the original patent application, and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

b) Upon information and belief, during prosecution of the '278 application, Applicants submitted Amendments and Responses that included false and misleading material information, including, without limitation, those dated November 12, 1992 and October 4, 1993. The false and misleading information included, but was not limited to: (1) misleading statements regarding the appropriate definition of complementarity determining regions ("CDR") as set forth in the original patent

specification; and (2) misleading statements regarding the disclosures of Riechmann et al.,

*Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").

For example, in October 4, 1993 Amendment, at *11, the applicants stated: "The authors

[Riechmann et al.] made changes only within the hypervariable loop (Chothia CDR H1),

and did not modify any framework residues outside the loop . . . indicating that Riechmann

et al. does not teach that framework residues outside the CDR loop are important for

maintaining binding affinity . . . .  Overall, Riechmann et al. teaches that it is only

important to change residues within the CDR loop and does not suggest alternatives."  This

false and misleading material representation was deliberately used to overcome rejections

over the prior art and was submitted to the USPTO knowingly, willfully, and with the

intent to deceive the USPTO.

        c)     The false and material statements submitted during prosecution of the

'278 patent application, the parent of the '761 patent, is part of the '761 file history and

taints the prosecution of the '761 patent.  Moreover, during the prosecution of the '761

patent, Applicants specifically resubmitted the November 4, 1992 Queen Declaration in

support of the patentability of the claims of the '761 patent.

        d)     Upon information and belief, during prosecution of the '761 patent,

PDL counsel filed a Petition To Make Special under 37 C.F.R. § 1.102(d) ("Petition To

Make Special") with the USPTO on January 16, 1992 that contained false and misleading

information.  For example, this Petition to Make Special was filed together with a Detailed

Discussion of Most Closely Related References ("Detailed Discussion"), which purported to

distinguish PDL's claims by mischaracterizing prior art references, including but not

limited to, Riechmann et al.; Winter, European Patent No. 0 239 400 (filed March 23, 1987)

("Winter"); and Verhoeven et al., *Reshaping Human Antibodies: Grafting an Antilysozyme Activity*, 239 Science 1534 (1988) ("Verhoeven et al."). For example, in the Detailed Discussion, at *6-*7, *11, the applicants stated that "Riechmann et al. . . . did not modify or replace any framework residues outside of the [CDR] loop . . . . Riechmann taught that it is only important to change residues within the CDR loop . . . none of the cited references taught or suggested the presently claimed polynucleotides which encode humanized immunoglobulins." This false and misleading Petition To Make Special was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO into improperly issuing the '761 patent.

37. One or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '762 patent before the United States Patent and Trademark office ("USPTO"), rendering the '762 patent completely and permanently unenforceable, including the inequitable conduct as follows:

a) Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information. The false and misleading information included, but was not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al."). For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by Kabat et al. . . . . More recently Chothia et al. have given an alternate definition of the hypervariable regions or CDRs." (¶

5)  Queen further stated, for instance, that "although [amino acids at positions 27 and 30]

are part of the Kabat framework (i.e., not in a Kabat CDR), these amino acids are in CDR

H1 as defined by Chothia . . . .  Hence, the final humanized antibody of Riechmann et al.

contains the Kabat CDRs and the Chothia CDR H1 from the mouse antibody . . . .  The

double mutation was simply to transfer the whole Chothia CDR H1 to the humanized

antibody . . . .  The authors had evidently concluded that they had simply used the wrong

definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody,

and they corrected the error by also transferring Chothia CDR H1.  The extra amino acids

27, and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore

part of the Kabat framework." (¶¶ 9, 25-26)  This false and misleading material

declaration was deliberately used to overcome rejections over the prior art, which disclosed

back mutations outside the CDR as that term was used in the original patent application,

and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the

USPTO.

        b)     Upon information and belief, during prosecution of the '278

application, Applicants submitted Amendments and Responses that included false and

misleading material information, including, without limitation, those dated November 12,

1992 and October 4, 1993.  The false and misleading information includes, but is not

limited to: (1) misleading statements regarding the definition of complementarity

determining regions ("CDR") as set forth in the original patent specification; and (2)

misleading statements regarding Riechmann et al., *Reshaping Human Antibodies for

Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in October 4, 1993

Amendment, at *11, the applicants stated: "The authors [Riechmann et al.] made changes

