IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-156 (JJF) |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PDL'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS ALEXION'S DECLARATORY JUDGMENT
COUNTERCLAIMS AS TO UNASSERTED PATENT CLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com

*Of Counsel:*

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Plaintiff PDL BioPharma, Inc.*

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Dated: March 10, 2008

i.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT ......................................................................................3

ARGUMENT ...................................................................................................................4

    I.     No Justiciable Controversy Exists Over Alexion's Counterclaims as to the Unasserted Claims ................................................................4

           A.     There Is No Actual Controversy As To The Unasserted Claims ..........................................................................5

           B.     Alexion Cannot Allege Any Personal Injury Fairly Traceable to PDL's Conduct ...................................................7

    II.     In Any Event, This Court Should Exercise Its Discretion To Decline Declaratory Judgment Jurisdiction .............................................8

CONCLUSION ...............................................................................................................10

ii.

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. Wright,*
    468 U.S. 737 (1984)..................................................................................5

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*
    3 F. Supp. 2d 104 (D. Mass. 1998) .........................................................10

*Biogen, Inc. v. Amgen, Inc.,*
    913 F. Supp. 35 (D. Mass. 1996) .............................................................6

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,*
    15 F.3d 1573 (Fed. Cir. 1993).................................................................5

*Intermedics, Inc. v. Ventritex, Inc.,*
    775 F. Supp. 1269 (N.D. Cal. 1991), *aff'd,* 991 F.2d 808 (Fed. Cir. Feb. 22, 1993)..............10

*Jervis B. Webb Co. v. Southern Sys., Inc.,*
    742 F.2d 1388 (Fed. Cir. 1984)...............................................................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................7

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007).....................................................................*Passim*

*Public Serv. Comm'n of Utah v. Wycoff Co.,*
    344 U.S. 237 (1952)..................................................................................9

*Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc.,*
    363 F.3d 1361 (Fed. Cir. 2004)...............................................................6

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,*
    982 F.2d 1520 (Fed. Cir. 1992)...............................................................9

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,*
    482 F.3d 1330 (Fed. Cir. 2007).......................................................4-5, 7-8

**STATUTES**

21 U.S.C. § 355(j)(5)(B)(iii) ......................................................................7

28 U.S.C. § 2201(a) ...........................................................................3-4, 8

Plaintiff PDL BioPharma, Inc. ("PDL") respectfully moves for an Order dismissing the declaratory judgment counterclaims of Alexion Pharmaceuticals, Inc. ("Alexion") as to the 59 unasserted claims[1] of U.S. Patent Nos. 5,693,761 ("the '761 patent"), 5,693,762 ("the '762 patent), and 6,180,370 ("the '370 patent") ("the patents-in-suit").

## NATURE AND STAGE OF THE PROCEEDINGS

On March 16, 2007 -- the day that the U.S. Food and Drug Administration approved Alexion's humanized antibody, Soliris -- PDL filed the complaint in this action, asserting infringement of three Queen patents: the '761, the '762, and the '370 patents.  D.I. 1.  PDL was not required to (and did not) identify in its Complaint which of the aggregate 87 claims it was asserting.  Id.  In addition, the three patents-in-suit are part of a larger family of Queen patents, none of which PDL asserted here.  Id.

Alexion filed its Answer and Counterclaims on June 4, 2007, counterclaiming for declaratory judgment of invalidity and noninfringement of the '761, '762, and '370 patents generally.  D.I. 11.  Alexion alleged that this Court has jurisdiction over its counterclaims based on the filing of the complaint and Alexion's answer and counterclaims to the complaint.  Id. at ¶ 4; Prayer for Relief.  PDL replied to the counterclaims on June 25, 2007, denying that Alexion had pled facts sufficient to state a counterclaim for a declaration of patent invalidity and denying that the parties had a dispute about the unasserted claims.  D.I. 14. at 2-6.

From the beginning of the case until last month, Alexion took the position that the unasserted claims were not part of this lawsuit.  In particular, Alexion took this position in its

---

[1]     The unasserted claims are claims 3-5, 7, 9-16, 19-25, 27-32, 34, 36, and 37 of the '761 patent, claims 4-9, 15, 17, and 20 of the '762 patent, and claims 3, 4, 7-24, 29, and 30 of the '370 patent.

2.

responses to PDL's first set of interrogatories served on August 22, 2007. Wu Decl. Ex. 1 (Alexion's Responses to PDL's First Set of Interrogatories). In response to PDL's interrogatory seeking all facts supporting Alexion's counterclaim of invalidity, Alexion objected that the interrogatory was "premature and unduly burdensome because it purports to require Alexion to set forth separate invalidity defenses for over 85 claims prior to PDL's identification of the asserted claims." Id. at 6. Alexion consistently maintained this position for nearly a year -- until last month -- when it amended its interrogatory responses to assert for the first time invalidity of claims that PDL never asserted in this litigation. Wu Decl. Ex. 2 at 3-4 (Alexion's Supplemental Response to PDL's Interrogatory No. 3).

