IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-156 (JJF) |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## JENNIFER H. WU'S DECLARATION IN SUPPORT OF PDL'S MOTION TO DISMISS ALEXION'S DECLARATION JUDGMENT COUNTERCLAIMS AS TO UNASSERTED PATENT CLAIMS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com

*Of Counsel:*

*Attorneys for Plaintiff PDL BioPharma, Inc.*

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date:  March 10, 2008

Redacted Filing Date:  March 18, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PDL BIOPHARMA, INC.           ) | |
|          Plaintiff,     ) | |
|                       ) | C.A. No. 07-156 (JFF) |
|        v.            ) | **REDACTED –** |
| ALEXION PHARMACEUTICALS, INC.,   ) | **PUBLIC VERSION** |
|          Defendant.    ) | |

### JENNIFER H. WU'S DECLARATION IN SUPPORT OF PDL'S MOTION TO DISMISS ALEXION'S DECLARATORY JUDGMENT COUNTERCLAIMS AS TO UNASSERTED PATENT CLAIMS

1.       I am an associate at Weil, Gotshal & Manges, LLP, counsel for plaintiff PDL BioPharma, Inc. I submit this Declaration in support of PDL BioPharma's Motion to Dismiss Alexion's Declaratory Judgment Counterclaims.

2.       Attached as Exhibit 1 is a true and correct copy of Alexion's Objections and Responses to PDL's First Set of Interrogatories served on August 22, 2007.

3.       Attached as Exhibit 2 is a true and correct copy of Alexion's Supplemental Response to PDL's Interrogatory No. 3 served on February 18, 2008.

4.       Attached as Exhibit 3 is a true and correct copy of PDL's Objections and Responses to Alexion's First Set of Interrogatories served on August 22, 2007.

5.       Attached as Exhibit 4 is a true and correct copy of a letter from E. Xanthopoulos of Weil, Gotshal & Manges LLP to C. Willgoos of Kirkland & Ellis LLP dated December 28, 2007.

6.       Attached as Exhibit 5 is a true and correct copy of PDL's Third Supplemental Objections and Responses to Alexion's Interrogatory No. 1 served on March 10, 2008.

7.       Attached as Exhibit 6 is a true and correct copy of a letter from V. Winters

of Weil, Gotshal & Manges LLP to G. Flattman of Kirkland & Ellis LLP dated February 28, 2008.

8.    Attached as Exhibit 7 is a true and correct copy of a letter from G. Flattman of Kirkland & Ellis LLP to V. Winters of Weil, Gotshal & Manges LLP dated February 29, 2008.


I declare under penalty of perjury that the foregoing is true and correct.


WEIL, GOTSHAL & MANGES LLP


Jennifer H. Wu

March 10, 2008

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on March 18, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Joey W. Ingersoll

I also certify that copies were caused to be served on March 18, 2008, upon the following in the manner indicated:

### BY HAND

Joey W. Ingersoll
Andrew A. Lundgren
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Flr.
Wilmington, DE 19801

### BY EMAIL

Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
Kirkland & Ellis
153 East 53rd Street
New York, NY 10022-4611

*/s/ Karen Jacobs Louden*

Karen Jacobs Louden

**Exhibit 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07-CV-156-*** |
| | ) | |
| ALEXION PHARMACEUTICALS, INC. | ) | |
| Defendant. | ) | |
| | ) | |

## ALEXION PHARMACEUTICALS, INC.'S OBJECTIONS AND RESPONSES TO PDL BIOPHARMA, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 26.1, Defendant Alexion Pharmaceuticals, Inc. ("Alexion") hereby makes the following objections and responses to Plaintiff PDL BioPharma, Inc.'s ("PDL's") First Set of Interrogatories (Nos. 1-3) to Alexion Pharmaceuticals, Inc.

Pursuant to Federal Rule of Civil Procedure 26(3), Alexion reserves the right to supplement its responses to these interrogatories if it learns of additional information.

## GENERAL OBJECTIONS

Alexion makes the following general objections to Plaintiff's First Set of Interrogatories ("General Objections"), which General Objections are hereby incorporated by reference and made part of its response to each such interrogatory.

1.      Alexion objects to each interrogatory to the extent that it seeks to impose requirements or obligations on Alexion in addition to or different from those imposed by the Federal Rules of Civil Procedure and/or Local Civil Rules for the District of Delaware.

2.      Alexion objects to each interrogatory to the extent that it calls for information that is protected from discovery by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable privilege or immunity.  Inadvertent production of any such information shall not be deemed a waiver of any privilege or immunity. Nothing contained in any of these responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege, immunity or doctrine.

3.      Alexion objects to PDL's "Definitions" and "Instructions" to the extent that they seek to impose requirements or obligations on Alexion in addition to or different from those imposed by the Federal Rules of Civil Procedure and/or Local Civil Rules for the District of Delaware.

4.      Alexion objects to PDL's "Definitions" and "Instructions" to the extent that they purport to alter the plain meaning and/or scope of any specific interrogatory, on the ground that such alteration renders the interrogatory vague, ambiguous, overly broad, unduly burdensome and/or uncertain.

5.      Alexion objects to PDL's definition of "Alexion" as overly broad, unduly burdensome, vague and ambiguous in its use of the terms "partners,", "divisions," "subsidiaries," "affiliates," and "related companies."

6.      Alexion objects to PDL's definition of "Document" to the extent that it purports to impose requirements in addition to or different from those imposed by the Federal Rules of Civil Procedure and/or Local Civil Rules for the District of Delaware.

7.      Alexion objects to PDL's definition of "Humanized Antibody Products and Methods" as overly broad, unduly burdensome, vague and ambiguous to the extent that this definition purports to include any products and/or methods other than those concerning eculizumab and/or Soliris™.

8.      Alexion objects to each interrogatory to the extent that it purports to require Alexion to provide "all facts," and "all Documents" as overly broad and unduly burdensome.  Subject to its General Objections and any specific objections, Alexion will conduct a reasonable investigation and provide responsive, non-privileged information resulting from that investigation.

9.      Alexion objects to PDL's First Set of Interrogatories to the extent that they seek information, documents or things that are not within Alexion's possession, custody or control.

10.      Alexion objects to PDL's First Set of Interrogatories to the extent that they seek information, documents or things that contain trade secret or other confidential, research, development or commercial information prior to the issuance of Protective Order in this action.

11.      Alexion objects to PDL's First Set of Interrogatories to the extent that they seek information, documents or things that are confidential information of non-parties.

12.      Alexion objects to PDL's First Set of Interrogatories as vague, ambiguous, and uncertain to the extent that they seek information, documents or things that are not described with reasonable particularity.

13.      Alexion objects to PDL's First Set of Interrogatories to the extent that they seek information, documents or things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.

3

14.    Alexion objects to PDL's First Set of Interrogatories to the extent that they seek information generated on or after March 16, 2007.

15.    Alexion objects to PDL's First Set of Interrogatories to the extent that they contain discrete subparts, which should be counted as separate interrogatories pursuant to Federal Rule of Civil Procedure 33. Alexion reserves the right to object to further interrogatories from PDL as in excess of the number allowed by the Court's Rule 16 Scheduling Order.

16.    Alexion incorporates herein by reference the objections made in response to PDL's First Requests For Production Of Documents To Alexion Pharmaceuticals, Inc.

## OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Separately for each claim in each of the Patents-In-Suit, please state all facts, and identify all witnesses to any facts, that You contend support Your first defense set forth in paragraphs 31 and 32 of Alexion's *Answer and Counterclaims* that You have not infringed the Patents-In-Suit "either directly, indirectly, literally, or under the doctrine of equivalents."

