IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PDL BIOPHARMA, INC. | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    C.A. No.: 07-156-JJF |
| ALEXION PHARMACEUTICALS, INC. | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**ALEXION'S BRIEF IN OPPOSITION TO PDL'S
MOTION TO COMPEL DISCOVERY FROM ALEXION**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Andrew A. Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
(212) 446-4800

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF THE ARGUMENT .................................................................................2

STATEMENT OF FACTS ............................................................................................2

ARGUMENT ...........................................................................................................4

    I.       PDL'S MOTION TO COMPEL IS PREMATURE .................................................4

    II.      ALEXION HAS PRODUCED OR WILL PRODUCE
           RELEVANT AND RESPONSIVE DOCUMENTS ................................................5

          A.    Alexion Has Produced Or Will Produce All Relevant
                Documents It Previously Agreed To Produce ...........................................5

          B.    Alexion Has Produced Or Will Produce Documents Subject
                To Its Well-Founded Relevancy, Breadth And Burden
                Objections ...........................................................................................5

          C.    Documents Related To The OMRF Matter Are Unrelated
                 And Irrelevant To The Parties' Dispute.................................................7

          D.    Alexion Has Properly Responded to Request Nos. 7 and 11
                Concerning The Testing And Characteristics Of Soliris$^{®}$ ........................8

CONCLUSION ........................................................................................................9

## NATURE AND STAGE OF THE PROCEEDINGS

On March 16, 2007, PDL Biopharma, Inc. ("PDL") filed a Complaint against Alexion Pharmaceuticals, Inc. ("Alexion"), alleging the willful infringement of three antibody humanization patents: U.S. Patents Nos. 5,593,761 ("the '761 Patent"), and 5,693,762 ("the '762 Patent"), and 6,180,370 ("the '370 Patent") (collectively "the patents-in-suit"). D.I. 1. Alexion filed its Answer and Counterclaims on June 4, 2007 and PDL filed its Answer to Alexion's Counterclaims on June 25, 2007. D.I. 14. Alexion filed its Amended Counterclaims on December 7, 2007. D.I. 45. PDL filed its Reply to Alexion's Amended Counterclaims on January 4, 2008. D.I. 46.

This case is in fact discovery. Alexion and PDL have served their respective initial disclosures pursuant to Rule 26. D.I. 22, 30. The parties have also exchanged their initial discovery requests and responses. D. I. 17-19, 28-30, 47; Ex. A. Additional discovery requests and responses have also been exchanged. D.I. 47, 56, 57, 59, 60, 73. The parties are in the process of developing a list of mutually agreed-upon search terms for electronic discovery.

On February 27, 2008, the parties exchanged initial lists of claim terms for construction. Subject to the Court's approval, the parties have agreed to extend the Markman briefing schedule by approximately one month, and fact discovery by approximately three months. Under this agreement, fact discovery will proceed until October 2, 2008. D.I. 74, 75.

Alexion filed a motion to bifurcate and stay discovery and trial of damages and willfulness issues on September 6, 2007. D.I. 32. That motion is fully briefed. The Court has not yet ruled on the motion.

PDL filed a Motion to Compel Discovery from Alexion on March 10, 2007. D.I. 63. This is Alexion's response to PDL's Motion to Compel Discovery.

## SUMMARY OF THE ARGUMENT

PDL's Motion to compel discovery is premature. The parties are in ongoing discovery during which they have exchanged discovery requests and responses as well as produced thousands of documents. Pending the Court's approval and according to the parties' agreement, fact discovery will proceed for at least six more months. Further electronic discovery will commence upon an agreement between the parties as to the scope of electronic discovery.

Alexion has produced or will produce all relevant and responsive documents. In its response to PDL's document requests, Alexion agreed to produce certain documents, subject to its well-founded objections. To date, Alexion has produced over 77,800 pages of relevant and responsive documents. Many of PDL's remaining requests are overly broad, unduly burdensome, or irrelevant to the parties' dispute.

Compelling discovery at such an early stage is illogical and inappropriate in view of the extended time for discovery, the lack of an agreement regarding the scope of electronic discovery, and Alexion's responsive document production to date.

## STATEMENT OF FACTS

Alexion is a biopharmaceutical company that focuses on developing novel antibody therapeutics targeting the treatment of patients with a wide array of severe disease states, including hematologic diseases, cancer, and autoimmune disorders. Alexion developed, tested, and now produces the humanized antibody Soliris®, which is the first and only therapy approved for the treatment of paroxysmal nocturnal hemoglobinuria ("PNH"), a rare, disabling and life-threatening blood disorder characterized by chronic red blood cell destruction, or hemolysis. On March 16, 2007, the FDA approved Soliris® for the treatment of PNH. On the

2

same day, PDL filed its Complaint against Alexion, alleging infringement of the patents-in-suit. D.I. 1.

To date, Alexion has produced over 77,800 pages of documents. Alexion's document production is ongoing. In the fall of 2007, PDL suggested that the parties postpone the exchange of electronic search terms until after the Court ruled on Alexion's motion to bifurcate. Ex. B. Alexion agreed. Ex. C. Alexion's motion is still pending. On January 16, 2008, however, Alexion proposed exchanging search terms for electronic documents to avoid further discovery delays. Ex. D. Since that date, the parties have been working towards agreement concerning the scope of electronic discovery.

On February 8, 2008, PDL initially provided Alexion with nearly 500 search terms, including such overbroad and unduly burdensome terms as "Alexion Pharmaceuticals, Inc. (Alexion)," "agreement*," "contract*," and "Dear." Ex. E. Alexion objected to many of PDL's proposed search terms as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. PDL submitted a revised list which, although narrowed, still included many overbroad and burdensome search terms. Ex. F. For example, PDL included a series of three digit numbers (meant to represent specific patents or patent applications), that together encompass over 1 <u>million</u> documents that were not captured by PDL's other search terms.

Despite the fact that these search terms were unreasonable on their face, Alexion searched these terms in their electronic files to determine the number of unique documents that the search terms would capture. Alexion uncovered approximately two million unique documents. Alexion, however, should not be expected to search these documents to locate the small percentage that are responsive to PDL's document requests. The parties are working to

come to agreement regarding the scope of electronic discovery.  Alexion expects that the parties will amicably resolve these issues within the next week or two, at which time Alexion can begin to review and produce a reasonable scope of electronic documents.

## ARGUMENT

### I.     PDL'S MOTION TO COMPEL IS PREMATURE

PDL's motion to compel discovery prematurely requests documents during ongoing discovery.  Alexion has already produced over 77,800 pages of documents, and will continue to produce documents as fact discovery proceeds.  Compelling discovery at this early stage is inappropriate, particularly since the parties have been unable to agree on search terms for electronic discovery.

Moreover, pursuant to the parties' recent agreement, fact discovery will proceed for at least six more months.  Indeed, PDL submitted their second, third, and fourth sets of requests for documents, comprising an additional seventy-four document requests within the past two weeks.  D.I. 59, 60, 73.

Alexion has not withheld production of relevant and responsive documents. Contrary to PDL's contentions, Alexion has *not* withheld any document production because of its motion to bifurcate.  In light of the extended discovery schedule and lack of agreement regarding appropriate search terms, PDL's motion is illogical and without merit because it prematurely moves for discovery prior to the time Alexion is required to provide it.

## II.  ALEXION HAS PRODUCED OR WILL PRODUCE RELEVANT AND RESPONSIVE DOCUMENTS

### A.  Alexion Has Produced Or Will Produce All Relevant Documents It Previously Agreed To Produce

Although approximately six months remain in discovery, Alexion has produced documents related to PDL's document requests.  For example, Alexion has already produced documents related to its early access program as requested in Request No. 10 and documents requested in Request No. 19 related to manuals, user guides, white papers, training guides, brochures, instructions for use and specifications for Soliris®.  Ex. A at Response Nos. 10, 19. Alexion has produced its BLA, and has agreed to produce samples of Soliris®.  *See* Ex. A at Request No. 20.  With respect to Request Nos. 2, 4, 21, 22, 95, and 96, Alexion's production is ongoing and will be completed by the close of discovery.  Further, Alexion expects additional document responsive to these requests will be produced pursuant to its electronic document review.

### B.  Alexion Has Produced Or Will Produce Documents Subject To Its Well-Founded Relevancy, Breadth And Burden Objections

Alexion has produced or will produce documents sought in PDL's Request Nos. 14-17, 29, 30, 60, 78, 79, 97-101, 114, and 115, subject to its well-founded objections that narrow the overly broad and unduly burdensome requests to a reasonable scope.  *See* Ex. A.

Request Nos. 14-17 and 60 seek ***all documents*** that constitute, refer to, or reflect Alexion's Humanized Antibody Products and Methods as well as agreements to manufacture; entities manufacturing; indemnity agreements for manufacturing, using, importing, offering to sell, or selling; and time periods and locations where Alexion's Humanized Antibody Products and Methods have been manufactured.  *See* Ex. A.  PDL's requests purport to require Alexion to review and produce thousands, possibly tens or hundreds of thousands, of documents that are

5

neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. *See id.* PDL's requests will include, for example, contracts irrelevant to the current dispute and the patents-in-suit, shipping receipts related to Alexion's products, and invoices related to manufacturing supplies. None of these are relevant to the issues of infringement and validity in this suit. Indeed, Alexion has produced relevant documents, including its Biologics License Application ("BLA"), clinical studies, and internal correspondence responsive to these requests. Moreover, Alexion will continue to produce responsive documents, subject to its objections, including relevant and responsive manufacturing documents, that are uncovered by electronic discovery. *See id.*

Requests Nos. 29, 30, 114, and 115 seek ***all documents*** that constitute, refer to, or reflect communications and proposed, contemplated, or actual statements or explanations to financial or securities analysts, reporters, or any third parties concerning the patents-in-suit or this lawsuit. Requesting such documents that constitute, refer to, or reflect any of these topics is overly broad and unduly burdensome. *See id.* at Response Nos. 29, 30, 114, 115. Subject to its objections, Alexion will continue to produce documents responsive to these requests. *See id.*

Request Nos. 97-101 seek ***all documents*** that constitute, refer to, or reflect communication and work related to Dr. Max Link and the Alexion Compliance and Quality Committee. This request is unduly broad. *See id.* at Response Nos. 97-101. Alexion has agreed to produce documents concerning Dr. Link, such as documents relating to Dr. Link's knowledge of the patents-in-suit and Alexion's humanized antibody products and methods, and documents related to email sent or received by Dr. Link regarding the patents-in-suit. *See id.* at Response Nos. 95, 96, 102. Subject to its objections, Alexion will continue to produce documents responsive to these requests. *See id.* at Response Nos. 95-102.

6

C.    **Documents Related To The OMRF Matter Are Unrelated And Irrelevant To The Parties' Dispute**

Requests Nos. 78 and 79 seek documents related to the previous litigation, *Oklahoma Med. Res. Found. v. Alexion Pharm., Inc.*, No. 07-CV-163 GKF-SAJ (N.D. Okla.) ("the OMRF litigation"). That litigation involved U.S. Patent No. 5,635,178 ("the '178 patent"), (Ex. G), and a license agreement between Oklahoma Medical Research Foundation ("OMRF"), Alexion and Yale University ("Yale") involving the '178 patent. The OMRF litigation was settled in February.

The subject matter of the '178 patent involved in the OMRF litigation is vastly different than the subject matter of the presently asserted patents-in-suit. The '178 patent is directed to administering particular antibodies to certain types of cells, namely platelets or endothelial cells, to inhibit responses that occur when these cells are attacked by the body's own immune system. *See* Ex. G at abstract. Indeed, the '178 patent does not discuss genetic engineering of antibodies, let alone the particular humanized antibodies or humanization techniques discussed in the patents-in-suit. Thus, even broadly speaking, the patented technologies involved in the two suits are vastly different.

Alexion has not, and will not, withhold any documents related to the OMRF litigation that are also relevant to the claims and defenses of this action. For example, Alexion has or will produce the OMRF settlement agreement itself, documents relating to the clinical trials and marketing of Soliris®, and other documents responsive to PDL's requests. However, documents are not relevant to this litigation merely because they were relevant to a different litigation involving different patents directed to different technology.

Moreover, many of the documents PDL requests are publicly available. Further, PDL has subpoenaed similar documents from OMRF. Accordingly, Alexion will produce

7

documents related to Request Nos. 78 and 79, subject to its objections. *See* Ex. A at Response Nos. 78, 79.

    **D.**    **Alexion Has Properly Responded to Request Nos. 7 and 11 Concerning The Testing And Characteristics Of Soliris®**

        Alexion has properly responded to PDL's Request Nos. 7 and 11. *See* Ex. A. PDL's Request No. 7 seeks ***all documents*** related to "actions taken or activities initiated by Alexion" and is overbroad and vague. *See id.* at Response No. 7. For example, it is unclear what PDL seeks when it refers to "activities initiated." Further, this request would purport to include any document related to anything Alexion filed or thought of filing with the FDA. Alexion properly limited the documents sought in Request No. 7 to those documents actually exchanged with the FDA. With respect to Request No. 11, Alexion has already produced documents from the BLA that contain information related to the composition, sequence, and characterization of Soliris®. Further, Alexion is in the process of reviewing and producing additional documents responsive to this request, including, for example, lab notebooks. Alexion will continue to produce documents, subject to its objections, that are responsive to these requests. *See id.* at Response Nos. 7, 11.

**CONCLUSION**

For the reasons stated above, Alexion respectfully requests that the Court deny

PDL's Motion to Compel Discovery from Alexion.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Andrew A. Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
alundgren@ycst.com
(302) 571-6600

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
(212) 446-4800

Dated: March 28, 2008

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on March 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

I further certify that on March 28, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

> Matthew D. Powers, Esquire
> Vernon M. Winters, Esquire
> John D. Beynon, Esquire
> Weil, Gotshal & Manges LLP
> 201 Redwood Shores Parkway
> Redwood Shores, CA  94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll  (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant.*

DB02:5965847.1                                                    066185.1001

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PDL BIOPHARMA, INC.                    )
                                       )
    Plaintiff,                         )
                                       )
    v.                                 )    Case No.: 07-CV-156-***
                                       )
ALEXION PHARMACEUTICALS, INC.          )
                                       )
    Defendant.                         )
                                       )

## ALEXION PHARMACEUTICALS, INC.'S RESPONSES TO PDL BIOPHARMA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

        Pursuant to Federal Rule Of Civil Procedure 33 and Local Rules 26.1 and 26.2,

Defendant Alexion Pharmaceuticals, Inc. ("Alexion") hereby makes the following objections and

responses to Plaintiff PDL BioPharma, Inc.'s ("PDL") First Set Of Requests For Production To

Defendant.

        Pursuant to Federal Rule Of Civil Procedure 26(e), Alexion reserves the right to

supplement its responses to these requests for production if it learns of additional information.

## GENERAL OBJECTIONS

        Alexion makes the following general objections to PDL's First Set Of Requests

For Production ("General Objections"), which General Objections are hereby incorporated by

reference and made part of its response to each such request for production:

        1.      Alexion objects to each request for production to the extent that it seeks to

impose requirements or obligations on Alexion in addition to or different from those imposed by

the Federal Rules of Civil Procedure and/or Local Civil Rules For The District of Delaware.

2.    Alexion objects to each request for production to the extent that it calls for the production of documents and things that are protected from discovery by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable privilege or immunity. Inadvertent production of any such documents and things shall not be deemed a waiver of any privilege or immunity, and Alexion reserves the right to object to the inspection, copying and admissibility of any such documents and things and to have such documents and things returned to Alexion. Nothing contained in any of these responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege, immunity or doctrine.

3.    Alexion objects to each request for production to the extent that it calls for the production of documents and things that are not relevant to any claim or defense of any party to this action, or not reasonably calculated to lead to the discovery of admissible evidence.

4.    Alexion objects to PDL's "Definitions" and "Instructions" to the extent that they seek to impose requirements or obligations on Alexion in addition to or different from those imposed by the Federal Rules of Civil Procedure and/or Local Civil Rules For The District of Delaware. Alexion further objects to these definitions and instructions to the extent that they purport to alter the plain meaning and/or scope of any specific request for production on the ground that such alteration renders the request for production vague, ambiguous, overly broad, unduly burdensome and/or uncertain.

5.    Alexion objects to each request for production to the extent that it purports to require Alexion to search for, locate and/or produce "all" documents. Consistent with its obligations under the Federal Rules of Civil Procedure and subject to its General Objections and any specific objections, Alexion will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

6.    Alexion further objects to PDL's definition of "Alexion" as overly broad, unduly burdensome, vague and ambiguous in its use of the terms "partners,", "divisions," "subsidiaries," "affiliates," and "related companies."

7.    Alexion objects to PDL's definition of "Humanized Antibody Products and Methods" as overly broad, unduly burdensome, vague and ambiguous to the extent that this definition purports to include any products and/or methods other than those concerning eculizumab and/or Soliris™.

8.    Alexion objects to each request for production to the extent that it seeks confidential Alexion documents in the absence of an appropriate protective order.. Pending entry of an appropriate protective order, Alexion will produce any confidential documents under, and subject to, the protections of Local Civil Rule 26.2.

