IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PDL BIOPHARMA, INC.                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        C. A. No. 07-156-JJF
                                        )
ALEXION PHARMACEUTICALS, INC.,          )
                                        )
                    Defendant.          )

**PDL'S REPLY BRIEF SUPPORTING ITS RULE 12(B)(1)
MOTION TO DISMISS ALEXION'S DECLARATORY JUDGMENT
COUNTERCLAIMS AS TO UNASSERTED PATENT CLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

*Of Counsel*:                          *Attorneys for Plaintiff PDL BioPharma, Inc.*

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

April 4, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION AND SUMMARY ...................................................................1

ARGUMENT .......................................................................................................3

I.     ALEXION HAD THE BURDEN TO DEMONSTRATE THAT
SUBJECT MATTER JURISDICTION OVER ITS
DECLARATORY JUDGMENT COUNTERCLAIM WAS
PRESENT BASED ON ALL THE FACTS AND
CIRCUMSTANCES. IT FAILED TO DO SO...........................................3

     A.    To Show a Case or Controversy, the Answering Brief had
to Demonstrate Injury In Fact. It Failed to do so. ......................4

     B.    Whether A Justiciable Controversy Exists Is Assessed
Based On The Totality Of The Circumstances. The
Answering Brief Does Not Address The Totality Of The
Circumstances, Because They Point—And Firmly So—
Away From A Case Or Controversy...........................................7

II.    EVEN IF THE ANSWERING BRIEF HAD DEMONSTRATED
THE PRESENCE OF DECLARATORY JURISDICTION, THE
CIRCUMSTANCES OF THIS CASE COUNSEL AGAINST THE
USE OF THIS COURT'S RESOURCES TO EXERCISE THAT
JURISDICTION. ...................................................................................13

CONCLUSION...................................................................................................16

ii.

## TABLE OF AUTHORITIES

Page(s)

<u>CASES</u>

*Altvater v. Freeman,*
   319 U.S. 359 (1943).................................................................................9

*Benitec Australia, Ltd. v. Nucleonics, Inc.,*
   495 F.3d 1340 (Fed. Cir. 2007).................................................................3

*Caraco Pharm. Labs., Ltd. v. Forest Labs. Inc.,*
   No. 2007-1404, 2008 WL 850330 (Fed. Cir. April 1, 2008)...................... 4, 6-7, 11

*F.B. Leopold Co. v. Roberts Filter Mfg. Co.,*
   C.A. No. 92-2427, 1995 WL 776945 (W.D. Pa. Aug. 2, 1995) ........................9

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
   824 F.2d 953 (Fed. Cir. 1987)..................................................................12

*Holmes Group Inc. v. Vornado Air Circulation Sys., Inc.,*
   535 U.S. 826 (2002).................................................................................8

*Jervis B. Webb Co. v. Southern Sys., Inc.,*
   742 F.2d 1388 (Fed. Cir. 1984).................................................................3

*Lear Auto. Dearborn, Inc. v Johnson Controls, Inc.,*
   528 F. Supp. 2d 654 (E.D. Mich. 2007).....................................................9

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).................................................................................4

*MedImmune, Inc. v. Genentech, Inc.,*
   127 S. Ct. 764 (2007)........................................................................*Passim*

*Micron Tech, Inc. v. MOSAID Techs, Inc.,*
   No. 2007-1080, 2008 WL 540182 (Fed. Cir. Feb. 29, 2008) .......................4, 11

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,*
   203 F.3d 790 (Fed. Cir. 2000)..................................................................7

*Prasco, LLC v. Medicis Pharm. Corp.,*
   No. 1:06cv313, 2007 WL 1974951 (S.D. Ohio July 3, 2007) .....................8-9

*Samsung Elecs. Co. v. ON Semiconductor Corp.,*
   C.A. No. 06-720-JJF, slip op. (D. Del. April 3, 2008) (Ex. A hereto).................3

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d (Fed. Cir. 2007)...........................................................................4, 9, 10, 11

*Shelcore, Inc. v. Durham Indus.*,
    745 F.2d 621 (Fed. Cir. 1984)...................................................................................9

*Sterling Aluminum Prods, Inc. v. Bohn Aluminum & Brass Corp.*,
    298 F.2d 538 (6th Cir. 1962) ...................................................................................12

*Syngenta Seeds Inc. v Monsanto Co.*,
    No. Civ. 02-1331-SLR, 2004 WL 2790498 (D. Del. Nov 22, 2004) ........................9

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007)........................................................................4, 10-11

*Vanguard Research, Inc. v. PEAT, Inc.*,
    304 F.3d 1249 (Fed. Cir. 2002)...............................................................................12

*Westvaco Corp. v. Int'l Paper Co.*,
    991 F.2d 735 (Fed. Cir. 1993)..................................................................................12

## RULES

Fed. R. Civ. P. 8................................................................................................7, 12, 14

Fed. R. Civ. P. 12(b)(1)..............................................................................................3

## INTRODUCTION AND SUMMARY

This motion presents two issues regarding the declaratory judgment counterclaims of defendant, Alexion Pharmaceuticals, Inc. ("Alexion"):

1.      For this Court to have declaratory judgment jurisdiction, the law requires that the parties have an "actual controversy"—that is, a "case" or "controversy" in the Article III sense. That assessment is made based on all of the facts and circumstances. The record reveals no evidence that, before filing the complaint, PDL BioPharma, Inc. ("PDL"), accused Alexion of infringing the unasserted claims. PDL's complaint did not specifically invoke any of the unasserted claims. Since filing the complaint, PDL has never asserted the unasserted claims; to the contrary, its interrogatory responses have consistently and specifically identified only the asserted claims. In responding to PDL's discovery, Alexion refused to identify its invalidity assertions, asserting that it was "premature" to do so until PDL identified the asserted claims. Based on all of the facts and circumstances, do the parties have an actual controversy about the unasserted claims?

