IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-156-JJF |
| | ) | |
| ALEXION PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO BIFURCATE AND STAY TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. #3362)
Andrew A. Lundgren (I.D. #4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Dated: May 6, 2008

## TABLE OF CONTENTS

Nature and Stage of the Proceedings ........................................................................................ 1

Summary of the Argument........................................................................................................ 1

Statement of the Facts............................................................................................................... 2

Argument .................................................................................................................................. 3

      A.    This Court Routinely Bifurcates Damages Issues To Promote Judicial Economy ............................................................................................................... 3

      B.    Bifurcating and Staying Damages Issues Would Promote Judicial Economy ............................................................................................................... 4

            1.    The Liability And Damages Issues Are Complex And Readily Separable ............................................................................................... 4

            2.    There Is No Substantial Overlap Between Liability And Damages ............ 5

            3.    There Is No Substantial Overlap Between Liability And Willfulness ....... 7

      C.    Bifurcation Would Reduce Jury Confusion ............................................................ 8

      D.    Bifurcating and Staying Willfulness Would Eliminate Unfair Prejudice To Alexion ................................................................................................................. 9

Conclusion .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Pharmacia Corp.*,
  No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002) ............................ 4, 9

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) ............................................................................. 4, 6, 8

*Corning Inc. v. SRU Biosystems, LLC*,
  223 F.R.D. 189 (D. Del. 2004) ............................................................................. 4, 9

*Enzo Life Sci., Inc. v. Digene Corp.*,
  No. Civ.A. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ............................ 7

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) ............................................................................. 3, 7

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................................... 5, 6, 8

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990) ............................................................................. 8

*Idzojtic v. Pa. R.R.*,
  456 F.2d 1228 (3rd Cir. 1972) ............................................................................. 3

*In re Calmar*,
  854 F.2d 461 (Fed. Cir. 1988) ............................................................................. 3

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998) ............................................................................. 6

*In re Seagate Technology LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ............................................................................. 7, 8, 9, 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................. 3

*McCullough v. Kammerer Corp.*,
  331 U.S. 96 (1947) ............................................................................. 3

*Medpointe Healthcare Inc. v. Hi-Tech Pharm. Co., Inc.*,
  Nos. Civ.A.03-5550 (MLC), 04-1686 (MLC),
  2007 WL 188285 (D.N.J. Jan. 22, 2007) ............................................................................. 6, 7

*Novozymes v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007) ............................................................................. 4, 9

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
  587 F.Supp. 1112 (D. Del. 1984) .................................................................................. 6

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
  No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004) .............................. 4, 9

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
  180 F.R.D. 254 (D.N.J. 1997) ...................................................................................... 8, 10

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992) ...................................................................................... 7

*Smith v. Alyeska Pipeline Serv. Co.*,
  538 F. Supp. 977 (D. Del. 1982) .................................................................................. 4, 8

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
  No. Civ.A.01-577-JJF, 2002 WL 1901268 (D. Del. Aug. 16, 2002) ............................. 9

**Rules**

Fed. R. Civ. P. 42(b) ............................................................................................................. 3

Defendant Alexion Pharmaceuticals, Inc. ("Alexion") respectfully moves the Court for an Order bifurcating and staying trial of all damages issues, including enhanced damages and willfulness, pending resolution of the underlying liability issues in this action.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff PDL Biopharma, Inc. ("PDL") filed its complaint against Alexion alleging infringement of U.S. Patents Nos. 5,693,761 ("the '761 patent"); 5,693,762 ("the '762 patent"); and 6,180,370 ("the '370 patent") on March 16, 2007. D.I. 1. Alexion filed its Answer and Counterclaims on June 4, 2007 and PDL replied on June 25, 2007. D.I. 11, 14. Alexion filed its Amended Counterclaims on December 7, 2007 and PDL replied on January 4, 2008. D.I. 45, 46.

Markman briefing and fact discovery are scheduled to close on June 11, 2008 and October 2, 2008, respectively. D.I. 76 ¶¶ 4(e), 6. Willfulness discovery is scheduled for completion on August 1, 2008. D.I. 89.

