IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PDL BIOPHARMA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-156 (JJF) |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PDL'S REVISED ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT'S RENEWED MOTION TO BIFURCATE
AND STAY TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com
*Attorneys for Plaintiff PDL BioPharma, Inc.*

OF COUNSEL:

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

May 28, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ...................................... 1

II.     SUMMARY OF THE ARGUMENT .............................................................. 1

III.    STATEMENTS OF FACTS ............................................................................ 2

        A.    The Technology At Issue .................................................................... 2

        B.    This Is Not A Complicated Action. .................................................... 3

IV.     ARGUMENT .................................................................................................... 3

        A.    Standards For Decision ....................................................................... 3

        B.    The Court Should Deny Alexion's Renewed Motion To Bifurcate as
              Premature. ........................................................................................... 4

        C.    The Motion Should Also Be Denied Because Alexion Has Not Established
              That This Is An Exceptional Case Warranting Bifurcation. ............... 5

              1.    Bifurcation And Stay of Damages And Willfulness Issues Would
                    Not Promote Judicial Efficiency Because These Issues Are
                    Intertwined With Liability. ...................................................... 5

              2.    PDL, Not Alexion, Would Be Prejudiced By Bifurcation And Stay
                    Of Damages And Other Issues................................................... 8

        D.    Alexion's Attempt To Circumvent This Court's Discovery Orders Should
              Be Denied............................................................................................ 10

V.      CONCLUSION................................................................................................ 10

<u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Crown Pack'g Tech., Inc. v. Rexam Beverage Can Co.,*
  C.A. No. 05-608-MPT, 2007 U.S. Dist. LEXIS 53363 (D. Del. July 24, 2007) ...................... 4

*Datastrip (IOM) Ltd. v. Symbol Techs.,*
  C.A. No. 97-70 (JJF) (D. Del. Jan. 7, 1998) ................................................................. 6

*Dentsply Int'l, Inc. v. Minnesota Mining & Mfg. Co.,*
  C.A. No. 91-355-SLR (D. Del. July 26, 1993) ............................................................... 8

*DSU Med. Corp. v. JMS Co.,*
  471 F.3d 1293 (Fed. Cir. 2006)................................................................................... 7

*Fisher-Price, Inc. v. Safety 1st, Inc.,*
  C.A. No. 01-051 GMS, 2008 WL 1976624 (D. Del. May 8, 2008) ................................... 7

*General Signal v. Applied Materials,*
  46 U.S.P.Q.2d 1160 (D. Del. 1997)............................................................................. 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970), *aff'd sub nom. Georgia-Pacific Corp. v. U.S.
  Plywood-Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971) .................................... 6, 7

*Graham v. John Deere Co.,*
  383 U.S. 1 (1966)..................................................................................................... 6

*IJR, Inc. v. Sodick, Inc.,*
  No. 87 C 6326, 1987 U.S. Dist. LEXIS 11087 (N.D. Ill. Nov. 24, 1987) ......................... 9

*In re Seagate,*
  497 F.3d 1360 (Fed. Cir. 2007) *(en banc)* ................................................................. 7

*Johns Hopkins Univ. v. Cellpro,*
  160 F.R.D. 30 (D. Del. 1995) .................................................................................. 4, 5

*Joy Techs. v. Flakt, Inc.,*
  772 F. Supp. 842 (D. Del. 1991)............................................................................... 7, 9

*Matsushita Elec. Indus. v. Cinram Int'l, Inc.,*
  C.A. No. 01-882-SLR (D. Del. Dec. 15, 2003) ......................................................... 4, 5, 8

## TABLE OF AUTHORITIES

Page(s)

*Novartis Pharm. Corp. v. EON Labs Mfg., Inc.*,
    206 F.R.D. 396 (D. Del. 2002) ..............................................................................10

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
    604 F. Supp. 1485 (D. Del. 1985)............................................................................9

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
    C.A. No. 01-557-JJF, 2002 WL 1901268 (D. Del. Aug. 16, 2002).....................9, 10

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989).................................................................3, 4, 5, 8


**STATUTES**

35 U.S.C. § 103..............................................................................................................6


**RULES**

FED. R. CIV. P. 16.......................................................................................................3, 5

FED. R. CIV. P. 42.......................................................................................................3, 4

I.    NATURE AND STAGE OF THE PROCEEDINGS

This patent suit involves two parties: the patentee plaintiff, PDL BioPharma, Inc. ("PDL"), and the defendant, Alexion Pharmaceuticals, Inc. ("Alexion"). PDL asserts Alexion's Soliris® infringes certain claims of three patents: U.S. Patent Nos. 5,693,761, 5,693,762, and 6,180,370, which derive from a common parent application.

On September 6, 2007, Alexion filed a motion to bifurcate and stay discovery and trial of damages and willfulness issues (D.I. 32). Alexion repeatedly relied on the pendency of that motion to justify its refusal to produce damages and willfulness discovery. (*See* D.I. 65, Ex. 1 thereto (Alexion's Responses to PDL's First Set of Requests for Documents)). PDL thus moved to compel that production (D.I. 63). The court granted PDL's motion, ruling that "discovery is open on all issues" (D.I. 86 at Tr. 5-6; 4/14/08 Oral Order). The Court also ordered completion of Alexion's willfulness discovery by August 1, 2008 (D.I. 89). On May 6, 2008, Alexion renewed its motion to bifurcate and stay trial on damages and willfulness issues (D.I. 90). This is PDL's revised answering brief in opposition to that motion.

II.    SUMMARY OF THE ARGUMENT

1.    Alexion's motion to bifurcate the trial should be denied as premature. Fact discovery is ongoing, the *Markman* hearing is not scheduled until July 1, and no expert discovery has yet taken place. The parties and the Court are not presently in a position to know how the case would best be tried. Whether the trial should be phased is a decision much more sensibly made when the parties and the Court can assess the contours of the issues for trial – in connection with the pretrial conference, as recommended by the Federal Rules.

2.    If the Court does consider the merits of Alexion's motion, the Court should deny it because this is not a complicated patent case, the evidence relevant to liability and damages substantially overlaps, and a bifurcated trial would prejudice PDL whereas a consolidated trial would not prejudice Alexion.