9

only within the hypervariable loop (Chothia CDR H1), and did not modify any framework residues outside the loop . . . indicating that Riechmann et al. does not teach that framework residues outside the CDR loop are important for maintaining binding affinity . . . . Overall, Riechmann et al. teaches that it is only important to change residues within the CDR loop and does not suggest alternatives." This false and misleading material representation was deliberately used to overcome rejections over the prior art and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

      c)     The false and material statements submitted during prosecution of the '278 patent application, the parent of the '762 patent, is part of the '762 file history and taints the prosecution of the '762 patent. Moreover, during the prosecution of the '762 patent, Applicants specifically resubmitted the November 4, 1992 Queen Declaration in support of the patentability of the claims of the '762 patent.

      d)     Upon information and belief, during prosecution of '762 patent, PDL counsel filed a Petition To Make Special under 37 C.F.R. § 1.102(d) ("Petition To Make Special") with the USPTO on January 16, 1992 that contained false and misleading information. For example, this Petition to Make Special was filed together with a Detailed Discussion of Most Closely Related References ("Detailed Discussion"), which purported to distinguish PDL's claims by mischaracterizing prior art references, including but not limited to, Riechmann et al., Winter, and Verhoeyen et al. For example, in the Detailed Discussion, at *6-7, 11, the applicants stated that "Riechmann et al . . . did not modify or replace any framework residues outside of the [CDR] loop . . . . Riechmann taught that it is only important to change residues within the CDR loop . . . none of the cited references taught or suggested the presently claimed polynucleotides which encode humanized

immunoglobulins."  This false and misleading Petition To Make Special was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO into improperly issuing the '762 patent.

38.    Upon information and belief, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 engaged in a pattern of inequitable conduct during the prosecution of the '370 patent before the United States Patent and Trademark office ("USPTO"), rendering '370 patent completely and permanently unenforceable, including the inequitable conduct as follows:

a)    Upon information and belief, during prosecution of the '278 application, co-inventor Dr. Cary L. Queen, filed a declaration with the USPTO dated November 4, 1992 that included false and misleading material information.  The false and misleading information included, but was not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding the disclosures of Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in his declaration, Queen stated that "The hypervariable regions or CDRs were originally defined by Kabat et al. . . . .  More recently Chothia et al. have given an alternate definition of the hypervariable regions or CDRs." (¶ 5)  Queen further stated, for instance, that "although [amino acids at positions 27 and 30] are part of the Kabat framework (i.e., not in a Kabat CDR), these amino acids are in CDR H1 as defined by Chothia . . . .  Hence, the final humanized antibody of Riechmann et al. contains the Kabat CDRs and the Chothia CDR H1 from the mouse antibody . . . .  The double mutation was simply to transfer the whole Chothia CDR H1 to the humanized antibody . . . .  The authors had evidently concluded that they had simply used the wrong

11

definition of CDR H1 (Kabat rather than Chothia) in designing the humanized antibody, and they corrected the error by also transferring Chothia CDR H1.  The extra amino acids 27, and 30, while part of Chothia CDR H1, are not in Kabat CDR H1, and are therefore part of the Kabat framework." (¶¶ 9, 25-26)  This false and misleading material declaration was deliberately used to overcome rejections over the prior art, which disclosed back mutations outside the CDR as that term was used in the original patent application, and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

        b)    Upon information and belief, during prosecution of the '278 application, Applicants submitted Amendments and Responses that included false and misleading material information, including, without limitation, those dated November 12, 1992 and October 4, 1993. The false and misleading information includes, but is not limited to: (1) misleading statements regarding the definition of complementarity determining regions ("CDR") as set forth in the original patent specification; and (2) misleading statements regarding Riechmann et al., *Reshaping Human Antibodies for Therapy*, 332 Nature 323 (1988) ("Riechmann et al.").  For example, in October 4, 1993 Amendment, at *11, the applicants stated: "The authors [Riechmann et al.] made changes only within the hypervariable loop (Chothia CDR H1), and did not modify any framework residues outside the loop . . . indicating that Riechmann et al. does not teach that framework residues outside the CDR loop are important for maintaining binding affinity . . . . Overall, Riechmann et al. teaches that it is only important to change residues within the CDR loop and does not suggest alternatives."  This false and misleading material representation was

deliberately used to overcome rejections over the prior art and was submitted to the USPTO knowingly, willfully, and with the intent to deceive the USPTO.

   c)  The false and material statements submitted during prosecution of the '278 patent application, the parent of the '370 patent, is part of the '370 file history and taints the prosecution of the '370 patent.