For its part, PDL has never identified the unasserted claims as infringed. In PDL's initial interrogatory responses on infringement on August 22, 2007, PDL identified an exemplary claim from each of the three patents-in-suit, based on Alexion's pre-filing technical publications. Wu Decl. Ex. 3 (PDL's Objections and Responses to Alexion's First Set of Interrogatories). After Alexion produced its FDA submission, by which it obtained FDA approval of Soliris, PDL amended its interrogatory responses to assert infringement of specific claims, providing a 69-page infringement chart on December 28, 2007.[2] Wu Decl. Ex. 4 (12/28/07 Ltr. from E. Xanthopoulos to C. Willgoos Enclosing Infringement Chart (submitted here without attachment)).[3] It was not until two months later, on February 18, 2008, that for the first time Alexion identified the claims for which it was seeking a declaratory judgment of

---

[2]     The asserted claims are claims 1, 2, 6, 8, 17, 18, 26, 33, and 35 of the '761 patent, claims 1, 2, 3, 10-14, 16, 18, and 19 of the '762 patent, and claims 1, 2, 5, 6, and 25-28 of the '370 patent.

[3]     PDL recently served third supplemental infringement contentions. As in the prior charts, PDL did not assert infringement of the unasserted claims. Wu Decl. Ex. 5 (PDL's Third Supplemental Objections and Responses to Alexion's Interrogatory No. 1).

3.

invalidity. Wu Decl. Ex. 2 at 3-4 (Alexion's Supplemental Response to PDL's Interrogatory No. 3). Alexion then announced that it was seeking a declaration of invalidity of the unasserted claims, and proposed that the parties construe claim terms from the unasserted claims among more than 20 claim terms and phrases that Alexion identified for construction. Id.; Wu Decl. Ex. 6 (2/28/08 Ltr. from V. Winters to G. Flattman); Wu Decl. Ex. 7 (2/29/08 Ltr. from G. Flattman to V. Winters). PDL advised Alexion that there is no subject matter jurisdiction over the unasserted claims. Alexion refused to withdraw its contentions, necessitating this motion.

The outcome of this motion dramatically affects the number of claim terms to be construed and the issues for trial. Under the present Scheduling Order (entered by Magistrate Judge Thynge), a claim construction hearing was tentatively set for May 2008. D.I. 24. Fact discovery closes on July 2, 2008, expert discovery closes in September 2008 and case-dispositive motions will be heard in December 2008. Id. A Pretrial Conference was tentatively set for February 2009, and a trial scheduled for March 2009. Id.

## SUMMARY OF ARGUMENT

Alexion's counterclaim is an impermissible effort to obtain an advisory opinion from this Court on 59 unasserted claims of the patents-in-suit that PDL has not accused Alexion of infringing. PDL has asserted 28 specific claims of the patents-in-suit against Alexion, and not the remaining 59 claims. Alexion itself recognized this in its initial interrogatory responses, where it refused to identify its invalidity theories on the grounds that to do so would be "premature" pending PDL's identification of the asserted claims. The mere filing of a complaint does not create an "actual controversy" over the unasserted claims, as required for Article III jurisdiction over Alexion's declaratory judgment counterclaims. 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 770-71 (2007).

4.

Further, without any allegation of an act of infringement, any injury that Alexion might suffer as a result of the unasserted claims is purely hypothetical. Article III standing requires Alexion to have suffered "actual or imminent injury caused by [PDL] that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1338 (Fed. Cir. 2007). Because Alexion's counterclaims fail on their face to make out a justiciable controversy as to the unasserted claims, they should be dismissed. And, in any event, public policy counsels strongly in favor of this Court exercising its discretion to decline jurisdiction.

## ARGUMENT

### I.    NO JUSTICIABLE CONTROVERSY EXISTS OVER ALEXION'S COUNTERCLAIMS AS TO THE UNASSERTED CLAIMS

The Declaratory Judgment Act provides that, "in the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statutory requirement of a "'case of actual controversy' [] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." Teva, 482 F.3d at 1336. The Supreme Court held in MedImmune that Article III jurisdiction "require[s] that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 127 S. Ct. at 771 (citations omitted).

5.

Under <u>MedImmune</u>, "all the circumstances" must demonstrate the existence of a justiciable Article III controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u>  "A justiciable Article III controversy requires the party instituting the action to have standing and the issue presented to the court to be ripe." <u>Teva</u>, 482 F.3d at 1337 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  The constitutional requirement of standing requires "[a] plaintiff [to] allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).  "Of the three standing requirements, injury-in-fact is the most determinative: whatever else the case or controversy requirement embodies, its essence is a requirement of injury in fact." <u>Teva</u>, 482 F.3d at 1337 (citations omitted).  "An injury-in-fact must be 'personal,' 'concrete and particularized,' and 'actual or imminent.'" <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 560).  This requirement is not met here.