### RESPONSE TO INTERROGATORY NO. 1:

Alexion objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Alexion further objects to this interrogatory because it purports to shift the burden of proof regarding infringement to Alexion and to require Alexion to set forth its defenses to infringement prior to PDL's identification of asserted claims or infringement contentions. PDL, as plaintiff and patentee, has the burden of proving infringement. Alexion objects to this interrogatory as premature in that it seeks Alexion's non-infringement defenses prior to the Court's ruling regarding claim construction. Alexion further objects to this interrogatory as premature in that it seeks expert opinions prior to

4

the time set for expert discovery by the August 21, 2007 Scheduling Order. Alexion will

supplement its response in accordance with the Scheduling Order or as otherwise allowed by the

Court or Federal or Local Rules. Subject to the foregoing objections and its General Objections,

Alexion responds as follows.

The accused product, Soliris™, and use thereof, do not meet, either literally or by

equivalents, each and every claim limitation of any valid claim of the patents-in-suit.

INTERROGATORY NO. 2:

Separately for each claim in each of the Patents-In-Suit, identify all Documents to
every invention, product, method, or technology available to customers as an alternative to the
Patents-In-Suit.

RESPONSE TO INTERROGATORY NO. 2:

Alexion objects to this interrogatory as vague, ambiguous and incomprehensible.

Alexion further objects to this interrogatory because it purports to shift the burden of proof

regarding infringement to Alexion and to require Alexion to set forth its defenses to infringement

prior to PDL's identification of asserted claims or infringement contentions. PDL, as plaintiff

and patentee, has the burden of proving infringement. To the extent that this interrogatory seeks

the identification of documents, any such relevant and responsive documents will be produced

subject to Alexion's responses and objections as set forth in Alexion's Responses to PDL's First

Set Of Requests For Production Of Documents. Alexion objects to this interrogatory to the

extent that it seeks documents and things directed solely to the issue of damages as premature

pending the Court's decision regarding bifurcation of liability and damages issues, which,

pursuant to the Court's August 7, 2007 oral ruling, will be filed on or before September 6, 2007.

Subject to the foregoing objections and its General Objections, Alexion responds as follows.

Alexion cannot answer this interrogatory because Alexion does not understand it.

5

## INTERROGATORY NO. 3:

Separately for each claim in each of the Patents-In-Suit, please state all facts, and identify all witnesses to any facts, that You contend support Your second defense set forth in paragraph 33 of Alexion's *Answer and Counterclaims* that the Patents-In-Suit are invalid.

## RESPONSE TO INTERROGATORY NO. 3:

Alexion objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Alexion objects to this interrogatory as premature and unduly burdensome because it purports to require Alexion to set forth separate invalidity defenses for over 85 claims prior to PDL's identification of the asserted claims. Alexion further objects to this interrogatory as premature in that it seeks expert opinions prior to the time set for expert discovery by the proposed August 21, 2007 Scheduling Order. Alexion will supplement its response in accordance with the Scheduling Order or as otherwise allowed by the Court or Federal or Local Rules. Subject to the foregoing objections and its General Objections, Alexion responds as follows.

Each of the claims of the patents in suit are invalid for failure to meet the patentability requirements of one or more of 35 U.S.C. § 101, 102, 103, and 112.

For example, several claims of the patents-in-suit are invalid because they do not meet the patentability requirements of 35 U.S.C. § 112. The specifications of the '762, '763 and '370 patents do not provide an adequate written description to support the patentability of each claim of the respective patents. Similarly, the specifications of the '762, '763 and '370 patents do not fully enable the scope of the purported inventions claimed.

Several claims of the patents-in-suit are invalid under 35 U.S.C. § 101 because the claims are inoperable.

The majority, if not all, of the claims of the patents-in-suit are invalid because they are anticipated by or obvious in view of the prior art and/or the knowledge of one of ordinary skill in the art. Examples of prior art references that render the patents invalid, either alone or in combination, include but are not limited to, Chothia & Lesk, *The Relation Between the Divergence of Sequence and Structure in Proteins*, EMBO Journal 5(4):823-26 (1986); Jones et al., *Replacing the Complementarity Determining Regions in a Human Antibody With Those From a Mouse*, Nature 321:522-25 (1986); Riechmann et al., *Reshaping Human Antibodies for Therapy*, Nature 322:323-27 (1988); and Winter, EP 0239400.

YOUNG CONWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (I.D. #1088)
Andrew A. Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Dated: August 22, 2007

7

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on August 22, 2007, I caused a copy of the

foregoing document to be served on the following in the manner indicated:

### BY E-MAIL AND HAND DELIVERY

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

### BY E-MAIL

Matthew D. Powers, Esquire
Vernon M. Winters, Esquire
John D. Beynon, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Andrew A. Lundgren_

Josy W. Ingersoll  (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

_Attorneys for Defendant._

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PDL BIOPHARMA, INC.,              )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        C.A. No. 07-156-JJF
                                  )
ALEXION PHARMACEUTICALS, INC.,    )
                                  )
            Defendant.            )

## ALEXION PHARMACEUTICALS, INC.'S FIRST SUPPLEMENTAL RESPONSE TO PDL BIOPHARMA, INC.'S INTERROGATORY NO. 3

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 26.1, Defendant Alexion Pharmaceuticals, Inc. ("Alexion") hereby submits its first supplemental response to Plaintiff PDL BioPharma, Inc.'s ("PDL's") Interrogatory No. 3 to Alexion Pharmaceuticals, Inc.

Pursuant to Federal Rule of Civil Procedure 26(e), Alexion reserves the right to supplement its responses to these interrogatories if it learns of additional information.

## GENERAL OBJECTIONS

Alexion hereby incorporates by reference its General Objections set forth in Alexion Pharmaceuticals, Inc.'s Objections And Responses To PDL Biopharma, Inc.'s First Set Of Interrogatories and makes said General Objections part of its response to each interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 3:

Separately for each claim in each of the Patents-In-Suit, please state all facts, and identify all witnesses to any facts, that You contend support Your second defense set forth in paragraph 33 of Alexion's *Answer and Counterclaims* that the Patents-In-Suit are invalid.

**RESPONSE TO INTERROGATORY NO. 3:**

   Alexion objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Alexion objects to this interrogatory as premature and unduly burdensome because it purports to require Alexion to set forth separate invalidity defenses for over 85 claims prior to PDL's identification of the asserted claims. Alexion further objects to this interrogatory as premature in that it seeks expert opinions prior to the time set for expert discovery by the proposed August 21, 2007 Scheduling Order. Alexion will supplement its response in accordance with the Scheduling Order or as otherwise allowed by the Court or Federal or Local Rules. Subject to the foregoing objections and its General Objections, Alexion responds as follows.

   Each of the claims of the patents in suit are invalid for failure to meet the patentability requirements of one or more of 35 U.S.C. § 101, 102, 103, and 112.

   For example, several claims of the patents-in-suit are invalid because they do not meet the patentability requirements of 35 U.S.C. § 112. The specifications of the '762, '763 and '370 patents do not provide an adequate written description to support the patentability of each claim of the respective patents. Similarly, the specifications of the '762, '763 and '370 patents do not fully enable the scope of the purported inventions claimed.

   Several claims of the patents-in-suit are invalid under 35 U.S.C. § 101 because the claims are inoperable.