9.    Alexion objects to each request for production to the extent that it seeks documents and things directed solely to the issue of damages.  Alexion objects to each such request as premature pending the Court's decision regarding bifurcation of liability and damages issues, which, pursuant to the Court's August 7, 2007 oral ruling, will be filed on or before September 6, 2007.

10.    Alexion objects to each request for production to the extent that it seeks documents and things directed solely to the issue of willfulness.  Alexion objects to each such request as premature pending the Court's decision regarding bifurcation of liability and damages issues, which, pursuant to the Court's August 7, 2007 oral ruling, will be filed on or before September 6, 2007.

11.    Alexion objects to each request for production to the extent that it seeks documents and things directed solely to manufacture, use, sale or offer for sale outside of the

U.S., or importation into the U.S.  Alexion objects to each such request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

12.     Alexion objects to each request for production to the extent that it seeks the production of documents generated on or after March 16, 2007.

13.     Alexion objects to each request for production to the extent that it seeks production of documents subject to a protective order or confidentiality agreement with non-parties.

14.     Alexion objects to each and every request for production to the extent that it calls for the production of documents and things that are already in PDL's possession, custody or control.

15.     Alexion objects to each and every request for production to the extent that it calls for the production of documents and things that are publicly available and therefore of no greater burden for PDL to obtain than for Alexion to obtain and/or produce.

16.     Alexion objects to each request for production to the extent that Alexion has requested similar documents from PDL and PDL has objected to producing them.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 1:**

All Documents that describe Alexion's email and document deletion, backup, destruction and retention policies from 1987 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Subject to its General Objections, Alexion responds that it will produce

responsive, non-privileged documents within its possession, custody or control that are located

after a reasonable search.

**REQUEST FOR PRODUCTION NO. 2:**

All board minutes, board presentations, and other documents from Alexion's board of directors meetings concerning Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further

objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its

General Objections, Alexion responds that it will produce responsive, non-privileged documents

within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and things concerning PDL including, without limitation, all letters, faxes, emails, presentations, marketing materials, Documents that constitute, refer to, or reflect actual or prospective business relationships, and discussions pertaining to the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Alexion objects to this request as calling for documents and things already within the possession of PDL. Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents that describe Alexion's corporate and personnel structure including, without limitation, organizational charts, from 1987 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search sufficient to demonstrate Alexion personnel involved in the research and development of Soliris™.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents that identify Alexion's affiliates including, without limitation, parent companies, subsidiaries, partnerships, joint ventures, and divisions.

6

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this and its

General Objections, Alexion responds that it will produce responsive, non-privileged documents

within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents that constitute, refer to, or reflect communications between
Alexion and the FDA regarding the FDA's approval of Alexion's Humanized Antibody Products
And Methods for any use.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Subject to its General Objections, Alexion responds that it will produce

responsive, non-privileged documents within its possession, custody or control that are located

after a reasonable search and that constitute communications with the FDA concerning Soliris™

to the extent that such communications do not contain individual patient data.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents that constitute, refer to, or reflect actions taken or activities
initiated by Alexion to seek FDA approval of Alexion's Humanized Antibody Products And
Methods for any use.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Alexion objects to this request as cumulative and duplicative of Request No. 6.

Alexion objects to this request as overly broad, unduly burdensome and calling for the

production of documents that are neither relevant to any claim or defense in this action nor

reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to

this request as vague and ambiguous with respect to the terms "actions taken or activities

initiated". Subject to these and its General Objections, Alexion responds that it will produce

responsive, non-privileged documents within its possession, custody or control that constitute

communications with the FDA concerning Soliris™ to the extent that such communications do

not contain individual patient data.

## REQUEST FOR PRODUCTION NO. 8:

All Documents that constitute, refer to, or reflect a relationship between any
manufacture, use, sale, offer for sale, or importation of Alexion's Humanized Antibody Products
And Methods and the development and submission of information to the FDA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Alexion objects to this request as cumulative and duplicative of Requests Nos. 6

and 7. Subject to this and its General Objections, Alexion responds that it will produce

responsive, non-privileged documents within its possession, custody or control that comprise

relevant portions of Alexion's Biologic License Application (BLA) for Soliris™ to the extent

that such documents or portions thereof do not contain individual patient data.

## REQUEST FOR PRODUCTION NO. 9:

All Documents that constitute, refer to, or reflect distribution of Alexion's
Humanized Antibody Products And Methods for any purpose.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Alexion objects to this request as vague and ambiguous with respect to the term

"distribution". Alexion further objects to this request as overly broad, unduly burdensome and

calling for the production of documents that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these

and its General Objections, Alexion responds that it will produce responsive, non-privileged

documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents that constitute, refer to, or reflect Alexion's early access program for Alexion's Humanized Antibody Products And Methods, or any other distribution program for Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Alexion objects to this request as vague and ambiguous with respect to the term "distribution program". Subject to this and its General Objections, Alexion responds that it will produce relevant and responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search, excluding any clinical, personal, or financial data of any individual.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents that constitute, refer to, or reflect the composition, sequence, or characterization of Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Alexion further objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, that are sufficient to demonstrate sequence information concerning Soliris™.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents that constitute, refer to, or reflect the *in vivo* or *in vitro* studies of Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, that are sufficient to demonstrate the design, testing, and results of *in vivo* and *in vitro* studies concerning Soliris™ to the extent that such documents do not contain individual patient data.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents that constitute, refer to, or reflect the characterization of Alexion's Humanized Antibody Products And Methods, including any studies of the binding strength, binding efficiency, binding selectivity, binding constant, or dissociation constant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Alexion objects to this request as cumulative and duplicative of Requests Nos. 11 and 12. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents that constitute, refer to, or reflect agreements to manufacture Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents that constitute, refer to, or reflect the entities manufacturing Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents that refer to or reflect the time periods and the locations where Alexion's Humanized Antibody Products And Methods have been manufactured.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents that constitute, refer to, or reflect any agreement by which Alexion agreed to indemnify any other entity for manufacturing, using, importing, offering to sell, or selling Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents that constitute, refer to, or reflect any investigation, testing, analysis, or study of Alexion's Humanized Antibody Products And Methods conducted by or on the behalf of Alexion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Alexion objects to this request as cumulative and duplicative of Request No. 12. Alexion further objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, that are sufficient to demonstrate the design, testing, and results of *in vivo* and *in vitro* studies concerning Soliris™ to the extent that such documents do not contain individual patient data.

**REQUEST FOR PRODUCTION NO. 19:**

One copy of each version (including each paper, magnetic, and electronic version) of all manuals, user guides, white papers, training guide, brochures, instructions for use, specifications and licenses (both express and implied) for each of Alexion's Humanized Antibody Products And Methods, including prototypes thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request to the extent that it purports to impose obligations greater than those imposed by the Federal Rules or Local Rules. Alexion objects to this request as vague and ambiguous with respect to the terms "user guides," "white papers," "training guide," "brochures," "instructions for use," "specifications" and "licenses (both express and implied)." Subject to this and its General Objections, Alexion responds that it will produce relevant, responsive, non-privileged documents that have been publicly disclosed that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 20:**

Two representative samples of each Alexion Humanized Antibody Product And Method.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Alexion objects to this request as vague and ambiguous as to the term "samples of each Alexion Humanized Antibody … Method". Subject to this and its General Objections, Alexion responds that it will produce two representative samples of Soliris™ for the treatment of PNH.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents that constitute, refer to, or reflect Alexion's investigation, assessment, or study of the claims of the Patents-In-Suit or Related Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents concerning patents other than the patents-in-suit. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents concerning the patents-in-suit that are within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents that refer to or reflect the scope of equivalents that Alexion contends should be applied to any claim element of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents that refer to or reflect what Alexion contends are any noninfringing alternatives to the inventions claimed in any of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, things and Communications that constitute, refer to, or reflect potential or actual enforcement of the Patents-In-Suit and Related Patents, including allegations of infringement and notifications of the existence of the aforementioned patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and things that constitute, refer to, or reflect the circumstances
under which Alexion contends that it received notice of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Alexion objects to this request as cumulative and duplicative of Request No. 24.

Alexion objects to this request because it seeks documents and things directed solely to the

issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this

objection and its General Objections, Alexion responds that it will produce responsive, non-

privileged documents within its possession, custody or control that are located after a reasonable

search.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents that constitute, refer to, or reflect Communications, meetings,
discussions, negotiations, or agreements between Alexion and PDL regarding any of the Patents-
In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Alexion objects to this request as calling for documents and things already within

the possession of PDL. Alexion further objects to this request as calling for the production of

documents that are protected from discovery by the attorney-client privilege and/or work-product

doctrine. Alexion objects to this request because it seeks documents and things directed solely to

the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this

objection and its General Objections, Alexion responds that it will produce responsive, non-

privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents that refer to or reflect analysis by or on behalf of Alexion about the need to establish accounting reserves in light of the Patents-In-Suit or this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for

the production of documents related to patents other than the patents-in-suit. Alexion further

objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents that refer to or reflect the amount of accounting reserves that Alexion has established, or considered establishing, in light of the Patents-In-Suit or this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for

the productions of documents related to patents other than the patents-in-suit. Alexion further

objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or willfulness.

## REQUEST FOR PRODUCTION NO. 29:

All Documents that constitute, refer to, or reflect communications by or on behalf of Alexion to financial or securities analysts about the Patents-In-Suit or this litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST FOR PRODUCTION NO. 30:

All Documents that constitute, refer to, or reflect communications by or on behalf of Alexion to reporters about the Patents-In-Suit or this litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST FOR PRODUCTION NO. 31:

All Documents that constitute, refer to, or reflect communications by or on behalf of Alexion to any other third person or entity about the Patents-In-Suit or this litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.   Subject to this objection and its General Objections, Alexion responds that it will produce relevant, responsive,

non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 32:

All Documents that refer to or reflect what Alexion contends are alternatives to Alexion's Humanized Antibody Products And Methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

Alexion objects to this request as calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as vague and ambiguous with respect to the term "alternatives." Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 33:

All Documents that refer to or reflect what any third party has asserted are alternatives to Alexion's Humanized Antibody Products And Methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Alexion objects to this request as calling for documents and things that are not within Alexion's custody or control or are within the possession of a third party. Alexion objects to this request as calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this

objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 34:

All Documents that constitute, refer to, or reflect any attempt to redesign or reformulate Alexion's Humanized Antibody Products And Methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

Alexion objects to this request as vague and ambiguous with respect to the terms "redesign" and "reformulate." Alexion further objects to this request as calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness.

## REQUEST FOR PRODUCTION NO. 35:

All Documents that constitute, refer to, or reflect knowledge at Alexion of the Patents-In-Suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Alexion objects to this request as cumulative and duplicative of Request No. 24. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents that constitute, refer to, or reflect the possibility of redesigning or seeking an alternative to Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Alexion objects to this request as vague and ambiguous with respect to the terms "redesigning" and "seeking an alternative". Alexion objects to this request as calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents that constitute, refer to, or reflect the first commercial sale of Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Alexion objects to this request as calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents that constitute, refer to, or reflect knowledge at Alexion of European Patent Office proceedings regarding the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

        Alexion objects to this request as vague and ambiguous as to the term "European Patent Office proceedings regarding the Patents-In-Suit." Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 39:**

        All Documents that constitute, refer to, or reflect any Communications regarding European Patent Office proceedings regarding the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

        Alexion objects to this request as vague and ambiguous with respect to the term "European Patent Office proceedings regarding the Patents-In-Suit." Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 40:**

        All Documents that constitute, refer to, or reflect involvement by Alexion in European Patent Office proceedings regarding the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

        Alexion objects to this request as vague and ambiguous with respect to the term "European Patent Office proceedings regarding the Patents-In-Suit." Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 41:**

        All Documents that constitute, refer to, or reflect Alexion's first, and any subsequent awareness of the Patents-In-Suit (having admitted in ¶¶ 14, 20, and 26 "that it was aware of the ['761, '762, and '370] patent[s] prior to the filing of PDL's Complaint.").

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Alexion objects to this request as cumulative and duplicative of Request No. 24.

Alexion further objects to this request as vague and ambiguous with respect to the term "any

subsequent awareness". Alexion objects to this request because it seeks documents and things

directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling

regarding bifurcation, this objection and its General Objections, Alexion responds that it will

produce responsive, non-privileged documents within its possession, custody or control that are

located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents that constitute, refer to, or reflect the patents to which Alexion
was referring in its Securities and Exchange Commission Form 10-K filings that it was aware of
"broad patents owned by third parties relating to the manufacture, use, and sale of recombinant
humanized antibodies, recombinant humanized single-chain antibodies, recombinant human
antibodies and recombinant human single-chain antibodies."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further

objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents that constitute, refer to, or reflect the patents to which Alexion was referring in its Securities and Exchange Commission Form 10-K filings that it was aware of "broad patents owned by third parties relating to the manufacture, use, and sale of recombinant humanized antibodies, recombinant humanized single-chain antibodies, recombinant human antibodies, recombinant human single-chain antibodies, and genetically engineered animals."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further

objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents that constitute, refer to, or reflect the patents to which Alexion was referring in its Securities and Exchange Commission Form 10-K filings that it was aware of "broad patents owned by third parties relating to the manufacture, use, and sale of recombinant humanized antibodies, recombinant humanized single-chain antibodies and genetically engineered animals."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further

objects to this request as calling for the production of documents that are protected from

23

discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 45:

All Documents that constitute, refer to, or reflect the Patents-In-Suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 45:

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request to the extent it calls for the production of documents that are publicly available and/or already in the custody of Plaintiff and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce relevant, responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 46:

All Documents and things that constitute, refer to, or reflect any test, evaluation, comparison, analysis, consideration, study, or reverse engineering conducted by Alexion, or on behalf of Alexion, of any PDL humanized antibody.

24

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Alexion objects to this request as vague and ambiguous with respect to the term "PDL humanized antibody". Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and things that Alexion contends support its contention that the Patents-In-Suit are invalid.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and things that refer to or reflect any nexus, or lack thereof, between any secondary indicia of nonobviousness - including commercial success of each invention disclosed or claimed in the Patents-In-Suit and Related Patents - and the advantages of the invention.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion further objects

to this request as vague with respect to the term "advantages of the invention." Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents that refer to or reflect the commercial success, or lack thereof, of any of the subject matters claimed in any of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents that refer to or reflect any long felt need, or lack thereof, for any of the subject matter claimed in any of the Patents-In-Suit including, without limitation, all Documents Concerning the attempts of others to meet any such need.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Alexion objects to this request as calling for a legal conclusion. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion further objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 51:**

        All Documents that refer to or reflect any unexpected results, or lack thereof, achieved by practicing any of the subject matter claimed in the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

        Alexion objects to this request as vague with respect to the term "unexpected results." Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 52:**

        All Documents that constitute, refer to, or reflect any copying, or lack thereof, by anyone of any of the subject matter claimed in the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

        Alexion objects to this request as overly broad, vague and ambiguous with respect to the term "anyone." Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request as calling for documents and things outside of Alexion's possession, custody or control. Alexion further objects to this request to the extent it calls for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds

27

that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 53:**

      All Documents that constitute, refer to, or reflect any skepticism or disbelief, or lack thereof, expressed by anyone regarding any of the subject matter claimed in the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

      Alexion objects to this request as overly broad, vague and ambiguous with respect to the term "anyone." Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request as calling for documents and things outside of Alexion's possession, custody or control. Alexion further objects to this request to the extent it calls for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 54:**

      All Documents that constitute, refer to, or reflect any criticism by anyone of any inventions disclosed in the Patents-In-Suit or of the patentability of any inventions disclosed in the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Alexion objects to this request as vague with respect to the term "anyone." Alexion objects to this request as vague with respect to the term "anyone." Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request as calling for documents and things outside of Alexion's possession, custody or control. Alexion further objects to this request to the extent it calls for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 55:**

All documents that constitute, refer to, or reflect prior art Alexion intends to rely on.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Alexion further objects to this request to the extent it calls for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, things and Communications that constitute, refer to, or reflect actual or potential prior art to the Patents-In-Suit and Related Patents obtained by or received from any person at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Alexion objects to this request as cumulative and duplicative of Request No. 64. Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for documents and things outside of Alexion's possession, custody or control. Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and things that refer to or reflect the state of the art relevant to each of the Patents-In-Suit and Related Patents as of the effective filing date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion further objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and things that constitute, refer to, or reflect actual or potential prior art, or asserted as comprising actual or potential prior art, to the Patents-In-Suit and Related Patents, including all prior art and alleged prior art identified by Alexion or asserted by any person not a party to this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Alexion objects to this request as cumulative and duplicative of Request No. 64. Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for documents and things outside of Alexion's possession, custody or control. Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and things that constitute, refer to, or reflect any search for, investigation of, or evaluation of, any actual or potential prior art to the Patents-In-Suit and Related Patents, including all results obtained from such searches or investigations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents and things that constitute, refer to, or reflect Alexion Humanized Antibody Products and Methods including, without limitation, Documents that constitute, refer to, or reflect Humanized Antibody Products and Methods made, used, sold, offered for sale, or imported into the United States by PDL, Genentech, GlaxoSmithKline, Medimmune, Eli Lilly and Co., and Abbott Laboratories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Alexion objects to this request as vague and ambiguous as far at it requests

documents referring to "Alexion Humanized Antibody Products and Methods including …

Humanized Antibody Products and Methods made, used, sold, offered for sale, or imported into

the United States by PDL, Genentech, GlaxoSmithKline, Medimmune, Eli Lilly and Co., and

Abbott Laboratories." Alexion further objects to this request as overly broad, unduly

burdensome and calling for the production of documents that are neither relevant to any claim or

defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents or things that refer to or reflect the scope, validity, or enforceability of any Patent-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Alexion objects to this request as cumulative and duplicative of Requests Nos. 22,

45, 47, and 94. Alexion objects to this request as calling for the production of documents that

are protected from discovery by the attorney-client privilege and/or work-product doctrine.