No, they do not. Alexion's answering brief fails to address a most fundamental issue on PDL's motion to dismiss: whether PDL has caused Alexion injury-in-fact with respect to the unasserted claims sufficient to confer constitutional standing. Alexion did not show the required injury here, because it could not. Because PDL has never asserted the unasserted claims, Alexion has not been injured by them—or by the fact that PDL has not asserted them. In the end, Alexion is reduced to advancing the peculiar proposition, not based on all of the facts and circumstances, that the single act of filing a complaint that does not specifically—and forever—disclaim patent claims confers declaratory judgment jurisdiction over every single claim of the asserted patents. No case has ever so held, and for good reason. Under Alexion's theory, declaratory judgment jurisdiction would be virtually unlimited, and the courts would be

flooded with requests for advisory opinions based on hypothetical facts—and, in this case, the parties would have to litigate, and the Court would have to adjudicate, fifty-nine (59) claims that PDL has never asserted and is not asserting.

2.    Even if an actual controversy existed as to the unasserted claims, whether to accept the declaratory judgment counterclaims is discretionary. Here, the record does not reflect any evidence that PDL threatened Alexion with the unasserted claims before filing the lawsuit. The complaint did not specifically invoke any of the unasserted claims. None of PDL's interrogatory responses identified any of the unasserted claims. Alexion refused to provide invalidity contentions on the explicit grounds that it was "premature" to do so until PDL identified the asserted claims (i.e., the claims at issue in the lawsuit)—and stood on that refusal for months. PDL is asserting 28 claims; the patents-in-suit contain 87 claims in total. In those circumstances, is discretion appropriately exercised to accept declaratory jurisdiction over the unasserted claims?

No, it is not. To accept declaratory judgment jurisdiction in this case would swell the number of claims at issue from 28 to 87. That would impose burdens on the parties and the Court at every stage of the proceedings: at claim construction (by increasing the number of disputed terms), fact discovery (by widening the scope of what is at issue), expert discovery (by tripling the number of claims that technical experts would need to address), summary judgment (by vastly increasing the scope of the case), and at trial (by requiring more trial days). Equally important, the approach that the answering brief proposes would fundamentally alter patent litigation in this district and in those districts that choose to follow the unprecedented precedent that the answering brief seeks. Under the answering brief's approach, a patentee plaintiff would have to identify the asserted claims in the complaint—and would also have to foreswear from

asserting the unasserted claims. If a patentee plaintiff failed to do either, the defendant could put all of the claims at issue. That would impose difficult burdens in garden-variety patent cases. It would make patent wars such as this jurisdiction sometimes oversees—cases with dozens of patents at issue—completely unmanageable.

Alexion failed to prove a case or controversy. Even if it had done so, declaratory judgment jurisdiction would appropriately be declined in this case.

ARGUMENT

I.    ALEXION HAD THE BURDEN TO DEMONSTRATE THAT SUBJECT MATTER JURISDICTION OVER ITS DECLARATORY JUDGMENT COUNTERCLAIM WAS PRESENT BASED ON ALL THE FACTS AND CIRCUMSTANCES. IT FAILED TO DO SO.

In this Fed. R. Civ. P. 12(b)(1) factual challenge to Alexion's declaratory judgment counterclaims, the Court may consider evidence outside the relevant pleadings and, the Court's jurisdiction having been challenged, the opposing party (here, Alexion) bears the burden of proving by a preponderance of the evidence that jurisdiction exists. *Samsung Elecs. Co. v. ON Semiconductor Corp.*, C.A. No. 06-720-JJF, slip op. at 8-9 (D. Del. April 3, 2008) (citations omitted) (Ex. A hereto).

As discussed in PDL's opening brief (PDL Br. [D.I. 69] at 5-6), the "existence of a case or controversy is evaluated on a 'claim-by-claim' basis," *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984), and the "burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Alexion failed to meet its burden.

A.    To Show a Case or Controversy, the Answering Brief had
to Demonstrate Injury In Fact.  It Failed to do so.

"The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This "irreducible constitutional minimum of standing" requires "[1] *injury-in-fact*" which is "[2] concrete and particularized" that is "[3] fairly *traceable to the challenged action of the defendant*, and not the result of the independent action of some third party not before the court." *Id.* (brackets and emphasis supplied).  Absent proof of such requirements, there is no Article III controversy. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1340 (Fed. Cir. 2007); *Caraco Pharm. Labs., Ltd. v. Forest Labs. Inc.*, No. 2007-1404, 2008 WL 850330, at *9 (Fed. Cir. April 1, 2008).

Thus, the Federal Circuit has held that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee.*" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d, 1372, 1380-81 (Fed. Cir. 2007) (emphasis supplied).  And since *MedImmune*, the Federal Circuit has consistently required such an "affirmative act" as a predicate to recognizing declaratory judgment jurisdiction, as discussed *infra* at 6-7. *See, e.g., Micron Tech, Inc. v. MOSAID Techs, Inc.*, No. 2007-1080, 2008 WL 540182, at *3 (Fed. Cir. Feb. 29, 2008); *SanDisk*, 480 F.3d at 1382; *Teva*, 482 F.3d at 1343; *Caraco*, 2008 WL 850330, at *10.

Here, the answering brief failed to establish [1] the required injury-in-fact that is [2] concrete and particularized and [3] fairly traceable to PDL's use of the unasserted claims.  PDL has not threatened Alexion with the unasserted claims, has not made any statements indicating an intent to sue Alexion on the unasserted claims, and has not previously sued any

entity on the unasserted claims.  Indeed, PDL has never sued any other entity on any of the claims of the patents-in-suit.  Faced with the absence of any injury-in-fact, the answering brief tries to conjure some: it asserts, baldly, that "PDL has placed Alexion under an imminent threat of prosecuting the remaining claims of the asserted patents at PDL's discretion."  Alexion Br. [D.I. 77] at 9.  That statement is wholly unsupported.  The answering brief cites nothing—no documents, no transcripts, no public statements—to support the assertion.  The brief's attempt to focus only on two words (the "at least" language in the PDL's interrogatory responses) and ignore the overwhelming record evidence is misdirection:  PDL expressly identified the asserted claims to Alexion **before** filing this motion and stated that claim terms from the unasserted claims *are thus not relevant* to any issue in the litigation."  Wu Decl. [D.I. 70.] Ex. 6 (2/28/08 Ltr. from V. Winters to G. Flattmann) (emphasis supplied) (PDL identified that "the asserted claims *are* as follows" in case Alexion misapprehended the asserted claims) (emphasis supplied).