On September 6, 2007, Alexion moved to bifurcate and stay discovery and trial on all damages and willfulness issues pending the resolution of the underlying liability issues in this action. D.I. 32. Briefing on the motion was completed on October 4, 2007. D.I. 35, 38. During the April 11, 2008 hearing on PDL's Motion to Compel Discovery From Alexion, D.I. 63, Alexion confirmed that it had not and would not withhold damages-related document discovery on the basis of its bifurcation motion, and the Court confirmed that "discovery is open on all issues." 4/11/08 Hr'g Tr. at 5-6. Although the bifurcation motion was not up for hearing, the oral order entered in the docket indicated that the motion had been denied. In response to Alexion's e-mail requesting clarification of the docketed order, the Court ordered Alexion to renew its motion to bifurcate "so as to clarify the Court's April 11, 2008 Oral Order." *See* 4/16/08 Order. This is Alexion's opening brief in support of its renewed motion for bifurcation.

## SUMMARY OF THE ARGUMENT

This is a complex patent infringement litigation in which bifurcation of damages and willfulness from liability would promote judicial economy, conserve the Court's and the parties' resources, reduce jury confusion, and eliminate any potential prejudice to Alexion. Many of

PDL's arguments in opposition to Alexion's original motion concerned the potential for duplication and delay if damages discovery were stayed pending a liability determination. Those arguments are largely moot as Alexion has and will continue to provide discovery on these issues, and now seeks to bifurcate and stay *trial* on damages and willfulness.

A single trial of liability and damages issues will be time-consuming and expensive, and there is little, if any, overlap between the issues of patent infringement, invalidity and enforceability on the one hand, and damages and willfulness issues on the other. Without bifurcation, the presentation of damages and willfulness evidence at trial will likely confuse the jurors, and may even lead to their impermissible use of that evidence in their liability determination. Bifurcation benefits both the parties and the Court as resolution of liability may eliminate the need for a trial on damages and willfulness altogether. At a minimum, it will streamline the claims and/or theories under which PDL may seek damages, and will likely encourage the parties to settle. Conversely, there is no harm to PDL in bifurcating trial, as discovery on damages is proceeding and the damages and willfulness trial can proceed shortly, if not immediately, after the liability trial.

Accordingly, Alexion requests that the Court bifurcate and stay the trial of damages, including willfulness and exceptional case, from liability.

## STATEMENT OF THE FACTS

This is a patent infringement case, involving three patents—the '761, '762 and '370 patents—related to "humanized antibody" technology and over 20 years of prior art, research, development, testing, and licensing. Humanized antibodies are comprised of part-human, part-animal (often mouse) components and are designed to specifically bind antigenic targets within the human body. As such, humanized antibodies may be used therapeutically for the treatment of disease or other pathologic conditions.

Alexion is a biopharmaceutical company that focuses on developing novel antibody therapeutics targeting the treatment of patients with a wide array of severe disease states, including hematologic diseases, cancer, and autoimmune disorders. Alexion spent years and

2

many millions of dollars to develop, test, and now produce the humanized antibody Soliris®, which is the first and only therapy approved for the treatment of paroxysmal nocturnal hemoglobinuria ("PNH"), a rare, disabling, and life-threatening blood disorder characterized by chronic red blood cell destruction, or hemolysis.

To date, PDL has specifically alleged that Soliris® willfully infringes at least 28 claims of the patents-in-suit and requests damages for Alexion's sale of the product, but not an injunction to stop those sales. Alexion denies that it infringes any claim of the patents-in-suit, that the claims are valid or enforceable and that PDL is entitled to any damages. Accordingly, Alexion has counterclaimed for noninfringement and invalidity. *See, e.g.,* D.I. 45.

## ARGUMENT

### A.  This Court Routinely Bifurcates Damages Issues To Promote Judicial Economy

A district court has the "power to stay proceedings" arising from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This inherent power includes broad discretion to achieve such economy by bifurcating issues and ordering separate trials. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211-12 (Fed. Cir. 1987) (holding district court did not abuse its discretion in separating enforceability trial from infringement and validity even though the same prior art may be presented in both); *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3rd Cir. 1972). In particular, a district court may bifurcate trial of discrete issues or claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b).

The Supreme Court has noted that bifurcation of liability and damages issues in patent cases promotes efficiency and economy because bifurcation "prevent[s] a great burden of expense to litigants in [patent] actions" and "obviate[s] the cost of an accounting in the event the case is reversed on appeal." *McCullough v. Kammerer Corp.*, 331 U.S. 96, 99 n.1 (1947) (commenting on predecessor to § 1292(c)(2)); *cf. In re Calmar*, 854 F.2d 461, 463-64 (Fed. Cir. 1988) ("the purpose of ... § 1292(c)(2) ...was to *permit* a stay of a damages trial.").