3. Alexion's footnote request to stay willfulness discovery is an improper attempt to circumvent the Court's Order that discovery shall go forward on all matters. Alexion does not even attempt to meet the standards for reconsideration. Its request should be denied.

III. STATEMENTS OF FACTS

A. The Technology At Issue

PDL's three patents-in-suit claim certain "humanized antibodies" (also called "humanized immunoglobulins") and methods of making them. Antibodies are Y-shaped "proteins found in higher animals that recognize and bind to foreign proteins such as viruses and bacteria."[1] The claimed humanized antibodies have been genetically engineered so that portions from a human antibody have been replaced with portions of a mammalian, non-human antibody. The resulting humanized antibodies are very useful in humans, because they bind to foreign proteins with generally the same strength as the non-human antibody, and are not rejected as foreign by the human immune system. Numerous biotechnology companies licensed to the patents-in-suit, including Genentech, Inc., MedImmune, Inc., Wyeth, and Elan Corporation, Inc. sell billions of dollars per year of humanized antibody products.[2]

Alexion, however, has no license. This is the only lawsuit PDL has been forced to bring. Alexion's infringing product is known as Soliris®. Alexion has described Soliris® as a "humanized antibody," and stated that "[t]he initial indication for which [Alexion] received FDA and E.C. approval for Soliris was PNH [paroxysmal nocturnal disorder],"[3] which is a rare type of blood disorder that can lead to disability and premature death. The same day that Alexion received FDA approval, March 16, 2007, PDL filed this lawsuit.

---

[1] Louden Decl. Exh. 1 (K. Drlica, Understanding DNA and Gene Cloning: A Guide for the Curious at 302 (3rd ed. 1997)).

[2] *Id.* Exh. 2 (portions of PDL's March 13, 2008 SEC Form 10-K).

[3] Louden Decl. Exh. 3 (portions of Alexion's Feb. 29, 2008 SEC Form 10-K).

B.     This Is Not A Complicated Action.

Contrary to Alexion's suggestion, this is not a complex case, and certainly no more so than the 200 or so other patent cases on this Court's docket. There are only two parties, three patents (specific claims of which are asserted by PDL; no patents are asserted by Alexion) which derive from a common parent application and share essentially the same specification, and one accused product. PDL does not seek lost profits or an injunction. A reasonable royalty should be relatively easy to calculate because the patents-in-suit are widely licensed. The issues of liability and damages, including willfulness, are straightforward and rely on substantially overlapping evidence.

## IV.     ARGUMENT

Alexion makes two premature and unsupported requests: (A) to bifurcate and stay trial of damages and willfulness; and (B) to stay completion of discovery on willfulness. Both should be denied.

A.     Standards For Decision

Bifurcation is most appropriately considered at a Rule 16 pretrial conference.[4] The Advisory Committee for the Federal Rules of Civil Procedure further notes that consideration of bifurcation "long before trial" is "especially likely" to be wasteful and not in keeping with the intent of Rule 16, because "[w]hen a[ bifurcation] order is entered far in advance of trial, some issues may not be properly formulated."[5]

When assessing a motion to bifurcate, the court must balance the three factors of Rule 42(b): convenience, prejudice, and judicial economy.[6] In assessing these three criteria, this Court has evaluated the following factors: (1) the likelihood that the moving party will prevail on liability; (2) the complexity, expense, or time required to conduct damages discovery and

---

[4]     FED. R. CIV. P. 16(c)(2)(M).

[5]     FED. R. CIV. P. 16, cmt. (1983).

[6]     *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989) (citations omitted); *see also* FED. R. CIV. P. 42(b).

3

trial; (3) the likelihood that bifurcation will help resolve litigation within eighteen months of filing the complaint; (4) the risk of losing jurors between the first and second trial; and (5) the risk of postponing settlement by bifurcating damages discovery.[7]

Bifurcation in patent cases is not routine. Rather, "[b]ifurcation of trials, even in patent cases, should be the exception, not the rule."[8] "Separation of issues for trial is not to be routinely ordered."[9] "It is usually *not* necessary to try different issues in the same case separately[.]"[10] As this Court recently explained in *Crown Packaging & Tech., Inc. v. Rexam Beverage Can Co.*:

> dividing the ultimate resolution of a dispute into separate trials could inevitably lead to additional discovery, more pre-trial disputes, empaneling a second jury, deposing or recalling the same witnesses and the potential for multiple, additional post trial motions and appeals. Those probable consequences must be weighed and therefore, ***bifurcation should be particularly compelling and prevail only in exceptional cases.***[11]

Alexion fails to meet these standards.

B.    The Court Should Deny Alexion's Renewed Motion To Bifurcate as Premature.

Alexion's motion to bifurcate damages and willfulness is premature because the relevant issues for trial have not yet been properly formulated. Fact discovery is ongoing, the *Markman* hearing has not yet been held, and expert discovery has not yet begun. At the pretrial conference, having completed discovery and dispositive motions, and with the benefit of the Court's *Markman* ruling, the parties and the Court will have a much better grasp of the issues before them, the extent to which they overlap, and how they may best be presented to a jury.

---

[7]    *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995).

[8]    *Matsushita Elec. Indus. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR, slip op. at 1 (D. Del. Dec. 15, 2003) (Exh. A hereto).

[9]    FED. R. CIV. P. 42, cmt. (1966).

[10]    *Willemijn*, 707 F. Supp. at 1433.

[11]    *Crown Pack'g Tech., Inc. v. Rexam Beverage Can Co.*, C.A. No. 05-608-MPT, 2007 U.S. Dist. LEXIS 53363, at *4 (D. Del. July 24, 2007) (emphasis supplied) (citation omitted).

Alexion's cries of jury confusion and prejudice cannot be properly evaluated in the present vacuum of information. It is for these reasons that FED. R. CIV. P. 16 and the comments thereto recommend assessing bifurcation at the pretrial conference.[12]

Alexion's renewed request to bifurcate willfulness (which is an improper attempt to reargue the Court's Orders) is also premature because Alexion has not even decided whether it will rely on the advice of counsel defense and thereby waive the privilege. Given Alexion's indecision on how it will proceed on willfulness, it is premature for the Court to address bifurcation of trial and discovery on willfulness.