   d)  Upon information and belief, during prosecution of the '370 patent, one or more of the named inventors and/or other individuals subject to the requirements of 37 C.F.R. § 1.56 made false and misleading statements material to the USPTO concerning the prior art references of Verhoeyen et al. and Winter. The false and misleading material statements included, but were not limited to, sequence identity calculations and the availability in the prior art of the donor sequence used in these references. For example, PDL through its attorneys stated the following to the USPTO in response to a November 18, 1997 Official Action during the prosecution of the '370 patent:

> Recently, it has been brought to Applicants' attention during the course of prosecution of the corresponding application in Japan that the framework of the humanized heavy chain described in Verhoeyen et al. (1988) *Science* 239:1534-1536, (which is of record in the present application) may be 65.5% identical to the donor heavy chain variable region. This was not observed previously because the sequence of the donor antibody was not presented in Verhoeyen et al., and apparently was not published at the time, nor even at the priority dates of the present application.

That statement was not true. The complete murine D1.3 sequence was shown in Figure 7 of Winter, which was published in 1987, more than one year before the earliest potential priority date of PDL's application. The mischaracterization of these prior art references was knowing, willful, and done with the intent to deceive the USPTO into improperly issuing the '370 patent.

## COUNTERCLAIMS

Defendant Alexion Pharmaceuticals, Inc. ("Alexion"), in Counterclaim against Plaintiff PDL Biopharma, Inc. ("PDL"), hereby alleges and avers as follows:

1.  This is a declaratory judgment counterclaim for a declaration of noninfringement and invalidity of all of the asserted claims of U.S. Patent No. 5,693,761 ("the '761 patent"), U.S. Patent No. 5,693,762 ("the '762 patent"), and U.S. Patent No. 6,180,370 B1 ("the '370 patent"). This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

2.  Counterclaim Plaintiff Alexion is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 352 Knotter Drive, Cheshire, Connecticut 06410.

3.  On information and belief, Counterclaim Defendant PDL is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 34801 Campus Drive, Fremont, California 94555.

4.  This Court has subject matter jurisdiction over this Counterclaim pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. §§ 1331 and 1338(a).  As demonstrated by, *inter alia*, the Complaint filed by PDL in this action and Alexion's Answer and Counterclaims to that Complaint, an actual and justiciable controversy exists between PDL and Alexion regarding the noninfringement and invalidity of the '761, '762 and '370 patents.

5.  Counterclaim Defendant PDL is subject to personal jurisdiction in this Court, as evidenced by, *inter alia*, its consent to jurisdiction in this Court and its existence as a corporation incorporated under the laws of the State of Delaware.

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, PDL has consented to venue in this judicial district, PDL resides in this district and PDL is subject to personal jurisdiction in this district.

7.  On March 16, 2007, PDL initiated a civil action by filing a Complaint against

Alexion in this Court alleging that Alexion has infringed the '761, '762 and '370 patents.

## COUNT I

### Declaratory Judgment Counterclaim for a
### Declaration of Patent Noninfringement and Invalidity

8.    Alexion incorporates and realleges Paragraphs 1-7 as if set forth herein.

9.    PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '761 patent.

10.    Alexion has not infringed any claim of the '761 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

11.    To the extent that PDL asserts infringement of any claim of the '761 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

12.    Each claim of the '761 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

13.    A judicial declaration of noninfringement of the '761 patent is necessary and appropriate to resolve this controversy.

14.    A judicial declaration of invalidity of the '761 patent is necessary and appropriate to resolve this controversy.

## COUNT II

### Declaratory Judgment Counterclaim for a
### Declaration of Patent Noninfringement and Invalidity

15.    Alexion incorporates and realleges Paragraphs 1-14 as if set forth herein.

16.    PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '762 patent.

17.     Alexion has not infringed any claim of the '762 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

18.     To the extent that PDL asserts infringement of any claim of the '762 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

19.     Each claim of the '762 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

20.     A judicial declaration of noninfringement of the '762 patent is necessary and appropriate to resolve this controversy.

21.     A judicial declaration of invalidity of the '762 patent is necessary and appropriate to resolve this controversy.

### COUNT III

**Declaratory Judgment Counterclaim for a
Declaration of Patent Noninfringement and Invalidity**

22.     Alexion incorporates and realleges Paragraphs 1-21 as if set forth herein.

23.     PDL has created an actual and justiciable controversy between itself and Alexion regarding whether Alexion has infringed any valid and enforceable claim of the '370 patent.