### A.    There Is No Actual Controversy As To The Unasserted Claims

The "existence of a case or controversy is evaluated on a 'claim-by-claim' basis." <u>Jervis B. Webb Co. v. Southern Sys., Inc.</u>, 742 F.2d 1388, 1399 (Fed. Cir. 1984); <u>see also</u> <u>Carroll Touch, Inc. v. Electro Mech. Sys., Inc.</u>, 15 F.3d 1573, 1581 n. 8 (Fed. Cir. 1993).  Here, PDL has not accused Alexion of infringing the unasserted claims and none of the asserted claims depend from the unasserted claims.  Nor does Alexion contend that any of its products infringe the unasserted claims.  As a result, there can be no "substantial controversy" between the parties of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment" as to those claims. <u>MedImmune</u>, 482 F.3d at 1337.

Alexion's only alleged basis for jurisdiction -- PDL's complaint which did not identify specific claims -- fails to establish an actual controversy as to the unasserted claims.

6.

The burden is on Alexion "'to establish that jurisdiction over its declaratory judgment action existed at, ***and has continued since*,** the time the complaint was filed." Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (emphasis added) (quoting Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)).  The mere filing of a complaint cannot form the basis for continuing Article III jurisdiction over Alexion's counterclaims where, as here, the only claims that PDL has ever specifically accused Alexion of infringing are the 28 claims identified in PDL's supplemental claim charts.  PDL has never identified the remaining 59 claims of the patents-in-suit.  See Biogen, Inc. v. Amgen, Inc., 913 F. Supp. 35, 38 (D. Mass. 1996) ("plaintiff's choice to litigate certain patent claims and not others [does not] constitute[] assent to jurisdiction over the entire patent").

The Supreme Court's decision in MedImmune is consistent with this result. There, the party seeking declaratory relief could only prevent injury by complying with a demand from the defendant.  127 S. Ct. at 777.  The Supreme Court held that the plaintiff could seek a declaratory judgment of non-infringement at the same time that it forestalled a potentially devastating infringement action by paying royalties to the patent holder.  Id.  Unlike the defendant in MedImmune, PDL has not asked Alexion to comply with any demands as to the unasserted claims.  Alexion is not making any payments to PDL or taking any other actions at PDL's behest.  Nor has PDL forced Alexion to forbear from any desired activity to avoid liability based on the unasserted claims.  There is no justiciable Article III controversy in these circumstances.  The Court accordingly should dismiss Alexion's counterclaims with respect to the unasserted claims.

**B.      Alexion Cannot Allege Any Personal Injury Fairly
          Traceable to PDL's Conduct**

The filing of a complaint asserting patent infringement by PDL does not by itself

confer jurisdiction over Alexion's declaratory judgment counterclaim as to the unasserted claims.

Alexion still must satisfy the injury-in-fact requirement of Article III, as Congress "cannot

expand standing beyond the Article III jurisdiction of federal courts."  Teva, 482 F.3d at 1338;

see also Lujan, 504 U.S. at 576 ("ignoring the concrete injury requirement" is unconstitutional).

Alexion cannot meet its burden of demonstrating an actual injury as to the unasserted claims

because PDL has not engaged in any conduct that could cause injury to Alexion based on those

claims.

The Federal Circuit's post-MedImmune decision in Teva v. Novartis, 482 F.3d

1330 (Fed. Cir. 2007), demonstrates that the mere filing of an infringement complaint does not

cause injury-in-fact.  There, the Federal Circuit made clear that it was not the filing of an

infringement suit on some patents that established the required jurisdictional injury for a

declaratory judgment action on other unasserted patents, but the patentee's ability to obtain a 30-

month stay on FDA approval on Teva's Abbreviated New Drug Application ("ANDA") by filing

a lawsuit under the unique statutory framework of the Hatch-Waxman Act.  21 U.S.C.

§ 355(j)(5)(B)(iii) (allowing for 30-month stay); Teva, 482 F.3d at 1343, 1340, n.5 (Novartis'

actions caused injury-in-fact to the generic company by "placing into actual dispute the

soundness of Teva's ANDA and Teva's ability to secure approval of the ANDA.").  In finding

the required jurisdictional injury based on the uncertainty caused to the ANDA filer by the 30-

month stay, the Federal Circuit specifically distinguished non-ANDA situations like the one here

where there is no 30-month stay and no bar to market entry:

> [The patentee's] selective [infringement] suit creates uncertainty as
> to [the generic's] legal rights under its ANDA.   Ordinarily, a

> potential competitor in other fields is legally free to market its
> product in the face of an adversely-held patent. In contrast, under
> the Hatch-Waxman Act an ANDA filer in [the generic's] situation
> is not legally free to enter the market because federal statutes
> prohibit it [by providing a statutory stay on ANDA approval]. See
> 21 U.S.C § 355(j)(5)(B)(iii).