   The majority, if not all, of the claims of the patents-in-suit are invalid because they are anticipated by or obvious in view of the prior art and/or the knowledge of one of ordinary skill in the art. Examples of prior art references that render the patents invalid, either alone or in combination, include but are not limited to, Chothia & Lesk, *The Relation Between*

*the Divergence of Sequence and Structure in Proteins*, EMBO Journal 5(4):823-26 (1986); Jones

et al., *Replacing the Complementarity Determining Regions in a Human Antibody With Those*

*From a Mouse*, Nature 321:522-25 (1986); Riechmann et al., *Reshaping Human Antibodies for*

*Therapy*, Nature 322:323-27 (1988); and Winter, EP 0239400.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

     Alexion objects to this interrogatory as improperly requiring Alexion to "state all

facts" and "identify all witnesses to any facts" in support of its invalidity defenses before PDL

has provided its contentions as to Alexion's infringement. Alexion further objects to this

interrogatory as premature given that it seeks expert opinion testimony prior to the disclosure

dates set forth in the Federal Rules of Civil Procedure 26(a)(2)(C) and the Court's August 21,

2007 Scheduling Order. Alexion further objects to this interrogatory as premature given that

PDL has not yet provided any claim construction contentions and the Court has not yet issued

any claim construction decision. Alexion further objects to this interrogatory to the extent that it

seeks information that is protected from disclosure under the attorney-client privilege and/or the

attorney work product doctrine. Subject to these specific objections and its General Objections,

Alexion further responds to this interrogatory as follows.

     Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the

'762 patent, and Claims 1-30 of the '370 patent are invalid for at least the following reasons.

Alexion reserves the right to supplement its contentions in accordance with Federal Rule of Civil

Procedure 26(e).

     Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the

'762 patent, and Claims 1-30 of the '370 patent are invalid for lack of utility under 35 U.S.C.

§ 101.

Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the '762 patent, and Claims 1-30 of the '370 patent are invalid under 35 U.S.C. § 102(a), (b) and/or § 103 over at least the following prior art:

1. Jones *et al.* "Replacing the Complementarity Determining Regions In A Human Antibody With Those From A Mouse." *Nature*, 321:522-25 (1986);

2. Riechmann *et al.* "Reshaping Human Antibodies For Therapy." *Nature*, 322:323-27 (1988);

3. EP 0328404;

4. EP 0239400;

5. WO 88/09344;

6. Chothia *et al.* "Cannonical Structures For The Hypervariable Regions of Immunoglobulins." *J. Mol. Biol.*, 196:901-17 (1987);

7. Verhoeyen *et al.* "Reshaping Human Antibodies: Grafting An Antilysozyme Activity." *Science*, 239:1534-36 (1988);

8. De la Paz *et al.* "Modelling Of The Combining Sites Of Three Anti-Lysozyme Monoclonal Antibodies And Of The Complex Between One Of The Antibodies And Its Epitope." *EMBO Journal*, 5:2, 415-25 (1986);

9. Alzari *et al.* "Three-Dimensional Structure Of Antibodies." *Ann. Rev. Immunol.*, 6:555-80 (1988);

4

10.     Amit *et al.* "Three-dimensional Structure Of An Antigen-Antibody Complex at 2.8 Å Resolution." *Science*, 233:747-53 (1986); and

11.     Poljak *et al.* "Amino Acid Sequence Of The Vh Region of a Human Myeloma Immunoglobulin (IgG New)." *Biochemistry*, 16:3412-20 (1977).

Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the '762 patent, and Claims 1-30 of the '370 patent are invalid under 35 U.S.C. § 112 as the specifications of the '762, '763 and '370 patents do not provide an adequate written description to support the patentability of each claim of the respective patents.

Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the '762 patent, and Claims 1-30 of the '370 patent are invalid under 35 U.S.C. § 112 as the specifications of the '762, '763 and '370 patents do not fully enable the scope of the purported inventions claimed.

Alexion states that Claims 1-19 and 26-37 of the '761 patent, Claims 1-20 of the '762 patent, and Claims 1-30 of the '370 patent are invalid as indefinite under 35 U.S.C. § 112 for failing to particularly point out and distinctly claim the subject matter applicant regards as his invention.

DATED: February 18, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_Andr A. Lundgren_

Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600
*alundgren@ycst.com*

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

6

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on February 18, 2008, I caused a copy of the foregoing document to be served on the following in the manner indicated:

### BY E-MAIL AND HAND DELIVERY

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

### BY E-MAIL

Matthew D. Powers, Esquire
Vernon M. Winters, Esquire
John D. Beynon, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Andrew A. Lundgren*

Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*alundgren@ycst.com*

*Attorneys for Defendant.*

**Exhibit 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PDL BIOPHARMA, INC.,

        Plaintiff,

    v.

ALEXION PHARMACEUTICALS, INC.,

        Defendant.

C. A. No. 07-156 (***)

## PDL BIOPHARMA, INC.'S OBJECTIONS AND RESPONSES TO ALEXION PHARMACEUTICALS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff PDL BioPharma, Inc. ("PDL") objects and responds to Defendant Alexion Pharmaceuticals, Inc.'s ("Alexion") First Set of Interrogatories (nominal Nos. 1-14) as follows:

### GENERAL OBJECTIONS

1.    PDL objects to each interrogatory to the extent its seeks information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Such requests are improper, and PDL will not provide information protected from disclosure by such privileges or immunities. Nothing contained in PDL's responses is intended to be, or in any way shall be deemed, a waiver of any such applicable privilege, doctrine, or immunity.

2.    Nothing in these responses is an admission by PDL of the existence, relevance, or admissibility of any information, for any purpose, or the truth or accuracy of any statement or characterization contained in any interrogatory. PDL reserves all objections and other questions as to competency, relevance, materiality, privilege, or admissibility related to the use of its responses and any document or thing identified in its responses as evidence for any

purpose whatsoever in any subsequent proceeding in this action or any other action.

      3.    PDL incorporates by reference its objections to Alexion's Definitions and Instructions set forth in PDL's Responses To Alexion's First Set Of Requests For Production of Documents and Things (Nos. 1-68).

      4.    PDL objects to each interrogatory to the extent it seeks information in Alexion's possession or information that is or was available to Alexion from public or other sources, including, but not limited to, information from PDL's website.

      5.    PDL objects to each interrogatory to the extent that it is not limited in time.

      6.    PDL objects to each request to the extent it seeks information about PDL's technology other than information about any features and functionality relevant to the parties' claims and defenses in this action.

      7.    PDL objects to each interrogatory to the extent it seeks information that is the confidential, proprietary, and/or trade secret information of a third party that is in PDL's possession subject to an obligation to a third party.  PDL will provide such information only to the extent it can do so consistent with its obligations to any third parties to whom it owes obligations.

      8.    PDL objects to each definition, instruction, and interrogatory as overly broad and unduly burdensome, and as seeking information that is not relevant to any claim or defense in this action to the extent that it seeks to impose requirements or obligations on PDL in addition to or different from those imposed by the Federal Rules of Civil Procedure and the Court's rules and orders.  In responding to each interrogatory, PDL will provide information as may be required and proper under the Federal Rules of Civil Procedure and the Court's rules and orders.

      9.    PDL's discovery and investigation in connection with this litigation are continuing.  As a result, PDL's responses are limited to information obtained to date, and are given without prejudice to PDL's right to amend or supplement its responses after considering

information obtained through further discovery or investigation.

        10.    A number of the interrogatories seek information about each claim of the three asserted patents-in-suit. PDL is not asserting each claim of the three asserted patents-in-suit, and thus objects to any such interrogatory on the grounds that it (a) does not seek information relevant to the claim or defense of any party, and (b) is burdensome and oppressive. Under the US patent laws, a patent is infringed if one claim of that patent is infringed. Accordingly, at the present time PDL will respond to such interrogatories by identifying the relevant information from one claim of each of the three asserted patents-in-suit. PDL reserves the right to supplement its responses with additional asserted claims.