Subject to these and its General Objections, Alexion responds that it will produce responsive,

non-privileged documents within its possession, custody or control that are located after a

reasonable search.

**REQUEST FOR PRODUCTION NO. 62:**

All publications or other public Documents that refer to or reflect any of the subject matter disclosed in the Patents-In-Suit or Related Applications including, without limitation, articles, speeches, presentations, and other like documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Alexion objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents that refer to or reflect any conference, symposium, seminar, trade show, convention, exhibition or panel discussion Concerning, in whole or in part, any subject matter disclosed in the Patents-In-Suit or Related Applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Alexion objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 64:**

All Documents that constitute, refer to, or reflect prior art to the Patents-In-Suit and Related Applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.  Alexion further

objects to this request to the extent it calls for the production of documents that are publicly

available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to

obtain and produce.  Subject to this and its General Objections, Alexion responds that it will

produce responsive, non-privileged documents within its possession, custody or control that are

located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 65:**

Copies of all of Alexion's financial statements including annual reports, required
financial filings, statements of operations, balance sheets, statements of changes in retained
earnings and notes thereto, whether prepared for internal or external purposes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.  Alexion further

objects to this request to the extent it calls for the production of documents that are publicly

available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to

obtain and produce.  Alexion objects to this request because it seeks documents and things

directed solely to the issues of damages and/or willfulness.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents and things that constitute, refer to, or reflect actual or potential
market research or consumer perception studies that refer to Alexion Humanized Antibody
Products And Methods, including prototypes and samples of the aforementioned products and
methods, and competing methods or products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents and things that constitute, refer to, or reflect the actual and projected profitability of each Alexion Humanized Antibody Product And Method, including sales forecasts, projected profit, profit calculations, unit sales, revenues, cost of sales, order contribution, product margin, product contribution margin, gross margins, and operating margins, and a list of the top twenty customers for each of the aforementioned products and methods by unit sales and revenue for each year from March 16, 2007 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to demonstrate sales, revenues, and costs regarding Soliris™.

**REQUEST FOR PRODUCTION NO. 68:**

All Documents and things that constitute, refer to, or reflect the actual and forecasted market share of each Alexion Humanized Antibody Product And Method.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

        Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.  Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness.  Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control, located after a reasonable search, sufficient to demonstrate

sales, revenues, and costs regarding Soliris™.

**REQUEST FOR PRODUCTION NO. 69:**

        All Documents that refer to or reflect Alexion's competition in the market for
Alexion Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

        Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.  Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness.  Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control, located after a reasonable search, sufficient to demonstrate

sales, revenues, and costs regarding Soliris™.

**REQUEST FOR PRODUCTION NO. 70:**

        All Documents that constitute, refer to, or reflect Alexion's attempts to purchase,
license or otherwise obtain a right, title or interest in the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request to the extent that it calls for documents or things protected from disclosure pursuant to Federal Rule of Civil Procedure 408 or the related confidentiality agreement entered by the parties. Alexion objects to this request as calling for documents and things already within the possession of PDL. Alexion further objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents that reflect Alexion's net profits or losses selling Alexion's Humanized Antibody Products And Methods, including Documents that reflect gross sales, all costs of sales, manufacturing costs, research and development costs, marketing costs, support costs, and profit margins.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Alexion objects to this request as cumulative and duplicative of Request No. 67. Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control, located after a reasonable search, sufficient to demonstrate

sales, revenues, and costs regarding Soliris™.

## REQUEST FOR PRODUCTION NO. 72:

All Documents that refer to or reflect the projected profit or profit calculations for any Alexion Humanized Antibody Products And Methods, whether or not such products were completed and/or commercialized including, without limitation, unit sales and revenues.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 72:

Alexion objects to this request as cumulative and duplicative of Request No. 67.

Alexion objects to this request as overly broad, unduly burdensome and calling for the

production of documents that are neither relevant to any claim or defense in this action nor

reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this

request because it seeks documents and things directed solely to the issues of damages and/or

willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control, located after a reasonable search, sufficient to demonstrate

sales, revenues, and costs regarding Soliris™.

## REQUEST FOR PRODUCTION NO. 73:

All Documents that constitute, refer to, or reflect market studies, reports, or analyses that refer to or reflect product design, competition, consumer surveys, outside consultant surveys, advertising campaigns, promotional and sales training materials, market segments, market share, or market revenue (whether actual or projected) that refer to or reflect Alexion's Humanized Antibody Products And Methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 73:

Alexion objects to this request as cumulative and duplicative of Request No. 66.

Alexion objects to this request as overly broad, unduly burdensome and calling for the

production of documents that are neither relevant to any claim or defense in this action nor

reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents and things sufficient to identify on a customer-by-customer basis the unit sales and revenue for each Alexion Humanized Antibody Product And Method, including prototypes thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to demonstrate sales, revenues, and costs regarding Soliris™.

**REQUEST FOR PRODUCTION NO. 75:**

Documents that constitute, refer to, or reflect royalties paid by Alexion to every licensor of any patent in the fields of recombinant DNA, antibodies, or humanized antibodies to which Alexion has obtained a license.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it refers to

"any patent in the fields of recombinant DNA, antibodies, or humanized antibodies." Alexion

objects to this request because it seeks documents and things directed solely to the issues of

damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection

and its General Objections, Alexion responds that it will produce responsive, non-privileged

documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 76:**

All Documents that constitute, refer to, or reflect discussions between Alexion
and any other entity for a license to a patent or patents in the fields of recombinant DNA,
antibodies, or humanized antibodies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it refers

to" patent or patents in the fields of recombinant DNA, antibodies, or humanized antibodies."

Alexion further objects to this request because it seeks documents and things directed solely to

the issues of damages and/or willfulness.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents that constitute, refer to, or reflect Communications between
Alexion and any third parties that refer to the Patents-In-Suit and any Related Applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further

objects to this request because it seeks documents and things directed solely to the issues of

damages and/or willfulness.

## REQUEST FOR PRODUCTION NO. 78:

Pleadings, discovery, discovery responses, briefs, submissions to the court, transcripts, and correspondence between the parties in Oklahoma Medical Research Foundation *v.* Alexion Pharmaceuticals, Inc., Case No. 4:07-CV-00163-GKF-SAJ.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 78:

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.  Alexion further

objects to this request to the extent it calls for the production of documents that are publicly

available and therefore are of no greater burden for Plaintiff to obtain than for Defendant to

obtain and produce.

## REQUEST FOR PRODUCTION NO. 79:

All Documents that constitute, refer to, or reflect Communications between Oklahoma Medical Research Foundation and Alexion that refer to Oklahoma Medical Research Foundation v. Alexion Pharmaceuticals, Inc., Case No. 4:07-CV-00163-GKF-SAJ, Humanized Antibody Products And Methods, PDL, or the Patents-In-Suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 79:

Alexion objects to this request as cumulative and duplicative of Request No. 78.

Alexion objects to this request as overly broad, unduly burdensome and calling for the

production of documents that are neither relevant to any claim or defense in this action nor

reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 80:**

All Documents, things, and Communications that constitute, refer to, or reflect any contract, assignment, license, effort to license, agreement, covenant not to sue, or settlement agreement that refer to the Patents-In-Suit and Related Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Alexion objects to this request as calling for the production of documents that are already in the custody of Plaintiff and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search,

**REQUEST FOR PRODUCTION NO. 81:**

All Documents that refer to or reflect any litigation, dispute, contested proceeding, interference, request for reexamination, reexamination, opposition, reissue or charge of infringement that involved or involves any of the Patents-In-Suit or Related Applications including, without limitation, oppositions to EP 0682040 and EP 0451216.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Alexion objects to this request as calling for the production of documents that are already in the custody of Plaintiff and therefore are of no greater burden for Plaintiff to obtain than for Defendant to obtain and produce. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds

that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 82:**

All Documents and things subpoenaed by Alexion, or at the direction of Alexion, from third parties to any action that refer to or reflect the Patents-In-Suit or Related Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Alexion objects to this request to the extent it calls for documents and things within the possession of a third party. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents produced to Alexion in response to any subpoena served in this action to any third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Alexion objects to this request as cumulative and duplicative of Request No. 82. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents and things identified or described (individually or by category) by Alexion in its Federal Rule of Civil Procedure 26(a) Initial Disclosures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

   Subject to its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 85:**

   All Documents and things that Alexion was requested to identify, or that Alexion identified in its responses to any PDL interrogatory to Alexion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

   Subject to its General Objections and objections made in response to PDL's interrogatories, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 86:**

   All Documents and things that PDL reviewed, considered, or relied upon in answering any PDL interrogatory to Alexion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

   Alexion objects to this request as vague and ambiguous with respect to the term "Documents and things that PDL reviewed, considered, or relied upon". Alexion further objects to this request as calling for the production of documents that are already in the custody of Plaintiff.

**REQUEST FOR PRODUCTION NO. 87:**

   All Documents that Alexion contends support its assertion in paragraph 12 of its *Answer And Counterclaims* that "Alexion denies that the '761 patent was duly and legally issued."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents that Alexion contends support its assertion in paragraph 18 of its *Answer And Counterclaims* that "Alexion denies that the '762 patent was duly and legally issued."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 89:**

All Documents that Alexion contends support its assertion in paragraph 24 of its *Answer And Counterclaims* that "Alexion denies that the '370 patent was duly and legally issued."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 90:**

       All Documents and things that Alexion contends support its allegation in its *Answer And Counterclaims* that (1) it does not infringe any asserted claim of the Patents-In-Suit, and (2) it does not contribute to the infringement of any asserted claim of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

       Alexion objects to this request as calling for a legal conclusion.  Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.  Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 91:**

       All Documents and things that Alexion contends support its allegation in its *Answer And Counterclaims* that this case is in any way exceptional pursuant to 35 U.S.C. § 285.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

       Alexion objects to this request as calling for a legal conclusion.  Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.  Alexion further objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness.  Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

46

**REQUEST FOR PRODUCTION NO. 92:**

      All Documents and things that Alexion contends support its allegation in its *Answer And Counterclaims* that any infringement of the Patents-In-Suit is or was not willful.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

      Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion further objects to this request because it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 93:**

      All Documents and things that Alexion contends support its allegation in its *Answer And Counterclaims* that PDL is not entitled to relief.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

      Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Alexion further objects to this request to the extent it seeks documents and things directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling regarding bifurcation, this objection and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents and things that Alexion contends support its allegations in its *Answer And Counterclaims* that the Patents-In-Suit are invalid for failure to comply with the requirements of U.S.C. § 101 *et seq.* including, without limitation, §§ 102, 103 and 112.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Alexion objects to this request as calling for a legal conclusion. Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents that constitute, refer to, or reflect Dr. Max Link's knowledge of Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents that constitute, refer to, or reflect Dr. Max Link's knowledge of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents that constitute, refer to, or reflect any discussion or attempt to limit the information Dr. Max Link received regarding Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents that constitute, refer to, or reflect Dr. Max Link's work on the Alexion Compliance and Quality Committee relating to Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents that constitute the meeting minutes or other official records of the Alexion Compliance and Quality Committee on which Dr. Max Link served.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents provided to, received by, or created by the Alexion Compliance and Quality Committee that refer to the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents provided to, received by, or created by the Alexion Compliance and Quality Committee that refer to PDL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents that constitute, refer to, or reflect email sent or received by Dr. Max Link at Alexion that refer to or reflect the Patents-In-Suit including, without limitation whether the Patents-In-Suit are infringed, valid, or should be licensed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Alexion objects to this request as cumulative and duplicative of Request No. 95.

Alexion objects to this request as calling for the production of documents that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Subject to these and its

General Objections, Alexion responds that it will produce responsive, non-privileged documents

within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 103:

All Documents and things that constitute, refer to, or reflect the level of skill,
knowledge, education, experience or expertise of a person having ordinary skill in the art that
refer to or reflect any invention disclosed or claimed in the Patents-In-Suit and Related Patents as
of the filing date of the foregoing.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 103:

Alexion objects to this request as calling for a legal conclusion. Alexion objects

to this request as calling for the production of documents that are protected from discovery by

the attorney-client privilege and/or work-product doctrine. Subject to these and its General

Objections, Alexion responds that it will produce responsive, non-privileged documents within

its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 104:

Any research conducted by, or on behalf of, any individual in his or her capacity
as an expert witness or consultant hired by Alexion in connection with this action including any
study, analysis, evaluation, research, or discussion that refer to or reflect the Patents-In-Suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 104:

Alexion objects to this request as calling for the production of documents that are

protected from discovery by the attorney-client privilege and/or work-product doctrine.

## REQUEST FOR PRODUCTION NO. 105:

All Documents that constitute, refer to, or reflect any study, analysis, evaluation,
research, or discussion regarding whether any of Alexion's Humanized Antibody Products And
Methods infringes one or more claims of the Patents-In-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents that constitute, refer to, or reflect each consulting relationship that exists between any expert witness or consultants and Alexion in this action including, without limitation, consulting agreements, invoices, and Documents that refer to or reflect the total hours worked and the amount of fees paid by, or on behalf of, Alexion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents that constitute, refer to, or reflect each consulting relationship that has existed between any expert witnesses or consultants and any attorneys for Alexion including, without limitation, consulting agreements, invoices, and Documents that refer to or reflect the total hours worked and the amount of fees paid by Alexion's attorneys.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents that constitute, refer to, or reflect any past or present negotiations between Alexion or Alexion's attorneys and any expert witnesses or consultants that refer to or reflect consulting, experiments, research, or other analyses to be conducted.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and things that constitute, refer to, or reflect any Communication, interview, meeting or contact with the U.S. Patent Office or any foreign patent office that refer to or reflect the Patents-In-Suit or Related Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Alexion objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents and things that constitute, refer to, or reflect Communications with third parties that refer to or reflect Alexion's Humanized Antibody Products And Methods.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Alexion objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for the production of documents that are not within its possession, custody, or control. Subject to these and its General Objections, Alexion responds that it will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 111:

All Documents and things that constitute, refer to, or reflect the marketing, advertising, promotion, or training of each version, revision or prototype of any of Alexion's Humanized Antibody Products And Methods.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 111:

Alexion objects to this request to the extent it seeks documents and things

directed solely to the issues of damages and/or willfulness. Alexion objects to this request as

vague and ambiguous in its use of the term "version, revision or prototype of any of Alexion's

Humanized Antibody . . . Methods." Subject to the Court's ruling regarding bifurcation, this

objection and its General Objections, Alexion responds that it will produce responsive, non-

privileged documents within its possession, custody or control, located after a reasonable search,

sufficient to demonstrate the marketing, advertising or promotion of Soliris™.

## REQUEST FOR PRODUCTION NO. 112:

All Documents and things that constitute, refer to, or reflect sales, promotion or customer training programs and materials for any of Alexion's Humanized Antibody Products And Methods, including prototypes thereof.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 112:

Alexion objects to this request to the extent it seeks documents and things

directed solely to the issues of damages and/or willfulness. Subject to the Court's ruling

regarding bifurcation, this objection and its General Objections, Alexion responds that it will

produce responsive, non-privileged documents within its possession, custody or control, located

after a reasonable search, sufficient to demonstrate the marketing, advertising or promotion of

Soliris™.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents that constitute, refer to, or reflect the training of customers, sales representatives, or other individuals in the operation, design, and/or functionality of any Alexion's Humanized Antibody Products And Methods, prototypes, or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Alexion further objects to this request to the extent it seeks documents and things

directed solely to the issues of damages and/or willfulness.  Subject to the Court's ruling

regarding bifurcation, this objection and its General Objections, Alexion responds that it will

produce responsive, non-privileged documents within its possession, custody or control, located

after a reasonable search, sufficient to demonstrate the marketing, advertising or promotion of

Soliris™.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents that constitute, refer to, or reflect Communications to any third party - including, without limitation, customers or prospective customers - regarding this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Alexion objects to this request as overly broad, unduly burdensome and calling

for the production of documents that are neither relevant to any claim or defense in this action

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents that constitute, refer to, or reflect proposed, contemplated, or actual statements or explanations to any third party - including, without limitation, customers or prospective customers - regarding this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Alexion objects to this request as cumulative and duplicative of Request No. 114.