The answering brief concedes (as it must) that PDL is not actually asserting the claims that Alexion's declaratory judgment counterclaim seeks to pursue:  "PDL has selectively chosen—so far—to pursue against Alexion *only certain claims*," and exercising jurisdiction "would prevent an unnecessary delay and duplication or effort *if PDL decided to litigate the remaining claims of the asserted patents* ... between now and the pre-trial period."  Alexion Br. [D.I. 77] at 11, 17 (emphasis supplied); 16 (describing hypothetical facts "[s]hould PDL later choose to pursue these [unasserted] claims").  The answering brief further admits that at the time Alexion filed its counterclaim of invalidity, PDL had not asserted the unasserted claims.  *Id.* at 4 n.1 (Alexion based its invalidity counterclaim on "those claims which PDL *might* choose to assert against Alexion in this litigation").  The parties' dispute about the unasserted claims is thus hypothetical—and purely so.

Alexion's own discovery responses confirm this. Five months *after* PDL filed its complaint, Alexion objected to PDL's interrogatory seeking all facts supporting Alexion's defense of invalidity that the interrogatory was "premature and unduly burdensome because it purports to require Alexion to set forth separate invalidity defenses for over 85 claims *prior to PDL's identification of the asserted claims.*" Wu Decl. [D.I. 70.] Ex. 1 (Alexion's Responses to PDL's First Set of Interrogatories) (emphasis supplied). Alexion's own actions thus confirm that it understood that PDL's complaint was **not** asserting all of the claims of the three patents-in-suit. Therefore, the analytical predicate of its position—that PDL's complaint invoked all of the claims of the patents-in-suit—is baseless.

PDL has not asserted the unasserted claims and resolution of those claims would not redress any actual injury that Alexion has suffered. Further, as discussed in PDL's opening brief, the proposition that PDL can preclude Alexion from entering the market is counterfactual: Alexion has already entered the market (it launched the infringing humanized antibody, Soliris, last March) and PDL's complaint states that in light of the fact that Soliris is the only FDA-approved therapeutic for PNH, PDL is not seeking a permanent injunction. These facts provide another separate reason why there is no [1] injury-in-fact that is [2] concrete and particularized and [3] fairly traceable to PDL's use of the unasserted claims.[1]  PDL Br. [D.I. 69] at 7-8; *see Caraco*, 2008 WL 850330, at *10 (injury-in-fact in ANDA cases is "preventing the FDA from approving the ANDAs of generic drug manufacturers [which allows] pharmaceutical patentees

---

[1]    The answering brief's effort to rely on Alexion's alleged "reasonable apprehension of suit" suffers from two fundamental, and fatal, problems. First, Alexion does not have a "*reasonable* apprehension of suit": PDL is not asserting the unasserted claims, has not threatened Alexion that it would assert them, and has never sued any other entity on them.    Second, the constitutional injury requirement is a separate and dispositive requirement that mandates a showing that Alexion has suffered actual harm as a result of PDL's conduct. There is no such showing here.

. . . [to] exclude non-infringing generic drugs from the market"). Alexion's declaratory judgment counterclaims should be dismissed on that basis alone.

> **B.    Whether A Justiciable Controversy Exists Is Assessed Based On The Totality Of The Circumstances. The Answering Brief Does Not Address The Totality Of The Circumstances, Because They Point—And Firmly So—Away From A Case Or Controversy.**

Even if Alexion had made a sufficient showing of constitutional injury (which it has not), Alexion still lacks jurisdiction to sustain its declaratory judgment claims because there is no justiciable controversy as required by *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007). As discussed in PDL's opening brief, the filing of a Rule 8-compliant general complaint asserting patent infringement cannot automatically create declaratory judgment jurisdiction over each and every claim in the patent; more is required under the "totality of circumstances" test set forth by the Supreme Court in *MedImmune*. PDL Br. [D.I. 69] at 5-6. The logical result of the answering brief's proposed approach would require *all* patentees to specifically identify which claims are infringed in its complaint—and, further, to disclaim, then and forever, assertion of the other claims in the patents-in-suit. Such an outcome would be inconsistent with the well-established principle that a patentee's complaint need not specifically identify the asserted claims. *See, e.g., Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). The answering brief's proposed approach would effectively read out the mandatory disclosure requirements of jurisdictions such as the Eastern District of Texas and Northern District of California, the purpose of which is to permit time *after the filing of the complaint* for the parties to identify the asserted claims. *See, e.g.*, Rule 3-1 of the Rules of Practice for Patent Cases Before the Eastern District of Texas (requiring initial disclosures identifying asserted claims 10 days before the Initial Case Management Conference); Rule 3-1 of the Patent Local

Rules of the Northern District of California (requiring initial disclosures identifying asserted claims 10 days after the Initial Case Management Conference).

Finally, the answering brief's proposed approach would simply be unworkable in the context of, for example, method claims. Because infringers often keep their infringing methods secret (as Alexion has kept its infringing production methods secret in this case), a patentee often cannot confirm whether a defendant is infringing method claims until after taking some discovery. The answering brief's approach gives a method patentee plaintiff a Hobson's choice: either assert method claims without actually knowing whether they are infringed, or assert only the composition-of-matter claims—and cede to the infringing defendant mastery over what claims are at issue. That is not the law. As the Supreme Court has observed, a plaintiff is the "master of the complaint." *Holmes Group Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). The answering brief's approach turns that well-established law on its head, and makes the defendant the master of the plaintiff's complaint.

The answering brief also notes, correctly, that PDL declined Alexion's premature request (made only after this motion was filed) that PDL stipulate to a non-infringement of the unasserted claims. *See* Winters Decl. Ex. 1 (Alexion's emailed request and PDL's emailed response, declining on the grounds that because there was no case or controversy, Alexion's request was inappropriate). But the answering brief draws the wrong conclusion from that fact: a refusal to provide a stipulation of non-infringement of claims that the plaintiff is not asserting fails as a matter of law to create a justiciable controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," as *MedImmune* requires. 127 S. Ct. at 771.[2]

---

[2]    Even the refusal to provide a covenant not to sue does not by itself establish actual and imminent injury sufficient to confer jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, No. 1:06cv313, 2007 WL 1974951 (S.D. Ohio July 3, 2007)). In *Prasco*, the district
(Continued . . .)