Accordingly, this Court has routinely held that bifurcation simplifies and streamlines the resolution of patent cases:

> In the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury…In fact, bifurcation of complex patent trials has become common…Typically, courts bifurcate patent cases into liability and damage trials.

*Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (internal quotations omitted).[1]

### B. Bifurcating and Staying Damages Issues Would Promote Judicial Economy

Bifurcating trial of this case into a liability phase and a damages phase would promote judicial economy and conserve the resources of the Court and the parties. The issues in this litigation are complex and bifurcation is appropriate because there is little or no overlap between issues, witnesses and documents related to damages and those relevant to the determination of liability. A liability decision in Alexion's favor will obviate the need for and cost and time associated with a damages and willfulness trial. At the very least, bifurcation of damages and willfulness would streamline the issues for that trial as there will be no need for a damages analysis or willfulness determination for any asserted claims that are found not infringed, invalid, or unenforceable. Similarly, any resolution of liability in PDL's favor may encourage the parties to negotiate a settlement, thereby avoiding the need for trial of damages and willfulness issues. *See Smith*, 538 F. Supp. at 984.

#### 1. The Liability And Damages Issues Are Complex And Readily Separable

The technical liability issues in this case are complex, involving an analysis of evidence concerning over 20 years of work relating to humanized antibodies. The infringement question

---

[1] *See also Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) (holding separate second trial on willfulness and damages after liability trial); *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004) (bifurcating willfulness from liability discovery); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004) (same); *Allergan, Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002) (bifurcating discovery and trial of willfulness in recognition of the potential prejudice concerning the accused infringer's opinions of counsel); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982) (bifurcating trial on damages under Rule 42(b) until after resolution of liability issues).

requires a detailed claims analysis using evidence, including expert testimony, that is different from the issues and evidence that will be necessary for the reasonable royalty calculation and willfulness determination. For example, during the liability phase of this case, the jury will need to become familiar with the technology of the patents-in-suit and determine whether Soliris® infringes at least 28 claims, whether those claims are rendered anticipated or obvious in light of the prior art, and whether the asserted patents are enforceable.[2] These inquiries will involve the background of the technology, an in-depth analysis of Soliris®, as well as a variety of prior art activities and references and a detailed comparison of that information to each and every claim at issue. This will necessitate testimony not only from fact witnesses, but also from technical experts on both sides of the validity, infringement, and enforceability issues.

The determination of damages will be equally complex, but involves different issues that are readily separable. For example, PDL has asserted that it is entitled to a reasonable royalty, the determination of which will involve a detailed analysis of at least the 15 *Georgia Pacific* factors, consideration of upwards of 40 third party licenses that PDL has entered into concerning the patents-in-suit,[3] as well as expert testimony from economists, accountants, and/or licensing experts. Likewise, the determination of willfulness is also separable as it will involve a determination of whether Alexion acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and will require the presentation of evidence concerning what Alexion knew or should have known at the time of the allegedly infringing acts.

        2.       There Is No Substantial Overlap Between Liability And Damages

Contrary to PDL's assertion, the issues of infringement, validity, and enforceability of the patents-in-suit do not substantially overlap with the determination of a reasonable royalty. *See* D.I. 35 at 7-8. PDL generally argues that the jury's consideration of secondary indicia of

---

[2] In addition to the 28 claims that PDL has, to date, identified Alexion as infringing, Alexion has counterclaimed for invalidity of additional claims that may be at issue during the liability phase of the trial.

[3] Based on discovery to date, Alexion estimates that PDL has licenses, or has had license negotiations, with at least 40 companies regarding the patents-in-suit. PDL has not yet disclosed the exact number of its licensees, nor has it produced the licenses to Alexion.

nonobviousness will overlap with *Georgia Pacific* Factor 8. *Id.* As an initial matter, most patent cases involve consideration of both secondary indicia and the determination of a reasonable royalty. Thus, accepting PDL's overlap argument here would weigh against bifurcation in every patent case. Indeed, given the broad range of factors potentially relevant to the analysis of obviousness, *see, e.g., In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998) (listing eleven factors), and a reasonable royalty, *see, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing fifteen factors), a party opposing bifurcation will always be able to point to some potential overlap between the two analyses. Even in the face of such potential for overlap, "[t]ypically, courts bifurcate patent cases into liability and damage trials." *Ciena*, 210 F.R.D. at 521; *Medpointe Healthcare Inc. v. Hi-Tech Pharm. Co., Inc.*, Nos. Civ.A.03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285, *6 (D.N.J. Jan. 22, 2007) (bifurcating trial on willfulness and damages from liability even though there would be some overlap in witnesses and noting that "this is the situation with any bifurcated trial.").