C.    The Motion Should Also Be Denied Because Alexion Has Not Established That This Is An Exceptional Case Warranting Bifurcation.

Alexion, as movant, bears the burden to show that the relief it seeks is justified on the particular facts of this case.[13] Alexion has not addressed *Johns Hopkins* factors (1), (3), (4), and (5), discussed *supra* at pages 3-4.[14] Its only argument was on factor (2) (the complexity, expense, or time required to conduct damages discovery and trial), and that argument is simply wrong. Bifurcation is inappropriate here because damages, willfulness, and liability in this case are intertwined. Further, Alexion has not shown prejudice, whereas PDL would be prejudiced by bifurcation.

1.    Bifurcation And Stay of Damages And Willfulness Issues Would Not Promote Judicial Efficiency Because These Issues Are Intertwined With Liability.

Alexion principally argues that "bifurcation is appropriate because there is *little or no overlap* between issues, witnesses and documents related to damages and those relevant to the determination of liability." (D.I. 91 at 4) (emphasis supplied). That premise is legally and

---

[12]    FED. R. CIV. P. 16; *id.* cmt. (1983).

[13]    *Willemijn,* 707 F. Supp. at 1435 ("The burden of showing a significant risk of confusion is on the party requesting bifurcation."); *Matsushita Elec. Indus.,* slip op. at 1 ("The burden is on the moving party to demonstrate bifurcation is justified.") (citation omitted).

[14]    *See Johns Hopkins Univ.,* 160 F.R.D. at 35.

factually wrong. The evidence and witnesses relevant to damages and willfulness overlap substantially with the evidence and witnesses relevant to infringement and validity.

For example, Alexion has alleged that the patents are obvious.[15] To assess that defense, the jury must consider "secondary indicia of nonobviousness" such as *commercial success*, long-felt need, acquiescence or acknowledgement of the patents by others, or failure of others.[16] These factors are also important to a reasonable royalty analysis under *Georgia Pacific*.[17] Reasonable royalty damages analysis requires consideration of "[t]he established profitability of the product made under the patent; its *commercial success*; and its current popularity" (*Georgia Pacific* Factor 8).[18]

Herein, PDL's extensive licensing portfolio is a key indicator of the patents' commercial success. That portfolio is also a substantial indicator of third parties' acquiescence in and acknowledgement of the patents. A reasonable royalty analysis requires consideration of long-felt need, described as "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" (*Georgia Pacific* Factor 9).[19] These "old modes or devices" will be the prior art and the testimony of prior artists in the nonobviousness analysis. Finally, the failure of others is relevant to both the nonobviousness analysis and *Georgia Pacific* Factor 9.

Hence, there is substantial legal and factual overlap between nonobviousness and a reasonable royalty determination, including evidence of PDL's licensing of the patents-in-suit,

---

[15]   D.I. 11 ¶¶ 33 (Alexion's Answer) and 12, 19, 26 (Alexion's Counterclaims).

[16]   *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

[17]   *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd sub nom. Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

[18]   *Id.* (emphasis supplied); *see also Datastrip (IOM) Ltd. v. Symbol Techs.*, C.A. No. 97-70 (JJF), slip op. at 7 (D. Del. Jan. 7, 1998) ("Evidence of 'commercial success' is relevant in the determination of obviousness under 35 U.S.C. § 103, and therefore, such evidence may be considered in assessing liability, as well as damages") (Exh. B hereto).

[19]   *Georgia-Pacific*, 318 F. Supp. at 1120.

sales under those licenses, Alexion's own sales, the extent of those sales as compared to projections of those sales, and the success of Soliris® as measured by its profitability to Alexion. Alexion has not shown any distinction between nonobviousness and reasonable royalty, but rather relies on the fallacy (discussed *supra*) that bifurcation is routine. (D.I. 91 at 5-6). Such evidence is central to both liability and damages, and Alexion presents no justification why it should be presented twice, likely by the same witnesses, which is both inefficient and confusing to jurors.

The substantial overlap between liability and damages issues also extends to Alexion's anticipation defense.[20] That defense will require evidence and analysis of the differences between the claimed prior art and the patents-in-suit. Such analysis overlaps substantially with analysis of "the utility and advantages of the patent property over the old modes or devices."[21] Alexion has made only conclusory statements to the contrary. The extensive overlap between liability and damages contraindicates bifurcation.

Finally, the complaint alleges that Alexion has induced others to infringe; Alexion denies this. Discovery and adjudication of that dispute will overlap with whether Alexion willfully infringed. For example, a willfulness determination requires assessing whether the infringer *knew or should have known* of an objectively high risk of infringement.[22] The inducement standard is nearly identical, requiring showing whether the infringer *knew or should have known* his actions would induce actual infringement.[23] Hence, evidence about Alexion's

---

[20]    *Joy Techs. v. Flakt, Inc.*, 772 F. Supp. 842, 848 (D. Del. 1991) (denying bifurcation, in part, because there was at least a limited amount of overlapping evidence on the issue of evaluation of prior art, first as it pertains to validity and infringement, and secondly as it pertains to damages).

[21]    *Georgia-Pacific*, 318 F. Supp. at 1120.

[22]    *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*); *Fisher-Price, Inc. v. Safety 1st, Inc.*, C.A. No. 01-051 GMS, 2008 WL 1976624 (D. Del. May 8, 2008).

[23]    *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc*).

awareness and assessment of the patents-in-suit applies to both willful infringement and inducement of infringement.

        2.      PDL, Not Alexion, Would Be Prejudiced By Bifurcation And Stay Of Damages And Other Issues.

Bifurcation and stay would prejudice PDL, not Alexion. As this Court recognized, "[p]erhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party."[24] "[P]rejudice under these circumstances may simply amount to unfair delay."[25] "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice."[26]

Bifurcation would needlessly delay the final outcome of this action. Alexion proposes holding a trial on liability first, separate, and apart from the trial of damages and willfulness (and perhaps discovery of willfulness as well). Alexion does not specify whether the same or a different jury would hear the bifurcated issues, but either way, the litigated resolution of the case would be postponed, to PDL's prejudice and expense. PDL also "should not be deprived of its 'legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action . . . brought into court.'"[27]

If the *same* jury hears the case, there is the risk that jurors who sat in the first trial would become unavailable. The burden to the jury in hearing the case in two separate phases is increased. If a *different* jury hears the case, "no matter how carefully the court and the parties try to explain a patent case to [a second damages jury, that jury] will never understand the nature of

---

[24]    *Willemijn*, 707 F. Supp. at 1435.