24.     Alexion has not infringed any claim of the '370 patent, either directly, indirectly, literally, or under the doctrine of equivalents.

25.     To the extent that PDL asserts infringement of any claim of the '370 patent based on any act of making, using, offering to sell, or selling within the United States, or importing into the United States, any accused product solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of

drugs or veterinary biological products or medical devices, that activity cannot constitute infringement under 35 U.S.C. § 271(e)(1).

26.    Each claim of the '370 patent is invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

27.    A judicial declaration of noninfringement of the '370 patent is necessary and appropriate to resolve this controversy.

28.    A judicial declaration of invalidity of the '370 patent is necessary and appropriate to resolve this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Alexion prays for entry of judgment:

A.    Dismissing PDL's Complaint, and all claims therein, with prejudice;

B.    Declaring that Alexion has not infringed any claim of the '761 patent;

C.    Declaring that Alexion has not infringed any claim of the '762 patent;

D.    Declaring that Alexion has not infringed any claim of the '370 patent;

E.    Declaring that each claim of the '761 patent is invalid;

F.    Declaring that each claim of the '762 patent is invalid;

G.    Declaring that each claim of the '370 patent is invalid;

**H.**    **Holding that the '761 patent is unenforceable due to PDL's inequitable conduct in procuring it;**

**I.**    **Holding that the '762 patent is unenforceable due to PDL's inequitable conduct in procuring it;**

**J.**    **Holding that the '370 patent is unenforceable due to PDL's inequitable conduct in procuring it;**

**K.**    H. Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and

assigns, from directly or indirectly charging infringement, or instituting any further action for infringement of the ~'761 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion~'s ~~Soliris™~~**Soliris**™;

> **L.**    ~~I.~~Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any further action for infringement of the ~'762 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion~'s ~~Soliris™~~**Soliris**™;

> **M.**    ~~J.~~Enjoining PDL, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and its parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any further action for infringement of the ~'370 patent against Alexion and/or any of its affiliates, customers, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action, including Alexion~'s Soliris~~™~~™ ;

> **N.**    ~~K.~~Declaring this case to be exceptional within the meaning of 35 U.S.C. § 285 and awarding Alexion the attorney fees, costs, and expenses that it incurs in connection with any of the issues raised by PDL~'s Complaint and/or Alexion~'s Answer and Counterclaims to that Complaint;

> **O.**    ~~L.~~Awarding Alexion such other and further relief as the Court deems just and proper.

DATED: ~~June 4,~~ **December 7,** 2007       YOUNG CONAWAY STARGATT & TAYLOR LLP

_____
Josy W. Ingersoll (I.D. #1088)
Andrew Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

*Attorneys for Alexion Pharmaceuticals, Inc.*

*Of Counsel*:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Document comparison done by Workshare DeltaView on Friday, December 07, 2007 4:34:23 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://NYDMS/LEGAL/11784655/2 |
| Document 2 | interwovenSite://NYDMS/LEGAL/12277266/1 |
| Rendering set | Basic K&E |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| *~~Moved from~~* | |
| *Moved to* | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "DEFENDANT ALEXION PHARMACEUTICALS, INC.'S" changed to "DEFENDANT ALEXION PHARMACEUTICALS, INC.'S" |
| 3 | Change | "ANSWER AND COUNTERCLAIMS" changed to "AMENDED ANSWER AND COUNTERCLAIMS" |
| 4-5 | Change | "Alexion Pharmaceuticals, Inc. ("Alexion" changed to "Alexion Pharmaceuticals, Inc. ("Alexion" |
| 6-7 | Change | "Alexion"), for its" changed to "Alexion"), for its" |
| 8 | Change | "), for its Answer to the Complaint of Plaintiff" changed to "), for its Amended Answer...Complaint of Plaintiff" |
| 9-10 | Change | "Plaintiff PDL Biopharma, Inc. ("PDL" changed to "Plaintiff PDL Biopharma, Inc. ("PDL" |
| 11-12 | Change | "PDL"), hereby states as follows:" changed to |