Id. at 1345 (emphasis added). In this non-ANDA case, there is no 30-month stay and thus Alexion has not suffered any injury. It remains legally free to market its product in the face of PDL's unasserted patent claims. Id.

Neither can the mere existence of the unasserted claims establish the required actual and imminent injury. It simply cannot be the case that asserting some claims of a patent is sufficient to force the patentee to defend, and a court to adjudicate, hypothetical questions of patent infringement and validity as to the unasserted claims. Any other result would permit any apprehensive manufacturer to force courts to issue advisory opinions, and subject patentees to unfair harassment. Although a particular manufacturer may wish to mitigate its future risk, such a generalized interest in invalidating patent claims cannot constitute the required actual and concrete injury for establishing standing.

## II.    IN ANY EVENT, THIS COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE DECLARATORY JUDGMENT JURISDICTION

The Declaratory Judgment Act confers discretion on courts to decline to exercise jurisdiction by providing that judges "may" declare the rights and other legal relations of any interested party, not that it *must* do so. See 28 U.S.C. § 2201(a) (emphasis added). "This text has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." MedImmune, 127 S. Ct. at 776-77. District courts are vested with this discretion in the first instance "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly

9.

within their grasp." Id. at 776 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995)).

Therefore, even if there were an otherwise justiciable controversy, this Court has the discretion

to decline declaratory judgment jurisdiction. Public Serv. Comm'n of Utah v. Wycoff Co., 344

U.S. 237 (1952); see MedImmune ("We leave the equitable, prudential, and policy arguments in

favor of such a discretionary dismissal for the lower courts' consideration on remand.").

The purposes of the Declaratory Judgment Act and the principles of sound

judicial administration counsel against exercising jurisdiction here. As discussed above, PDL

has not alleged that Alexion infringes the unasserted claims. Rather than litigating the merits of

the asserted claims, Alexion seeks to waste the Court's and parties' resources by litigating claims

that are not at issue. Allowing Alexion to proceed this way would also frustrate the purpose of

discovery disclosure requirements. Until three weeks ago, Alexion refused to give PDL

information about its invalidity counterclaim on the ground that PDL had not identified the

asserted claims. See Wu Decl. Ex. 1 (Alexion's Responses to PDL's First Set of Interrogatories)

(refusing to provide facts supporting its counterclaim of invalidity because it would "require

Alexion to set forth separate invalidity defenses for over 85 claims prior to PDL's identification

of the asserted claims"). Having made clear that its invalidity counterclaim was based on PDL's

identification of asserted claims, Alexion cannot now sweep all the unasserted claims into its

counterclaim. Such a result not only would violate the Article III requirements as set forth in

MedImmune, but would constitute bad policy by flooding the courts with requests for advisory

opinions.

For these reasons, principles of judicial economy and fairness weigh strongly in

favor of declining to exercise declaratory judgment jurisdiction here. See, e.g., Telectronics

Pacing Sys., Inc. v. Ventritex, Inc., 982 F.2d 1520, 1527 (Fed. Cir. 1992) (affirming district

10.

court's discretionary decision not to exercise declaratory judgment jurisdiction over patent claims); Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1289-90 (N.D. Cal. 1991) (same), aff'd, 991 F.2d 808 (Fed. Cir. Feb. 22, 1993) (same); Fresenius USA, Inc. v. Transonic Sys., Inc., 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (exercising discretion not to exercise declaratory judgment jurisdiction over patent claims); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 3 F. Supp. 2d 104, 111-13 (D. Mass. 1998) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, PDL respectfully requests that the Court grants its Motion to Dismiss Alexion's Declaratory Judgment Counterclaims as to the Unasserted Claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden (#2881)*

Jack B. Blumenfeld (ID # 1014)
Karen Jacobs Louden (ID # 2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com

*Attorneys for PDL BioPharma, Inc.*

*Of Counsel:*

Matthew D. Powers
Vernon M. Winters
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3000


Jennifer H. Wu

11.

Rebecca E. Fett
Weil, Gotshal & Manges LLP
New York Office
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

March 10, 2008

1866927

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on March 10, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Joey W. Ingersoll

I also certify that copies were caused to be served on March 10, 2008, upon the following in the manner indicated:

### BY HAND

Joey W. Ingersoll
Andrew A. Lundgren
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Flr.
Wilmington, DE  19801

### BY EMAIL

Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
Kirkland & Ellis
153 East 53rd Street
New York, NY  10022-4611

*/s/ Karen Jacobs Louden (#2881)*
_____
Karen Jacobs Louden