        11.    The foregoing general objections and statements shall be applicable to, and included in, PDL's response to every interrogatory, whether or not expressly mentioned in the particular response.

        Subject to and without waiving the above General Objections, PDL objects and responds to Alexion's interrogatories as follows:

## INTERROGATORIES

### INTERROGATORY NO. 1:

        Please describe (by way of claim chart) [1] the bases for PDL's infringement assertions at the time it filed the Complaint and, [2] if different, at the present time, as follows: identify each claim of each patent in suit that PDL contends any Alexion product, including Soliris®, or the manufacture or use thereof, has infringed under any theory; state whether such alleged infringement is literal or under the doctrine of equivalents; describe the complete factual basis and evidentiary support for the presence of each element of each asserted claim either literally or by way of a substantial equivalence and [3] identify the three individuals most knowledgeable about the information requested in this interrogatory.

### RESPONSE TO INTERROGATORY NO. 1:

        PDL incorporates its General Objections, set forth above, here. In addition, this interrogatory improperly seeks information protected from disclosure by both the attorney-client privilege and the attorney work product doctrine: specifically, the difference (if any) between PDL's infringement assertions at the time that it filed the lawsuit and PDL's infringement

assertions now. The Federal Rules of Civil Procedure contain provisions regarding disclosure of a party's pre-filing assessment, and Alexion does not purport to invoke those provisions. PDL further objects to this interrogatory as, in part, premature because at this juncture, Alexion has not provided PDL in discovery samples of Soliris or any information about how Soliris is manufactured, infringement is appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time.

Finally, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts," although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories. As the added brackets indicate, this interrogatory has at least three discrete subparts.

Subject to these objections, PDL responds as follows:

Under the US patent laws, patent infringement occurs when a party infringes at least one claim of a patent. Accordingly, for each of the three patents-in-suit, PDL will provide the requested information with respect to at least one claim of each patent. Appendix 1 hereto contains the requested claim chart for one claim of each asserted patent. Defining "infringement" as the process of comparing claims of the patents-in-suit to the published sequence of Soliris that is referenced in Appendix 1, there are no individuals at PDL at this juncture who can provide non-privileged testimony.

## INTERROGATORY NO. 2:

For each claim of each patent-in-suit, please state the dates on which the claimed subject matter was [4] conceived; [5] reduced to practice; [6] first described in a document; [7] first disclosed to a person other than the inventors; [8] first offered for sale; first sold; [9] first described in a printed publication anywhere in the world; and [10] first publicly used in the United States. [11] Please identify all supporting documents, samples, investigations, tests, measurements, analyses, opinions, and testimony supporting each date and [12] the three individuals most knowledgeable about the information requested in this interrogatory.

## RESPONSE TO INTERROGATORY NO. 2:

PDL incorporates its General Objections, set forth above, here. In addition, under

4

the Supreme Court's opinion in *Markman*, the scope of the claims is a question of law for the Court, and the Court has not yet construed the claims; hence the Court has not yet determined the scope of "the claimed subject matter." In addition, PDL is not asserting each claim of each patent; as set forth above, under the patent laws a patent is infringed if one claim is infringed, and on that basis PDL will identify (and, in the attached claim chart, has identified) one claim from each patent that Alexion infringes based on its public disclosures of the amino acid sequence of Soliris and on other information from Alexion. PDL objects to this interrogatory on the grounds that it is, in part, premature: these validity issues are appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time.

Finally, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts," although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories. As the added brackets indicate, this interrogatory has at least nine discrete subparts.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

**INTERROGATORY NO. 3:**

[13] Please state the priority date that PDL asserts for each claim of the patents-in-suit.

**RESPONSE TO INTERROGATORY NO. 3:**

PDL incorporates its General Objections, set forth above, here. In addition, the

5

priority date to which a patent claim is entitled turns, in part, on how that claim is construed, and under the Supreme Court's opinion in *Markman*, the scope of the claims is a question of law for the Court. The Court has not yet construed the claims. In addition, PDL is not asserting each claim of each patent; as set forth above, under the patent laws a patent is infringed if one claim is infringed, and, subject to amendment, on that basis PDL will identify (and, in the attached claim chart, has identified) one claim from each patent that Alexion infringes based on its public disclosures of the amino acid sequence of Soliris and on other information from Alexion. PDL objects to this interrogatory on the grounds that it is, in part, premature: priority date analysis subsumes legal issues that are appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

**INTERROGATORY NO. 4:**

Please [14] identify what PDL contends to be the relevant art for the patents-in-suit and [15] the level of ordinary skill in that art as of December 19, 1989 and [16] all dates identified in response to Interrogatory No. 3 and [17] describe in detail the factual and legal bases for PDL's contentions.

**RESPONSE TO INTERROGATORY NO. 4:**

PDL incorporates its General Objections, set forth above, here. In addition, under the Supreme Court's opinion in *Markman*, the scope of the claims is a question of law for the Court, and the Court has not yet construed the claims; hence the Court has not yet determined the

scope of "the claimed subject matter." PDL objects to this interrogatory on the grounds that it is, in part, premature: these issues are appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time. Finally, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts." As the added brackets indicate, this interrogatory has at least four subparts (although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories).

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

### INTERROGATORY NO. 5:

Please [18] identify all prior art, and any reference, device, material, or activity ever alleged to be prior art, known to PDL that is relevant, or has been asserted by others to be relevant, to any of the patents-in-suit, related patents, corresponding foreign patents, or related applications, including, without limitation, [19] the date, source, and circumstances under which PDL first became aware thereof, [20] whether the reference, device, material, or activity was known to any inventor named on or prosecuting attorneys or agents of the patents-in-suit before the issue date of each such patent, and [21] an identification of all documents and things concerning such prior art, including, without limitation, any claim charts, declarations, or other descriptive, negotiation, prosecution, or litigation materials provided to or by PDL.

### RESPONSE TO INTERROGATORY NO. 5:

PDL incorporates its General Objections, set forth above, here. In addition, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts." As the added brackets indicate, this interrogatory has at least four subparts (although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories).

PDL objects to this interrogatory on the grounds that it is, in part, premature: these issues are appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

## INTERROGATORY NO. 6:

Separately, for each asserted claim of the patents-in-suit, [22] state whether PDL contends that objective indicia (e.g., commercial success, long-felt need, failed attempts of others to solve, initial skepticism, industry recognition and praise, copying, or imitation by others) support the non-obviousness of each such claim, [23] describe in detail all of the factual and legal bases for any such contention, and [24] identify all documents that either support or refute and persons with knowledge of, including the subject matter known by any such person, any such contention.

## RESPONSE TO INTERROGATORY NO. 6:

PDL incorporates its General Objections, set forth above, here. In addition, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts," although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories. As the added brackets indicate, this interrogatory has at least three subparts. PDL objects to this interrogatory on the grounds that it is, in part, premature: these issues are appropriately (and routinely) the subject of expert discovery, and Alexion will receive expert testimony proffered on behalf of PDL that sets forth PDL's position on these issues at the appropriate time.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

**INTERROGATORY NO. 7:**

[25] Please identify each person who was substantially involved in the prosecution of any of the patent applications that matured into any of the patents-in-suit, and other patents related to the patents-in-suit, including but not limited to those patents from which the patents-in-suit in whole or in part claim priority. For each such person, please provide their current employer, job title and description, home address, relationship with PDL, and [26] state the nature and extent of her involvement in such prosecution and [27] identify every document relating to such involvement.