Alexion further objects to this request as overly broad, unduly burdensome and calling for the

production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

YOUNG CONWAY STARGATT & TAYLOR, LLP

_____
Josy W. Ingersoll (I.D. #1088)
Andrew A. Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS
153 East 53rd Street
New York, NY 1002
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

56

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on August 22, 2007, I caused a copy of the

foregoing document to be served on the following in the manner indicated:

### BY E-MAIL AND HAND DELIVERY

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

### BY E-MAIL

Matthew D. Powers, Esquire
Vernon M. Winters, Esquire
John D. Beynon, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Andrew A. Lundgren*

Josy W. Ingersoll  (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant.*

# Exhibit B

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE
650-802-3174
eric.xanthopoulos@weil.com

September 27, 2007

**VIA EMAIL**

Christine Willgoos, Esq.
Kirkland & Ellis LLP
153 E. 53rd Street
New York, NY 10022-4611
Fax: 2120446-4900
*CWillgoos@kirkland.com*

Re:    **PDL BioPharma, Inc. v. Alexion Pharmaceuticals, Inc.**
       **D. Del. Case No. 07-156**

Dear Christine:

We write further to your September 18, 2007 letter regarding E-Discovery. The parties have been discussing a mutual exchange of E-discovery search terms, with an initial search and then a supplemental search at some later point, although the parties have not agreed on the parameters of the supplemental search. Your September 18 letter reveals that the parties disagree about the parameters for the initial search, and thus it makes no sense to do that search now.

There are two reasons for this. *First*, the September 18 letter takes the position that Alexion will not search for what it calls "damages" discovery, willfulness discovery, and exceptional case discovery. As explained in PDL's opposition to Alexion's bifurcation motion, there is substantial overlap between the damages (and willfulness and exceptional case) issues that Alexion seeks to parse from discovery and trial.[1] The issues cannot be parsed as Alexion suggests, and hence an initial search that excludes the broad categories that Alexion's proposal would exclude is not useful. *Second*, it is in both parties' interests to have the supplemental list be smaller and focused, in order to take into account, for example, new issues in the case or a re-

---

[1] Docket No. 35 [PDL's Opposition].

WEIL, GOTSHAL & MANGES LLP

Christine Willgoos, Esq.
September 27, 2007
Page 2

emphasis on issues that had previously not been important.  In order to do that, each party should have made a substantial document production, so that documents can be analyzed and appropriate search term lists be generated.  Although PDL has so far produced more than 50,000 pages, Alexion has not produced any documents in response to PDL's document requests, and based on that failure PDL is not in a position to create an initial list.

Based on the above, it is sensible that the parties exchange lists when they agree on the criteria discussed above.  Perhaps we can discuss once the Court has resolved Alexion's pending motion.  Meantime, let's defer exchange of the lists.

Best regards,

Eric P. Xanthopoulos

cc:    Gerald J. Flattmann, Esq. (via email) (*GFlattmann@kirkland.com*)
       Josy Ingersoll, Esq. (via email) (*JIngersoll@ycst.com*)
       Jack Blumenfeld, Esq. (via email) (*JBlumenfeld@MNAT.com*)
       Karen Jacobs Louden, Esq. (via email) (*KLouden@MNAT.com*)

# Exhibit C

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Christine Willgoos
To Call Writer Directly:
(212) 446-4964
cwillgoos@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: (212) 446-4900

October 3, 2007

**VIA EMAIL**

Eric Xanthopoulos
Weil Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Re:    PDL v. Alexion Pharmaceuticals

Dear Eric:

I write in response to your September 27, 2007 letter.

First, as made clear in my September 18, 2007 letter to you, Alexion has not and will not agree to permit a supplemental search of additional search terms as a matter of right. Thus, your suggestion that "supplemental list" be "smaller and focused" is a non-sequitur.

Second, this is the second time that PDL has requested, at the last minute, a postponement of the parties' exchange of search terms. PDL's suggestion that this was necessary because Alexion has not yet produced documents is unavailing. PDL is well aware of the issues in this case and should be able to easily identify appropriate search terms. Moreover, PDL's production to date consists entirely of documents that were already in the public domain, and cannot support any argument that Alexion has greater knowledge of PDL's documents than PDL has of Alexion's.

Alexion is amenable exchanging search terms for electronic discovery once the Court has decided Alexion's pending motion for bifurcation of the case. If, however, the parties cannot agree on the parameters for e-discovery, Alexion will follow the default standards set forth by the Court.

## KIRKLAND & ELLIS LLP

Eric Xanthopoulos
October 3, 2007
Page 2

Sincerely,

Christine Willgoos

CW/lmm

cc:     Jack Blumenfeld
        Josy Ingersoll

# Exhibit D

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Christine Willgoos
To Call Writer Directly:
212 446-4964
cwillgoos@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

January 16, 2008

**VIA E-MAIL**

Eric Xanthopoulos
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Re: *PDL Biopharma, Inc. v. Alexion Pharmaceuticals, Inc.*

Dear Eric:

I write to suggest that the parties exchange search terms for electronic discovery. As I am sure you recall, in September, we agreed that we would await the Court's decision regarding Alexion's bifurcation motion before exchanging search terms for each party's respective electronic search. However, since the Court has not yet decided that motion, I believe we should move forward with discovery so as not to further delay production of electronic documents.

I propose that the parties exchange search terms for electronic discovery on January 23, 2008, after which we will meet and confer to discuss appropriate modifications. Given the pendency of Alexion's motion to bifurcate, we propose to proceed with search terms directed only to liability issues.

I look forward to your response.

Sincerely,

Christine Willgoos

CW/lmm

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

# Exhibit E

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE
201 REDWOOD SHORES PARKWAY
REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE
650-802-3174
eric.xanthopoulos@weil.com

February 8, 2008

<u>**VIA EMAIL**</u>

Christine Willgoos, Esq.
Kirkland & Ellis LLP
153 E. 53rd Street
New York, NY 10022-4611
*CWillgoos@kirkland.com*

       **Re:**    **PDL BioPharma, Inc. v. Alexion Pharmaceuticals, Inc.**
              **D. Del. Case No. 07-156**

Dear Christine:

      Further to our February 4 teleconference and PDL's February 5 meet-and-confer letter, enclosed is PDL's initial list of proposed E-Discovery search terms. As noted on its list, PDL incorporates by reference all terms identified in Alexion's initial list of proposed E-Discovery search terms. As discussed, this list is subject to revision – to add or remove terms without prejudice – after the parties meet-and-confer on February

WEIL, GOTSHAL & MANGES LLP

Christine Willgoos, Esq.
February 8, 2008
Page 2

26.  Please note that PDL's initial list is designated "Confidential" under § 3.1 of the Stipulated Confidentiality Protective Order [D.I. #31].

Best regards,

Eric P. Xanthopoulos

Encl.

cc:     Josy Ingersoll, Esq. (via email) (*JIngersoll@ycst.com*)
        Karen Jacobs Louden, Esq. (via email) (*KLouden@MNAT.com*)
        Wendy Adams (via email) (*WAdams@kirkland.com*)

**PDL Biopharma, Inc. v. Alexion Pharm., Inc.**
C.A. No. 07-CV-156
67073.0003

Search Terms For Electronic Discovery

All search terms proposed by Alexion

(hyper)variable region
*exam*
*variabl*
'370
'761
'762
0239400
125166
20030229208
20040049014
20040058414
290,975
310,252
325,000
389,155
389,417
394,458
452,357
474,040
477,728
484,537
487,200
5,530,101
5,585,089
5,635,178
5,693,761
5,693,762
590,274
6,180,370
603,273
634,278
7,022,500
718,993
718,998
846,658

**CONFIDENTIAL**

90 903 576.8
938,117
95105609.2
Abbott
Actinium Pharmaceuticals
Adage Capital
Adair
affinity constant
agreement*
Ajinomoto
Alberto Zanella
Alexion Antibody Technologies
Alexion Bermuda
Alexion Corporate Subsidiaries and Sister Companies
Alexion Delaware Holding
Alexion Europe SAS
Alexion Factory Locations
Alexion Holding B.V.
Alexion International Sarl
Alexion Manufacturing LLC
Alexion Pharma France
Alexion Pharma UK
Alexion Pharmaceuticals, Inc. (Alexion)
Amit
Anders Wahlin
Andre Tichelli
Anthony Mills
antibod*
Anticipat*
antigen
Anton Kuger
Arius Research
Arnold Ganser
audit*
Austin Research Institute (ARI)
autoimmune disease
Avastin
Avdalovic
Axienda University, Napoli, Italy
Bain Capital
Bank of New York
Barbara Konkle
Barrett
Bayer AG
Bell

Bendrick
Berg
Bernard Rio
bevacizumab
binding affinity
Biogen Idec/Elan
biologics license application (BLA)
Biotechnology Research And Development Corporation (BRDC)
Biotest Pharma
Biotransplant
Bizley
BlackRock Advisors
Boehringer Ingelheim
Boulianne
Brigham And Women's Hospital
Bristol-Myers
Broder
Brookside Capital
Broughton
Bruno Rotoli
C5
Capital Royalty
Care Capital
Carlos DeCastro
Caron, Daniel N.
Carter
Case Western, Cleveland, OH
Cedar
Celltech Chiroscience
Celltech Therapeutics
certolizumab
Challenger Capital
Chang
Charles J. Parker
Cheetham
Chieh-Lin Fu
Chiron Corporation
Cholthia
Choltia
Chothia
Chugai
Ciba-Geigy AG
Cimzia
Clark
Cleveland Clinic

Co, Man Sung
Coelingh
Coissac, Patrice
Columbus Farming Corporation
complement
complement inhibitor
complementar* determining region (CDR)
contract summary
contract*
Cornett
Corti
Cowen Healthcare
Cross
Cross Cancer Institute
Curagen
D1.3
Daclizumab
daclizumab
David J. Araten
David Kuter
Davidson Kempner Partners
Davies
Dawes
Dear
Department of Hemology, Belfast, UK
Div di Ematologia, Milano, Italy
Duarte CA US 626-359-8111 65285
Dubin, Thomas I.H.
DuBridge
Duke Medical Centre, Durham, NC
Duke University
Duke University Medical Center
Duncan
Ebersole
eculizumab
Edmundson
efalizumab
Eli Lilly & Company
Ellis
Enzon
EP 0451216
EP 0566647
EP 0682040
EP 0939127
EP 1386932

EP 1477497
EP 1491556
EP A 0120694
EP A 0125023
EP A 0318554
EP A 0323806
EP A 0328404
EP A 0365209
EP A 0365997
EP19920903551
EP19980204240
EP20030078175
EP20040076438
EP20040076439
Epp
European Commission
European Medicines Agency (EMEA)
Exclusive License Agreement
FDA number and agent for Soliris Application
Federal Drug Administration (FDA)
Feldmann
Fidelity
Foote
framework
Francesco Rodeghiero
Fujisawa Pharmaceutical Co., Ltd.
Gage
Garcia, Cheryl
Garcia, Sergio
GB A 2188941
gemtuzumab ozogamicin
Genentech
Genetic Therapy
George Mills
Gerard Socié
Glaser
Glaxo
GlycArt Biotechnology AG
Goodwin
Gorman
Guenot
Guggenhime
Gunnar Nilsson
h5G1.1*
Haematological Diagnostic Service, Leeds Hospital, Leeds, UK

Hale
Hallal, David L.
Halluin
Hanover, Germany
Harding
heavy chain
Hepworth, Lawrence, Bryer & Bizley
Herceptin
Highland Capital
Hinton
HLBBshaw
Hoffman La Roche
homolog*
Hooks, M. Stacy
Hospital Laval, Ste-Foy, Quebec, Canada
Hospital Saint Louis, Hematology/Stem Cell Transplantation, Greffe de Moelle, Paris,
France
Hubert Schrezenmeier
Hugo Castro-Malaspina
HuLuc63
Human Genome Sciences, Inc.
humaniz*
humanized antibody
Huston
hypothetical*
Ian Chin-Yee
Icos
IDEC Pharmaceuticals
Igeneon KrebsImmuntherapie Forschungsund Entwicklungs AG
IGHRLC*
immunoglob*
implied license
Indiana Univiversity, Indianapolis
inequitable conduct
infring*
Ingelheim
Institute for Clinical Transfusion Medicine and Immunogenetics, Ulm, Germany
InterMune Pharmaceuticals, Inc.
Internal Medicine, Saarland University Medical School, Germany
invalid*
Invus Public Equities
Ixsys
Jaenichen
Jain
James Mason

Jan Samuelsson
Jaroslaw P. Maciejewsk
Jenzen
Joerg Schubert
John Gallo
John Hopkins
John Hopkins University School of Medicine
John Norman
Jones
Jose Tongol Phoebe
Juan
June 19, 1992
Junghans
Jun-ichi Nishimura
Kabat
Kanebo
Kantonsspital Basel
Karolinska Institute
Keiser, David
Kerber
Kettleborough
Kirkman
Kirkman
Klein
KLV56*
Korn
Kostelny
Kubik
Kung
laches
Landolfi
Lesk
Lesk
Levitt
Lewitt
licens*
licensee; licensor
light chain
Link
Liverpool Hospital
London Health Science Centre
Lonza
Loree Larratt
Lorentz Brinch
Louis-Philippe Boulet

Lucentis
Lucio Luzzatto
Luke, Barry P.
Lund University Hospital
M. Edward Medof
m5G1.1*
Madri, Joseph A.
Market Authorization Application (MAA)
Massachusetts General Hospital
Mathis, Larry L.
Matsumura
McDade
McMaster University
McMullin Mary Francis
Medarex
Medical Research Council (MRC)
MedImmune
Merck
Michael Montemurro
milestone*
Millennium Partners
Millennium Pharmaceuticals
Milstein
Mintz
Mochida Pharmaceutical
Monica Bessler
Morphotek
Morrison
Motola, Nancy C.
murine
Murray
Mylotarg
natalizumab
National Institute for Cancer Research
National Institutes Of Health
National Institutes of Health, National, Heart, Lung and Blood Institute, Hematology
        Branch
National University Hospital of Oslo
Neal S. Young
Neal Young
NeoRx
Netherlands
Neuberger
New Haven, Connecticut
New York University Cancer Center

NEWM
NIH
Nijmegen
Norby, R. Douglas
Novartis
Nuvion
NY University
Obvious
Ohtorno
Oklahoma Medical Research Foundation (OMRF)
Omalizumab
oppos*
Padlan
palivizumab
Palm
Panka
Paroxysmal Nocturnal Hemoglobinuria (PNH)
Parven, Alvin S.
patent*
Paul O'Byrne
Payne
Peter Hillmen
Petra Muus
Phase III
PNH Research and Support Foundation
Poljak
Powers
Presbyterian Medical Centre
Presta
Princess Alexandra Hospital
Procter & Gamble
Putney Memorial Hospital
Queen
Queen Elisabeth Hospital
Queen et al., "A Humanized Antibody That Binds To The Interleukin 2 Receptor," Proc.
Natl. Acad. Sci., 86: 10029-10033 (1989)
ranibizumab
Raptiva
reasonabl*
Rees
Reichmann
Richard Herrmann
Riechmann
Robert A. Brodsky
Robert Brodsky

Robert Nelson
Roberts
Roitt
Rollins, Scott A.
Romero
Ronald Paquette
Rosario Notaro
Rosen
Rother, Russell P.
Routledge
Royal Cornwall Hospital
Royal Perth Hospital
royalt*
Royalty Pharma
Ryotaro Nakamura
sale*
Sandoz Pharma
Sankyo Co.
Sarah Higgins
Sato
Saul
Saxe
Scheinberg
Schering
Schneider
Scil Technology GmbH
Scripps Clinic
Seattle Genetics
Selick
Service d'Hematologie
Shah
Shak
Shankar
Shearman
Shelby
SHEPHERD
Sheriff
Sinha, Vikas
Sloan Kettering
Smith
Smithfield, Rhode Island
SmithKline
Soliris
special protocol assessment (SPA)
specificity

Squinto, Stephen P.
St. George's Hospital
Stanford
Strong
Substitution
Synagis
T. Rowe Price
Tanox
Taussig Cancer Center
Teijin
Tempest
Thakur
The Cleveland Clinic Foundation
The Sidney Kimmel Comprehensive Cancer Centre
Third Point
Tibor Moskovits
Toagosei
Tocilizumab
TPG-Axon Capital
Tramontano
trastuzumab
TRIUMPH
Tso
Tsurushita
Tysabri
UCB Celltech
Uchlyama
UDEC Pharmaceuticals
Ulrich Duhrsen
Umea Univiversity Hospital
United States Patent and Trademark Office (USPTO)
Universit Essen
Universit Greifswald
University of Alberta Hospitals
University of California Los Angeles
University of Iowa
University of Utah School of Medicine and Salt Lake City VA Medical Center
Vasquez
Verhoeyen
Vicenza, Italy
Vijaya Raghavan
Vincenti
visilizumab
Waeger, Ruedi
Waldmann

Washington University School of Medicine
Weisner
Wendell F. Rosse
Westfield Capital Management
willful*
Winter
WO 88/09344
WO 89/01783
WO 89/09622
WO 92/11018
WO 93/02191
Wyeth/American Home Products
Xolair
Xoma
Yale
Yamanouchi Pharmaceutical Company
Zenapax

 **CONFIDENTIAL**

# Exhibit F

WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE • NEW YORK, NY 10153-0119

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

DIRECT LINE
(212)310-8683
jennifer.wu@weil.com

March 4, 2008

**BY ELECTRONIC MAIL**

Christine Willgoos, Esq.
Kirkland & Ellis LLP
153 E. 53rd Street
New York, NY 10022
cwillgoos@kirkland.com

Re:    PDL BioPharma, Inc. v. Alexion Pharmaceuticals, Inc.
       Case No. 07-156-JJF (D. Del.)