The answering brief and discovery statements confirm that there has been no action by PDL that is specifically directed at Alexion as to the unasserted claims, no statement made by PDL to or about Alexion that suggests an intent to sue Alexion for patent infringement of the unasserted claims, and no prior litigation by PDL on the unasserted claims. In sum, the answering brief identified no "affirmative act" of aggression by PDL as to the unasserted claims that is specifically targeted at Alexion or any other party, and therefore no "case or controversy" as to the unasserted claims. *See SanDisk*, 480 F.3d at 1380-81. PDL's refusal to provide assurances as to claims that are not in dispute cannot automatically create declaratory judgment jurisdiction. Because there has never been any actual controversy as to the unasserted claims, the argument that this Court has not been divested of jurisdiction over those claims misses the mark.[3] Alexion Br. [D.I. 77] at 14-15.

The "totality of circumstances" identified by the answering brief is no more than (1) PDL's initial complaint and the (2) refusal to provide a stipulation of noninfringement. As discussed above, Alexion's own actions (its interrogatory responses) showed that it understood

---

(. . . continued)

court held that the alleged infringer's "refusal [to] grant a covenant not to sue holds little weight under the circumstances." *Id.* at *3.

[3]     None of the cases Alexion cites holds that there is jurisdiction over unasserted claims in these circumstances where PDL has never asserted infringement of those claims. *See, e.g., Altvater v. Freeman*, 319 U.S. 359, 365 (1943) (finding jurisdiction where "[r]oyalties were being demanded and royalties were being paid . . . under protest and under the compulsion of an injunction decree"); *Shelcore, Inc. v. Durham Indus.*, 745 F.2d 621, 623 (Fed. Cir. 1984) (finding jurisdiction where patentee sued "for infringement of claims 1-13" in its complaint); *Lear Auto. Dearborn, Inc. v Johnson Controls, Inc.*, 528 F. Supp. 2d 654, 668 (E.D. Mich. 2007) (finding jurisdiction where patentee had "affirmatively alleged infringement of claim 1 in both its initial and amended complaints"); *Syngenta Seeds Inc. v Monsanto Co.*, No. Civ. 02-1331-SLR, 2004 WL 2790498, at *1-2 (D. Del. Nov 22, 2004) (finding jurisdiction where patentee asserted all claims until filing summary judgment motions); *F.B. Leopold Co. v. Roberts Filter Mfg. Co.*, C.A. No. 92-2427, 1995 WL 776945, at *3 (W.D. Pa. Aug. 2, 1995) (finding jurisdiction where the patentee "made general threats of infringement" on the entire patent).

that the complaint asserted only those claims that PDL chose to assert. Moreover, upholding declaratory judgment jurisdiction on such facts would open up the floodgates to an endless stream of declaratory judgment complaints and place patentees in the untenable position of being dragged into court to defend the validity of every claim in their patents by doing no more than filing the complaint that the law has long permitted. Finding jurisdiction in these circumstances would allow a declaratory judgment counterclaimant unilaterally to bring suit on a vast number of unasserted claims regardless of whether it has suffered harm at the hands of the patentee as to those claims. Whatever the boundaries of declaratory judgment jurisdiction after *MedImmune*, they cannot be so expansive. *See* PDL Br. [D.I. 69] at 6-8.

The answering brief cites no case on point that upheld a declaratory judgment claim over unasserted claims on the basis of a general complaint where the parties agree that the patentee had never asserted the unasserted claims. Nor could it, because there is no precedent for such a holding. The Federal Circuit's post-*MedImmune* requirement of an "affirmative act" by the patentee that is specifically directed at the declaratory judgment plaintiff (*see SanDisk*, 480 F.3d at 1380-81) has been consistently applied in each of the post-*MedImmune* Federal Circuit cases on which the answering brief relies. There is no such "affirmative act" here as to the unasserted claims.

The answering brief seeks support from *Teva v. Novartis*, but it provides none: it is inapposite. There, the patentee engaged in the affirmative act of suing Teva on certain patents, which resulted in a 30-month-stay on FDA approval of Teva's ANDA. 482 F.3d at 1343. The answering brief incompletely quotes from *Teva* as holding that the "related litigation involving the same technology and the same parties is relevant in determining whether a justiciable controversy exist on other related patents." Alexion Br. [D.I. 77] at 10. The answering brief

then omits the critical portion of the Court's statement, which makes clear that the Federal

Circuit based its decision on three dispositive factors **unique to the ANDA context**—Novartis'

listing of patents in the Orange Book and its prior suit against Teva that prevented Teva from

entering the market—and not related litigation. The complete quote reads:

> A justiciable declaratory judgment controversy arises for an
> ANDA filer when a patentee lists patents in the Orange Book, the
> ANDA applicant files its ANDA certifying the listed patents under
> paragraph IV, and the patentee brings an action against the
> submitted ANDA on one or more of the patents. The combination
> of these three circumstances is dispositive in establishing an actual
> declaratory judgment controversy as to all the paragraph IV
> certified patents, whether the patentee has sued on all or only some
> of the paragraph IV certified patents. Our conclusion supports
> what we have already established in non-ANDA cases-that related
> litigation involving the same technology and the same parties is
> relevant in determining whether a justiciable declaratory judgment
> controversy exists on other related patents.

482 F.3d at 1344 (emphasis supplied); *see Caraco*, 2008 WL 850330, at *7 (same).  The

answering brief's attempt to analogize this case to *Teva* fails because none of those three

dispositive factors are present here.

      Similarly in *Caraco Pharm. Labs, Ltd. v. Forest Labs., Inc.*, the patentee engaged

in the affirmative act of listing its patents in the Orange Book, which delayed Caraco "from

entering the marketplace indefinitely."  2008 WL 850330, at *10.  Likewise, in *Micron Tech,

Inc. v. MOSAID Techs, Inc.*, the patentee engaged in the affirmative acts of pursuing a litigation

strategy, enforcing its patents against the three other major DRAM manufacturers over a period

of four years, and sending three warning letters directly to the declaratory judgment plaintiff.