As discussed above, the analyses of obviousness and reasonable royalty are starkly different from each other, and different fact and expert witnesses are necessary to prove these distinct legal theories. For example, the commercial success determination here involves a minimal inquiry into whether the alleged commercial embodiments practice the claimed inventions, whether they have experienced success in the market place, and whether there is a nexus between that success and the patents-in-suit. Conversely, the reasonable royalty determination will necessitate an extensive analysis of the 15 *Georgia Pacific* factors, including an examination of agreed-upon royalties, actual royalties comprised of payments divided by licensees' sales, royalties paid for comparable patents, and detailed analysis of the nature and scope of each relevant license, including over 40 third party licenses that PDL has entered into or had negotiations concerning the patents-in-suit or other potentially relevant technology. *See Georgia-Pacific*, 318 F. Supp. at 1120; *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 587 F.Supp. 1112, 1116 (D. Del. 1984) ("The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and

intricate financial data, such as is required for proof of damages.").

Similarly, the element-by-element analysis of each patent claim necessary to prove anticipation is distinct from the "advantages... over the old modes or devices" relevant to damages. *See* D.I. 35 at 8. Thus, any such overlap here would be minimal at best and not sufficient to preclude bifurcation: "'[T]he prohibition is not against having two juries review the same *evidence,* but rather against having two juries *decide* the same *essential issues.*'" *Gardco,* 820 F.2d at 1213 (internal citations omitted) (bifurcating unenforceability from invalidity even where the same prior art may be presented in both trials); *Medpointe,* 2007 WL 188285, at *6 (ordering bifurcation over patentee's objection that some commercial issues would overlap); *cf. Enzo Life Sci., Inc. v. Digene Corp.,* No. Civ.A. 02-212-JJF, 2003 WL 21402512, *5 (D. Del. June 10, 2003) (trifurcating patent infringement, validity, and business tort claims to prevent juror confusion and avoid prejudice even in light of the evidentiary overlap between the trials).

        3.     There Is No Substantial Overlap Between Liability And Willfulness

PDL's argument that willfulness overlaps with inducement of infringement is similarly flawed. D.I. 35 at 13. As an initial matter, the Federal Circuit's decision in *In re Seagate Technology, LLC,* announced a new standard for the determination of willfulness: "[T]o establish willful infringement, a patentee must show ... that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007). In determining whether an alleged infringer is liable, the fact-finders need only consider whether the accused product reads on the asserted patent claims. They need not consider what constitutes an unreasonable risk, nor do they need to examine whether the defendant knew or should have known of such a risk. The issues of infringement and willfulness, therefore, remain factually distinct questions.

Indeed, PDL attempts to rely on the 1992 *Read* case, recently overturned by *Seagate*, to advance its baseless legal argument with respect to inducement.[4] Contrary to PDL's argument,

---

[4] *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed. Cir. 1992); *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir. 2007).

7

"[t]he state of mind of the accused infringer is not relevant to this objective inquiry [of willfulness]." *In re Seagate*, 497 F.3d at 1371. On the other hand, inducement requires "proof of actual intent to cause the acts which constitute the infringement..." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Thus, inducement and willfulness are two very different inquiries: the former is focused on Alexion's subjective knowledge of non-parties' likelihood of infringement of the patents-in-suit, the latter on an objective inquiry into the reasonableness of Alexion's conduct. Therefore, the overlap in the evidence required to prove inducement of infringement and that required to prove willfulness—if any exists—is minimal.

**C.      Bifurcation Would Reduce Jury Confusion**

The inclusion of liability and damages issues in a single trial is likely to create jury confusion. This Court recognizes the importance of streamlining complex legal and factual issues to avoid confusing and overwhelming the jury:

> [B]ifurcation is an important discretionary tool that district courts can use in patent cases to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them... Specifically, bifurcation might enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time.

*See Ciena*, 210 F.R.D. at 521. *See also Smith*, 538 F. Supp. at 983-84 (noting that trial of damages and liability together "would tend to clutter the record and to confuse the jury."); *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258 (D.N.J. 1997) (finding a patent case "ripe for bifurcation" where the jury would be required to analyze volumes of evidence concerning multiple asserted patent claims—a task that "would surely be overwhelming to even the most sophisticated jurors.").