[25]    *Id.*

[26]    *Matsushita Elec. Indus.*, slip op. at 1-2 (quoting *Willemijn,* 707 F. Supp. at 1433).

[27]    *See Dentsply Int'l, Inc. v. Minnesota Mining & Mfg. Co.*, C.A. No. 91-355-SLR, slip op. at 8 (D. Del. July 26, 1993) (citations omitted) (Exh. C hereto).

the case as well as [a first liability jury] (which of course will have sat for the entire liability portion of the trial)."[28] There is also a "danger of two separate juries finding conflicting facts" and "inevitable delay and resulting prejudice to plaintiff, of two separate trials."[29]

Both scenarios prejudice PDL's right to a straightforward presentation of its case. Both scenarios also run the risk of requiring multiple examinations of the same witnesses (i.e., a witness on licensing at the first trial to establish the nonobviousness of the invention, and the same witness at a second trial to discuss the same licenses pertinent to a reasonable royalty analysis). Such a piecemeal presentation of overlapping evidence delays the ultimate disposition of the case, increases costs to the parties, and consumes unnecessary court time.[30]

Alexion has not demonstrated any concrete and certain prejudice it would suffer as a result of a single trial. Rather, Alexion makes only vague and unsupported predictions of what might occur if Alexion relies on an opinion of counsel. Alexion has not committed to an opinion of counsel; there is therefore no evidence that Alexion is actually threatened by the prejudice to which Alexion alludes. (D.I. 91 at 10). Even if Alexion ultimately relies on an opinion of counsel stating that Soliris® literally infringes, this Court has denied motions to bifurcate willfulness in such cases because "by evidentiary rulings and instructions the jury can be guided as to the proper consideration it should give to the legal opinions."[31]

Further, the law on which Alexion relies does not support bifurcation. In *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, this Court *denied* the motion to stay damages discovery or bifurcate damages for trial.[32] The Court therein ordered bifurcation of willfulness

---

[28] *IJR, Inc. v. Sodick, Inc.*, No. 87 C 6326, 1987 U.S. Dist. LEXIS 11087, at *9 (N.D. Ill. Nov. 24, 1987).

[29] *Joy Techs.*, 772 F. Supp. at 849.

[30] *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F. Supp. 1485, 1491-92 (D. Del. 1985) ("bifurcation will often be inadvisable if there would be a substantial overlap between the issues to be proved at both trials").

[31] *General Signal v. Applied Materials*, 46 U.S.P.Q.2d 1160 (D. Del. 1997).

[32] C.A. No. 01-557-JJF, 2002 WL 1901268, at *2 (D. Del. Aug. 16, 2002).

for a distinguishable reason: the defendant waived the privilege as to trial counsel by engaging "opinion and trial counsel from the same law firm" without the benefit of the Court's *Novartis* decision.[33] The Court concluded that undue prejudice existed because the defendants and their trial counsel had communicated "without the knowledge that their communications on matters other than infringement could be revealed in litigation."[34] Here, by contrast, Alexion makes no such showing, nor could it. If Alexion does engage opinion and trial counsel from the same law firm (and there is no indication that it has or will do so), it would have done so in the face of years of notice by *Novartis* that the waiver may extend to trial counsel in such circumstances. *St. Clair* therefore does not support Alexion's indefinite argument for bifurcation.

Because bifurcation will needlessly delay the resolution of this case and prejudice PDL, and because Alexion has failed to concretely show prejudice, this Court should deny Alexion's motion to bifurcate.

D.    Alexion's Attempt To Circumvent This Court's Discovery Orders Should Be Denied.

The Court has ordered that discovery in this case shall proceed on all matters and shall not be bifurcated, and that willfulness discovery must be completed by August 1, 2008. (D.I. 86 at Tr. 5-6); (D.I. 89). Nevertheless, Alexion requests that the Court stay willfulness discovery, without even mentioning or attempting to meet the standards for reconsideration. The Court has set a date for production of willfulness discovery (D.I. 89), and Alexion presents no proper basis to revisit its Orders. Alexion's motion should be denied.

V.    CONCLUSION

For the reasons set forth above, PDL respectfully requests that the Court deny Alexion's renewed motion to bifurcate and stay trial on damages and willfulness.

---

[33]    *Novartis Pharm. Corp. v. EON Labs Mfg., Inc.*, 206 F.R.D. 396, 399 (D. Del. 2002).

[34]    *St. Clair*, 2002 WL 1901268, at *2.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com
*Attorneys for Plaintiff PDL BioPharma, Inc.*

OF COUNSEL:

Matthew D. Powers
Vernon M. Winters
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Jennifer H. Wu
Rebecca E. Fett
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

May 28, 2008
2342631

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 28, 2008 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> YOUNG CONAWAY STARGATT & TAYLOR, LLP

I also certify that copies were caused to be served on May 28, 2008, upon the following in the manner indicated:

### BY HAND AND EMAIL

> Josy W. Ingersoll
> Andrew A. Lundgren
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19801

### BY EMAIL

> John M. Desmarais
> Gerald J. Flattmann, Jr.
> Christine Willgoos
> Gregory A. Morris
> KIRKLAND & ELLIS LLP
> 153 East 53rd Street
> New York, NY  10022-4611

*Karen Jacobs Louden*

_____

Karen Jacobs Louden (#2881)

2342631

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MATSUSHITA ELECTRICAL       )
INDUSTRIAL CO., LTD.,        )
                            )
        Plaintiff,           )
                            )
        v.                   )    Civ. No. 01-882-SLR
                            )
CINRAM INTERNATIONAL, INC.   )
                            )
        Defendants.          )

ORDER

At Wilmington, this 16th day of December, 2003, having

reviewed Cinram's motion for a protective order to stay discovery

on willfulness and to bifurcate willfulness until a determination

of liability/damages and the papers submitted in connection

therewith;

IT IS ORDERED that said motion (D.I. 150) is denied, for the

reasons that follow:

1.    The decision whether to bifurcate the liability and

damages phases of a patent infringement action is left to the

discretion of the trial court.  Fed. R. Civ. P. 42(b); Lis v.

Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).

"Bifurcation of trials, even in patent cases, should be the

exception, not the rule."  Fuji Mach. Mfg. Co., Ltd. v. Hover-

Davis, Inc., 982 F. Supp. 923, 924 (W.D. N.Y. 1997).  "The burden

is on the moving party to demonstrate that bifurcation is justified." Id. (citing Mellon v. Beecham Group PLC, 17 U.S.P.Q. 2D (BNA) 1149, 1154 (D. N.J. 1989)). "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'" Laitram Corp. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992) (quoting Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1433 (D. Del. 1989)). Courts, therefore, must balance the equities in ruling on a motion to bifurcate. Laitram, 791 F. Supp. at 115.

    2.    After balancing the equities, the court believes that neither a protective order nor bifurcation of willfulness from liability and damages is appropriate under the facts at bar. Cinram bears the burden to demonstrate that bifurcation is justified. In attempting to do so, Cinram points out that it intends to rely upon an opinion of counsel, rendered after MEI brought suit, as an affirmative defense against Cinram's charge of willfulness. Cinram claims that this opinion may include trial strategy such that it would be prejudicial to its defense to provide the opinion to MEI. Cinram also makes the traditional arguments that a single jury may be overwelmed by liability and willfulness issues and that bifurcation will promote judicial economy because a verdict in its favor on the issue of liability

would obviate the need for a trial on damages. In this case, the liability issues are fairly narrowly drawn and the issue of willfulness is inextricably intertwined with those issues. As observed by the court in THK Am. Inc. v. NSK Co. Ltd., 151 F.R.D. 625, 630 (N.D. Ill. 1993):

> A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's knowledge of the inventor's patent rights, any good faith belief or invalidity or infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant.

Consequently, the court concludes that because willfulness is determined from the totality of the circumstances, it is most efficiently and expeditiously tried together with liability and damages.

3.    The court further finds Cinram's motion to bifurcate untimely. MEI served document requests relating to willfulness on Cinram in July 2002, eleven months before the close of discovery. MEI served additional requests in May 2003. Cinram waited until June 3, 2003, three days prior to the close of fact discovery, to file its motion to bifurcate.

2

4.    Although the court closed expert discovery on August 15, 2003 pursuant to its scheduling order of June 10, 2003, discovery directed toward the issue of willful infringement may occur in accord with the instant order until trial commences.[1]

_____
United States District Judge

_____

[1]Cinram initially designated Mr. Lewis Ritchie as its witness on the willfulness issue.  Cinram scheduled his deposition originally during the last week of discovery and then rescheduled it until after the close of discovery.  Citing its motion to bifurcate, Cinram refused to allow any questions concerning specific opinions of counsel at the rescheduled deposition.  (See D.I. 154, tab H)

3

# EXHIBIT B



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,                 :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :          C.A. No. 97-70-JJF
                                         :
SYMBOL TECHNOLOGIES, INC. and            :
THE TRACKER CORPORATION                  :
OF AMERICA,                              :
                                         :
          Defendants.                    :

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel: Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire, and John H. Newcomer, Jr., Esquire
of BAYARD, HANDELMAN & MURDOCK, P.A., Wilmington, Delaware.
Of Counsel: Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

MEMORANDUM OPINION

January 7, 1998
Wilmington, Delaware

*Farnan, Chief Judge.*

This is a patent infringement action brought by Plaintiff, Datastrip (IOM) Limited, against Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America. Presently before the Court is Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45). In their Motion, Defendants seek relief based upon Federal Rule of Civil Procedure 42(b), which grants district courts broad discretion to order separate trials to avoid prejudice and to promote judicial economy (D.I. 46). In opposition to Defendants' application, Plaintiff asserts that Defendants have failed to demonstrate that bifurcation will promote convenience or judicial economy and that Defendants have not established that any undue prejudice will result if their application is denied (D.I. 54).

For the reasons discussed, the Court will deny Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45).

## BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products. Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label. A bar code consists of a pattern of

1

printed bars and spaces which is used to input information into a
computer by means of optical scanning.

   Plaintiff brought this action against Defendants for
infringement of the '221 Patent owned by Plaintiff.  The '221
Patent covers the invention of a two-dimensional bar code.
Plaintiff alleges that Defendant Symbol made certain
modifications and additions to the technology in the '221 Patent,
filed a patent application and in January, 1990, acquired United
States Patent No. 5,304,786 ("'786 Patent").  Plaintiff claims
that Defendant Symbol's other patents on technology used in
conjunction with printed bar codes have deprived Plaintiff of its
patent rights and induced infringement of the '221 Patent.
Meanwhile, Defendant Tracker has been making and selling kits
which Plaintiff claims incorporate a bar code of the type covered
by the '221 Patent and thus, directly infringe Plaintiff's '221
Patent.

   The parties have exchanged their initial disclosures under
Rule 26(a)(1) and have served initial discovery requests.
Plaintiff has sought and received permission from the Court to
defer Rule 26(a)(1) disclosure of its damage theories until
January 1998.

2

## STANDARD OF REVIEW

In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial. <u>Johns Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 32-33 (D.Del. 1995) (citations omitted). However, in some instances, bifurcation may be worthwhile and is governed by Federal Rule of Civil Procedure 42(b):

> (b) **Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial is committed to the informed discretion of the trial judge based on the particular facts and circumstances of each case. <u>Lis v. Robert Packer Hosp.</u>, 579 F.2d 819, 824 (3d Cir. 1978). In exercising its discretion, a court must consider the arguments made by each side in light of the circumstances and equities of the case.

## DISCUSSION

Defendants offer two justifications for bifurcation in the instant case. First, Defendants contend that bifurcation will

3

promote judicial and legal economy.  Second, Defendants claim

that bifurcation will avoid prejudice by not requiring Defendants

to identify privileged attorney-client communications during the

liability phase of the trial.  In response, Plaintiff argues that

Defendants have failed to demonstrate that bifurcation would

promote convenience and judicial economy or avoid prejudice, and

that Defendants' Motion is merely an attempt to avoid their

discovery obligations.  In Akzona Inc. v. E.I. DuPont De Nemours

& Co., 607 F.Supp. 227, 232 (D.Del. 1984), the Court outlined the

primary factors to be considered in ruling on a motion to

bifurcate, which include the potential for confusion, delay,

prejudice or the additional expense resulting from the grant or

denial of the motion.  Bifurcation may be advisable if the case

contains a large number of dissimilar or complex issues, or if

the trial of one issue is likely to be much shorter than the

others.  Procter & Gamble Co. v. Nabisco Brands, Inc., 604

F.Supp. 1485, 1491 (D.Del. 1985).  Conversely, bifurcation will

not be warranted if there will be a substantial overlap among the

issues to be proven at both trials.  Id. at 1491-92.

Historically, courts have often found it worthwhile to hold

separate trials on liability and damage issues in patent cases.

Courts have found it to be more efficient to defer discovery and

4

trial on damages issues until after liability questions have been resolved at trial and on appeal.  John Hopkins Univ. v. Cellpro, 160 F.R.D. 30, 33 (D.Del. 1995) (citations omitted).  However, in a case relied upon by Defendants, although the court approved bifurcation, it went on to explain that:

> [t]here is an important limitation on ordering a separate trial of the issues under Rule 42(b):  the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without justice.

Swofford v. B. & W. Inc., 336 F.2d 406, 415 (5th Cir. 1964).  Thus, bifurcation is not necessarily appropriate in every patent case and the Court's discretion in this regard must be exercised with caution.  Brad Ragan. Inc. v. Shrader's Incorporated, 89 F.R.D. 548, 549-50 (S.D. Ohio 1981).

I.  Defendants Must Demonstrate That Bifurcation Would Promote Convenience and Judicial Economy

Since Defendants are seeking bifurcation, they have the burden of demonstrating that bifurcation is warranted in light of the general principle that a single trial tends to lesson the delay, expense and inconvenience to all the parties.  Mellon v. Beecham Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991).  In this case, the Court concludes that Defendants have not provided sufficient reasons to demonstrate the efficiency of

5

bifurcating the damages and liability issues.

In their Motion, Defendants contend that judicial and legal economy will be promoted by bifurcation because the Court and the parties will have avoided discovery and trial on the damages issues if Defendants prevail.  Further, Defendants point out that bifurcation will permit the jury to decide the already complicated liability issues in the case without being confused and distracted by the equally complicated damages issues.

The Court is not in a position at this time to fairly evaluate Defendants' claim that there is a substantial probability that they will prevail on liability.  At this juncture, the Court does not have sufficient information to agree or disagree with such a proposition.  Thus, the Court cannot consider this factor in determining bifurcation.  Of course, in every case it may be said that a separate trial on a dispositive issue might save some time, however, a bare suggestion of efficiency cannot support the granting of a bifurcation request, and certainly judicial economy is not the only factor to be considered.

Further, the Court finds that in this case Defendants have not shown that discovery on damages will be complicated, expensive or time-consuming.  This is a patent case, and

6

therefore, by its nature it can be described as complex, but
Defendants have not convincingly shown that the benefits in
saving time and expense in staying discovery on damages and
ordering separate trials, outweighs the advantages of presenting
these issues for resolution at one trial.

   An additional factor that courts find significant in
deciding whether to bifurcate is the overlapping of issues.
Willemijn Houdstermaatschapij BV v. Apollo Computer Inc., 707
F.Supp. 1429, 1434 (D.Del. 1989) (citing Akzona, Inc. v. E.I.
DuPont De Nemours & Co., 607 F.Supp. 227, 233-34 (D.Del. 1984)).
Plaintiff contends the following:  (1) the evidence on commercial
success of Defendant Symbol's products relates to both liability
and damages;  (2) the proof of liability and causation for damages
will significantly overlap because Defendant Symbol is charged
with inducing infringement; and (3) the proof on laches relates
to both liability and damages.  Accepting Plaintiff's assertions
that the evidence on several issues may overlap, the Court agrees
that bifurcation may not result in a more efficient presentation
of the case.  Evidence of "commercial success" is relevant in the
determination of obviousness under 36 U.S.C. §103, and therefore,
such evidence may be considered in assessing liability, as well
as damages.  In addition, general financial matters are likely to

7

be highly relevant to the liability and damages issues, resulting in a significant duplication in the presentation of evidence in both phases of the trial.  Lastly, Defendants' assertion of the affirmative defense of laches may also weigh against bifurcation. In order to contest the laches defense, Plaintiff may have to inquire into damages claims during the liability phase of the trial.  Thus, considering the issues cited by Plaintiff and the evidence that most likely will be presented at trial, the Court concludes that the testimony of probable witnesses and other evidence, will overlap on liability and damages issues and any time savings accomplished by bifurcation will be speculative.

Further, the Court finds that in this case it will be more efficient to work towards one trial and one appeal.  Other than general assertions of potential efficiency, the Court finds that Defendants have not demonstrated that bifurcation will facilitate a single appeal, and, absent some strong evidence of the likelihood of one appeal, the Court concludes that one complete trial is the most efficient manner in which to timely dispose of this case.

II.  <u>Defendants Must Demonstrate That Bifurcation Will Prevent Prejudice</u>

Defendants assert that if bifurcation is not granted, they

8

will either have to waive the attorney-client privilege and share the opinions of their counsel with Plaintiff sooner than necessary or in the alternative, they will have to forego reliance upon the opinion of counsel in order to maintain the privileged status of the material. The attorney-client privilege protects a confidential communication between attorney and client when discovery is sought. The burden of proving that the privilege exists is on the party asserting the privilege. In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986). Clients waive the attorney-client privilege by deliberately injecting into the litigation the advice which the clients received from counsel. Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977, 979 (D.Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984). Similarly, the advice of counsel exception to the privilege states that where a party asserts as an essential element of their defense that it relied upon the advice of counsel, that party waives the privilege regarding communications pertaining to that advice. Mellon v. Beecham Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991).

In the instant case, staying discovery specifically on Defendants' advice of counsel defense by ordering a separate trial on liability and damages is not in the Court's view, an

9

85

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :     C.A. No. 97-70 (JJF)
                                  :
SYMBOL TECHNOLOGIES, INC. and     :
THE TRACKER CORPORATION           :
OF AMERICA,                       :
                                  :
          Defendants.             :

O R D E R

At Wilmington, this 7 day of January, 1998, for the

reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For

Separate Trials On Liability And Damages (D.I. 45) is DENIED.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC. )
a Delaware corporation, )
)
            Plaintiff, )
)
            v. )   Civil Action No. 91-355-SLR
)
MINNESOTA MINING AND )
MANUFACTURING COMPANY, )
a Delaware corporation, )
)
            Defendant. )

-------------------------------------------------------

Steven J. Balick, Esquire, of Ashby & Geddes, Wilmington, Delaware; attorneys for plaintiff. Of Counsel: Michael C. Elmer, Esquire, and Stephen T. Sullivan, Esquire, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C.

Robert K. Payson, Esquire, and William J. Marsden, Esquire, of Potter, Anderson & Corroon, Wilmington, Delaware; attorneys for defendant. Of Counsel: Frank P. Porcelli, Esquire, John R. Schiffhauer, Esquire, and Mary D. Mosley-Goren, Esquire, of Fish & Richardson, Boston, Massachusetts; and Terryl K. Qualey, Esquire, and Carolyn A. Bates, Esquire, of Minnesota Mining and Manufacturing Co., St. Paul, Minnesota.

-------------------------------------------------------

**MEMORANDUM OPINION**

Dated: July 26, 1993

Wilmington, Delaware

ROBINSON, District Judge

## I.  INTRODUCTION

Dentsply International, Inc. ("Dentsply") commenced this action seeking a declaratory judgment that its manufacture and sale of certain state-of-the-art dental adhesive systems do not infringe Minnesota Mining and Manufacturing Company's ("3M") U.S. Patent No. 4,719,149 (the "'149 patent"). The patent in suit pertains to a "primer" used in said dental adhesive systems. Both parties presently sell and manufacture such systems. Dentsply's action is grounded on its claim that the '149 patent is invalid and unenforceable. Dentsply also claims 3M threatened it with patent infringement in "bad faith." 3M counterclaims that its patent is valid and infringed by Dentsply. 3M further claims Dentsply willfully infringed the '149 patent and accordingly seeks increased damages. Both parties request payment of their attorneys' fees in connection with this litigation. 3M demands a jury trial on all issues so triable.

Before the Court is Dentsply's motion for bifurcation into sequential jury trials. Dentsply's request contemplates a two-stage jury trial process: The first stage on liability and, depending on the outcome therein, a second stage, immediately after the first and before the same jury, either on Dentsply's claim of bad faith assertion of patent enforcement or on 3M's willful infringement claim and damages. 3M opposes the motion. For reasons that follow, Dentsply's motion to bifurcate will be denied.

## II.  STANDARD OF REVIEW

Rule 42(b) of the Federal Rules of Civil Procedure governs the motion at bar.  Under Rule 42(b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separate issue or of any number of claims...."  Trial courts are given broad discretion when deciding a motion to bifurcate.  <u>Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.</u>, 707 F. Supp. 1429, 1433 (D. Del. 1989).  Decisions under Rule 42(b) essentially involve a weighing of "the 'overall equities' of the case."  <u>Id.</u> at 1433-34.  "[B]ifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis."  <u>Id.</u> at 1434.  Although this Court has "observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues,"[1] it remains true that "[i]n patent cases, as in others, separate trials should be the exception, not the rule."  <u>Laitram Corp. v. Hewlett-Packard Co.</u>, 791 F. Supp. 113, 114 (E.D. La. 1992) (citing cases).

## III.  DISCUSSION

In support of its motion to bifurcate, plaintiff argues that "[o]f primary concern to Dentsply is the unfair prejudice that would result if the jury hears all of 3M's inflammatory

---

1.  <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1433 (citing <u>Smith v. Alyeska Pipeline Serv. Co.</u>, 538 F. Supp. 977, 982 (D. Del. 1982)).

willful infringement allegations at the same time the jury
decides the liability issues." (D.I. 92 at 11)  Dentsply
suggests bifurcation would alleviate any such "unfair prejudice"
since 3M, under Dentsply's requested procedure, would present its
evidence supporting willful infringement, if at all, in the
second phase of the case after the jury reaches a verdict finding
liability against Dentsply.

     3M counters that bifurcation is inappropriate in the
instant case because, according to 3M, there are substantial
areas of overlapping evidence and issues making bifurcation
inefficient, inconvenient and unfair to 3M.

     This Court previously has recognized "that an
overlapping of issues is significant to the decision whether to
bifurcate." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at
1434 (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F.
Supp. 227, 233-34 (D. Del. 1984)).  "The degree to which the
issues overlap can often best be assessed by examining the amount
of evidence and the number of witnesses that would be presented
at both trials." Willemijn Houdstermaatschaapij BV, 707 F. Supp.
at 1434 (citing Organic Chemicals v. Carroll Products, Inc., 86
F.R.D. 468, 469 (W.D. Mich. 1984)).

     Although 3M asserts that several areas of overlap are
present, of particular concern is the question of whether
evidence supporting 3M's claim against Dentsply for willful
infringement properly would be introduced during the liability
stage of a bifurcated trial.  Since "unfair prejudice that would

3

result if the jury hears ... 3M's inflammatory willful infringement allegations at the same time the jury decides the liability issues" is Dentsply's "primary concern" in moving to bifurcate (D.I. 92 at 11), and since bifurcation would not alleviate this prejudice if 3M nonetheless was entitled to present evidence of willful infringement during the liability trial, resolution of this question is of substantial importance in deciding the motion at bar.

3M represents that its case both on willful infringement and on patent validity will include evidence of Dentsply's alleged "copying":

> 3M expects to prove Dentsply evaluated 3M's patented products, saw how valuable the innovation would be in the marketplace, and saw that its current products could not compete with the new 3M technology. Therefore, Dentsply was motivated to copy and did copy the innovation and willfully infringe 3M's patent, taking sales away from 3M, the extent of which sales helps to prove the value and validity of the patents -- the motivation for Dentsply's copying.

(D.I. 97 at 10)

In opposing this argument, Dentsply contends that evidence of "copying" and associated evidence of an alleged infringer's intent to infringe "relates primarily to a claim for increased damages, not to liability." (D.I. 107 at 6-7 (citing authorities)) Although this form of evidence may "relate[] primarily" to a claim for willful infringement and increased damages, it is settled that "[c]opying is an indicium of

4

nonobviousness, and is to be given proper weight." Diversitech
Corp. v. Century Steps, Inc., 850 F.2d 675, 679 (Fed. Cir. 1988)
(citing Windsurfing International, Inc. v. AMF, Inc., 782 F.2d
995, 1000 (Fed. Cir.), cert. denied, 477 U.S. 905 (1986) (copying
of patented invention is indicative of nonobviousness)).

Since 3M apparently will rely on evidence of Dentsply's
alleged copying in support of its willful infringement and its
patent validity claims, it appears that this "inflammatory"
evidence would be presented during both stages of a bifurcated
trial.  Therefore, the alleviation of "unfair prejudice" which
Dentsply seeks with this motion would not be accomplished, or
would be partially accomplished only, by permitting bifurcation.

3M points out that various evidentiary matters relating
to the commercial success of the patented technology would be
relevant both to patent validity and to damages.  In response
Dentsply contends, relying upon Paine, Webber, Jackson & Curtis,
Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 587 F. Supp.
1112 (D. Del. 1984), that this Court has rejected "the argument
that commercial success, as related to nonobviousness, is
intertwined with the issue of damages."  (D.I. 107 at 9)
Contrary to Dentsply's argument, this Court has held that
evidence of "'commercial success' is a relevant secondary
consideration in a determination of obviousness under 36 U.S.C.
section 103, [Paine, Webber, 587 F. Supp. at 1116]; and it is
indisputable that such evidence will be considered by a court

5

assessing damages." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F.
Supp. at 1434.

Dentsply further contends that "[c]ommercial success
for obviousness purposes is of a sharply different character than
use of financial information during [the] damages phase [of a
patent infringement trial]." (D.I. 107 at 9)  The Court
"acknowledges that the issue of commercial success is not
ordinarily determined by a detailed analysis of exhaustive and
detailed financial data, such as is required for proof of
damages, but rather by whether the product is, broadly
speaking, an accepted product and a big seller." <u>Willemijn
Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434 (quoting <u>Paine,
Webber</u>, 587 F. Supp. at 1116.  Nonetheless, it is clear from the
record that bifurcation in the instant case would require 3M to
present at least some, if not a substantial amount of evidence
twice, and "although a minor evidentiary overlap may not strongly
militate against bifurcation, it certainly does not favor
bifurcation." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at
1434.

Accordingly, the Court concludes that the presence of
overlapping evidence weighs against bifurcation.  The Court
further finds that the requested bifurcation procedure will not
serve the "primary" purpose underlying Dentsply's motion,
alleviation of "unfair prejudice," since much of the purportedly
"inflammatory" allegations relating to willful infringement are

6

included in the overlapping evidence which properly would be presented during both stages of a sequential trial.

Dentsply's second general argument in support of its motion to bifurcate is that sequential trials will increase jury comprehension and ameliorate confusion arising from the complexities of this patent case. "The burden of showing a significant risk of confusion is on the party requesting bifurcation." Id. at 1435. The Court finds, for reasons stated below, that Dentsply has not met its burden in this regard.

Dentsply contends that this is a "highly complex" case. The Court disagrees. As to the technology at issue, while there are technical complexities which the jury will be required to confront, fundamentally this case is comprehensible because the products involved are to some extent familiar to laymen. As Dentsply concedes, the patent in suit "deals with products that are used to pre-treat [a] tooth before a filling is placed [in] or a material is bonded to the t[oo]th." (D.I 107 at 12) Furthermore, although it is true, as Dentsply argues, that the jury in this case will have to consider "varied evidentiary presentations," that is true of almost any civil case, certainly of any patent case, and it does not provide a sufficient basis for bifurcation. Likewise, the numerous and to some extent complex issues which the jury will tackle in this case are not so unusual or compelling as to warrant bifurcation.

Dentsply's final argument is that bifurcation will promote expedition and judicial economy. The Court is

7

unpersuaded by this argument for the following reasons. First, as discussed above, there are substantial areas of overlapping evidence and presentation of the same evidentiary materials twice, even to a minor extent, certainly will not promote efficiency and economy. Second, the Court foresees that bifurcation in this case will result in substantial delays as a result of disputes regarding the admissability of evidence during either stage of a sequential trial. See Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1435. Indeed, the briefing presently before the Court amply supports this prediction. Additionally, it cannot be disputed that two trials are likely to consume more time than one, and under the procedure requested by Dentsply, there will be a second trial irrespective of which party prevails during the first stage of proceedings.

Finally, the Court finds persuasive 3M's contention that it should not be deprived of its "legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action ... brought into the court." Nylok Fastener Corp. v. Industrial Nut Corp., 8 U.S.P.Q.2d 1092, 1093 (N.D. Ohio 1988) (quoting In re Beverly Hills Fire Litigation, 695 F.2d 207, 217 (6th Cir. 1982)). The Court agrees that 3M should be entitled to "present to the jury the whole real-world picture of 3M's innovation and commercial success, Dentsply's [alleged use] of that innovation, and the benefits Dentsply [allegedly] achieved in terms of sales and profits from its [use]; and should

not be required to break into pieces what is really one
integrated story." (D.I. 97 at 25)

IV.  CONCLUSION

For the reasons stated above, Dentsply's motion to
bifurcate will be denied.  An Order consistent with this
Memorandum Opinion shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.        )
a Delaware corporation,             )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        Civil Action No. 91-355-SLR
                                    )
MINNESOTA MINING AND                )
MANUFACTURING COMPANY,              )
a Delaware corporation,             )
                                    )
            Defendant.              )

O R D E R

At Wilmington this 26th day of July 1993, for the
reasons set forth in the Court's accompanying Memorandum Opinion
issued this day;

IT IS ORDERED that Dentsply's motion to bifurcate,
Fed.R.Civ.P. 42(b), will be, and hereby is, DENIED.  (D.I. 91)[1]

_____
United States District Judge

_____

1.  Plaintiff's request for oral argument hereby is denied since
the facts and legal contentions are adequately presented in the
materials before the Court and argument would not significantly
aid the decisional process. (D.I. 109)