| | | "PDL"), hereby states as follows:" |
|---|---|---|
| 13-14 | Change | "paroxysmal nocturnal hemoglobinuria ("PNH" changed to "paroxysmal nocturnal hemoglobinuria ("PNH" |
| 15-16 | Change | "PNH"), that it has launched Soliris$^{TM}$," changed to "PNH"), that it has launched Soliris$^{TM}$," |
| 17-18 | Change | "that U.S. Patent No. 5,693,761 ("the" changed to "that U.S. Patent No. 5,693,761 ("the" |
| 19-20 | Change | "the '761 patent" changed to "the '761 patent" |
| 21-22 | Change | "761 patent"), attached as Exhibit A to PDL's" changed to "761 patent"), attached as Exhibit A to PDL's" |
| 23-24 | Change | "to PDL's Complaint, is...Encoding Improved" changed to "to PDL's Complaint, is...Encoding Improved" |
| 25-26 | Change | "Improved Humanized...face PDL as assignee," changed to "Improved Humanized...face PDL as assignee," |
| 27-28 | Change | "that U.S. Patent No. 5,693,762 ("the" changed to "that U.S. Patent No. 5,693,762 ("the" |
| 29-30 | Change | "the '762 patent" changed to "the '762 patent" |
| 31-32 | Change | "762 patent"), attached as Exhibit B to PDL's" changed to "762 patent"), attached as Exhibit B to PDL's" |
| 33-34 | Change | "to PDL's Complaint, is...Immunoglobulins," changed to "to PDL's Complaint, is...Immunoglobulins," |
| 35-36 | Change | "Humanized...face PDL as assignee," changed to "Humanized...face PDL as assignee," |
| 37-38 | Change | "that U.S. Patent No. 6,180,370 B1 ("the" changed to "that U.S. Patent No. 6,180,370 B1 ("the" |
| 39-40 | Change | "the '370 patent" changed to "the '370 patent" |
| 41-42 | Change | "370 patent"), attached as Exhibit C to PDL's" changed to "370 patent"), attached as Exhibit C to PDL's" |
| 43-44 | Change | "to PDL's Complaint, is...and Methods" changed to "to PDL's Complaint, is...and Methods" |

| 45-46 | Change | "and Methods of Making the...face PDL as assignee," changed to "and Methods of Making the...face PDL as assignee," |
| 47-48 | Change | "Response To PDL's Prayer for Relief" changed to "Response To PDL's Prayer for Relief" |
| 49-50 | Change | "every averment contained...was not specifically" changed to "every averment contained...was not specifically" |
| 51-52 | Change | "not infringed any claim of the '761 patent, the" changed to "not infringed any claim of the '761 patent, the" |
| 53-54 | Change | "761 patent, the '762 patent or the" changed to "761 patent, the '762 patent or the" |
| 55-56 | Change | "762 patent or the '370...directly, indirectly," changed to "762 patent or the '370...directly, indirectly," |
| 57-58 | Change | "infringement of any claim of the '761 patent, the" changed to "infringement of any claim of the '761 patent, the" |
| 59-60 | Change | "761 patent, the '762 patent or the" changed to "761 patent, the '762 patent or the" |
| 61-62 | Change | "762 patent or the '370...on any act of making," changed to "762 patent or the '370...on any act of making," |
| 63-64 | Change | "33.     Each claim of the '761 patent, the" changed to "33.       Each claim of the '761 patent, the" |
| 65-66 | Change | "761 patent, the '762 patent and the" changed to "761 patent, the '762 patent and the" |
| 67-68 | Change | "762 patent and the '370...is invalid for failure" changed to "762 patent and the '370...is invalid for failure" |
| 69 | Insertion | Unenforceability Due To Inequitable Conduct |
| 70-71 | Insertion | 34.     Upon information and...in their procurement. |
| 72-73 | Insertion | 35.     All three patents,...804 (Fed. Cir. 1990). |
| 74-75 | Insertion | 36.     One or more of the...conduct as follows: |
| 76 | Insertion | a)     Upon information and...to deceive the |

| | | USPTO. |
|---|---|---|
| 77 | Insertion | b)    Upon information and...to deceive the USPTO. |
| 78 | Insertion | c)    The false and material...of the '761 patent. |
| 79 | Insertion | d)    Upon information and...issuing the '761 patent. |
| 80-81 | Insertion | 37.    One or more of the...conduct as follows: |
| 82 | Insertion | a)    Upon information and...to deceive the USPTO. |
| 83 | Insertion | b)    Upon information and...to deceive the USPTO. |
| 84 | Insertion | c)    The false and material...of the '762 patent. |
| 85 | Insertion | d)    Upon information and...issuing the '762 patent. |
| 86-87 | Insertion | 38.    Upon information and...conduct as follows: |
| 88 | Insertion | a)    Upon information and...to deceive the USPTO. |
| 89 | Insertion | b)    Upon information and...to deceive the USPTO. |
| 90 | Insertion | c)    The false and material...of the '370 patent. |
| 91 | Insertion | d)    Upon information and...of the '370 patent: |
| 92 | Insertion | Recently, it has been...the present application. |
| 93 | Insertion | That statement was not...issuing the '370 patent. |
| 94 | Change | "COUNTERCLAIMS" changed to "COUNTERCLAIMS" |
| 95-96 | Change | "Alexion Pharmaceuticals, Inc. ("Alexion" changed to "Alexion Pharmaceuticals, Inc. ("Alexion" |
| 97-98 | Change | "Alexion"), in Counterclaim against Plaintiff" changed to "Alexion"), in Counterclaim against Plaintiff" |
| 99-100 | Change | "Plaintiff PDL Biopharma, Inc. ("PDL" changed to "Plaintiff PDL Biopharma, Inc. ("PDL" |
| 101-102 | Change | "PDL"), hereby alleges and avers as follows:" changed to "PDL"), hereby alleges and avers as follows:" |
| 103-104 | Change | "claims of U.S. Patent No. 5,693,761 ("the changed to "claims of U.S. Patent No. 5,693,761 ("the |
| 105-106 | Change | "the '761 patent" changed to "the '761 patent" |
| 107-108 | Change | "761 patent"), U.S. Patent No. 5,693,762 (" |

| | | changed to "761 patent"), U.S. Patent No. 5,693,762 (" |
|---|---|---|
| 109-110 | Change | "), U.S. Patent No. 5,693,762 ("the" changed to "), U.S. Patent No. 5,693,762 ("the" |
| 111-112 | Change | "the '762 patent" changed to "the '762 patent" |
| 113-114 | Change | "762 patent"), and U.S. Patent No. 6,180,370" changed to "762 patent"), and U.S. Patent No. 6,180,370" |
| 115-116 | Change | "and U.S. Patent No. 6,180,370 B1 ("the" changed to "and U.S. Patent No. 6,180,370 B1 ("the" |
| 117-118 | Change | "the '370 patent" changed to "the '370 patent" |
| 119-120 | Change | "370 patent").  This counterclaim arises under" changed to "370 patent").  This counterclaim arises under" |
| 121-122 | Change | "by PDL in this action and...Counterclaims to that" changed to "by PDL in this action and...Counterclaims to that" |
| 123-124 | Change | "noninfringement and...'762 and '370 patents." changed to "noninfringement and...'762 and '370 patents." |
| 125-126 | Change | "that Alexion has...'762 and '370 patents." changed to "that Alexion has...'762 and '370 patents." |
| 127-128 | Change | "valid and enforceable claim of the '761 patent." changed to "valid and enforceable claim of the '761 patent." |
| 129-130 | Change | "not infringed any claim...directly, indirectly," changed to "not infringed any claim...directly, indirectly," |
| 131-132 | Change | "infringement of any claim...on any act of making," changed to "infringement of any claim...on any act of making," |
| 133-134 | Change | "12.     Each claim of the ...is invalid for failure" changed to "12.       Each claim of the...is invalid for failure" |
| 135-136 | Change | "declaration of...and appropriate" changed to "declaration of...and appropriate" |
| 137-138 | Change | "declaration of invalidity...and appropriate" changed to "declaration of invalidity...and appropriate" |
| 139-140 | Change | "valid and enforceable claim of the '762 patent." changed to "valid and enforceable claim of the '762 patent." |
| 141-142 | Change | "not infringed any claim...directly, indirectly," changed to "not infringed any claim...directly, |

| | | indirectly," |
|---|---|---|
| 143-144 | Change | "infringement of any claim...on any act of making," changed to "infringement of any claim...on any act of making," |
| 145-146 | Change | "19.    Each claim of the ...is invalid for failure" changed to "19.        Each claim of the...is invalid for failure" |
| 147-148 | Change | "declaration of...and appropriate" changed to "declaration of...and appropriate" |
| 149-150 | Change | "declaration of invalidity...and appropriate" changed to "declaration of invalidity...and appropriate" |
| 151-152 | Change | "valid and enforceable claim of the '370 patent." changed to "valid and enforceable claim of the '370 patent." |
| 153-154 | Change | "not infringed any claim...directly, indirectly," changed to "not infringed any claim...directly, indirectly," |
| 155-156 | Change | "infringement of any claim...on any act of making," changed to "infringement of any claim...on any act of making," |
| 157-158 | Change | "26.    Each claim of the ...is invalid for failure" changed to "26.        Each claim of the...is invalid for failure" |
| 159-160 | Change | "declaration of...and appropriate" changed to "declaration of...and appropriate" |
| 161-162 | Change | "declaration of invalidity...and appropriate" changed to "declaration of invalidity...and appropriate" |
| 163-164 | Change | "A.    Dismissing PDL's...and all claims therein," changed to "A.        Dismissing PDL's...and all claims therein," |
| 165-166 | Change | "not infringed any claim of the '761 patent;" changed to "not infringed any claim of the '761 patent;" |
| 167-168 | Change | "not infringed any claim of the '762 patent;" changed to "not infringed any claim of the '762 patent;" |
| 169-170 | Change | "not infringed any claim of the '370 patent;" changed to "not infringed any claim of the '370 patent;" |
| 171-172 | Change | "E.    Declaring that each...'761 patent is invalid;" changed to "E.        Declaring that each...'761 patent is invalid;" |
| 173-174 | Change | "F.    Declaring that each...'762 patent is invalid;" |

| | | changed to "F.        Declaring that each...'762 patent is invalid;" |
|---|---|---|
| 175-176 | Change | "G.        Declaring that each...'370 patent is invalid;" changed to "G.        Declaring that each...'370 patent is invalid;" |
| 177-178 | Insertion | H.        Holding that the '761...conduct in procuring it; |
| 179-180 | Insertion | I.        Holding that the '762...conduct in procuring it; |
| 181-182 | Insertion | J.        Holding that the '370...conduct in procuring it; |
| 183 | Change | "Enjoining PDL, its officers, agents," changed to "H. Enjoining PDL, its officers, agents," |
| 184-185 | Change | "action for infringement...against Alexion and/or" changed to "action for infringement...against Alexion and/or" |
| 186-187 | Change | "in this action, including Alexion's" changed to "in this action, including Alexion's" |
| 188-189 | Change | "s Soliris™;" changed to "s Soliris$^{TM}$;" |
| 190 | Change | "Enjoining PDL, its officers, agents," changed to "I. Enjoining PDL, its officers, agents," |
| 191-192 | Change | "action for infringement...against Alexion and/or" changed to "action for infringement...against Alexion and/or" |
| 193-194 | Change | "in this action, including Alexion's" changed to "in this action, including Alexion's" |
| 195-196 | Change | "s Soliris™;" changed to "s Soliris$^{TM}$;" |
| 197 | Change | "Enjoining PDL, its officers, agents," changed to "J. Enjoining PDL, its officers, agents," |
| 198-199 | Change | "action for infringement...against Alexion and/or" changed to "action for infringement...against Alexion and/or" |
| 200-201 | Change | "in this action, including Alexion's" changed to "in this action, including Alexion's" |
| 202 | Insertion | s Soliris$^{TM}$ |
| 203 | Change | "™" changed to "" |
| 204 | Change | "Declaring this case to be exceptional" changed to "K. Declaring this case to be exceptional" |
| 205-206 | Change | "any of the issues raised...Complaint and/or Alexion" changed to "any of the issues raised...Complaint and/or Alexion" |
| 207-208 | Change | "s Complaint and/or...Counterclaims to that" changed to "s Complaint and/or...Counterclaims to that" |
| 209 | Change | "Awarding Alexion such other and" changed to |

| | | "L. Awarding Alexion such other and" |
|---|---|---|
| 210 | Deletion | DRAFT -- PRIVILEGED & CONFIDENTIAL |
| 211 | Deletion | ATTORNEY WORK PRODUCT |
| 212-213 | Change | "DATED:  June 4, 2007" changed to "DATED: December 7, 2007" |
| 214 | Deletion | DRAFT -- PRIVILEGED & CONFIDENTIAL |
| 215 | Deletion | ATTORNEY WORK PRODUCT |
| 216-217 | Change | "DEFENDANT ALEXION...AND COUNTERCLAIMS to be" changed to "DEFENDANT ALEXION...AND COUNTERCLAIMS to be" |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 120 |
| Deletions | 97 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 217 |