**RESPONSE TO INTERROGATORY NO. 7:**

PDL incorporates its General Objections, set forth above, here. In addition, Rule 33 of the Federal Rules of Civil Procedure allows only 25 interrogatories per party, "including all discrete subparts," although PDL has agreed to Alexion's request that each party be allowed 30 interrogatories. As the added brackets indicate, this interrogatory has at least three subparts.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

To the extent that this Interrogatory calls for information that would be reflected in a privilege log, PDL will provide a privilege log upon such terms as the parties agree for mutual exchanges of privilege logs.

### INTERROGATORY NO. 8:

[287] Please describe in detail the factual and legal bases for PDL's contention that Alexion has willfully infringed any claim of the patents-in-suit, including PDL's contention that Alexion has had actual and constructive knowledge of the patents-in-suit. [29] This detailed description should include, without limitation, an identification of any document, information or tangible item that supports, refutes, or otherwise concerns PDL's contentions.

### RESPONSE TO INTERROGATORY NO. 8:

PDL incorporates its General Objections, set forth above, here. In addition, the "legal bases" for PDL's contention that it is entitled to willful infringement damages are beyond the permitted scope of discovery as established in Rule 26 of the Federal Rules of Civil Procedure, and PDL objects on that basis. In addition, and separately, an interrogatory that seeks the "legal bases" for PDL's contention is improper: it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine, and PDL objects on this additional, and separate, basis.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained. To the extent that this Interrogatory calls for information that would be reflected in a privilege log, PDL will provide a privilege log upon such terms as the parties agree for mutual exchanges of privilege logs.

## INTERROGATORY NO. 9:

Please [30] describe in detail the factual and legal bases for PDL's contention that it is entitled to damages in the above-captioned action, including [31] an identification of what PDL contends to be the reasonable royalty rate for the patents-in-suit and all bases for that contention. This detailed description should include, without limitation, [32] an identification of any document, information or tangible item that supports, refutes, or otherwise concerns PDL's contentions.

## RESPONSE TO INTERROGATORY NO. 9:

PDL incorporates its General Objections, set forth above, here. In addition, the "legal bases for PDL's contention that it is entitled to damages in the above-captioned action" are beyond the permitted scope of discovery as established in Rule 26 of the Federal Rules of Civil Procedure, and PDL objects on that basis. In addition, and separately, an interrogatory that seeks the "legal bases for PDL's contention that it is entitled to damages in the above-captioned action" is improper: it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine, and PDL objects on this additional, and separate, basis. Finally, PDL objects to this interrogatory on the grounds that it is, in part, premature: damages is appropriately (and routinely) the subject of expert discovery, and Alexion will receive an expert report from PDL that sets forth PDL's position on the actual damages to which it is entitled.

Subject to these objections, PDL responds as follows: Rule 33(d) of the Federal Rules of Civil Procedure provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." Pursuant to Fed. R. Civ. P. 33(d), PDL will provide such business records from which the response to this interrogatory may be ascertained.

PDL objects to and, other than the response above, will not further respond to

11

subparts [31] and [32], as each exceeds the agreed-to 30-interrogatory limit.

## INTERROGATORY NO. 10:

[33] Please describe in detail the factual and legal bases for PDL's contention that the above-captioned case is exceptional and that [34] PDL is entitled to its attorneys' fees in the above-captioned action. This detailed description should include, without limitation, an identification of any document, information or tangible item that supports, refutes, or otherwise concerns PDL's contentions.

## RESPONSE TO INTERROGATORY NO. 10:

PDL objects to and will not respond to this interrogatory, as it exceeds the agreed-to 30-interrogatory limit.

Separately, PDL incorporates its General Objections, set forth above, here. In addition, the "legal bases" for PDL's contention are beyond the permitted scope of discovery as established in Rule 26 of the Federal Rules of Civil Procedure, and PDL objects on that basis. In addition, and separately, an interrogatory that seeks the "legal bases" for PDL's contention is improper: it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine, and PDL objects on this additional, and separate, basis.

Separately, and had this interrogatory been within the agreed-to 30-interrogatory limit, PDL would have provided business records from which the response to this interrogatory could be ascertained pursuant to Fed. R. Civ. P. 33(d), which provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

## INTERROGATORY NO. 11:

[35] Please identify and describe each direct and indirect license under any of the patents-in-suit, including when each of such licenses was granted, the terms and negotiates of each such license, and whether it is currently in force or when it terminated.

## RESPONSE TO INTERROGATORY NO. 11:

PDL objects to and will not respond to this interrogatory, as it exceeds the agreed-to 30-interrogatory limit.

Separately, PDL incorporates its General Objections, set forth above, here.  Had this interrogatory been within the agreed-to 30-interrogatory limit, PDL would have provided business records from which the response to this interrogatory could be ascertained pursuant to Fed. R. Civ. P. 33(d), which provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

## INTERROGATORY NO. 12:

[36]  Please identify and describe all testing of Soliris® and/or eculizumab by or on behalf of PDL, including without limitation, results and conclusions, and each and every person involved in such testing.  For each such person please identify their current employer, work address, job title and description, home address, relationship with PDL, and the bases for their knowledge of such testing.

## RESPONSE TO INTERROGATORY NO. 12:

PDL objects to and will not respond to this interrogatory, as it exceeds the agreed-to 30-interrogatory limit.

Separately, PDL incorporates its General Objections, set forth above, here.  Had this interrogatory been within the agreed-to 30-interrogatory limit, PDL would have provided business records from which the response to this interrogatory could be ascertained pursuant to Fed. R. Civ. P. 33(d), which provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the

interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

## INTERROGATORY NO. 13:

Please describe in detail the factual and legal bases for PDL's defenses of [37] laches and [38] unclean hands. This detailed description should include, without limitation, [39] an identification of any document, information or tangible item that supports, refutes, or otherwise concerns PDL's contentions.

## RESPONSE TO INTERROGATORY NO. 13:

PDL objects to and will not respond to this interrogatory, as it exceeds the agreed-to 30-interrogatory limit.

Separately, PDL incorporates its General Objections, set forth above, here. In addition, the "legal bases" for PDL's contention are beyond the permitted scope of discovery as established in Rule 26 of the Federal Rules of Civil Procedure, and PDL objects on that basis. In addition, and separately, an interrogatory that seeks the "legal bases" for PDL's contention is improper: it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine, and PDL objects on this additional, and separate, basis.

Separately, and had this interrogatory been within the agreed-to 30-interrogatory limit, PDL would have provided business records from which the response to this interrogatory could be ascertained pursuant to Fed. R. Civ. P. 33(d), which provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

## INTERROGATORY NO. 14:

[40] Please identify each litigation or judicial or administrative proceeding, whether within or outside the United States, in which the ownership, inventorship, scope, validity or enforceability of any of the patents-in-suit, corresponding foreign patents, or any patent directly or indirectly claiming priority or benefit from, or granting or conferring priority

14

upon any application supporting any of the patents-in-suit, was at issue. Please state the status and disposition of each such proceeding.

### RESPONSE TO INTERROGATORY NO. 14:

PDL objects to and will not respond to this interrogatory, as it exceeds the agreed-to 30-interrogatory limit.

Separately, PDL incorporates its General Objections, set forth above, here.

Separately, and had this interrogatory been within the agreed-to 30-interrogatory limit, PDL would have provided business records from which the response to this interrogatory could be ascertained pursuant to Fed. R. Civ. P. 33(d), which provides that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served," the party upon whom the interrogatory has been served may "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Matthew D. Powers
Vernon M. Winters
Eric P. Xanthopoulos
John D. Beynon
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3000

August 22, 2007

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
302-658-9200
*Attorneys for Plaintiff and Counter-Defendant*
*PDL BIOPHARMA, INC.*

1218243

15

Appendix 1 (claim charts)

| Language from Claim of PDL's Infringed Patent | Infringement by Alexion's Soliris (based on Alexion's disclosure of the amino acid sequence in Thomas et al. (1996), Inhibition of complement activity by humanized anti-C5 antibody and single-chain Fv, Mol. Immunol. 33(17):1389-1401; see also Hillman et al., The Complement Inhibitor Eculizumab in Paroxysmal Nocturnal Hemoglobinuria, 355 N. Engl. J. Med 1233-1243 at n.13 (Sept 21, 2006), in which Alexion officials represented that Thomas disclosed the amino acid sequence for Soliris; and U.S. Pat. No. 6,355,245 | Infringement Literal, Doctrine of Equivalents, or Both? |
|---|---|---|
| G.L. Queen, W.P. Schneider, and H.E. Selick, Polynucleotides encoding improved humanized immunoglobulins, U.S. Pat. No. 5,639,761 (Filed Jun. 7 1995; Issued Dec 2 1997) | | |
| 1. First and second polynucleotides respectively encoding heavy and light chain variable regions of a humanized immunoglobulin | Thomas et al. describes sequences encoding humanized heavy chain and light chain variable regions. See, e.g., pp. 1392-93, Figs. 1A, 1B. | To the extent this preamble is a limitation, both |
| having complementarity determining regions (CDRs) from a donor immunoglobulin and heavy and light chain variable region frameworks from human acceptor immunoglobulin heavy and light chain frameworks | Thomas et al. describes humanized heavy chain and light chain variable sequences having CDRs from a donor immunoglobulin, the mouse monoclonal antibody, 5G1.1, and framework sequences from human acceptor immunoglobulins, H20C3H (for heavy chain sequence) and I.23 (for light chain sequence). See, e.g., "For CDR grafting, the 5G1.1 heavy and light chain complementarity determining regions were introduced into the human heavy variable region H20C3H (Weng et al., 1992) to yield h5G1.1VHC (Fig. 1A) or the human light variable region I.23 (Klein et al., 1993) to yield h5G1.1VLC (Fig. 1B), respectively." pp. 1390-91. See, e.g., "Comparison of the murine 5G1.1 variable region with the human acceptor variable regions H20C3H and I.23 suggested that the murine and human framework regions differed at three positions important for CDR structure." p. 1394. | Both |
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant of at least about $10^8$ $M^{-1}$ | Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM ($= 1 \times 10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d = 100$ pM) and a slow dissociation rate ($k_{off} = 1.0 \times 10^{-4}$/sec)"). This translates to an affinity constant, $K_a$, of $1 \times 10^{10}$M$^{-1}$. | Both |

| | | |
|---|---|---|
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant . . . no greater than about four-fold that of the donor immunoglobulin | U.S. Pat. No. 6,355,245 reports the dissociation constant for the full length (donor) mouse monoclonal antibody, 5G1.1, directed against human complement protein C5:<br><br>$K_d$ of 30pM (= 3 x $10^{-11}$M).  This translates to a $K_A$ of 3.33333333 x $10^{10}$M$^{-1}$.  '245 at Fig. 8; col. 39, lines 31-61.<br><br>Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM (= 1 x $10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d$ = 100 pM) and a slow dissociation rate ($k_{off}$ = 1.0 x $10^{-4}$/sec)").<br><br>This translates to an affinity constant, $K_a$, of 1 x $10^{10}$M$^{-1}$. | Both |
| wherein the sequence of the humanized immunoglobulin heavy chain variable region framework is at least 65% identical to the sequence of the donor immunoglobulin heavy chain variable region framework | Applying the Kabat method of determining CDRs, CDRs comprise 35 amino acids of the heavy chain variable region and framework comprises the remaining 87 amino acids of hG1.1VHC.  See pp. 1392-93, Fig. 1A.<br><br>Heavy chain framework regions of h5G1.1VHC and 5G1.1 differ by 23 amino acids.  Thus, they are 64/87 = 73.56% identical.<br><br>Applying the Chothia and Lesk method of determining CDRs, CDRs comprise 22 amino acids of the heavy chain variable region and framework comprises the remaining 100 amino acids of hG1.1VHC. See pp. 1392-93, Fig. 1A.<br><br>Heavy chain framework regions of h5G1.1VHC and 5G1.1 differ by 23 amino acids.  Thus, they are 23/100 = 77.00% identical. | Both |
| wherein the sequence of the humanized immunoglobulin heavy chain variable region framework . . . comprises at least 70 amino acid residues identical to those in the acceptor human immunoglobulin heavy chain variable region framework. | Applying the Kabat method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 85 identical amino acids.  See pp. 1392-93, Fig. 1A.<br><br>Applying the Chothia and Lesk method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 88 identical amino acids.  See pp. 1392-93, Fig. 1A. | Both |
| C.L. Queen, M.S. Co. W.P. Schneider, and H.E. Selick, Humanized Immunoglobulins, U.S. Pat. No. 5,639,762 (Filed Jun. 7, 1995; Issued Dec. 21, 1997) | | |
| 1. A humanized immunoglobulin | Thomas et al. describes the production of "humanized" immunoglobulins. | To the extent this preamble is a limitation, |

17

|  |  | both |
| --- | --- | --- |
| having complementarity determining regions (CDRs) from a donor immunoglobulin and heavy and light chain variable region frameworks from human acceptor immunoglobulin heavy and light chain frameworks | Thomas et al. describes humanized heavy chain and light chain variable sequences having CDRs from a donor immunoglobulin, the mouse monoclonal antibody, 5G1.1, and framework sequences from human acceptor immunoglobulins, H20C3H (for heavy chain sequence) and I.23 (for light chain sequence).

"For CDR grafting, the 5G1.1 heavy and light chain complementarity determining regions were introduced into the human heavy variable region H20C3H (Weng et al., 1992) to yield h5G1.1VHC (Fig. 1A) or the human light variable region I.23 (Klein et al., 1993) to yield h5G1.1VLC (Fig. 1B), respectively." pp. 1390-91.

"Comparison of the murine 5G1.1 variable region with the human acceptor variable regions H20C3H and I.23 suggested that the murine and human framework regions differed at three positions important for CDR structure." p. 1394. | Both |
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant of at least $10^7$ M$^{-1}$ | The affinity constant, $K_a$, is measured as [Ab-Ag]/[Ab][Ag], where Ab-Ag = antibody-antigen complex, Ab = free antibody, and Ag = free antigen. See J. Kuby, *Immunology* at 136 (1994 2nd ed. W.H. Freeman).

The dissociation constant, $K_d$, is $1/K_a$.

Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM (= 1 x $10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d$ = 100 pM) and a slow dissociation rate ($k_{off}$ = 1.0 x $10^{-4}$/sec)").

This translates to an affinity constant, $K_a$, of 1 x $10^{10}$M$^{-1}$. | Both |
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant of . . . no greater than about four-fold that of the donor immunoglobulin | U.S. Pat. No. 6,355,245 reports the dissociation constant for the full length (donor) mouse monoclonal antibody, 5G1.1, directed against human complement protein C5:

$K_d$ of 30pM (= 3 x $10^{-11}$M). This translates to a $K_A$ of 3.33333333 x $10^{10}$M$^{-1}$. '245 at Fig. 8; col. 39, lines 31-61.

Thomas et al. and the '245 patent do not report an affinity constant for full length humanized antibody.

Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM (= 1 x $10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d$ = 100 pM) and a slow dissociation rate ($k_{off}$ = 1.0 x $10^{-4}$/sec)").

This translates to an affinity constant, $K_a$, of 1 x $10^{10}$M$^{-1}$. | Both |
| wherein the sequence of the humanized immunoglobulin heavy chain variable region framework is at least 65% identical to the | Applying the Kabat method of determining CDRs, CDRs comprise 35 amino acids of the heavy chain variable region and framework comprises the remaining 87 amino acids of hG1.1VHC. See pp. 1392-93, Fig. 1A.

Heavy chain framework regions of h5G1.1VHC and 5G1.1 differ by | Both |

| | | |
|---|---|---|
| sequence of the donor immunoglobulin heavy chain variable region framework | 23 amino acids. Thus, they are 64/87 = 73.56% identical.<br><br>Applying the Chothia and Lesk method of determining CDRs, CDRs comprise 22 amino acids of the heavy chain variable region and framework comprises the remaining 100 amino acids of hG1.1VHC. See pp. 1392-93, Fig. 1A.<br><br>Heavy chain framework regions of h5G1.1VHC and 5G1.1 differ by 23 amino acids. Thus, they are 23/100 = 77.00% identical. | |
| wherein the sequence of the humanized immunoglobulin heavy chain variable region framework . . . comprises at least 70 amino acid residues identical to an acceptor human immunoglobulin heavy chain variable region amino acid sequence. | Applying the Kabat method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 85 identical amino acids. See pp. 1392-93, Fig. 1A.<br><br>Applying the Chothia and Lesk method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 88 identical amino acids. See pp. 1392-93, Fig. 1A. | Both |
| '370 patent: C.L. Queen and H.E. Selick Humanized immunoglobulins and methods of making the same, U.S. Pat. No.6,180,370 (Filed June 7, 1995; Issued Jan. 30, 2001) | | |
| 2. A method of producing a humanized immunoglobulin, the method comprising: | Thomas et al. discloses a method of producing a humanized antibody. | To the extent this preamble is a limitation, both |
| providing a cell containing DNA segments encoding heavy and light chain variable regions of a humanized immunoglobulin | "Similarly, a plasmid capable of expressing the CDR grafted Fab, h5G1.1 Fab (CDR), was constructed by cloning the variable regions h5G1.1VHC and h5G1.1VLC into pAPEX-3P. . . . 293-EBNA cells (Invitrogen, San Diego, CA, U.S.A.) were transfected with the pAPEX-3P expression plasmids and selected using 1 ug/ml puromycin." p. 1391.<br><br>"Two scFv proteins were constructed by the overlapping PCR technique. The h5G1.1 scFv (CDR) contained the h5G1.1VLC variable region, linked to the h5G1.1VHC variable region; . . . These scFv cDNAs were cloned into a plasmid in which expression is driven by the trc promoter. *Escherichia coli* strain ME1 was transformed with the resulting expression plasmids." p. 1391.<br><br>Thomas et al. states that an intact humanized antibody (IgG4 isotype), referred to as h5G1.1 HuG4, was constructed. p. 1396 ("Having demonstrated the effective humanization of the 5G1.1 variable regions, an intact humanized antibody (IgG4 isotype) was constructed and produced in 293-EBNA cells.") | Both |

| | | |
|---|---|---|
| having complementarity determining regions (CDRs) from a donor immunoglobulin and heavy and light chain variable region frameworks from human acceptor immunoglobulin heavy and light chain frameworks | Thomas et al. describes humanized heavy chain and light chain variable sequences having CDRs from a donor immunoglobulin, the mouse monoclonal antibody, 5G1.1, and framework sequences from human acceptor immunoglobulins, H20C3H (for heavy chain sequence) and L23 (for light chain sequence). "For CDR grafting, the 5G1.1 heavy and light chain complementarity determining regions were introduced into the human heavy variable region H20C3H (Weng et al., 1992) to yield h5G1.1VHC (Fig. 1A) or the human light variable region L23 (Klein et al., 1993) to yield h5G1.1VLC (Fig. 1B), respectively." pp. 1390-91. "Comparison of the murine 5G1.1 variable region with the human acceptor variable regions H20C3H and L23 suggested that the murine and human framework regions differed at three positions important for CDR structure." p. 1394.. | Both |
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant of at least about $10^8$ M$^{-1}$ | The affinity constant, $K_a$ is measured as [Ab-Ag]/[Ab][Ag], where Ab-Ag = antibody-antigen complex, Ab = free antibody, and Ag = free antigen.  See J. Kuby, *Immunology* at 136 (1994 2nd ed. W.H. Freeman). The dissociation constant, $K_d$ is $1/K_a$. Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM (= 1 x $10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d$ = 100 pM) and a slow dissociation rate ($k_{off}$ = 1.0 x $10^{-4}$/sec)"). This translates to an affinity constant, $K_a$, of 1 x $10^{10}$M$^{-1}$. | Both |
| which humanized immunoglobulin specifically binds to an antigen with an affinity constant . . . no greater than about four-fold that of the donor immunoglobulin | U.S. Pat. No. 6,355,245 reports the dissociation constant for the full length (donor) mouse monoclonal antibody, 5G1.1, directed against human complement protein C5: $K_d$ of 30pM (= 3 x $10^{-11}$M).  This translates to a $K_A$ of 3.33333333 x $10^{10}$M$^{-1}$. '245 at Fig. 8; col. 39, lines 31-61. Thomas et al. report that h5G1.1 scFv fragments have a $K_d$ of 100pM (= 1 x $10^{-10}$M). p. 1399 ("Calculations based on the competitive ELISA data (Fig. 5), as well as direct measurements of h5G1.1 scFv (CDR) binding to human C5 by surface plasmon resonance (data not shown), indicated a very high affinity of the scFv for C5 ($K_d$ = 100 pM) and a slow dissociation rate ($k_{off}$ = 1.0 x $10^{-4}$/sec)"). This translates to an affinity constant, $K_a$, of 1 x $10^{10}$M$^{-1}$. | Both |
| wherein the sequence of the acceptor immunoglobulin heavy chain variable region framework is at least 65% identical to the sequence of the donor | Applying the Kabat method of determining CDRs, Thomas et al. discloses the use of an acceptor heavy chain variable region framework from H20C3H that differs by 25 (out of 87 possible) amino acids from the donor framework in 5G1.1, making the framework regions 71.26% (62/87) identical.  See pp. 1392-93, Fig. 1A. Thus, H20C3H framework is at least 65% identical to the donor framework. Applying the Chothia and Lesk method of determining CDRs, | Both |

20

| | | |
|---|---|---|
| immunoglobulin heavy chain variable region framework | Thomas et al. discloses the use of an acceptor heavy chain variable region framework from H20C3H that differs by 35 (out of 100 possible) amino acids from the donor framework in 5G1.1, making the framework regions 65.00% (65/100) identical. See pp. 1392-93, Fig. 1A. Thus, H20C3H framework is at least 65% identical to the donor framework. | |
| the humanized immunoglobulin heavy chain variable region framework comprises at least 70 amino acid residues identical to those in the acceptor human immunoglobulin heavy chain variable region framework | Applying the Kabat method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 85 identical amino acids. See pp. 1392-93, Fig. 1A.  Applying the Chothia and Lesk method of determining CDRs, heavy chain framework regions of h5G1.1VHC and H20C3H have 88 identical amino acids. See pp. 1392-93, Fig. 1A. | Both |
| wherein percentage sequence identity is determined by aligning amino acids in said frameworks by Kabat numbering; and | See pp. 1392-93, Fig. 1A ("Fig. 1. Sequence of the 5G1.1 heavy (A) and light (B) variable regions. The DNA sequence and the translated amino acid sequence of the cloned 5G1.1 variable regions are shown. Amino acid position is numbered according to Kabat et al. (1992), with the complementarity determining regions according to the hypervariable sequence definition (Kabat et al., 1992) or the structural variability definition (Chothia and Lesk, 1987) underlined and overlined, respectively. . . . The protein sequences of the human variable regions H20C3H and L23 are shown below the appropriate 5G1.1 variable regions. h5G1.1VHC and h5G1.1VLC denote humanized heavy and light variable regions constructed by grafting the CDRs from 5G1.1 on to the H20C3H and L23 human framework regions."). | Both |
| expressing the DNA segments in the cell to produce the humanized immunoglobulin. | "Similarly, a plasmid capable of expressing the CDR grafted Fab, h5G1.1 Fab (CDR), was constructed by cloning the variable regions h5G1.1VHC and h5G1.1VLC into pAPEX-3P. . . . 293-EBNA cells (Invitrogen, San Diego, CA, U.S.A.) were transfected with the pAPEX-3P expression plasmids and selected using 1 ug/ml puromycin. Secreted Fabs were purified using protein G Sepharose chromatography as described (Evans et al., 1995b), dialysed into PBS, and stored at 4°C." p. 1391.  "Two scFv proteins were constructed by the overlapping PCR technique. The h5G1.1 scFv (CDR) contained the h5G1.1VLC variable region, linked to the h5G1.1VHC variable region; . . . These scFv cDNAs were cloned into a plasmid in which expression is driven by the trc promoter. Escherichia coli strain ME1 was transformed with the resulting expression plasmids. . . . The production of recombinant scFv was induced by the addition of 1mM isopropylthio-B-D-galactoside when the $OD_{550}$ of the culture reached 10." p. 1391.  Thomas et al. states that an intact humanized antibody (IgG4 isotype), referred to as h5G1.1 HuG4, was constructed. p. 1396 ("Having demonstrated the effective humanization of the 5G1.1 variable regions, an intact humanized antibody (IgG4 isotype) was constructed and produced in 293-EBNA cells.") | Both |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 22, 2007, copies of the foregoing were caused to be served on upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll
Andrew A. Lundgren
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Flr.
Wilmington, DE 19801

### BY EMAIL

Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
Kirkland & Ellis
153 East 53rd Street
New York, NY 10022-4611

Jack B. Blumenfeld (#1014)

**Exhibit 4**

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE
201 REDWOOD SHORES PARKWAY
REDWOOD SHORES, CALIFORNIA 94065
(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
NEW YORK
PARIS
PRAGUE
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

650-802-3174
eric.xanthopoulos@weil.com

December 28, 2007

**VIA EMAIL**

Christine Willgoos, Esq.
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY  10022-4611
cwillgoos@kirkland.com

                    Re:    **PDL Biopharma, Inc. v. Alexion**
                           **Pharmaceuticals, Inc.**

Dear Christine:

       We write regarding PDL's supplemental responses to Alexion's interrogatories, and specifically supplementation to identify asserted claims for claim construction purposes. That supplementation would be based on Alexion's FDA submission. We asked that Alexion allow the named inventors to see Alexion's FDA submission – subject, of course, to the named inventors being otherwise subject to the Protective Order's confidentiality requirements. Alexion declined PDL's request. Alexion's refusal leaves PDL unable to supplement its interrogatory responses, particularly for the asserted method claims, based on Alexion's FDA submission. Accordingly, until such time as Alexion withdraws its refusal to allow the named inventors to see Alexion's FDA submission, PDL is unable to supplement its interrogatory responses based on Alexion's FDA submission.

WEIL, GOTSHAL & MANGES LLP

Christine Willgoos, Esq.
December 28, 2007
Page 2


However, for purposes of identifying claims that Alexion may wish the Court to construe, we enclose the attached Infringement Chart, in which sections of Alexion's FDA submission demonstrate infringement of the claims identified in the attached. Please note that the Infringement Chart has been labeled as "Highly Confidential – Outside Attorneys Only" because it quotes information that Alexion has so designated.

Each of the excerpts in the attached are contained in reports (or other separate documents). We ask that Alexion allow the named inventors to review those reports, subject to the other provisions of the Protective Order.

Please be advised that it would not be appropriate to ask the named inventors, or any other witness that PDL deposes, questions at deposition about Alexion's FDA submission, or any other documents that Alexion designated as "Highly Confidential," without first giving such witnesses a reasonable opportunity before the deposition to review such documents. If Alexion fails to give such notice and tries to ask such questions, we will be forced to move for a protective Order. If for some reason you disagree that advance reasonable notice is required, please let us know so that we can try to resolve the issue before any such depositions.

Although we agreed to provide the attached to you on December 31, we are sending the attached today, as Weil's offices are closed December 31 (and January 1).

Sincerely,

*Eric Xanthopoulos*
*same per VW*

Eric P. Xanthopoulos


Enclosure

**Exhibit 5**

REDACTED

**Exhibit 6**

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

February 28, 2008

**VIA FACSIMILE & EMAIL**

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis
153 East 53rd Street
New York, New York 10022-4611

    Re:    **PDL BioPharma v. Alexion, Inc.**
           **D. Del. C.A. No. 07-156**

Dear Gerald:

    We have received Alexion Pharmaceuticals, Inc.'s letter of February 28, 2008 in
which it proposed 24 claim terms/phrases for construction. (The corresponding list for PDL
BioPharma, Inc., contained five.) Based on Alexion's list, it appears that Alexion misapprehends
the asserted claim in this litigation and in particular that Alexion may have misunderstood PDL's
amended interrogatory responses. As a reminder, the asserted claims are as follows:

- '761 Patent: independent claims 1 and 35; dependent claims (independent
  claim(s) bracketed) 2 [1]), 6 [1], 8 [1], 17 [6], 18 [1], 26 [1], and 33 [1];

- '762 Patent: independent claims 1, 14, and 16; dependent claims
  (independent claim(s) bracketed) 2 [1], 3 [1], 10 [1-3], 11 [1], 12 [1], 13
  [1], 18 [13], and 19 [10]; and

- '370 Patent: independent claims 1, 2, 5, 6, and 28; dependent claims
  (independent claim(s) bracketed) 25 [2], 26 [5], and 27 [6].

    A number of the claim terms/phrases that Alexion identified (e.g., "hypervariable
regions," "outside the hypervariable regions," "outside the Kabat and Chothia CDRs") do not
appear in the claims at issue. In particular, claim terms/phrases nos. 14, 19-24 on Alexion's list
do not appear in the asserted claims and are thus not relevant to any issue in the litigation.
Accordingly, there is no need for the Court to construe them.

WEIL, GOTSHAL & MANGES LLP

Gerald J. Flattman, Jr. Esq.
February 28, 2008
Page 2


       Could you please confirm by the end of the day on Friday, February 29, 2008 that Alexion is withdrawing nos. 14, 19-24 on its February 27 list.

       Thank you.

              Very truly yours,

              Vernon M. Winters

cc:  Jack B. Blumenfeld, Esq. (via email)

**Exhibit 7**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Gerald J. Flattmann, Jr.
To Call Writer Directly:
(212) 446-4720
gflattmann@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: (212) 446-4900

February 29, 2008

**BY EMAIL AND FIRST CLASS MAIL**

Vernon M. Winters
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Re:     *PDL Biopharma, Inc. v. Alexion Pharmaceuticals, Inc.*

Dear Vern:

        This is in response to your letter of February 28, 2008 regarding Alexion's proposed claim terms for construction. We did not misapprehend the asserted claims in the litigation. We identified claim terms relevant to PDL's claim of infringement and to Alexion's counterclaim of invalidity. Accordingly, we are not withdrawing claim term numbers 14 or 19-24 on our February 27 list.

                                        Sincerely,

                                        Gerald J. Flattmann, Jr.

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.