Dear Christine:

I attach PDL's revised list of electronic search terms to be discussed during our scheduled March 7 meet-and-confer. PDL reserves its right to revise this list after the meet-and-confer. As we discussed, the other topics for our scheduled meet-and-confer are:

- Alexion's discovery deficiencies. I addressed these issues in detail in my March 3, 2008 letter.

- Case calendar. In addition to the timeline for exchanging claim constructions, we would like to discuss the possibility of extending deadlines in the Scheduling Order.

Sincerely,

Jennifer H. Wu

**PDL's Revised Proposal of Electronic Discovery Search Terms**

All search terms proposed by Alexion on February 8, 2008.

(John! /2 Hopkins) or Brodsky

(Oslo /10 hospital) or Brinch

(University /3 Los Angeles) or UCLA or Paquette

(University /3 Utah) or (Parker /3 Charl!)

Abbott

Actinium

Adage Capital

Adair

Ajinomoto

Alexion Antibody Technologies, Inc.

Alexion Bermuda LP

Alexion Delaware Holding

Alexion Europe

Alexion Holding

Alexion International

Alexion Manufacturing

Alexion Pharma

Alzari

Amit

Arius

Austin Research Institute or ARI

Avdalovic

Azienda or Rotoli

Bain Capital

Bank of New York

Barrett /3 Judy

Basel or Tichelli

Bayer!

Bell /3 (Leonard or Lenny or Lennie or Len)

Bendrick

Berg

Biogen

Biotechnology Research And Development Corporation or BRDC

Biotest

Biotransplant

Bizley

BlackRock Advisors

Boehringer or Ingelheim

Boulianne

Brigham And Women's Hospital or BWH

Bristol Myers

Broder

Brookside Capital

Broughton

Capital Royalty

Care Capital

Caron

Carter /3 Paul

Case Western or Medof

Cedar

Celltech

Challenger Capital

Chang

Cheetham

Chiron

Cholthia

Choltia

Chothia

Chugai

Ciba-Geigy

Clark

Cleveland Clinic or Fu or Maciejewsk

Co /5 (Man or Sung or M. or S. or M.S.)

Coelingh

Coissac

Columbus Farming

Cornett

Corti

Cowen Healthcare

Cross /3 Herb

Cross Cancer Institute or Larratt

Curagen

Davidson Kempner Partners

Davies

Dawes

De la Paz

Dear /3 Paul

Department of Hemology or Belfast or (Francis /3 Mary)

Duarte or Nakamura

Dubin

DuBridge

Duke or DeCastro or Rosse or Nishimura

Duncan /3 (James or Jim)

Ebersole

Edmundson

Eli Lilly

Ellis

Ematologia or Zanella

Enzon

Epp

Essen or Duhrsen

Feldmann

Fidelity

Foote

Fujisawa

Gage

Garcia /3 Cheryl

Garcia /3 Sergio

Genentech

Genetic Therapy

Mills /3 George

Glaser

Glaxo

GlycArt

Goodwin

Gorman

Greifswald or Montemurro

Guenot

Guggenhime

Hale

Hallal

Halluin

Hanover or Ganser

Harding

Hepworth, Lawrence, Bryer & Bizley

Highland Capital

Hinton

HLBBshaw

Hoffman or La Roche

Hooks /2 Stacy

Hospital Saint Louis or Moelle or Socié

Human Genome Sciences

Huston

Icos

IDEC

Igeneon

Indiana or (Nelson /3 (Robert or Rob))

Ingelheim

Clinical Transfusion Medicine or Ulm or Schrezenmeier

InterMune

Invus Public Equities

Ixsys

Jaenichen

Jain

Jenzen

Jones

Juan /3 Veronica

Junghans

Kabat

Kanebo

Karolinska or Samuelsson

Keiser

Kerber

Kettleborough

Kirkman

Klein

Korn

Kostelny

Kubik

Kung

Landolfi

Laval or Boulet

Leeds or Hillmen

Lesk

Levitt

Lewitt

Link/3 Max (

Liverpool or Gallo

London Health Science or Chin-Yee

Luke /3 Barry

Lund or Nilsson

Madri

Massachusetts General Hospital or MGH or Kuter

Mathis

Matsumura

McDade

McMaster or O'Byrne

Medarex

Medical Research Council or MRC

MedImmune

Merck

Millennium /3 Pharm!

Millennium Partners

Milstein

Mintz

Mochida

Morphotek

Morrison /3 Sherie

Motola

Murray /3 Rich!

National Institute for Cancer or Luzzatto or Notaro

National Institutes Of Health or NIH

National, Heart, Lung and Blood Institute or NHLBI or (Neal /3 Young)

NeoRx

Netherlands or Muus

Neuberger

New York University or NY University or Araten or Moskovits

Nijmegen

Norby

Novartis

Ohtorno

Oklahoma Medical Research Foundation or OMRF

Padlan

Palm /3 Norbert

Panka

Parven

Payne

PNH or (Higgins /3 Sara!)

Poljak

Powers /3 Dav!

Presbyterian Medical or Konkle

Presta

Princess Alexandra or (Mills /3 (Anthony or Tony)

Procter & Gamble

Putney Memorial or (Phoebe /3 Jose)

Queen

Queen Elisabeth or (Norman /3 John)

Raghavan

Rees

Reichmann

Riechmann

Roberts /3 (Tom! or Thomas)

Roitt

Rollins

Romero

Rosen

Rother

Routledge

Royal Cornwall or Kuger

Royal Perth or Herrmann

Royalty Pharma

Saarland or Schubert

Sandoz

Sankyo

Sato

Saul

Saxe

Scheinberg

Schering

Schneider

Scil

Scripps or (Mason /3 (James or Jim))

Seattle Genetics

Sectoral Asset Management

Selick

Service d'Hematologie or (Rio /3 Bernard)

Shah

Shak

Shankar

Shearman

Shelby

Sheriff

Sidney Kimmel or Brodsky

Sims

Sinha

Sloan Kettering or Castro-Malaspina

Smith /3 (William or Bill)

SmithKline

Squinto

St. George's or Elebute

Stanford

Strong /3 Scott

T. Rowe Price

Tanox

Teijin

Tempest

Thakur

Third Point

Toagosei

TPG-Axon Capital

Tramontano

Tso

Tsurushita

Tsurushurita

Uchlyama

UDEC

Umea or Wahlin

University of Iowa

Vasquez /3 Max

Verhoeyen

Vicenza or Rodeghiero

Vincenti

Waeger

Waldmann

Washington University or Bessler

Weinzierl

Weisner

Westfield Capital Management

Wiedmer

Winter

Wyeth or American Home Products or AHP

Xoma

Yale

Yamanouchi

(agreement! or licens! or contract! or term sheet or subscri!) /30 (antibod! or humani! or research or Soliris or eculizumab or immunoglobulin or Ab or Ig!)

(antibod! or humani! or manufact! or Soliris or eculizumab or immunoglobulin or Ab or Ig!) /30 (New Haven or Connecticut)

(antibod! or humani! or manufact! or Soliris or eculizumab or immunoglobulin or Ab or Ig!) /30 (Smithfield or Rhode Island)

(European Commission or EC) /30 (Soliris or antibod!)

(European Medicines Agency or EMEA) /30 (Soliris or antibod!)

(Food and Drug Administration or FDA) /30 (Soliris or antibod!)

(framework or FR) /15 (homolog! or identit! or mutat! or substitut!)

(special protocol assessment or SPA) /30 (Soliris or antibod!)

antibod! /15 (specificity or affinity)

antibod! /15 graft

anti-C5 or α-C5

Avastin or bevacizumab

biologics license application or BLA

Cimzia or certolizumab

complementar! determining region! or CDR

D1.3

Daclizumab

eculizumab

Exclusive License Agreement

h5G1.1!

Herceptin or trastuzumab

HuLuc63

humani! /10 (antibod! or Ab or immunoglobulin or Ig!)

humanization or humanisation

hypervariable

IGHRLC!

June 19, 1992 /10 (licens! or agreement!)

KLV56!

Lonza

Lucentis or ranibizumab

m5G1.1!

Market Authorization Application or MAA /30 (Soliris or antibod!)

murine /10 (antibod! or Ab or immunoglobulin or Ig!)

Mylotarg or gemtuzumab ozogamicin

NEWM

Nuvion or visilizumab

Paroxysmal Nocturnal Hemoglobinuria or PNH

Phase III /30 (Soliris or antibod!)

Raptiva or efalizumab

reexam! /30 patent!

SHEPHERD

Soliris

Synagis or palivizumab

Tocilizumab

TRIUMPH

Tysabri or natalizumab

United States Patent and Trademark Office or USPTO /30 (Soliris or antibod!)

Xolair or Omalizumab

Zenapax or daclizumab

3734266 or 266

0239400 or 400

0451216 or 216

0682040 or 040

08/207,841 or 841

125166 or 166

20030229208 or 208

20040049014 or 014

20040058414 or 414

290,975 or 975

310,252 or 252

325,000 or 000

389,155 or 155

389,417 or 417

394,458 or 458

452,357 or 357

474,040 or 040

477,728 or 728

484,537 or 537

487,200 or 200

5,530,101 or 101

**CONFIDENTIAL**

5,585,089 or 089

5,635,178 or 178

5,693,761 or 761

5,693,762 or 762

590,274 or 274

6,180,370 or 370

603,273 or 273

634,278 or 278

7,022,500 or 500

718,993 or 993

718,998 or 998

846,658 or 658

88/09344 or 344

0120694 or 694

90 903 576.8

938,117 or 117

95105609.2

0451216 or 216

0566647 or 647

0939127 or 127

1386932 or 932

1477497 or 497

1491556 or 556

0125023 or 023

0318554 or 554

0323806 or 806

0328404 or 404

0365209 or 209

0365997 or 997

19920903551 or 551

19980204240 or 240

20030078175 or 175

20040076438 or 438

20040076439 or 439

2188941 or 941

88/09344 or 344

89/01783 or 783

89/09622 or 622

92/11018 or 018

93/02191 or 191

**Alexion to add to search term list:**

Patents or patent applications relating to humanized antibody technology owned by, assigned to, or licensed to Alexion.

Relevant project or code names.

# Exhibit G

# United States Patent [19]

## Sims et al.

| | |
|---|---|
| [11] | Patent Number: **5,635,178** |
| [45] | Date of Patent: **Jun. 3, 1997** |

[54] **INHIBITION OF COMPLEMENT MEDIATED INFLAMMATORY RESPONSE USING MONOCLONAL ANTIBODIES SPECIFIC FOR A COMPONENT FORMING THE C56-9 COMPLEX WHICH INHIBIT THE PLATELET OR ENDOTHELIAL CELL ACTIVATING FUNCTION OF THE C56-9 COMPLEX**

[75] Inventors: **Peter J. Sims; Therese Wiedmer**, both of Oklahoma City, Okla.

[73] Assignee: **Oklahoma Medical Research Foundation**, Oklahoma City, Okla.

[21] Appl. No.: **207,841**

[22] Filed: **Mar. 8, 1994**

### Related U.S. Application Data

[60] Continuation of Ser. No. 813,432, Dec. 24, 1991, abandoned, which is a division of Ser. No. 365,199, Jun. 12, 1989, Pat. No. 5,135,916.

[51] Int. Cl.$^6$ ........................ **A61K 39/395; C07K 16/18**
[52] U.S. Cl. ..................................... **424/145.1**; 530/388.25
[58] Field of Search ........................... 530/388.1, 388.25, 530/145.1; 424/141.1, 156.1, 130.1; 435/240.27

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,447,415 | 5/1984 | Rock et al. . |
| 4,695,460 | 9/1987 | Holme . |
| 4,916,219 | 4/1990 | Linhardt et al. . |

#### OTHER PUBLICATIONS

Sims, P.J., "Interaction of human platelets with the complement system", *Platelet Immunobiology, Molecular and Clinical Aspects* Kunicki and George, editors, p. 354 (J.B. Lippincott Publishers, Philadelphia 1989).
Shin, et al., Prog. Allergy 40, 44 (1988).
Nicholson–Weller, et al., J. Immunol. 129, 184 (1982).
Pangburn, et al. *Proc. Natl. Acad. Sci. USA* 80, 5430 (1983).
Shin, et al., J. Immunol. 136(5), 1777–1782 (1986).

Zalman, et al., *Proc. Natl. Acad. Sci. USA* 83, 6975 (1986).
Schonermark, et al., *J. Immunol.* 136, 1772 (1986).
Martin, et al., Proc. Natl. Acad. Sci. USA 85, 213–217 (1988).
Sugita, et al., *J. Biochem.* (Japan), 104, 633–637 1988.
Okada, et al., *Biochem. Biophys. Res. Comm.* 162, 1553 (Aug. 1989).
Davies, et al., *J. Exp. Med.* 170, 637 (Sep. 1989).
Rollins, et al., *Complement and Inflammation* 6, 394 (1989).
Wiedmer and Sims, J. Biol. Chem. 260, 8014–8019 (1985).
Wiedmer, et al., J. Biol. Chem. 262, 13674–13681 (1987).
Sims, et al., *J. Biol. Chem.* 263, 18205–18212 (1988).
Okada, et al., *Int. Immunol.* 1(2), 205–208 (1989).
Holguin, et al., *J. Clin. Invest.* 84, 7–17 (Jul. 1989).
Groux, et al., *J. Immunol.* 142(9), 3013–3020 (May 1989).
Stefanova, et al., *Molecular Immunology* 26(2), 153–161 (1989).
Sims, et al., *J. Biol. Chem.* 264(29) 17049–17057 (1989).
Sims, et al., "Regulatory Control of complement on Blood Platelets: Modulation of Platelet Procoagulant Responses by a membrane inhibitor of the C5b–9" *J. Biol. Chem.* (1989) 19228–19235.
Hamilton, et al., "Complement Proteins C5b–9 Increase Endothlial Prothrombinase Activity" *Circulation* (1989) 11315.
Wiedmer, et al., "The Role of Calcium and Calpain in Complement–Induced Vesiculation of the Platelet Plasma Membrane and in the Exposure of the Platelet Factor Va Receptor", Biochemistry 29:623–632 1990.
Nicholsaon–Weller et al (1985) Blood 65(5), 1237–1244.
Coding "Monoclonal antibodies", Academic Press, Orlando, pp. 56–93 and 118–125.
Thorpe (1993) Trends in Biotech. 11:40–42.
Simpson et al (1988) J. Clin. Invest. 81:624–629.
Harlow et al (Eds) "Antibodies A Laboratory Manual" (1988) Cold Spring Harbor Laboratory, Cold Spring Harbor Press, pp. 98 & 150–169, 207–211, & 216–217.
Gregonadis et al (1993) Trends in Biotech. 11:440–442.
Kohler et al (1975) Nature 256:495–497.
Wurzner et al (1991) Complement Inflamm 8:328–340.
Kabat et al (Eds) "Experimental Immunochemistry," Charles C. Thomas, Springfield, Ill. pp. 135–139, (1961).
Coligan et al (Eds.) "Current Protocods in Immunology" (1992), Green Publishing Associates and Wiley–Interscience, New York, pp. 2.5.1–2.5.17.

5,635,178
Page 2

Hatton et al (1989, May 25) J. Biol. Chem. 264(15):9053–9060.

Hugo et al (1987) J. Immunol. Methods 99:243–251.

Gyongyossy–Issa et al (1993) Blood 82 (0,Suppl.):336a.

*Primary Examiner*—Paula K. Hutzell

*Attorney, Agent, or Firm*—Arnall Golden & Gergory

[57]                    **ABSTRACT**

Compositions and methods for use thereof relating to mono-clonal antibodies, and fragments thereof, having inhibitory activity towards the cell-activating function of the comple-ment C5b-9 complex. The compositions can be used in vitro to inhibit C5b-9 related stimulatory responses of platelets and/or endothelial cells, thereby preventing C5b-9-initiated cell necrosis or stimulated secretion of proteolytic enzymes and the exposure of the procoagulant membrane receptors during collection and in vitro storage. Further, disease states can be treated by administering to platelets and/or endothe-lial cells in vivo an effective amount of a monoclonal antibody, or fragment thereof, which has inhibitory activity towards the cell-activating function of the C5b-9 complex, in a pharmaceutically acceptable carrier.

**5 Claims, 5 Drawing Sheets**



FIGURE 1



*FIGURE 2a*



*FIGURE 2b*



FIGURE 3a

FIGURE 3b

FIGURE 3c



*FIGURE 4*



*FIGURE 5a*



*FIGURE 5b*

5,635,178

**1**

# INHIBITION OF COMPLEMENT MEDIATED INFLAMMATORY RESPONSE USING MONOCLONAL ANTIBODIES SPECIFIC FOR A COMPONENT FORMING THE C56-9 COMPLEX WHICH INHIBIT THE PLATELET OR ENDOTHELIAL CELL ACTIVATING FUNCTION OF THE C56-9 COMPLEX

The U.S. Government has rights in this invention by virtue of certain government grants.

This is a continuation of U.S. Ser. No. 07/813,432, filed Dec. 24, 1991 (abandoned), which is a divisional of U.S. Ser. No. 07/365,199 filed Jun. 12, 1989, issued on Aug. 4, 1992 as U.S. Pat. No. 5,135,916.

## BACKGROUND OF THE INVENTION

The present invention generally relates to compositions, and methods for use thereof, effective in regulating inflammatory platelet and endothelial stimulatory and coagulopathic responses by modulating the activity of the C5b-9 complex of the human plasma complement system.

The complement system is a complex interaction of plasma proteins and membrane cofactors which act in a multi-step, multi-protein cascade sequence in conjunction with other immunological systems of the body to provide immunity from intrusion of foreign cells. Complement proteins represent up to about 10% of globulins in normal serum of man and other vertebrates.

The classic complement pathway involves an initial antibody recognition of, and binding to, an antigenic site (SA) on a target cell. This surface bound antibody subsequently reacts with the first component of complement, C1q, forming a C1-antibody complex with Ca++, C1r, and C1s which is proteolytically active. C1s cleaves C2 and C4 into active components, C2a and C4a. The C4b,2a complex is an active protease called C3 convertase, and acts to cleave C3 into C3a and C3b. C3b forms a complex with C4b,2a to produce C4b,2a,3b, which cleaves C5 into C5a and C5b. C5b combines with C6. The C5b,6 complex combines with C7 to form the ternary complex C5b,6,7. The C5b,6,7 complex binds C8 at the surface of the cell, which may develop functional membrane lesions and undergo slow lysis. Upon binding of C9 to the C8 molecules in the C5b,6,7,8 complex, lysis of bacteria and other foreign cells is rapidly accelerated.

Recently, the C5b-9 proteins of the human plasma complement system have been implicated in non-lytic stimulatory responses from certain human vascular and blood cells. The capacity of C5b-9 to modify membrane permeability and to selectively alter ion conductance is thought to elicit these non-lytic responses from human cells. In the case of human blood platelets and vascular endothelium, assembly of the C5b-9 complex initiates a transient and reversible depolarization of the plasma membrane potential, a rise in cytosolic Ca2+, metabolic conversion of arachidonate to thromboxane or prostacyclin, and the activation of intracellular protein kinases. In addition, human platelets exposed to C5b-9 undergo shape changes, secretory fusion of intracellular storage granules with plasma membrane, and the vesiculation of membrane components from the cell surface. Human endothelial cells exposed to the human C5b-9 proteins secrete high molecular weight multimers of the platelet adhesion protein, von Willibrand Factor (vWF), and the intracellular granule membrane protein, GMP140, is translocated from the Weible-

**2**

Palade body to the endothelial surface. High molecular weight multimers of vWF have been implicated in the pathogenesis of vaso-occlusive platelet adherence to endothelium and cell surface GMP140 has been implicated in the adherence of inflammatory leukocytes to endothelium.

These effects of complement proteins C5b-9 on platelet and endothelial cells alter the normal regulation of the enzymes of the plasma coagulation system at these cell surfaces. For example, the generation of platelet membrane microparticles by vesiculation results in the exposure of membrane binding sites for coagulation factor Va. Binding of factor Va to these membrane microparticle sites initiates assembly of the prothrombinase enzyme complex. This complex in turn accelerates coagulation factor Xa activation of prothrombin to thrombin which promotes plasma clotting. Similarly, C5b-9 binding to the endothelial cell results in the exposure of plasma membrane receptors for the prothrombinase complex, thereby accelerating the generation of thrombin from prothrombin at the endothelial surface.

This interaction between components of the complement and coagulation systems at the surface of blood platelets and endothelium can generate inflammatory and chemotactic peptides at sites of vascular thrombus formation and may contribute to the altered hemostasis associated with immune disease states. In addition, immune reactions affecting blood platelets and endothelium can lead to platelet aggregation, the secretion of proteolytic enzymes and vasoactive amines from platelet storage granules, and increase adherence of platelets and leukocytes to the endothelial lining of blood vessels.

It has been demonstrated that membrane-uptake of C3b and C5b-9 proteins can occur spontaneously during incubation of platelets in citrated plasma. Complement activation can also occur during blood collection as a result of exposure to plastic surfaces supporting the C3-convertase reaction. While the implications of complement activation during blood collection and in vitro storage for transfusion have not been directly addressed it is, nevertheless, known that plasma levels of coagulation factors V and VIII rapidly decline in stored platelet concentrates at a rate considerably faster than their decay in cell-free plasma, suggesting consumptive loss. Further, platelet collection and storage is associated with an increase in vesicular plasma membrane microparticles, a product of C5b-9 initiated platelet secretion. These physiological and enzymatic changes greatly reduce the potential shelf life of stored platelets, particularly platelet-rich plasma concentrates used for transfusions, which is generally only 72 hours at best. Furthermore, this interaction of activated C5b-9, platelets, and coagulation factors in stored platelet concentrates will adversely affect the hemostatic effectiveness of these units when infused.

In vitro human organ and tissue storage and survival of the transplanted graft is also adversely affected by the spontaneous activation of the complement system, resulting in membrane insertion of the C5b-9 proteins into vascular endothelium. Activation of C5 to C5a and C5b has been shown to be catalyzed by plastics and other synthetic membranes required to maintain perfusion of vascular beds during in vitro tissue and organ storage. In addition, membrane deposition of C5b-9 in vivo has been implicated in the acute rejection of transplanted tissue due to immune activation of the recipient's plasma complement system against the endothelial cells within the donor's organ.

Platelet and endothelial cell activation by C5b-9 also has ramifications in autoimmune disorders and other disease states. The importance of spontaneous complement activa-

5,635,178

3

tion and the resulting exposure of platelets and endothelium to activated C5b-9 to the evolution of vaso-occlusive disease is underscored by consideration that a) leukocyte infiltration of the subendothelium, which is known to occur in regions of atheromatous degeneration and suggests localized generation of C5a at the vessel wall, is potentially catalyzed by adherent platelets and b) local intravascular complement activation resulting in membrane deposition of C5b-9 complexes accompanies coronary vessel occlusion and may affect the ultimate extent of myocardial damage associated with infarction.

It is therefore an object of the present invention to provide a means and method for the modulation and inhibition of complement C5b-9 mediated platelet and endothelial cell activation in vivo and in vitro.

It is a further object of the present invention to provide a means and method for increasing the survival and therapeutic efficacy of platelets and tissues or organs collected and stored in vitro.

It is a still further object of the present invention to provide protection to transplanted organs or tissue and transfused blood cells by prior in vitro incorporation of a membrane inhibitor of the C5b-9 complex.

It is another object of the present invention to provide methods of treatment for selected autoimmune disorders and other disease states.

## SUMMARY OF THE INVENTION

A composition and methods for use thereof relating to polypeptides having the ability to act as an inhibitor of complement C5b-9 complex activity. The compositions contain an 18 kDa protein found on the surface of human erythrocytes, a 37 kDa protein found on the surface of human platelets, a 37 kDa protein found on the surface of human endothelial cells, active derivatives or fragments thereof which act to inhibit the activity of C5b-9, anti-idiotypic antibodies mimicking the action of the inhibitor proteins or antibodies against C7 or C9 which block the formation of the C5b-9 complex.

The compositions can be used in vitro to inhibit C5b-9 related stimulatory responses of platelets and vascular endothelium of perfused organs and tissues, thereby preventing the C5b-9 initiated cell necrosis or stimulated secretion of proteolytic enzymes and the exposure of the procoagulant membrane receptors during collection and in vitro storage. In one variation of this embodiment, the vascular endothelium of organs and tissues to be transplanted are treated with these compositions to protect these cells from complement activation after transplantation. In another embodiment, immune disease states are treated by administering an effective amount of a C5b-9 inhibitor to suppress C5b-9 mediated platelet activation in vivo.

Also disclosed are methods for the production of isolated polypeptides that are able to suppress complement C5b-9 mediated platelet and endothelial cell activation.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows the effect of α-P18 on C9 incorporation into platelet membrane C5b-9 complexes. Platelets were incubated with 100 μg α-P18/ml (solid bars) or 0 μg α-P18/ml (hatched bars) and the amount of FITC-labeled anti-C9 neo-epitope antibody that bound to the platelets in the presence of various concentrations of C8 (0, 0.015, 0.06, 0.25, and 1 μg C8/10⁸ platelets) was measured by fluorescence.

4

FIGS. 2A and 2B show the effect of α-P18 on C5b-9induced α-and dense granule secretion. Platelet α- (FIG. 2A) and dense (FIG. 2B) granule material secretion was measured after incubation of platelets with either 0 μg α-P18/ml (-●--●-) or 100 μg α-P18/ml (-X--X-) in the presence of various concentrations of C8 (0, 0.015, 0.06, 0.25, and 1 μg C8/10⁸ platelets). The release of LDH is also shown by (Δ) for release in the absence of α-P18 and by (□) in the presence of α-P18.

FIGS. 3A, 3B, and 3C show the platelet response as a function of α-P18 Fab concentration, 0, 7.8, 31.3, and 125 μg α-P18/ml: α-granule secretion as measured by FITC-S12 binding (FIG. 3A), GPIIb-containing microparticles formation (FIG. 3B), and coagulation factor Va binding site exposure as measured by FITC-V237 binding (FIG. 3C). Solid bars denote α-P18 treated platelets and hatched bars denote control C5b-9 platelets.

FIG. 4 shows the effect of α-P18 on C5b-9-induced expression of the PAC1 epitope in cell surface GPIIb-IIIa, as a function of C8 concentration, 0, 0.015, 0.06, 0.25, and 1 μg C8/10⁸ platelets. Hatched bars denote FITC-labeled anti-GPIIb-IIIa antibody binding to control C5b-9 platelets and solid bars denote FITC-labeled anti-GPIIb-IIIa antibody binding to platelets pretreated with 100 μg/ml α-P18.

FIGS. 5A and 5B show the effect of α-P18 on expression of platelet procoagulant activity, as a function of C8 concentration, 0, 0.015, 0.06, 0.25, and 1 μg C8/10⁸ platelets. FIG. 5A shows the level of factor Va binding site measured using the FITC-labeled monoclonal antibody V237, directed against the factor Va light chain, measured in the presence of 2 μg/ml of the ligand. FIG. 5B represents measured prothrombinase activity (thrombin units/min×10⁸ platelets). Both FIG. 5A and 5B compare using control C5b-9 (hatched bars) or treated (100 μg/ml α-P18) (solid bars) platelets. Data for complement free controls are also shown.

## DETAILED DESCRIPTION OF THE INVENTION

37 kDa platelet and endothelial plasma membrane inhibitors of the C5b-9 complex which normally serve to attenuate the procoagulant responses of blood platelets and endothelium exposed to activated complement proteins have been discovered by cross-reaction with a monospecific antibody (α-P18) raised against an 18 kDa erythrocyte membrane inhibitor of C5b-9 which was identified by Sugita, et al., *J. Biochem.* (Japan), 104:633–637, (1988). The existence of these proteins and the studies detailed below indicate that a deletion or inactivation of these cell surface components would increase the risk of vascular thrombosis and lead to a decreased storage time for platelets and platelet rich plasma (PRP), and perfused organs and transplanted tissue. Accordingly, the survival and hemostatic efficacy of platelets, and the survival of organs and tissue for transplant, which are collected and stored in vitro, can be increased by addition of the C5b-9 inhibitor to the storage buffer or perfusate. Autoimmune disorders and other disease states that involve C5b-9 mediated platelet activation, including lupus, rheumatoid arthritis, and other types of immunovasculitis, can also be treated by the intravascular administration an effective amount of the inhibitor to suppress C5b-9 activity, or a composition containing a polypeptide C5b-9 inhibitor to a patient requiring such treatment. Similar uses of the inhibitor may be applicable for cell culture in human blood derived culture media.

The conclusions as to the mechanisms by which the platelet bound inhibitor inhibits the C5b-9 inflammatory

5,635,178

5

response is based on the following. Addition of the purified 18 kDa protein, isolated from human erythrocyte membranes, to other blood cells or endothelium serves to protect these cells from both the cytolytic and cell-stimulatory effects of the C5b-9 complement proteins. The function of this 18 kDa C5b-9 inhibitory protein, when bound to platelet and endothelial cell surfaces, was also probed by raising a neutralizing (blocking) antibody (α-P18) that abrogates the C5b-9 inhibitory function of the purified molecule in vitro as well as the endogenous C5b-9 inhibitory factors, which may include the 18 kDa and 37 kDa proteins. When bound to the platelet surface, the FAB of α-P18 increases C9 activation by membrane C5b-8, as monitored by exposure of a complex-dependent C9 neo-epitope. Although α-P18 causes little increase in the cytolysis of platelets treated with C5b-9 (as determined from the total release of lactate dehydrogenase of less than 5%), it markedly increases the cell stimulatory responses induced by these complement proteins, including secretion from platelet alpha and dense granules, conformational activation of cell surface GPIIb-IIIa, release of membrane microparticles from the platelet surface, and exposure of new membrane binding sites for components of the prothrombinase enzyme complex. Prior incubation of C5b67 platelets with 100 μg/ml α-P18 (Fab) lowers by approximately 10-fold the half-maximal concentration of C8 required to elicit each of these responses in the presence of excess C9. Incubation with α-P18 (Fab) alone does not activate platelets, nor does incubation with this antibody potentiate the stimulatory responses of platelets exposed to other agonists.

As used herein in the compositions and methods for the prolongation of platelet and organ survival and enhancement of therapeutic efficacy or suppression of complement mediated disorders, "C5b-9 inactivator" refers to the 37 kDa protein from platelets, the corresponding 37 kDa protein on endothelial cells, the 18 kDa protein on erythrocyte membranes, peptide fragments thereof having C5b-9 inhibitory activity, and preferably containing a membrane binding domain, whether isolated from naturally produced materials or recombinantly engineered sequences, monoclonal antibodies to C7 that block membrane binding of the C5b-9, monoclonal antibodies to C9 that block C9 polymerization and insertion into the membrane, monoclonal antibodies that blocks C9 binding to C5b-9, and anti-idiotypic antibodies which inhibit the function of the cell surface molecules in inhibiting C5b-9 activity, especially the Fab fragments of monoclonal antibodies having this activity. All molecular weights are determined by SDS-PAGE under non-reducing conditions. The 37 kDa and 18 kDa proteins are species specific, i.e., only inhibitor proteins of human origin will inhibit human C5b-9.

These studies are described in more detail below.

Experimental Procedures

Materials:

Bovine serum albumin (globulin and fatty acid free), prostaglandin E1, apyrase, phorbol myristate acetate (PMA) and N-hydroxysuccinimide biotin ester were obtained from Sigma Chemical Co., St. Louis, Mo.; (p-amidino-phenyl) methanesulfonyl fluoride (pAPMSF) was from Med Cal; fluorescein-5-isothiocyanate (isomer I) was from Molecular Probes; phycoerythrin-streptavidin conjugate was from Southern Biotechnology Associates (Birmingham, Ala.) and Spectrozyme TH was from American Diagnostica (Greenwich, Conn.). IODO-GEN was from Pierce Chemical Co.; Na$^{125}$I from ICN Biochemicals, and [$^{14}$C]serotonin was from Du Pont-New England Nuclear. Human complement proteins C5b6, C7, C8 and C9 were purified and analyzed

6

for functional activity according to methods previously described by Wiedmer and Sims, *J. Biol. Chem.* 260, 8014–8019 (1985). Bovine factors Va, Xa, prothrombin, thrombin, and the light chain of factor Va were gifts from Dr. Charles T. Esmon (Oklahoma Medical Research Foundation). All other chemicals were of reagent or analytical grade.

Solutions:

Solution I: 145 mM NaCl, 4 mM KCl, 0.5 mM Mg Cl$_2$, 0.5 mM sodium phosphate, 0.1% (w/v) glucose, 0.1% bovine serum albumin, 5 mM PIPES, pH 6.8.

Solution II: 137 mM NaCl, 4 mM KCl, 0.5 mM MgCl$_2$ 0.5 mM sodium phosphate, 0.1% glucose (w/v), 0.12% bovine serum albumin, 20 mM HEPES, pH 7.4.

Erythrocyte Membrane Protein Inhibitory for C5b-9

The 18 kDa human erythrocyte protein inhibitory for C5b-9 lysis was isolated by modification of methods described by Sugita, et al. (1988). Additional purification was obtained by Mono-Q™ FPLC (Pharmacia). When incorporated into erythrocytes, this protein inhibited the hemolytic activity of the purified human C5b-9 proteins, due to inhibition of C9 activation by membrane C5b-8. When subjected to 12% polyacrylamide SDS-PAGE (non-reducing), all of the C5b-9-inhibitory activity of this protein was found to elute from a gel slice corresponding to a single protein band at 18 kDa molecular weight.

In addition to classical protein purification using column chromatography, an example of which is discussed above, polypeptides having inhibitory activity can also be affinity purified using inhibitor specific antibodies. Antibodies, such as α-P18 disclosed below, which bind the C5b-9 inhibitor polypeptide, are immobilized on chromatographic matrix material by techniques well known to those skilled in the art.

Erythrocytes or platelets containing the C5b-9 inhibitor protein on their surface are isolated from whole blood by centrifugation and detergent solubilized. The resultant solubilized crude extract is then mixed with matrix immobilized antibody either in a batch process or chromatographically. The immobilized antibodies specifically bind C5b-9 inhibitor polypeptides while the remainder of the crude extract is easily removed by washing. The purified inhibitor is then eluted and collected.

Alternatively, polypeptides having the ability to inhibit C5b-9 mediated procoagulant responses are produced recombinantly using methods and techniques well known to those in the art. For example, human DNA is isolated and digested with restriction enzymes to create fragments of appropriate size and with appropriate cohesive ends to be ligated into any of the known and commercially available (e.g. Promega's lambda gt11 vector system) expression vectors. Alternatively, the isolated DNA is sheared and the appropriate linkers are ligated onto the resulting fragments which are then inserted into the expression vector of choice.

Vectors containing human DNA fragments are next transformed into the appropriate bacterial strain, normally a strain of *E. coli* that is included in the expression vector kit, to generate the DNA gene bank or library. Plating out the vector containing bacteria of the library on appropriate media results in expression of the inserted human DNA fragment. The colonies are screened for the presence of DNA encoding and expressing the C5b-9 inhibitory polypeptide using specific antibodies such as α-P18 disclosed below. Positive colonies are isolated and used for the large scale expression of recombinantly produced inhibitory protein.

5,635,178

7

In this fashion intact inhibitory protein can be made recombinantly as well as modified polypeptides and functional fragments and derivatives thereof. Functional polypeptides possessing the ability to inhibit C5b-9 can be produced by any of the above discussed method or by other techniques commonly known to those of ordinary skill in the art. These isolated and purified polypeptides can be further mixed with pharmaceutically acceptable carriers to form compositions for use in prolonging cell storage or in treatment of immune disorders or diseases.

Antibodies:

Murine monoclonal antibody S12, specific for the platelet α-granule membrane glycoprotein, GMP-140, was a gift from Dr. Roger P. McEver (Oklahoma Medical Research Foundation, Oklahoma City). Murine monoclonal antibody AP1, specific for membrane glycoprotein, GP Ib, was from Dr. Thomas J. Kunicki (Blood Center of Southeastern Wisconsin, Milwaukee). Murine monoclonal PAC1, specific for the activated conformation of the GP IIb-IIIa complex, was from Dr. Sanford J. Shattil (University of Pennsylvania, Philadelphia). Murine monoclonal antibody MAC, specific for a neo-epitope in C9 exposed upon its incorporation into membrane C5b-9 or SC5b-9, was from Dr. John Tamerius (Cytotech Corp.). Murine monoclonal antibody V237 recognizes an epitope in the light chain of factor Va (human or bovine) and binds to both factor V and factor Va. Murine monoclonal antibodies against the human C5b-9 proteins were raised by immunization against the purified human proteins and then screened for inhibitory activity towards the cytolytic or cell activating function of the C5b-9 complex. These monoclonal antibodies, or their Fab fragments, mimic the inhibitory function of the plasma membrane C5b-9 inhibitor in that they raise the threshold amount of activated C5b-9 required to achieve either red cell lysis or platelet and endothelial cell activation.

Monospecific rabbit antibody against the purified human erythrocyte 18 kDa protein (α-P18) was raised by repeated injection of the purified and isolated C5b-9 inhibitory polypeptide antigen isolated by the modification of the method of Sugita, et al. (1988). Immunized rabbit blood was collected and the IgG fraction was isolated by absorption to immobilized staph protein A, followed by gel permeation chromatography on Sephadex G200 (Pharmacia). Western blotting against detergent solubilized extracts of human erythrocyte membrane proteins demonstrated that this antibody was monospecific for a single protein of 18 kDa (non-reduced). Reactivity of this antibody was lost upon disulfide reduction of the antigen.

Fab fragments of IgG were prepared by 2 h digestion at 37° C. with immobilized papain (Pierce). The resulting Fab fragments were purified to homogeneity by absorption against immobilized staph protein A and gel permeation chromatograph (Sephadex™ G150; Pharmacia).

Fluorescence Labeling:

For flow cytometry, all antibodies were conjugated with FITC, except antibody AP1, which was conjugated with N-hydroxysuccinimide biotin ester as described previously. Dye-to-protein ratios ranged from 3-to-5.

Protein Concentrations:

Concentrations of unlabeled proteins were estimated assuming the following extinction coefficients ($E^{1\%}_{280}$): murine IgG (15), factor Va (15.1), factor Va light chain (18.7), factor Xa (12.4), prothrombin (15.5), C5b6 (10), C7 (9.9), C8 (15.1), and C9 (9.6). The concentrations of FITC-labeled proteins were determined by dye binding assay (BioRad), using the respective unlabeled protein as standard.

8

FITC concentration was determined assuming a molar extinction (492 nm) of 68,000.

Effect of α-p18 on Platelet Activity by C5b-9

Gel-filtered human platelets were prepared and collected into Solution I at $1–2\times10^9$ ml as described by Wiedmer and Sims, J. Biol. Chem. 260, 8014-8019 (1985) or Wiedmer, et al., J. Biol. Chem. 262, 13674-13681 (1986). To assemble membrane-bound C5b67 complexes, gel-filtered platelets ($10^9$/ml) were incubated for 5 min at 37° C. with C5b6 (15 μg/$10^8$ platelets). The C5b67 platelets were then incubated with the Fab fragments of α-P18 (0 to 125 μg/$10^8$) for 10 min at room temperature. After dilution to $10^8$ platelets/ml in Solution II containing 2.5 mM Ca Cl$_2$, C8 (0 to 1 μg per $10^8$ cells) and C9 (0 or 4 μg per $10^8$ cells) were added, and the cells incubated at 37° C. without stirring for 10 min. In all studies, comparison was made to identical matched-pair controls (platelets incubated in the absence of the C5b-9 proteins). In certain experiments, comparison was also made to gel-filtered platelets stimulated by incubation (10 min at 37° C. without stirring) with PMA (0–0.1 μM) or thrombin (0.–0.5 U/ml).

Preparation of Platelets for Flow Cytometry

$5\times10^8$ C5b-9 treated or control platelets were incubated in the dark in a total volume of 60 μl for 10 min at 23° C. in the presence of biotin-AP1 (1 μg/ml) and one or more of the following fluorescein-conjugated antibodies: FITC-α-P18 (Fab; 50 μg/ml), FITC-MAC (30 μg/ml), FITC-S12 (10 μg/ml), or FITC-V237 (20 μg/ml). To measure membrane binding sites for factor Va, cells were first incubated for 10 min at 23° C. with factor Va light chain (2 μg/ml) before addition of FITC-V237. Following incubation with the labeled antibodies, phycoerythrinstreptavidin was added (5 μl of a 1:20 dilution), and the cells were incubated an additional 10 min. Then 0.5 ml aliquots of Solution II were added and the samples analyzed flow cytometry. All analyses were complete within 30 min.

Flow Cytometry:

Platelets were analyzed in a Becton Dickinson FACSCAN flow cytometer formatted for two-color analysis. The light scatter and fluorescence channels were set at logarithmic gain. In order to resolve platelet-derived microparticles from background light scatter, acquisition was gated so as to include only those particles distinctly positive for biotin-AP1 (detected as phycoerythrin Fluorescence), using a fluorescence lower-limit threshold on the 585 nm channel that excluded background scatter. Thus, only those cells and microparticles expressing the platelet-specific membrane glycoprotein, GP Ib, were included for analysis. Ten thousand phycoerythrin-positive particles from each sample were analyzed for forward and right angle light scatter and for FITC and phycoerythrin fluorescence intensities. To measure FITC-α-P18 binding to erythrocytes, the threshold for acquisition was set on forward scatter. All fluorescence data were corrected for cell or microparticle autofluorescence (generally, ≦2 arbitrary fluorescence units per particle). Where indicated, correction for non-specific binding was made by incubation of cells with FITC-labeled antibody in the presence of a 20-fold excess of the unlabeled antibody (IgG or Fab).

Secretion and Cell Lysis Assays:

Dense granule secretion was measured by the release of [$^{14}$C]serotonin. Alpha granule secretion was monitored by the surface expression of GMP-140, detected by the binding of FITC-labeled monoclonal antibody S12. Cell lysis was monitored by release of cytoplasmic lactic acid dehydrogenase.

5,635,178

9

Prothrombinase Assay:

Platelet prothrombinase activity was measured by modification of methods previously described, using the chromogenic substrate Spectrozyme TH, by Wiedmer, et al., *Blood* 68, 875–880 (1986). After activation, platelets were diluted to a final concentration of $5\times10^6$ per ml in Solution II containing 1% albumin, 2.5 mM $CaCl_2$, 2 nM factor Va, and 2.7 μM prothrombin, and incubated at 37° C. Prothrombin conversion was initiated by addition of factor Xa to a final concentration of 2 nM. The reaction was stopped at 0, 30, and 60 seconds by transfer of 1 vol of sample into 9 vol of ice cold buffer containing 1% albumin and 10 mM EDTA, and thrombin assayed as described by Wiedmer, et al., (1986).

Studies relating to the C5b-9 mediated activation of human cultured umbilical vein endothelial cells were performed as described by R. Hattori, et al., *J. Biol. Chem.* 264, 7768–7771 (1989).

Results:

### α-P18 Binds Specifically to the Platelet plasma Membrane and Increases the Incorporation of Activated C9 into Membrane c5b-9

The hemolytic activity of the terminal complement proteins appears to be regulated by two distinct proteins expressed on the surface of human erythrocytes: "homologous restriction factor" (also referred to as "CS-binding protein") with an apparent molecular weight of 64 kDa, and an 18 kDa protein that does not exhibit C8-binding activity. Both of these membrane proteins have been shown to inhibit the cytolytic activity of the human terminal complement proteins, apparently by affecting the interaction of C9 with membrane bound C5b-8. Evidence has been presented that homologous restriction factor is normally bound to the cell surface by linkage to membrane phosphatidylinositol, and that this protein is deleted from the affected blood cells obtained from patients with the disorder Paroxysmal Nocturnal Hemoglobinuria (PNH).

In order to determine whether the 18 kDa component of the erythrocyte membrane also plays a role in regulating the C5b-9 complex on the platelet surface, an antibody (α-P18) that binds to the 18 kDa erythrocyte protein and abrogates its C5b-9-inhibitory function was produced. In addition to binding erythrocytes, this antibody was found to bind specifically to platelets, as demonstrated by the results in Table I.

TABLE I

Binding of α-P18 to Human Platelets and Red Blood Cells[1]

|  | ERYTHROCYTES | PLATELETS |
|---|---|---|
| FITC-Fab | 86,100 ± 300 | 22,800 ± 200 |
| FITc-IgG | 415,100 ± 600 | 103,000 ± 600 |

(mean ± s.d., n = 3)
[1]Cell binding of FITC-labeled α-P18 (IgG or Fab) was measured and corrected for non-specific binding as described in Materials and Methods. Data are expressed as fluorescence (arbitrary units) per $10^4$ cells.

When bound to red cells, α-P18, or its Fab fragment, neutralized the C9-inhibitory activity of the 18 kDa membrane protein, and thereby increased the lytic susceptibility of the cells to purified C5b-9. Conversely, addition of the purified 18 kDa protein to blood cell suspensions acted to inhibit cell lysis or cell activation by the C5b-9 proteins. To test the effect of this antibody on platelets, gel-filtered

10

human platelets were first exposed to the C5b67 proteins, and then incubated with α-P18 (Fab fragments) before addition of C8 plus C9.

C5b67 platelets were incubated for 15 min at 23° C. with either 0 (hatched bars) or 100 μg/ml (solid bars) α-P18 (Fab) before addition of C9 (4 μg per $10^8$ cells) plus varying amounts of C8. After an additional 10 min incubation at 37° C., samples were stained with FITC-labeled monoclonal antibody against C9 neo-epitope (FITC-MAC) and processed for flow cytometry. The results are shown in FIG. 1. The ordinate denotes total membrane-associated fluorescence (arbitrary units), corrected for non-specific binding of FITC-MAC. Data for C9-free controls are also shown.

As shown by these data, incubation with α-P18 increased the amount of activated C9 incorporated into plasma membrane C5b-9 complexes, suggesting that this antibody also neutralizes a c5b-9 regulatory function of the platelet membrane. In these studies, the activated form of C9 was detected by use of a fluorescently-labeled monoclonal antibody (FITC-MAC) that recognizes a neo-epitope in C9 that is expressed upon its incorporation into membrane C5b-9. Similar results were obtained using cultured umbilical cells.

### Effect of α-P18 on C5b-9 Induced Secretion and Activation of Cell Surface GPIIb-IIIa

The increased amount of activated C9 detected on the surface of platelets exposed to α-P18 suggested that this antibody might also affect the susceptibility of these cells to the stimulatory or cytolytic effects of the C5b-9 proteins. As shown in FIGS. 2 and 3, incubation with α-P18 markedly potentiated the capacity of the C5b-9 proteins to induce secretion from both α- and dense granules, but caused little increase in the platelet's susceptibility to lysis by these complement proteins.

α-Granule secretion (FIG. 2A) was monitored by the total binding of monoclonal antibody FITC-S12. Dense granule secretion (FIG. 2B) of the same samples was monitored by the release of [14]C-serotonin. Cells were exposed to eisner 0 or 100 μg/ml α-P18 (Fab) before C5b-9 assembly. Also shown is LDH release under these conditions: 0 μg/ml α-P18; 100 μg/ml α-P18. Data for complement-free controls (0 vs. 100 μg/ml α-P18): α-granule secretion, 2.2% vs. 2.8%; dense granule secretion, 3.7% vs. 3.6%; LDH release, 1.0% vs. 1.0%.

C5b67 platelets were incubated for 15 min at 23° C. with α-P18 (Fab; concentrations given on abscissa) before addition of C8 (1 μg per $10^8$ platelets) plus C9 (4 μg per $10^8$ platelets). After additional incubation for 10 min at 37° C., samples were processed for flow cytometry. FIG. 3A shows α-granule secretion measured by FITC-S12 binding. FIG. 3B shows formation of GPIb-containing microparticles. FIG. 3C shows the exposure of factor Va binding sites measured by FITC-V237 binding. In each panel, hatched bars denote data for C5b-9 platelets and solid bars denote data for C5b67 controls exposed to the identical concentrations of α-P18.

As demonstrated by FIG. 3A, this potentiation of C5b-9 stimulated secretion of platelet storage granules increased in a dose-dependent fashion with the concentration of the antibody. At these concentrations, α-P18 alone, or in combination with C5b-8, in the absence of added C9, did not directly stimulate platelet secretion nor did this antibody potentiate the platelet's secretory response to stimulation by low dose thrombin or phorbol ester.

In addition to potentiating the platelet's secretory response to C5b-9, α-P18 also caused a marked increase in

5,635,178

11

the C5b-9-dependent binding of monoclonal antibody FITC-PAC1 to the platelet surface as shown in FIG. 4. The PAC1 monoclonal antibody recognizes a conformational neo-epitope expressed by activated cell surface GP IIb-IIIa (the platelet's fibrinogen receptor).

C5b-9 assembly and incubation with α-P18 was performed as described for the data shown in FIG. 1, and conformational activation of membrane GPIIb-IIIa complexes probed by staining with FITC-PAC1. Hatched bars denote data for C5b-9 platelets (no α-P18); solid bars denote data for the same platelets pre-treated with 100 µg/ml α-P18 (Fab) before C8 and C9 additions. Controls refer to complement-free platelets.

### Effect of α-P18 on the Procoagulant Activity of the C5b-9 Proteins

In addition to stimulating platelet and endothelial cell secretion, the C5b-9 proteins have been shown to initiate the release of small membrane vesicles, approximately 100 nM diameter, also known as platelet factor 3, from the cell surface that incorporate plasma membrane glycoproteins Ib, IIb, and IIIa, and the α-granule membrane derived glycoprotein GMP-140. The release of these membrane microparticles from the platelet surface is directly coupled to the influx of $Ca^{2+}$ into the platelet cytosol, and results in exposure of membrane receptors for factor Va and expression of catalytic surface for the prothrombinase enzyme complex. As illustrated by FIG. 3B and flow cytometry showing the effect of α-P18 on the release of membrane microparticles from platelets exposed to C5b-9, prior treatment with α-P18 greatly increased the number of microparticles released the platelet surface upon C9 binding to membrane C5b-8. In these studies, platelets and their derived membrane microparticles were quantitated using biotin-AP1, as described by Sims, et al., *J. Biol. Chem.* (1988).

C5b67 platelets were incubated with either 0 or 100 µg/ml α-P18 (Fab) before addition of C8 and C9. After incubation for 10 min at 37° C., the cells were stained with monoclonal antibody AP1 (directed against GP Ib) and analyzed by flow cytometry. The red fluorescence threshold was set so that only GP Ib-positive particles were analyzed. Data for complement-free controls exposed to 0 or 100 µg/ml α-P18 was obtained for purposes of comparison. In these studies, the number of microparticles detected (as percent of all GP-Ib-positive particles analyzed) was 9.7% and 9.2% for the controls, respectively, and 29% and 74% with antibody.

α-P18 alone did not induce vesiculation of the platelet surface nor did this antibody increase the number of microparticles detected when platelets were exposed to other agonists. The distribution of cell surface components between platelets and the shed microparticles is summarized in Table II.

TABLE II

Effect of α-P18 on Microparticle Formation[1]

| | # | FITC-MAC Bound | | FITC-V237 Bound | |
| | α-P18[2] | Micro-parti-cles[3] | Plate-lets | Micro-parti-cles | Plate-lets | Micro-parti-cles |
|---|---|---|---|---|---|---|
| C5b-9[4] | + | 24,560 | 149,500 | 171,400 | 1,651,600 | 4,396,500 |
| | − | 1,810 | 58,500 | 19,700 | 877,000 | 610,400 |
| C5b-8 | + | 790 | 0 | 0 | 160,000 | 35,900 |

12

TABLE II-continued

Effect of α-P18 on Microparticle Formation[1]

| | # | FITC-MAC Bound | | FITC-V237 Bound | |
| | α-P18[2] | Micro-parti-cles[3] | Plate-lets | Micro-parti-cles | Plate-lets | Micro-parti-cles |
|---|---|---|---|---|---|---|
| C5b67 | − | 790 | 0 | 0 | 166,900 | 28,300 |
| | + | 790 | 0 | 0 | 149,900 | 30,900 |
| | − | 790 | 9 | 4 | 159,200 | 30,700 |
| Con-trol | + | 770 | 0 | 0 | 171,500 | 28,100 |
| | − | 760 | — | — | 174,900 | 27,300 |

Footnotes:
[1]Distribution of FITC-labeled antibodies between platelets and platelet-derived microparticles as discriminated by light scattering gates. Data expressed as total fluorescence in each gate (arbitrary fluorescence units). All data corrected for autofluorescence and non-specific binding of labeled antibody.
[2]Platelets incubated in presence (+) or absence (−) of 100 µg/ml α-P18 (Fab).
[3]Number of microparticles detected per 10[4] platelets.
[4]C5b-9 (and intermediates) assembled in Materials and Methods, using 1 µg C5 per 10[8] platelets per ml.

Inspection of the data reveals that the increase in membrane-incorporated C9 due to α-P18 (plotted in FIG. 1) is largely accounted for by C5b-9 complexes bound to GP Ib-positive microparticles. Since all membrane C5b-8 is initially on the platelet surface (the vesiculation of microparticles from the plasma membrane initiated only after C9 binds to its receptor, membrane C5b-8), these data suggest that the α-P18 mediated increase in plasma membrane-inserted C9 is ultimately compensated by the triggered vesiculation of assembled C5b-9 complexes from the platelet surface.

In addition to increasing C9 incorporation and microparticle formation, α-P18 caused a 4-to-5-fold increase in the number of factor Va binding sites exposed upon C5b-9 binding to the platelet surface, as shown by FIGS. 3C and 5A. This increase in total factor Va binding sites represented a 7-fold increase due to new sites exposed on microparticles that were released from the surface of a α-P18 treated platelets, combined with a two-fold increase in the number of factor Va binding sites exposed on the cells themselves under these conditions, as shown by Table II. This increased exposure of factor Va binding sites due to the presence of α-P18 resulted in a comparable increase in the C5b-9-induced expression of catalytic membrane surface for the prothrombinase enzyme complex.

Platelets were incubated with α-P18 and the C5b-9 proteins under conditions described for the data shown in FIG. 1, and then analyzed for exposure of membrane sites for the prothrombinase enzyme complex, as shown in FIG. 5A. Factor Va binding sites were measured using a monoclonal antibody against factor Va light chain (FITC-V237), measured in the presence of 2 µg/ml of the ligand, with the data representing total protein fluorescence for factor Va (platelet and microparticle-associated). FIG. 5B shows prothrombinase activity measured as described in Materials and Methods. Concentrations of α-P18 (Fab) were either 0 or 100 µg/ml. Data for complement-free controls are also shown.

In summary, these data suggest that the platelet and endothelial cell plasma membrane contain an inhibitor of the terminal complement C5b-9 proteins that shares both functional and antigenic properties with the 18 kDa protein recently identified in the human erythrocyte membrane. In erythrocytes, this protein appears to serve a key role in restricting the cytolytic consequence of C5b-9 assembly. In

5,635,178

13

addition to contributing to the normal resistance of human platelets and endothelial cells to lysis by complement, this membrane component appears to directly attenuate the capacity of the C5b-9 proteins to induce procoagulant responses and platelet and leukocyte adhesive endothelial responses.

In platelets exposed to α-P18, the half-maximal concentration of C9 required for C5b-9-induced secretion (FIG. 2), exposure of the PAC1 epitope in GPIIb-IIIa (FIG. 4), exposure of factor Va binding sites (FIG. 5A) and the expression of prothrombinase activity (FIG. 5B) decreased by more than 10-fold. This was accompanied by increased binding of activated C9 at each input of C8 (to Pre-assembled plasma membrane C5b67; FIG. 1).

Taken together, these data suggest that epitopes recognized by α-P18 include functional domains of a membrane component that inhibits formation of the C5b-9 complement pore, specifically by interfering with the binding and/or activation of C9 by membrane bound C5b-8. Similar results have been obtained in studies with erythrocytes and endothelial cells. The requirement for activated C9 (incorporated into membrane C5b-9 complexes) in the platelet responses observed in the presence of this antibody is underscored by the failure to detect significant platelet activation when either C8 alone (in the absence of C9) was added to C5b67 platelets exposed to α-P18 (Table II), or, when saturating amounts of C9 were added to these platelets in the absence of added C8 (FIGS. 2,4,5).

In addition to confirming that the effect of α-P18 is on the capacity of the platelet and endothelial cell membrane to regulate assembly of the C5b-9 pore (and not directly on the stimulatory state of the cell per se), these data exclude the possibility that the increased activation of the complement pore observed in the presence of this antibody arose from trace contamination of the IgG (Feb) by either rabbit C8 or C9.

As shown in FIG. 2B, pre-treatment with α-P18 did slightly increase the lysis of platelets exposed to C5b-9 (as measured by release of LDH). Nevertheless, this effect on the platelet's susceptibility to cytolysis by C5b-9 was quite small, and total cell lysis never exceeded 5% under the experimental conditions. This stands in contrast to the marked effect of this antibody on the sensitivity of platelets to the cell-stimulatory effects of the C5b-9 proteins. Most notably, α-P18 greatly increased both the number of membrane microparticles shed from the surface of C5b-9 treated platelets and the number of factor Va binding sites exposed on these membrane surfaces (microparticle and platelet). This capacity of the platelet to shed cell surface components is integrally related both to the observed inactivation of functional C5b-9 pores, which restores the electrochemical integrity of the plasma membrane, as well as to the exposure of membrane receptors for factor Va, which initiates the prothrombinase reaction.

The capacity of this blocking antibody to potentiate the C5b-9-induced exposure of factor Va binding sites, and thereby increase prothrombinase activity, suggests that a deletion or inactivation of the membrane epitopes recognized by this antibody would also potentiate the procoagulant response of platelets exposed to low levels of complement activation.

It is apparent from the above findings that inactivation of functional C5b-9 inhibitor or a reduction in the platelet or endothelial cell membrane concentration of C5b-9 inhibitor molecules would result in increased platelet or endothelial cell activation. Conversely, administration of this inhibitor,

14

or a polypeptide representing its functional domain and possessing C5b-9 inhibitory activity, to block platelet or endothelial cell activation in a patient in need of such treatment, would thereby protect the patient from C5b-9 mediated procoagulant and prothrombotic responses.

In this context, it is important to note that affected red cells obtained from patients with the acquired stem cell disorder Paroxysmal Nocturnal Hemoglobinuria (PNH) have been shown to exhibit abnormal sensitivity to lysis by the C5b-9 proteins. This has been attributed to the deletion of homologous restriction factor. Platelets obtained from patients with PNH have been shown to be abnormally sensitive to fluid phase complement activation, and this disorder is characterized by an unusually high risk of venous thrombosis. The data with α-P18 suggest a possible mechanism by which loss of the C5b-9 inhibitory activity from the platelet plasma membrane would directly give rise to the thrombotic episodes that are associated with this disorder. This same finding is equally applicable to other types of complement mediated disorders, particularly in view of the discovery that the inhibitor is also found on the surface of endothelial cells. As a result, administration of the inhibitor protein, whether purified from cells or expressed from cells engineered using recombinant techniques, or portions of the peptide having the same measurable activity, can be administered to these patients to alleviate the severity of the disorder.

Treatment of patients with immune disorders and diseases such as immunovasculitis, rheumatoid arthritis, scleroderma, disseminated intravascular coagulation, lupus, paroxysmal nocturnal hemoglobinuria, thrombotic thrombolytic purpura, vascular occlusion, reocclusion after surgery, coronary thrombosis, and myccardial infarction, is accomplished by administering an effective amount of a composition containing a C5b-9 inactivator as defined above such that procoagulant processes are suppressed. In the case of transfused blood cells or transplanted organs or tissue, the purified membrane inhibitor of C5b-9, or the functionally equivalent polypeptide or antibody, is first coated on the cell surface before transplantation or transfusion into the recipient. The amount of composition that must be administered to a patient in need of such treatment will vary depending on the particular disorder or disease and the severity of affliction. Treatment dosages will also vary with the individual patient depending upon response to treatment, genetic variability, and effect of co-administered drugs. In general, however, the compositions disclosed herein are administered intravenously at a dosage of approximately nanograms of inhibitory protein or peptide per milliliter. Treatment can take the form of a single administration of the composition or can be administered periodically or continuously over an extended period of time, as required.

For treatment of immune disorder or disease, the C5b-9 inactivator is administered intravenously in a pharmaceutically acceptable carrier such as saline or a physiologically acceptable buffer.

Isolated, functionally active polypeptides able to inhibit C5b-9 also have utility for increasing the hemostatic efficacy and extending the in vitro storage time of blood and platelet preparations. There exists a great need for prolonging the half-life, and therapeutic efficacy of platelets stored in vitro. Platelet-containing solutions, particularly platelet-rich plasma (PRP), are in tremendous demand medically for transfusions. The current shelf life of platelet preparations is approximately 72 hours. An increase in the useful lifetime of such preparations represents a significant advancement in the state of the art and answers a pressing human and medical need.

5,635,178

15

In the case of human organs and tissue for transplantation, the C5b-9 inactivators would be added to the perfusate or storage medium to protect the vascular lining cells from ongoing complement activation during in vitro storage. Additionally, by coating these endothelial cells with a membrane-anchored C5b-9 inactivator, the organ or tissue would be protected from the cytolytic and thrombotic effects arising from complement activation initiated upon transplantation, thereby circumventing complement mediated acute rejection.

In the preferred embodiment, the C5b-9 inactivator is in combination with anticoagulant, such as ACD, CPD, heparin, or oxalate, such that the concentration in the platelets or PRP is approximately nanograms inactivator/ml. Similarly, for organ storage, the C5b-9 inactivator is in combination with perfusate or storage solutions, or culture medium, such that the concentration is approximately nanograms inactivator/ml.

It is apparent from the foregoing discussion that addition of polypeptides which act to inhibit the activity of C5b-9 towards human platelets and endothelium would reduce the incidence of C5b-9 mediated procoagulant and prothrombotic responses. Release of platelet granule enzymes and factors result in clotting of platelets and general deterioration of the platelet preparation, limiting the shelf life of such preparations. Thus, the addition of the disclosed compositions containing C5b-9 inhibitory polypeptides to platelet preparations will suppress the spontaneous initiation of a procoagulant state and increase the usable life of such preparations.

Compositions useful for extending the shelf life of platelet preparations stored in vitro contain C5b-9 inhibitor in an amount sufficient to inhibit C5b-9 mediated platelet activation. Generally, these compositions will be added to platelet preparations, such as platelet-rich plasma, such that the final concentration of inhibitory polypeptide in the preparation is in the range of greater than 2 Ki of the inactivator in the solution. For the 18 kDa protein and other polypeptides which incorporate a membrane binding domain, the therapeutically effective dosage will be less than 1 µg inactivator/ml. Useful composition may also contain additional anticoagulant agents such as oxalate, citrate, and heparin. The C5b-9 inhibitor containing compositions can be added to whole blood as it is collected or to platelet preparations after processing of the blood into isolated platelet concentrates.

Fluorescence-gated flow cytometry and monoclonal antibodies specific for selected plasma proteins (activated complement proteins and coagulation factors) and for activated cell surface markers (GPIIb-IIIa, GMP140) can be used to monitor the accumulation of cells surface C5b-9, exposure of membrane receptors for coagulation factors fVa and fXa, activation of platelet secretion and platelet fibrinogen receptors, and the release of plasma membrane derived platelet microparticles during in vitro cell storage. These methods can also be used to monitor the secretion or removal of C5b-9 inhibitory proteins from the platelet or endothelial cell surface. Additionally, the fluorescent membrane potentiometric dyes, such as the carbocyanine dyes, for example, diS-C3-5, can be used to measure transmembrane electrochemical gradients indicative of cell viability and metabolic integrity. Use of both of these methods in blood banking will greatly decrease waste as well as therapeutic efficacy of the platelets which are determined not to be activated.

Modifications and variations of the present invention will become obvious to one skilled in the art in view of the

16

description. These modifications and variation are intended to fall within the scope of the appended claims.

We claim:

1. A method for inhibiting platelet or endothelial cell activation by complement proteins comprising:

administering to platelets and/or endothelial cells in an amount effective to inhibit platelet or endothelial cell activation a pharmaceutically acceptable composition comprising a monoclonal antibody which specifically binds to a component forming the C5b-9 complex and which inhibits the platelet or endothelial cell activating function of the C5b-9 complex wherein the platelet or endothelial cell activating function of the C5b-9 complex is characterized by initiation of a transient and reversible depolarization of the plasma membrane potential, a rise in cytosolic calcium, metabolic conversion of arachidonate to thromboxane to prostacyclin and activation of intracellular protein kinases; wherein activation of platelets is additionally characterized by shape changes, secretory fusion of intracellular storage granules with plasma membranes and the vesiculation of membrane components from platelet surfaces; and wherein activation of endothelial cells is additionally characterized by secretion of high molecular weight multimers of the platelet adhesion protein, von Willibrand Factor, and translocation of GMP140 to the endothelial cell surface,

and a pharmaceutically acceptable carrier.

2. The method of claim 1 wherein an effective amount of said monoclonal antibody is administered to a patient in need of treatment for a disease selected from the group consisting of disseminated intravascular coagulation, lupus, rheumatoid arthritis, scleroderma, paroxysmal nocturnal hemoglobinuria, thrombotic thrombolytic purpura, vascular occlusion, reocclusion, coronary thrombosis, myocardial infarction, and complement mediated inflammatory vascular disorders.

3. The method of claim 1, wherein the monoclonal antibody is a Fab fragment.

4. A composition for intravenous injection into a patient comprising:

an effective amount to inhibit platelet or endothelial cell activation of a monoclonal antibody which specifically binds to a component forming the C5b-9 complex and which inhibits the platelet or endothelial cell activating function of the C5b-9 complex wherein the platelet or endothelial cell activating function of the C5b-9 complex is characterized by initiation of a transient and reversible depolarization of the plasma membrane potential, a rise in cytosolic calcium, metabolic conversion of arachidonate to thromboxane to prostacyclin and activation of intracellular protein kinases; wherein activation of platelets is additionally characterized by shape changes, secretory fusion of intracellular storage granules with plasma membranes and the vesiculation of membrane components from platelet surfaces; and wherein activation of endothelial cells is additionally characterized by secretion of high molecular weight multimers of the platelet adhesion protein, von Willibrand Factor, and translocation of GMP140 to the endothelial cell surface,

and a pharmaceutically acceptable carrier.

5. The composition of claim 4 wherein the monoclonal antibody is a Fab fragment.

*  *  *  *  *