2008 WL 540182, at *3.  And in *SanDisk*, the patentee directly accused the declaratory judgment

plaintiff SanDisk of infringement by providing it with a detailed element-by-element

infringement analyses that totaled over 300 pages in length, and further demanded a royalty from

SanDisk for such infringement.  480 F.3d at 1382.  Unlike here, each of these cases involved

affirmative and specific acts of aggression by the patentee directed to the declaratory judgment plaintiff beyond the filing of a general complaint. This case is in striking contrast and there is no support for upholding jurisdiction here, where there is no affirmative act of aggression by PDL directed at Alexion as to the unasserted claims.

The answering brief's citations to *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735 (Fed. Cir. 1993), *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987), are similarly inapposite, as all involved specific affirmative acts by the patent holder. Alexion Br. [D.I. 77] at 7, 10. In *Vanguard*, the patentee wrote Vanguard a letter stating that it "no longer had the right to market [the technology at issue] or to use [the patentee's] Intellectual Property for the development of future contracts." 304 F.3d at 1251. In *Westvaco*, the patentee accused Westvaco of infringement "in a cease-and-desist letter of unlimited scope." 991 F.2d at 741 n.3. In *Goodyear*, the patentee "made innuendos that could reasonably have led Goodyear to believe that [the patentee] would bring an infringement action." 824 F.2d at 956.

The answering brief hopefully invokes a nearly 50-year old case from a different circuit, *Sterling Aluminum Prods, Inc. v. Bohn Aluminum & Brass Corp.*, 298 F.2d 538, (6th Cir. 1962), for the proposition that a Rule 8-compliant complaint is an affirmative act of aggression that gives rise to declaratory judgment jurisdiction as to all of the claims in all of the asserted patents, Alexion Br. [D.I. 77] at 7-8, but the effort stretches the case too far. In *Sterling*, decided long before the Supreme Court's decision in *MedImmune*, the patentee alleged "infringement of all 14 claims of the patent" throughout discovery, and restricted its assertion to two claims only on the eve of trial. 187 F. Supp. 879, 882 (E.D. Mich. 1960). Those critical facts are absent here.

Accordingly, the Court should dismiss Alexion's counterclaims as to the unasserted claims for lack of jurisdiction.

II.   EVEN IF THE ANSWERING BRIEF HAD DEMONSTRATED THE PRESENCE OF DECLARATORY JURISDICTION, THE CIRCUMSTANCES OF THIS CASE COUNSEL AGAINST THE USE OF THIS COURT'S RESOURCES TO EXERCISE THAT JURISDICTION.

For the reasons discussed above and in PDL's opening brief (PDL Br. [D.I. 69] at 9-10), even if this Court were to conclude that Alexion had made the required showing of actual injury and an actual controversy (which it has not), numerous "equitable, prudential, and policy" considerations weigh strongly in favor of this Court exercising its "unique and substantial" discretion to decline to exercise jurisdiction over Alexion's counterclaims. *See MedImmune*, 127 S. Ct. at 776-77.

PDL has never asserted the unasserted claims against Alexion or any other party. *See* Alexion Br. [D.I. 77] at 11.  The answering brief itself admits that it is seeking an advisory opinion based on Alexion's hypothetical injury based on PDL's hypothetical assertion of the unasserted claims. *See* Alexion Br. [D.I. 77] at 17.  Although the question of whether to exercise declaratory judgment jurisdiction is discretionary, as explained in PDL's opening brief, district courts in similar circumstances consistently decline to exercise declaratory judgment jurisdiction in these circumstances.  PDL Br. [D.I. 69] at 9-10 (citing cases).  The answering brief fails to cite, let alone address, these cases.  Alexion Br. [D.I. 77] at 20-21.

The answering brief conclusorily asserts that exercising jurisdiction would "prevent an unnecessary delay and duplication of effort if PDL decided to litigate the remaining claims of the asserted claims anytime between now and the pre-trial period."  Alexion Br. [D.I. 77] at 17.  In fact, that assertion has it backwards:  to accept jurisdiction would create huge inefficiencies, both in this case specifically and, more generally, in future cases as to which such

a decision would serve as precedent. As just one example of the added burden that would result from the answering brief's attempt to bootstrap a controversy where none exists, consider the burden that the answering brief would impose on claim construction, in the specific context of this case. The parties have already exchanged, under the prior Scheduling Order in this case, proposed terms for construction. PDL identified five terms for construction, all from the asserted claims. Winters Decl. Ex. 2 (2/27/08 Ltr. from V. Winters to G. Flattmann identifying PDL's proposed terms for construction). Alexion identified **twenty-four** claim terms for construction— including numerous claim terms and phrases that, as the answering brief admits (Alexion Br. [D.I. 77] at 4 ("Alexion included the terms that require interpretation from the entirety of the patents-in-suit, not just from the claims that PDL has identified")), come from the unasserted claims. Winters Decl. Ex. 3 (2/27/08 Ltr. from C. Willgoos to E. Xanthopoulos identifying Alexion's proposed terms for construction). The answering brief's approach would require this Court to construe highly technical terms and phrases such as "Chothia CDR H1," "hypervariable regions," "outside the Kabat and Chothia CDRs," "outside the hypervariable regions," "outside the Chothia CDR H1 (amino acids 26-32)," "Kabat CDRs," and "outside the Kabat CDRs." Id.

Or consider the effect on expert discovery (and the court-adjudicated disputes that expert discovery often creates). Under the answering brief's approach, technical experts would have to address at least 49 **additional** patent claims. Winters Decl. Ex. 4 (2/18/08 Alexion's First Supplemental Response to PDL's Interrogatory No. 3). That will make expert discovery lengthier and more expensive—to the detriment of both the parties and the Court. So, too, of the summary judgment phase of the case, and of the trial.

As important, the approach that the answering brief proposes would fundamentally and radically change the nature of patent litigation. Fed. R. Civ. P. 8(a) requires

only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under the answering brief's approach, however, a patentee plaintiff's complaint must identify all of the asserted claims—but also foreswear, then and forever, from asserting the unasserted claims. That approach stands Rule 8, and the patent litigation jurisprudence under it, on its head. Consider, too, the practical effect of the answering brief's approach on patent litigation cases in general in this patent-litigation-heavy jurisdiction— particularly in patent wars that involve numerous (sometimes dozens) of patents. Under the answering brief's approach, if a patentee plaintiff files a complaint that asserts infringement of five patents, and a defendant counterclaims for infringement of another six patents, all of the claims of those eleven patents are before the Court. That could be hundreds or even thousands of claims. And yet the answering brief asks that this Court be the first to declare that such circumstances point towards the discretionary exercise of jurisdiction.

Allowing Alexion to proceed in these circumstances—based on no more than a general complaint and the absence of a covenant not to sue—is without legal support and counter to the policies underlying the Declaratory Judgment Act. In such a scenario, declaratory judgment jurisdiction would become virtually automatic and the courts would be flooded with unlimited requests for advisory opinions based on hypothetical facts. Accordingly, the Court should exercise its discretion to decline to exercise jurisdiction over Alexion's declaratory judgment counterclaims as to the unasserted claims.

CONCLUSION

For the foregoing reasons and those set forth in PDL's opening brief, PDL respectfully requests that the Court grants its Motion to Dismiss Alexion's Declaratory Judgment Counterclaims as to the Unasserted Claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
Jblumenfeld@mnat.com
klouden@mnat.com

*Attorneys for PDL BioPharma, Inc.*

*Of Counsel:*

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

April 4, 2008
2282257

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on April 4, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> Andrew A. Lundren
> YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

I also certify that copies were caused to be served on April 4, 2008, upon the following in the manner indicated:

> **VIA ELECTRONIC MAIL**
> **and HAND DELIVERY**
>
> Josy W. Ingersoll, Esquire
> Andrew A. Lundgren, Esquire
> YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street
> 17th Floor
> Wilmington, DE 19801
>
> **VIA ELECTRONIC MAIL**
>
> Gerald J. Flattmann, Jr., Esquire
> Christine Willgoos, Esquire
> Gregory A. Morris , Esquire
> KIRKLAND & ELLIS, LLP
> 153 East 53rd Street
> New York, NY 10022-4611

Jack B. Blumenfeld (#1014)

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
SAMSUNG ELECTRONICS CO., LTD,          :
SAMSUNG ELECTRONICS AMERICA, INC., :
SAMSUNG TELECOMMUNICATIONS AMERICA :
GENERAL, L.L.C., SAMSUNG               :
SEMICONDUCTOR, INC., and SAMSUNG       :
AUSTIN SEMICONDUCTOR L.L.C.,           :
                                       :
            Plaintiffs,                :
                                       :
    v.                                 :  Civil Action No. 06-720-JJF
                                       :
ON SEMICONDUCTOR CORP., and            :
SEMICONDUCTOR COMPONENTS               :
INDUSTRIES, LLC,                       :
                                       :
            Defendants.                :
```

John M. Desmarais, Esquire and James E. Marina, Esquire, of
KIRKLAND & ELLIS LLP, New York, New York.
Josy W. Ingersoll, Esquire; John W. Shaw, Esquire; and Andrew A.
Lundgren, Esquire, of YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, Delaware.

Attorneys for Plaintiffs.

Kenneth Adamo, Esquire, of JONES DAY, Dallas, Texas.
T. Gregory Lanier, Esquire and Behrooz Shariati, Esquire, of
JONES DAY, Menlo Park, California.
Karen Jacobs Louden, Esquire and Richard J. Bauer, Esquire of
MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendants.

**MEMORANDUM OPINION**

April $\underline{3}$, 2008
Wilmington, Delaware.

Farnan, District Judge.

Presently before the Court are Defendants' Motion to Dismiss (D.I. 14) and Motion to Dismiss the Amended Complaint (D.I. 25). For the reasons discussed, Defendants' Motions to Dismiss (D.I. 14 and D.I. 25) will be denied.

## BACKGROUND

### I.   Procedural Background

On November 30, 2006, Samsung Electronics Co., Ltd., ("Samsung") filed its original complaint in this action against ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively, "ON Semiconductor"), seeking a declaration that three United States patents owned by ON Semiconductor, U.S. Patent Nos. 5,563,594 (the "'594 Patent"), 6,362,644 (the "'644 Patent") and 5,361,001 (the "'001 Patent"), are invalid and not infringed by Samsung.

On Monday, December 4, 2006, ON Semiconductor filed a patent infringement action against Samsung in the United States District Court for the Eastern District of Texas, Case No. 6:06cv523, ("the Texas action") alleging infringement by Samsung of the same three patents, as well as a fourth patent, U.S. Patent No. 5,000,827 (the "827 Patent"). ON Semiconductor also named four Samsung affiliates, Samsung Electronics America, Inc. ("Samsung Electronics"), Samsung Telecommunications America General, L.L.C. ("Samsung America"), Samsung Semiconductor, Inc. ("Samsung

2

Semiconductor"), and Samsung Austin Semiconductor, L.L.C ("Samsung Austin"), as co-defendants in the Texas action.[1]

Samsung filed an Amended Complaint in this action on December 21, 2006, adding Samsung Electronics, Samsung America, Samsung Semiconductor and Samsung Austin (with Samsung, collectively "Samsung") as co-plaintiffs, and adding a claim for declaratory judgment of non-infringement and invalidity of the '827 patent, as well as a claim against ON Semiconductor for infringement of Samsung's patent, U.S. Patent No. 5,252,1777 (the "'177 Patent."). (D.I. 10.)

On December 27, 2006, Defendants filed a Motion to Dismiss Plaintiffs' claims for lack of subject matter jurisdiction (D.I. 14). This motion was briefed on January 29, 2007. On January 10, 2007, ON Semiconductor filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction. (D.I. 25.) This motion was briefed on February 1, 2007.

II. Factual Background

Samsung manufactures and markets a variety of semiconductor products, including dynamic random access memories ("DRAMs"). On September 15, 2005, ON Semiconductor, a supplier of high-performance management solutions, sent a letter to Samsung,

---

[1] On June 21, 2007, the Texas action was transferred to this Court for determination of whether this action was properly filed.

accusing Samsung of infringing the patents-in-suit,[2] and requesting a meeting to discuss licensing of these patents. (D.I. 12, Ex. A.)   The parties met for the first time on December 1, 2005.   ON Semiconductor presented two PowerPoint presentations depicting their contention that certain Samsung DRAM products infringed the '594 and '644 patents, (D.I. 12, Ex. B, C) while Samsung presented noninfringement and invalidity arguments. (D.I. 12.)

On August 16, 2006, ON Semiconductor made an offer to Samsung of a 5-year patent license in exchange for a $47 million cash payment, and one percent royalties on future sales of products using the patented technology between 2007 and 2010. (D.I. 15 at 7.)   Samsung found the offer "outlandish and unacceptable," and rejected it. (D.I. 27 at 6.)   When ON Semiconductor did not receive a substantive response to its offer, it sent a letter to Samsung on September 6, 2006 stating:

> ON is certainly left wondering if Samsung intends to ignore ON's proposal and abandon any further discussions to resolve the underlying patent issues. If this is indeed the case, then we must reemphasize to you that Samsung's decision will lead ON to pursue other paths to enforce it [sic] legal rights and remedies.   While we prefer to follow the current path of professional and amicable negotiation with Samsung,

---

[2]ON Semiconductor's September 15, 2005 letter was regarding the '594 and the '644 Patents.   However, on April 24, 2006, ON Semiconductor sent a Samsungond letter to Samsung, indicating their contention that Samsung DRAM products infringed the '001 Patent, at which point the '001 Patent also became part of the licensing negotiation discussions.

>     please rest assured that ON views this matter with the
>     utmost seriousness and is prepared to pursue it to a
>     final conclusion one way or another.

(D.I. 12, Ex. G.) Negotiations continued following Samsung's

receipt of ON Semiconductor's letter.  Samsung contends that on

September 15, 2006, ON Semiconductor's representative, Bradley

Botsch ("Mr. Botsch"), told Samsung's representative, Patrick

Muir ("Mr. Muir"), that ON Semiconductor was considering filing

federal court litigation or an ITC proceeding against Samsung.

(D.I. 12, ¶ 12.)  Mr. Botsch denies making such a statement.

(D.I. 17, ¶ 14.)

The parties met again on September 29, 2006, when, according

to Samsung's representative, Jay Shim ("Mr. Shim"), Mr. Shim told

Mr. Botsch that "the most Samsung was willing to pay was a

nominal sum based on nuisance value."  (D.I. 29, ¶ 7.) According

to Mr. Shim, he again informed Mr. Botsch "that Samsung would not

offer more than nuisance value" during a telephone call on

November 27, 2006.  (Id., ¶ 8.) On November 28, 2006, ON

Semiconductor made a settlement offer of $100 million cash

payment with a cross-license involving Samsung's patents.  (D.I.

15 at 9.)  Mr. Shim indicated that he would pass this offer to

management and the Samsung board of directors.  (D.I. 27 at 9;

D.I. 15 at 9.)

On November 29, 2006, Mr. Shim telephoned Mr. Botsch and

advised him that he had not yet been able to pass along ON

Semiconductor's latest offer.  The parties discussed a potential meeting on December 1, 2006.  (D.I. 15 at 10; D.I. 27 at 10.) Following this phone call, Mr. Shin reported ON Semiconductor's latest offer to Samsung, and it was rejected. (D.I. 29, ¶ 12.) Samsung was willing to offer ON Semiconductor a "nuisance value payment" of $1 million, which could increase to $10 million under certain circumstances. (Id.)

On November 20, 2006, Mr. Shim advised Mr. Botsch that the parties' positions remained far apart, and informed him that Samsung had filed this declaratory judgment action. (D.I. 15 at 10.)  Mr Shim indicated that Samsung still preferred to settle the matter, and informed Mr. Botsch of Samsung's counteroffer, a cross-license encompassing the '594, '644 and '001 patents and all Samsung's patents, and a $1 million payment to ON Semiconductor.  (Id.)  ON Semiconductor immediately rejected Samsung's counteroffer. (D.I. 29, ¶ 13.)  Following ON Semiconductor's rejection of Samsung's counteroffer, Mr. Shim did not request or suggest continuing licensing discussions, and the parties have had no further licensing discussions.  (Id.)

## PARTIES' CONTENTIONS

By its Motions, ON Semiconductor contends that Samsung did not have an objective reasonable apprehension of litigation by ON Semiconductor on November 30, 3006, the day this action was filed.  ON Semiconductor contends that, without such apprehension

at the initiation of a declaratory judgment action, the Court

lacks subject matter jurisdiction to hear the action.   ON

Semiconductor further contends that, even if subject matter

jurisdiction exists, the Court should exercise its broad

discretion to dismiss the declaratory judgment claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes

dismissal of a complaint for lack of jurisdiction over the

subject matter, or if the plaintiff lacks standing to bring his

claim.   Motions brought under Rule 12(b)(1) may present either a

facial or factual challenge to the Court's subject matter

jurisdiction.   In reviewing a facial challenge under Rule

12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this

regard, the Court must accept all factual allegations in the

Complaint as true, and the Court may only consider the complaint

and documents referenced in or attached to the complaint.   Gould

Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).   In

reviewing a factual challenge to the Court's subject matter

jurisdiction, the Court is not confined to the allegations of the

complaint, and the presumption of truthfulness does not attach to

the allegations in the complaint.   Mortensen v. First Fed. Sav. &

Loan, 594 F.2d 884, 891 (3d Cir. 1997). Instead, the Court may

consider evidence outside the pleadings, including affidavits,

depositions and testimony, to resolve any factual issues bearing

on jurisdiction. <u>Gotha v. United States</u>, 115 F.3d 176, 179 (3d Cir. 1997). Once the Court's jurisdiction is challenged, the plaintiff bears the burden of proving that jurisdiction exists.

## ANALYSIS

### I.    Whether Plaintiffs Establish an Actual Controversy for Purposes of the Declaratory Judgment Act

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction." 28 U.S.C. § 2201(a)(2000); <u>EMC Corp. v. Norand Corp.</u>, 89 F.3d 807, 810 (Fed. Cir. 2004) (overruled in part on other grounds, <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S.Ct. 764 (2007)). Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint. <u>Shell Oil Co. v. Amoco Corp.</u>, 970 F.3d 885, 887 (Fed. Cir. 1992).

Following the Supreme Court's decision in <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S.Ct. 764 (2007), the Federal Circuit has acknowledged that the "reasonable apprehension of suit test is no longer a necessary criterion for declaratory judgment jurisdiction."[3] <u>Micron Tech., Inc. v. Mosaid Tech., Inc.</u>, —

---

[3]Prior to the Supreme Court's ruling in <u>MedImmune</u>, an actual controversy existed when there was both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." <u>Gen-Probe, Inc. v. Vysis, Inc.</u>, 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting <u>BP Chems.</u>

8

F.3d —, 2008 WL 540182, at *4 (Fed. Cir., Feb. 29, 2008).
Instead, jurisdiction over a declaratory judgment requires that
"the dispute be definite and concrete, touching the legal
relations of parties having adverse legal interests and that it
be real and substantial and admit of specific relief through a
decree of conclusive character, as distinguished from an opinion
advising what the law would be upon a hypothetical state of
facts."  MedImmune, 127 S.Ct. at 771.

By later dated July 6, 2007, Samsung requested the
opportunity to submit supplemental briefing in light of Federal
Circuit cases interpreting MedImmune as rejecting the "reasonable
apprehension of suit" test.  (D.I. 75.) In response, ON
Semiconductor contended that MedImmune "did not overrule the
'reasonable apprehension of suit' test, as [Samsung] contends,"
and declined the opportunity to submit additional briefing in
support of their Motions. (D.I. 77 at 2.)  By their letter, ON
Semiconductor also contended that the Court lacked subject matter
jurisdiction even under the Federal Circuit cases cited by
Samsung in their letter, since "the dispute between the parties
was far from definite and substantial."  (Id. at 2.)

ON Semiconductor's argument that the Court should apply the
"reasonable apprehension of suit" test is inconsistent with
recent, relevant Federal Circuit precedent.  See, e.g., Micron

_____

Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).

9

Tech., -- F.3d at *4; SanDisk Corp. v. STMicroelectronics Inc.,
480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's
opinion in MedImmune represents a rejection of our reasonable
apprehension of suit test."). This precedent largely moots ON
Semiconductor's contentions based on their assertion that they
had not threatened Samsung with a lawsuit.

In SanDisk, 480 F.3d at 1381, the Federal Circuit stated:

[W]here a patentee asserts rights under a patent based
on certain identified ongoing or planned activity of
another party, and where that party contends that it
has the right to engage in the accused activity without
license, an Article III case or controversy will arise
and the party need not risk a suit for infringement by
engaging in the identified activity before seeking a
declaration of its legal rights.

The record evidence demonstrates that ON Semiconductor accused
Samsung of infringing the '594, '644 and '001 patents, by letters
dated September 15, 2005 and April 24, 2006 (D.I. 12, Ex. A, D),
and had made a "studied and considered determination" of
infringement (Id., Ex. B, C). SanDisk, 480 F.3d at 1383. Samsung
has maintained that its DRAMs do not infringe the patents-in-
suit, and that the patents-in-suit are invalid. (D.I. 1; D.I.
12.) The continuation of licensing negotiations is not
dispositive with regard to the existence of an actual
controversy. SanDisk, 480 F.3d at 1381. "These facts evince that
the conditions of creating 'a substantial controversy, between
parties having adverse legal interest, of sufficient immediacy
and reality to warrant the issuance of a declaratory judgment'

10

were filled." Id. (internal citations omitted).[4]

Accordingly, the Court concludes that Samsung has adduced sufficient evidence to warrant a finding of an actual controversy between the parties under the standard set forth in MedImmune and SanDisk.

## II. Whether the Court Should Exercise its Discretion to Resolve the Dispute

Having determined that subject matter jurisdiction pursuant to the Declaratory Judgment Act exists, the Court must now determine whether it is appropriate to exercise that jurisdiction.

ON Semiconductor contends that the Court should decline jurisdiction because (1) Samsung filed this action to gain tactical leverage in ongoing negotiations, and (2) ON Semiconductor should be deprived of its choice of forum "merely because it attempted to arrange a settlement." (D.I. 15 at 24.) In response, Samsung first contends that it filed this action not to gain leverage, but to "protect itself from the uncertainty and inSamsungurity surrounding its sale of the accused DRAM products caused by Defendants' threats-the precise purpose of the Declaratory Judgment Act." (D.I. 27 at 23.) Samsung further contends that its choice of Delaware as a forum for this dispute

---

[4] In SanDisk, the Federal Circuit also stated that a statement by defendant that it did not intend to sue "does not moot the actual controversy created by its acts." 480 F.3d at 1383.

is both "rational and appropriate," since both parties are
incorporated in Delaware, and the Eastern District of Texas has
no relevant connection to the parties.  (Id. at 27.)

The Court has concluded that an actual controversy exists.
A declaratory judgment would settle the parties' dispute and
would afford Samsung relief from uncertainty.  SanDisk, 480 F.3d
at 1383 ("When there is an actual controversy and a declaratory
judgment would settle the legal relations in dispute and afford
relief from uncertainty or inSamsungurity, in the usual
circumstance the declaratory judgment is not subject to
dismissal.") Therefore, the Court concludes that exercising
jurisdiction is appropriate.[5]  Accordingly, the Court will deny
Defendants' Motions to Dismiss (D.I. 14 and D.I. 25.).

## Conclusions

For the reasons discussed, Defendants' Motions to Dismiss

_____

[5] In contending that the Court should exercise its
discretion to dismiss this declaratory judgment action, ON
Semiconductor relies heavily on the Federal Circuit's decision in
EMC Corp., 89 F.3d 807.  In EMC, the Federal Circuit stated:
"[w]hile a court may conclude that ongoing negotiations do not
negate the presence of a controversy for jurisdictional purposes,
the court may nonetheless find, in deciding whether to hear the
declaratory judgment action, that the need for judicial relief is
not as compelling as in cases in which there is no real prospect
of a non-judicial resolution of the dispute." Id. at 814.  Here,
however, the record evidence indicates that when Samsung filed
suit, the parties were at an impasse with respect to negotiation
positions.  (D.I. 17, 29.)  The Court also notes that, by letter
dated September 6, 2006, ON Semiconductor had indicated its
willingness to "pursue other paths to enforce its legal rights
and remedies." (D.I. 12,  Ex. G.) Accordingly, the Court finds
that ON Semiconductor's reliance on EMC is misplaced.

12

(D.I. 14 and D.I. 25) will be denied.

An appropriate order will be entered.