The danger of juror confusion is particularly likely here because of the number and complexity of the licenses PDL has entered into with upwards of 40 putative licensees. As set forth above, the analysis of those licenses necessary with respect to liability issues is minimal, but is extensive in the *Georgia Pacific* analysis used to determine damages. Moreover, the

8

evidence concerning the various royalty rates and terms of over 40 licenses may confuse and unfairly prejudice the jury's determination of Alexion's liability by creating a false impression that the licenses are indicative of the validity, enforceability or infringement of the patents.

Bifurcating and staying damages in this action would promote and enhance juror understanding by segregating the trial on liability issues of infringement and validity from damages and willfulness issues. For example, a determination of reasonable royalty damages requires the jury to consider 15 factors—none related to liability—such as the nature and scope of existing licenses, the extent of convoyed sales, and the profitability of products made under the patent. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120. Bifurcation of damages issues would limit the number of legal issues for the jury to consider, reduce the nature and scope of the evidence presented, and focus the jury on the scientific and technical facts necessary for determination of liability. Narrowing the issues for trial would also enable the parties to present evidence regarding liability in a manner that is easier for the jurors to understand, and avoid the risk of jurors using evidence that relates solely to willfulness or damages as part of the infringement determination.

**D.     Bifurcating and Staying Willfulness Would Eliminate Unfair Prejudice To Alexion**

Bifurcating and staying trial of the damages issues, including willfulness and exceptional case, will promote fairness by avoiding presentation of unfairly prejudicial evidence to the jury during the liability trial. Prior to *Seagate*, this Court routinely separated enhanced damages from liability for trial, finding that "undue prejudice could result if ... otherwise privileged documents were exchanged and used during the trial of infringement and validity issues." *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A.01-577-JJF, 2002 WL 1901268, at *2 (D. Del. Aug. 16, 2002).[5] Because the *Seagate* decision did not eliminate the waiver of privilege that necessarily accompanies disclosure of opinions of counsel, this Court's reasoning

---

[5]    *See also Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007); *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004); *Allergan, Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002).

9

remains sound under the new law. Thus, bifurcating willfulness and hearing it after the liability phase of the trial would eliminate the danger that evidence regarding willfulness might unfairly prejudice the jury against Alexion during the liability phase of trial.[6]

Moreover, trying liability and willfulness together, where there is a real possibility that only liability issues will have to be tried, would cause significant unnecessary expense for both parties. PDL stands to gain from a bifurcated trial, and has little or nothing to lose. Because discovery is proceeding on both liability and damages, the only delay will be the start date for the damages trial, which can proceed shortly, if not immediately, after the liability trial. *Princeton Biochemicals*, 180 F.R.D. at 259-60 (finding no prejudice to the patentee where the accused infringer would produce sales information during the liability phase of the case so both parties would be able to evaluate settlement and commercial success). Moreover, in its complaint PDL seeks only monetary damages, and explicitly states that it will not seek an injunction. D.I. 1 at ¶ 5. Thus, even if the ultimate judgment favors PDL, it will still be entitled to damages that accrued up to the date of the judgment. On the other hand, two of Alexion's reasons for seeking separate trials—speedier resolution and economy of resources—also benefit PDL. Accordingly, PDL cannot reasonably claim that it would be prejudiced by bifurcation.

## CONCLUSION

For all of the reasons set forth above, Alexion respectfully requests that the Court stay trial on damages, enhanced damages, and willfulness pending resolution of liability.

---

[6] Under *Seagate*, disclosure of opinions of counsel necessarily triggers a limited subject matter waiver of attorney-client privilege. 497 F.3d at 1370-71, 1374-75. Accordingly, should the Court grant Alexion's motion to bifurcate trial, Alexion respectfully submits that it would be appropriate for the Court to also stay the April 24, 2008 Order setting a date for completion of discovery on the issue of willfulness. D.I. 89. Such a stay would cause little, if any, prejudice to PDL because the necessary discovery concerning willfulness could be completed quickly upon the Court's determination of liability.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*[signature]*

Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600

OF COUNSEL:

*Attorneys for Defendant Alexion Pharmaceuticals, Inc.*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Dated: May 6, 2008

11

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on May 6, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Karen Jacobs Louden, Esquire
>Morris Nichols Arsht & Tunnell LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899-1347

I further certify that on May 6, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

>Matthew D. Powers, Esquire
>Vernon M. Winters, Esquire
>John D. Beynon, Esquire
>Weil, Gotshal & Manges LLP
>201 Redwood Shores Parkway
>Redwood Shores, CA 94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Andrew A. Lundgren
Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant*