IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PDL BIOPHARMA, INC.                    )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )        C.A. No. 07-156-JJF
                                       )
ALEXION PHARMACEUTICALS, INC.          )
                                       )
            Defendant.                 )

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO
BIFURCATE AND STAY TRIAL OF DAMAGES AND WILLFULNESS ISSUES**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*alundgren@ycst.com*

*Attorneys for Defendant*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY  10022
(212) 446-4800

Dated:  May 30, 2008

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ...........................................................................................1

ARGUMENT .........................................................................................................................2

I.    Alexion Has Met Its Burden Of Proof On The Specific Need For Bifurcation In
      This Action..................................................................................................................2

      A.    PDL's Generic Arguments Do Not Establish A Significant Overlap Of
            Issues...............................................................................................................3

      B.    Alexion Will Be Prejudiced And The Jury Will Be Confused By The
            Presentation Of Damages And Willfulness Issues During The Liability
            Phase Of This Case .........................................................................................6

      C.    Bifurcation Will Benefit Rather Than Prejudice PDL ...........................................8

II.   Alexion's Request For Bifurcation Is Not Premature........................................................9

III.  Alexion Has Not Improperly Moved For Reconsideration Of The Court's
      Discovery Orders ......................................................................................................10

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

CASES

*Allergan Inc. v. Pharmacia Corp.,*
No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002) ........................................7

*Callaway Golf Co. v. Acushnet Co.,*
Civ. No. 06-91-SLR, 2007 WL 4261696 (D. Del. Nov. 30, 2007) ...........................................2

*Ciena Corp. v. Corvis Corp.,*
210 F.R.D. 519 (D. Del. 2002) ...............................................................................................2, 5

*Corning Inc. v. SRU Biosystems, LLC,*
223 F.R.D. 189 (D. Del. 2004) ..................................................................................................10

*Crown Packaging Tech, Inc. v. Rexam Beverage Can Co.,*
498 F. Supp. 2d 734 (D. Del. 2007).............................................................................................2

*Datastrip (IOM) Ltd. v. Symbol Techs.,*
Civil Action No. 97-70-JJF, slip op. (D. Del. Jan. 7, 1998) ...................................................2, 5

*Dentsply Int'l, Inc. v. Minn. Mining & Mfg. Co.,*
C.A. No. 91-355-SLR, slip op. (D. Del. July 26, 1993) ......................................................1, 8, 9

*DSU Med. Corp. v. JMS Co.,*
471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ................................................................................6

*Enzo Life Sci., Inc. v. Digene Corp.,*
No. Civ. No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ...................................5

*Gardco Mfg., Inc. v. Herst Lighting Co.,*
820 F.2d 1209 (Fed. Cir. 1987).............................................................................................5, 6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
318 F. Supp. 116 (D.C.N.Y. 1970) ............................................................................................4

*Johns Hopkins University v. Cellpro,*
160 F.R.D. 30 (D. Del. 1995) .....................................................................................................2

*Joy Techs., Inc. v. Flakt, Inc.,*
772 F. Supp. 842 (D. Del. 1991).................................................................................................5

*KSR Int'l Co. v. Teleflex Inc.,*
127 U.S. 1727 (2007)..................................................................................................................4

*McKesson Info. Solutions LLC v. The Trizetto Group, Inc.,*
Civ. No. 04-1258-SLR, 2006 WL 940543 (D. Del. Apr. 11, 2006) ...........................................2

*Medpointe Healthcare Inc. v. Hi-Tech Pharm. Co., Inc.,*
    Nos. Civ.A.03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285 (D.N.J. Jan. 22,
    2007) ..................................................................................................................2, 5

*Novozymes A/S v. Genencor Int'l, Inc.,*
    474 F. Supp. 2d 592 (D. Del. 2007)........................................................................5

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,*
    587 F. Supp. 1112 (D. Del. 1984).........................................................................4

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,*
    No. Civ.A.03-209-JJF, 2004 WL 1376586 (D. Del. June 18, 2004) .......................10

*Procter & Gamble Co., v. Nabisco Brands, Inc.,*
    604 F. Supp. 1485 (D. Del. 1985).........................................................................2

*In re Rouffet,*
    149 F.3d 1350 (Fed. Cir. 1998)............................................................................4

*In re Seagate Tech. LLC,*
    497 F.3d 1360 (Fed. Cir. 2007).............................................................................6

*Swofford v. B&W, Inc.,*
    336 F.2d 406 (5th Cir. 1964) ...............................................................................4

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D. Del. 1989).........................................................................7

**RULES**

Fed. R. Civ. P. 16...................................................................................................9

Fed. R. Civ. P. 42(b) .......................................................................................1, 2, 9

Defendant Alexion Pharmaceuticals, Inc. respectfully submits this reply brief in further support of its Renewed Motion To Bifurcate And Stay Trial Of Damages And Willfulness Issues (D.I. 90).

## SUMMARY OF THE ARGUMENT

Alexion has established that the specific issues and circumstances of this case support bifurcation. There is little to no overlap between the issues relevant to liability on the one hand and damages and willfulness on the other; there is real potential for jury confusion and prejudice to Alexion if the issues are tried together; and the Court and the parties will benefit from bifurcation as a liability determination will either eliminate the need for a trial on damages and willfulness, or at least streamline the issues to be decided.

Rather than addressing these specific arguments in its answering brief, PDL makes general allegations that are unsupported by the case law and would prevent bifurcation in nearly every patent case. Moreover, its citation to the *Dentsply* case for the proposition that it "should not be deprived of its 'legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action . . . brought into court,'" shows PDL's true intent in opposing Alexion's renewed motion to bifurcate—to introduce evidence that relates solely to damages and willfulness during the liability phase of this case. Introduction of such evidence during the liability phase would confuse the issues and prejudice Alexion.

The balance of factors under Fed. R. Civ. P. 42(b) favors separate trials on liability and damages and willfulness at this stage of the litigation. Alexion, therefore, respectfully requests that the Court grant its renewed motion for bifurcation.

## ARGUMENT

### I.    Alexion Has Met Its Burden Of Proof On The Specific Need For Bifurcation In This Action

Contrary to PDL's assertion, bifurcation of damages issues from liability is a common

tool used in patent cases to conserve judicial and party resources, simplify the issues for trial,

avoid jury confusion and prevent prejudice to the alleged infringer. *See* D.I. 91 at 3-4.[1, 2]  Even

the cases cited by PDL acknowledge this fact.[3]  As established in Alexion's opening brief, the

specific issues in this action support bifurcation because there is little, if any, overlap between

the complex issues the jury must decide for liability on the one hand and damages and

willfulness on the other.  PDL's contentions to the contrary do not answer these arguments and,

if accepted, would mean that no patent case should ever be bifurcated.  Moreover, under the

---

[1]  *See also Callaway Golf Co. v. Acushnet Co.,* Civ. No. 06-91-SLR, 2007 WL 9461696, at *1 (D. Del. Nov. 30, 2007) (bifurcating willfulness and damages from liability); *Medpointe Healthcare Inc. v. Hi-Tech Pharm. Co., Inc.,* Nos. 03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285, *6 (D.N.J. Jan. 22, 2007) (bifurcating damages and willfulness from liability where the issues were complex even though some evidence and witnesses would overlap); *McKesson Info. Solutions LLC v. The Trizetto Group, Inc.,* Civ. No. 04-1258-SLR, 2006 WL 940543, at *1 (D. Del. Apr. 11, 2006) (ordering a first trial on infringement, followed by a second trial on willfulness and damages if necessary).  A compendium of the unpublished decisions cited herein is attached at Exhibit A.

[2]  The main case cited by PDL in support of its position, *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.,* 498 F. Supp. 2d 734 (D. Del. 2007) is inapposite.  *See* D.I. 107 at 4.  In *Crown,* the moving party sought to bifurcate trial of patent *infringement* counterclaims and the Court specifically noted that the moving party was not seeking to bifurcate damages from liability as Alexion has requested in this action.  *Id.* at 737.

[3]  *See, e.g., Datastrip (IOM) Ltd. v. Symbol Techs., Inc.,* C.A. No. 97-70-JJF, slip op. at 4 (D. Del. Jan. 7, 1998) ("Historically, courts have often found it worthwhile to hold separate trials on liability and damages issues in patent cases."); *Johns Hopkins U. v. Cellpro,* 160 F.R.D. 30, 33 (D. Del. 1995) (same); *Crown Packaging,* 2007 U.S. Dist. LEXIS 53363 at *7 ("Neither *Kimberly-Clark* nor *Ciena* suggest bifurcation of a defendant's counterclaims of infringement.  Both cases allow that liability issues, in complex patent infringement case, may be separate and distinct from damages issues."); *cf. Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F. Supp. 1485, 1493 (D. Del. 1985) ("As all parties have agreed, the damages phase of the infringement trial will be bifurcated for later trial if necessary.").

balance of convenience, prejudice, and judicial economy under Fed. R. Civ. P. 42(b), even a slight overlap in issues or evidence is substantially outweighed by the benefits of conserving party and judicial resources and preventing juror confusion and prejudice to Alexion.

A.    **PDL's Generic Arguments Do Not Establish A Significant Overlap Of Issues**

This is a complex patent infringement action, in which the jury and the Court will be required to evaluate humanized monoclonal antibody technology—a discipline that is neither simple nor familiar to the layperson. This evaluation will require analysis of 20 years of prior art, prosecution, and product development, as well as infringement, validity, enforceability, damages, and willfulness analyses of at least 28 asserted claims. D.I. 91 at 4-5. PDL's argument that this case involves only two parties and three patents sharing the same specification does nothing to diminish this extensive and complicated analysis. *See* D.I. 107 at 3. For example, although the patents-in-suit may share a single specification, it is comprised of over 130 pages of figures and text and relates to 14 U.S. files histories and many other foreign applications, amounting to literally thousands of pages of data. Similarly, while there may only be two parties to the litigation, there are well over 40 relevant third parties, including prior artists and alleged PDL licensees.[4]

As discussed in Alexion's opening brief, these issues will take considerable time to try and are readily separable between liability on the one hand and damages and willfulness on the other. D.I. 91 at 5-8. PDL's arguments to the contrary would prevent bifurcation in nearly every patent case and have in fact been rejected in decisions granting bifurcation in this District.

---

[4]    PDL's alleged licenses of patents to over 40 companies do not make the reasonable royalty determination for damages "relatively easy"—the parties will likely need to present substantial evidence and expert testimony concerning the detailed analysis of those licenses and other information relating to the 15 *Georgia Pacific* factors. *See* D.I. 107 at 3.

In support of its position, PDL primarily relies on a hypothetical overlap between commercial success with respect to validity and the determination of a reasonable royalty (D.I. 107 at 6-7), but ignores that the former inquiry does not require "a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages." *See* D.I. 91 at 6-7; *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 587 F. Supp. 1112, 1116 (D. Del. 1984); *Swofford v. B&W, Inc.,* 336 F.2d 406, 415 (5th Cir. 1964) ("[W]e cannot think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial.").

For example, PDL contends that nonobviousness for patent invalidity is actually the same inquiry as the reasonable royalty calculation for damages. D.I. 107 at 7 ("Alexion has not shown any distinction between nonobviousness and reasonable royalty . . . ."). Review of the relevant law shows that this is not the case. *See* D.I. 91 at 5-6. The obviousness determination will require a detailed *technical* comparison of each asserted claim to various pieces of prior art to determine whether the methods and products claimed would have been obvious to the person of ordinary skill in the art at the time of invention. *See KSR Int'l Co. v. Teleflex Inc.,* 127 S.Ct.. 1727, 1741-42 (2007); *In re Rouffet,* 149 F.3d 1350, 1355 (Fed. Cir. 1998). Conversely, the reasonable royalty calculation will require a detailed *financial* and *business* analysis of the 15 *Georgia Pacific* factors, including industry and the parties' licensing practices, agreed-upon royalties, actual royalties comprised of payments divided by licensees' sales, royalties paid for comparable patents, the nature and scope of each license, various aspects of profitability for the accused product and products allegedly licensed under the asserted claims, and consideration of voluminous and complex sales, manufacturing, marketing, and other financial data. *See*

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 116, 120-121 (D.C.N.Y. 1970). PDL cannot credibly claim that the same witnesses, or documentary evidence for that matter, will be used for these two distinct inquiries. D.I. 107 at 9. As in most patent cases, the parties are likely to present their reasonable royalty cases through their damages experts, while the validity case will be presented through fact witness such as the inventors and prior artists as well as experts in the field of antibody technology. D.I. 91 at 5.

Moreover, PDL completely fails to address that courts presented with the same potential for overlap have still bifurcated liability from damages. *See* D.I. 91 at 6, 7; *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (ordering bifurcation over the patentee's objection that "evidence to be presented on the issue of nonobviousness will also be relevant to the determination of a reasonable royalty."); *Medpointe,* 2007 WL 188285 at *6 (bifurcating trial on willfulness and damages from liability even though there would be some overlap in witnesses and noting that "this is the situation with any bifurcated trial."); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) (holding separate second trial on willfulness and damages after liability trial); *cf. Enzo Life Sci., Inc. v. Digene Corp.,* No. Civ.A. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. June 10, 2003) (trifurcating patent infringement, validity, and business tort claims to prevent juror confusion and avoid prejudice even in light of the evidentiary overlap between the trials).[5]

---

[5] The cases cited by PDL in support of its argument are distinguishable from the present action. *See* D.I. 107 at 6-7. For example, in both *Datastrip (IOM) Ltd. v. Symbol Techs., Inc.,* C.A. No. 97-70-JJF-, slip op. at 7 (D. Del. Jan. 7, 1998) and *Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 848-49 (D. Del. 1991), the court noted that in addition to a potential overlap between evidence for commercial success and obviousness, there was also the potential for overlap between damages and liability because of the accused infringer's laches defense—a defense not asserted by Alexion in this litigation.

Finally, PDL's argument that the Court should not order bifurcation because the standards for induced infringement and willfulness are "nearly identical" is a red herring. *See* D.I. 107 at 7-8. While PDL included general inducement claims in its complaint (D.I. 2 at ¶¶ 13, 19, 25; D.I. 107 at 7), over a year later it still has not provided Alexion with any substantive allegations or contentions to support these claims. In any event, as with invalidity and damages, any overlap between inducement and willfulness is minimal at best because they involve distinct inquiries. *See* D.I. 91 at 7-8. The former test requires actual infringement by third parties, a technical assessment requiring a detailed comparison of the asserted claims to the allegedly infringing products, as well as an evaluation of the accused infringer's actions with respect to third parties to determine whether it had specific intent to encourage their infringement. *DSU Med. Corp. v. JMS Co., Ltd.* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). Conversely, the willfulness question focuses on an objective inquiry, namely whether "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007).

Thus, PDL's arguments regarding potential overlap of evidence are unpersuasive. The key distinction that PDL ignores is that "'the prohibition is not against having two juries review the same *evidence,* but rather against having two juries *decide* the same *essential issues.*'" *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987) (internal citations omitted).

### B.    Alexion Will Be Prejudiced And The Jury Will Be Confused By The Presentation Of Damages And Willfulness Issues During The Liability Phase Of This Case

PDL's contention that a single trial will not prejudice Alexion, namely because it has not "committed to an opinion of counsel" misses the point. *See* D.I. 107 at 9. As an initial matter, whether Alexion elects to rely on an opinion of counsel or not, it will be prejudiced by (1) the

waste of time and resources in trying the damages and willfulness issues that will likely be unnecessary in light of the liability determination; (2) the likely confusion of the jurors and the potential for their use of evidence solely relevant to damages and willfulness for the liability determination; and (3) the need to present its case in a combination of unrelated issues instead of focusing first and foremost on the underlying liability determination. D.I. 91 at 9-10.

Indeed, not knowing whether its attorney-client communications will be presented during the liability phase of the case negatively and improperly restricts Alexion's very decision as to whether it should waive privilege and rely on an opinion of counsel at all. *See* D.I. 91 at 9. PDL's attempts to distinguish the *St. Clair* case on this point does not diminish the prejudice to Alexion. *See* D.I. 107 at 9-10. Regardless of whether Alexion's privileged communications are with trial or other counsel, it is placed in the same prejudicial Catch-22: either forgo the ability to rely on its opinions or risk the jury improperly using willfulness evidence in its liability determination. *Compare* D.I. 91 at 10 to D.I. 107 at 8 citing *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F. Supp. 1429, 1433 (D. Del. 1989) (noting a lack of prejudice or confusion as the case would not be tried to a jury); *see also Allergan Inc. v. Pharmacia Corp.,* No. Civ.A.01-141-SLR, 2002 WL 1268047, at *2 (D. Del. May 17, 2002) (bifurcating discovery and trial of willfulness in recognition of the potential prejudice concerning the accused infringer's opinions of counsel).

Moreover, PDL's overlapping claims with respect to its licenses highlight the prejudice to Alexion of a consolidated trial. *See* D.I. 107 at 6-7, 9. Specifically, PDL seeks to impress the jury with the number of licenses allegedly taken on the patents-in-suit, thus confusing the infringement determination with damages. But unlike the over 40 alleged licensees who, upon information and belief, have licensed some or all of the asserted patents as a whole, PDL

effectively admits that Alexion does not need a license to over two-thirds of the claims of the asserted patents. *See, e.g.,* D.I. 69 at 2, 3, 6.  Therefore, any commercial success that PDL may try to claim based on these licenses for the "unasserted" claims is not relevant to the validity of the claims at issue in this case because there can be no nexus between the alleged success and the relevant claimed inventions.

Thus, PDL's goal is not consistent with a "straightforward presentation of its case." *See* D.I. 107 at 9.  Its citation to *Dentsply Int'l, Inc. v. Minnesota Mining & Mfg. Co.,* C.A. No. 91-355-SLR, slip op. at 8 (D. Del. July 26, 1993), to support the argument that it "should not be deprived of its 'legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action . . . brought into court" (D.I. 107 at 8), highlights the prejudice to Alexion, *i.e.* PDL seeks to conflate the issues in this case and improperly buttress its infringement claims with evidence of damages and willfulness.[6]  That approach would likely lead to jury confusion and prejudice to Alexion.  D.I. 91 at 8-10.

**C.    Bifurcation Will Benefit Rather Than Prejudice PDL**

Rather than "needlessly delay the final outcome of this action" as PDL claims (D.I. 107 at 8), bifurcation would expedite the resolution of the parties' claims and defenses as well as

---

[6]    Additionally, the main reason for the court denying the bifurcation motion in *Dentsply* was that the moving party's primary purpose—that the jury not hear the patentee's willfulness allegations during the liability phase—would not be served by bifurcation because the patentee would be permitted to introduce the same evidence to prove copying in the liability phase. C.A. No. 91-355-SLR, slip op. at 5-6. Unlike the "integrated story" of *Dentsply*, PDL has not alleged any copying by Alexion in the present case. Moreover, the court in *Dentsply* found that the technology at issue was not complex, but familiar to laypersons. *Id.* at 7. That factor is in stark contrast to the complex antibody technology at issue in the present litigation. Finally, under the moving party's proposal in *Dentsply*, there would be a second trial—either on the defendant's willful infringement or the patentee's bad faith in bringing an infringement claim—regardless of the outcome of the liability trial. *Id.* at 8. Here, there will be no need for a trial on damages or willfulness for any claim found not infringed, valid and enforceable.

conserve judicial and party resources. D.I. 91 at 2, 10. Resolution of liability in Alexion's favor

would eliminate the need for a second trial or at least streamline the issues for that trial as there

would be no need for the jury to consider damages or willfulness issues for claims that are found

not infringed, valid, or enforceable. *Id.* Likewise, resolution of liability would likely encourage

settlement prior to the second trial. *Id.* Moreover, and unlike the cases cited by PDL, there

would be no prejudice to PDL concerning the likelihood of pretrial settlement, as the parties are

continuing to exchange damages discovery. *See* D.I. 91 at 10.[7]

## II.    Alexion's Request For Bifurcation Is Not Premature

PDL's argument that Alexion's renewed motion to bifurcate is premature "because the

relevant issues for trial have not yet been properly formulated" rings hollow. D.I. 107 at 4.[8]

This case has been pending for well over a year. Through PDL's pre-filing investigation, the

parties' exchange of discovery, including contention interrogatory responses, and the *Markman*

briefing, the issues relevant to liability, damages, and willfulness are clear and readily separable.

*See* D.I. 91 at 4-8. There is nothing in either Fed. R. Civ. P. 16 or 42 that requires the Court to

postpone its bifurcation decision until the pretrial conference. In fact, various decisions in this

---

[7]    PDL also argues that it will be prejudiced whether the same or different juries sit for the
separate trials. D.I. 107 at 8-9. Like PDL's other arguments, these arguments would prevent
bifurcation in every patent case, perhaps in every action tried before a jury. Should the case
be tried before the same jury, any risk of unavailability can be mitigated by exploring jury
availability during voir dire and holding the second trial shortly or immediately after the first
trial. Likewise, any risk of conflicting factual findings, of which PDL has not provided a
single example let alone one relevant to this case, can be mitigated by posing specific factual
questions to the first jury and instructing the second jury on those facts. In any event, the
risks that PDL claims are greatly outweighed by the efficiencies and avoidance of confusion
and prejudice that bifurcation will provide to the parties and the Court.

[8]    As explained in Alexion's opening brief, its renewed motion was filed at the Court's
instruction to clarify the Court's April 11, 2008 Oral Order. D.I. 91 at 1.

District have ordered bifurcation while the parties were still engaged in discovery.[9]  As discussed above, the need for bifurcation now in the present litigation is especially acute as it will impact Alexion's decision on whether or not to rely on an opinion of counsel in its willfulness defense.

**III.    Alexion Has Not Improperly Moved For Reconsideration Of The Court's Discovery Orders**

Alexion's motion does not improperly seek to circumvent the Court's discovery orders as PDL claims. D.I. 107 at 10.  In its opening brief, Alexion submitted that it would be appropriate for the Court to stay the willfulness discovery deadline if those issues were bifurcated from the liability trial. D.I. 91 at 10 n.6.  The sole reason for this submission was that the disclosure of opinions of counsel, should Alexion elect to rely on them in its willfulness defense, triggers a limited waiver of attorney-client privilege as discussed above.  Such a decision, and the discovery it would lead to, is irrelevant to liability and would not be necessary if Alexion prevails in the first trial.  Notwithstanding its submission, Alexion will continue to work to complete willfulness discovery pursuant to the Court's April 24, 2008 Order.

**CONCLUSION**

For all the reasons set forth above, as well as those set forth in Alexion's renewed motion and opening brief, Alexion respectfully requests that the Court grant its renewed motion and enter Alexion's proposed order bifurcating and staying trial of damages and willfulness issues pending resolution of the underlying liability issues.

---

[9]    *See, e.g., Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004) (bifurcating and staying willfulness discovery until after a trial on liability); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. Civ.A.03-209-JJF, 2004 WL 1376586, at *2 (D. Del. June 18, 2004) (bifurcating willfulness from liability during discovery).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Andrew A. Lundgren
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Andrew A. Lundgren (No. 4429)
alundgren@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Of Counsel*:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Gregory A. Morris
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY  10022
(212) 446-4800

*Attorneys for Defendant*

Dated: May 30, 2008

11

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on May 30, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

I further certify that on May 30, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

> Matthew D. Powers, Esquire
> Vernon M. Winters, Esquire
> John D. Beynon, Esquire
> Weil, Gotshal & Manges LLP
> 201 Redwood Shores Parkway
> Redwood Shores, CA  94065

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*
Josy W. Ingersoll  (No. 1088)
Andrew A. Lundgren (No. 4429)
Karen E. Keller (No. 4489)
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Defendant*

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　:　　C.A. No. 97-70-JJF
　　　　　　　　　　　　　　　　　:
SYMBOL TECHNOLOGIES, INC. and　　:
THE TRACKER CORPORATION　　　　　:
OF AMERICA,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　Defendants.　　　　　　　　:

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel:  Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire, and John H. Newcomer, Jr., Esquire
of BAYARD, HANDELMAN & MURDOCH, P.A., Wilmington, Delaware.
Of Counsel:  Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

---

<u>MEMORANDUM OPINION</u>

January 7, 1998
Wilmington, Delaware

Farnan, Chief Judge.

This is a patent infringement action brought by Plaintiff, Datastrip (IOM) Limited, against Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America.   Presently before the Court is Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45).   In their Motion, Defendants seek relief based upon Federal Rule of Civil Procedure 42(b), which grants district courts broad discretion to order separate trials to avoid prejudice and to promote judicial economy (D.I. 46).   In opposition to Defendants' application, Plaintiff asserts that Defendants have failed to demonstrate that bifurcation will promote convenience or judicial economy and that Defendants have not established that any undue prejudice will result if their application is denied (D.I. 54).

For the reasons discussed, the Court will deny Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45).

## BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products.   Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label.   A bar code consists of a pattern of

1

printed bars and spaces which is used to input information into a computer by means of optical scanning.

Plaintiff brought this action against Defendants for infringement of the '221 Patent owned by Plaintiff. The '221 Patent covers the invention of a two-dimensional bar code. Plaintiff alleges that Defendant Symbol made certain modifications and additions to the technology in the '221 Patent, filed a patent application and in January, 1990, acquired United States Patent No. 5,304,786 ("'786 Patent"). Plaintiff claims that Defendant Symbol's other patents on technology used in conjunction with printed bar codes have deprived Plaintiff of its patent rights and induced infringement of the '221 Patent. Meanwhile, Defendant Tracker has been making and selling kits which Plaintiff claims incorporate a bar code of the type covered by the '221 Patent and thus, directly infringe Plaintiff's '221 Patent.

The parties have exchanged their initial disclosures under Rule 26(a)(1) and have served initial discovery requests. Plaintiff has sought and received permission from the Court to defer Rule 26(a)(1) disclosure of its damage theories until January 1998.

## STANDARD OF REVIEW

In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial.  <u>Johns Hopkins Univ. v. Cellpro</u>, 160 F.R.D. 30, 32-33 (D.Del. 1995) (citations omitted).  However, in some instances, bifurcation may be worthwhile and is governed by Federal Rule of Civil Procedure 42(b):

> (b) **Separate Trials.**  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial is committed to the informed discretion of the trial judge based on the particular facts and circumstances of each case.  <u>Lis v. Robert Packer Hosp.</u>, 579 F.2d 819, 824 (3d Cir. 1978).  In exercising its discretion, a court must consider the arguments made by each side in light of the circumstances and equities of the case.

## DISCUSSION

Defendants offer two justifications for bifurcation in the instant case.  First, Defendants contend that bifurcation will

3

promote judicial and legal economy.  Second, Defendants claim

that bifurcation will avoid prejudice by not requiring Defendants

to identify privileged attorney-client communications during the

liability phase of the trial.  In response, Plaintiff argues that

Defendants have failed to demonstrate that bifurcation would

promote convenience and judicial economy or avoid prejudice, and

that Defendants' Motion is merely an attempt to avoid their

discovery obligations.  In <u>Akzona Inc. v. E.I. DuPont De Nemours</u>

<u>& Co.</u>, 607 F.Supp. 227, 232 (D.Del. 1984), the Court outlined the

primary factors to be considered in ruling on a motion to

bifurcate, which include the potential for confusion, delay,

prejudice or the additional expense resulting from the grant or

denial of the motion.  Bifurcation may be advisable if the case

contains a large number of dissimilar or complex issues, or if

the trial of one issue is likely to be much shorter than the

others.  <u>Procter & Gamble Co. v. Nabisco Brands, Inc.</u>, 604

F.Supp. 1485, 1491 (D.Del. 1985).  Conversely, bifurcation will

not be warranted if there will be a substantial overlap among the

issues to be proven at both trials.  <u>Id.</u> at 1491-92.

Historically, courts have often found it worthwhile to hold

separate trials on liability and damage issues in patent cases.

Courts have found it to be more efficient to defer discovery and

4

trial on damages issues until after liability questions have been
resolved at trial and on appeal.  John Hopkins Univ. v. Cellpro,
160 F.R.D. 30, 33 (D.Del. 1995) (citations omitted).  However, in
a case relied upon by Defendants, although the court approved
bifurcation, it went on to explain that:

> [t]here is an important limitation on ordering a
> separate trial of the issues under Rule 42(b):  the
> issue to be tried must be so distinct and separable
> from the others that a trial of it alone may be had
> without justice.

Swofford v. B. & W. Inc., 336 F.2d 406, 415 (5th Cir. 1964).
Thus, bifurcation is not necessarily appropriate in every patent
case and the Court's discretion in this regard must be exercised
with caution.  Brad Ragan, Inc. v. Shrader's Incorporated, 89
F.R.D. 548, 549-50 (S.D. Ohio 1981).

I.   Defendants Must Demonstrate That Bifurcation Would Promote
Convenience and Judicial Economy

Since Defendants are seeking bifurcation, they have the
burden of demonstrating that bifurcation is warranted in light of
the general principle that a single trial tends to lesson the
delay, expense and inconvenience to all the parties.  Mellon v.
Beecham Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3,
1991).  In this case, the Court concludes that Defendants have
not provided sufficient reasons to demonstrate the efficiency of

5

bifurcating the damages and liability issues.

In their Motion, Defendants contend that judicial and legal economy will be promoted by bifurcation because the Court and the parties will have avoided discovery and trial on the damages issues if Defendants prevail. Further, Defendants point out that bifurcation will permit the jury to decide the already complicated liability issues in the case without being confused and distracted by the equally complicated damages issues.

The Court is not in a position at this time to fairly evaluate Defendants' claim that there is a substantial probability that they will prevail on liability. At this juncture, the Court does not have sufficient information to agree or disagree with such a proposition. Thus, the Court cannot consider this factor in determining bifurcation. Of course, in every case it may be said that a separate trial on a dispositive issue might save some time, however, a bare suggestion of efficiency cannot support the granting of a bifurcation request, and certainly judicial economy is not the only factor to be considered.

Further, the Court finds that in this case Defendants have not shown that discovery on damages will be complicated, expensive or time-consuming. This is a patent case, and

6

therefore, by its nature it can be described as complex, but
Defendants have not convincingly shown that the benefits in
saving time and expense in staying discovery on damages and
ordering separate trials, outweighs the advantages of presenting
these issues for resolution at one trial.

An additional factor that courts find significant in
deciding whether to bifurcate is the overlapping of issues.
Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707
F.Supp. 1429, 1434 (D.Del. 1989) (citing Akzona, Inc. v. E.I.
DuPont De Nemours & Co., 607 F.Supp. 227, 233-34 (D.Del. 1984)).
Plaintiff contends the following:  (1) the evidence on commercial
success of Defendant Symbol's products relates to both liability
and damages; (2) the proof of liability and causation for damages
will significantly overlap because Defendant Symbol is charged
with inducing infringement; and (3) the proof on laches relates
to both liability and damages.  Accepting Plaintiff's assertions
that the evidence on several issues may overlap, the Court agrees
that bifurcation may not result in a more efficient presentation
of the case.  Evidence of "commercial success" is relevant in the
determination of obviousness under 36 U.S.C. §103, and therefore,
such evidence may be considered in assessing liability, as well
as damages.  In addition, general financial matters are likely to

7

be highly relevant to the liability and damages issues, resulting in a significant duplication in the presentation of evidence in both phases of the trial.  Lastly, Defendants' assertion of the affirmative defense of laches may also weigh against bifurcation. In order to contest the laches defense, Plaintiff may have to inquire into damages claims during the liability phase of the trial.  Thus, considering the issues cited by Plaintiff and the evidence that most likely will be presented at trial, the Court concludes that the testimony of probable witnesses and other evidence, will overlap on liability and damages issues and any time savings accomplished by bifurcation will be speculative.

Further, the Court finds that in this case it will be more efficient to work towards one trial and one appeal.  Other than general assertions of potential efficiency, the Court finds that Defendants have not demonstrated that bifurcation will facilitate a single appeal, and, absent some strong evidence of the likelihood of one appeal, the Court concludes that one complete trial is the most efficient manner in which to timely dispose of this case.

II.   Defendants Must Demonstrate That Bifurcation Will Prevent Prejudice

Defendants assert that if bifurcation is not granted, they

8

will either have to waive the attorney-client privilege and share

the opinions of their counsel with Plaintiff sooner than

necessary or in the alternative, they will have to forego

reliance upon the opinion of counsel in order to maintain the

privileged status of the material.  The attorney-client privilege

protects a confidential communication between attorney and client

when discovery is sought.  The burden of proving that the

privilege exists is on the party asserting the privilege.  In re

Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120,

126 (3d Cir. 1986).  Clients waive the attorney-client privilege

by deliberately injecting into the litigation the advice which

the clients received from counsel.  Smith v. Alyeska Pipeline

Service Co., 538 F.Supp. 977, 979 (D.Del. 1982), aff'd, 758 F.2d

668 (Fed. Cir. 1984).  Similarly, the advice of counsel exception

to the privilege states that where a party asserts as an

essential element of their defense that it relied upon the advice

of counsel, that party waives the privilege regarding

communications pertaining to that advice.  Mellon v. Beecham

Group PLC, No. CIV 86-2179, 1991 WL 16494 (D.N.J. Jan. 3, 1991).

In the instant case, staying discovery specifically on

Defendants' advice of counsel defense by ordering a separate

trial on liability and damages is not in the Court's view, an

9

effective solution to Defendants' dilemma. Staying discovery on privileged communications until after liability issues have been resolved may cause unnecessary delays and complications.

Denying a request for bifurcation and stay of discovery is a close question when concerns of prejudice have been raised by a party asserting an attorney-client privilege. However, in this case, the Court is persuaded that bifurcation will cause Plaintiff to suffer prejudice because the final disposition of this matter will be unfairly delayed. In the Court's view, Plaintiff should be permitted to present to the jury its entire story and not be required to present it in piecemeal. If the counsel opinion that Defendants rely upon for their actions provides a defense to Plaintiff's assertions of infringement, the opinion should be disclosed as soon as practicable. Any advice that may be highly and unduly prejudicial to Defendants presenting a valid defense to Plaintiff's charge of infringement can be addressed during the preparation for trial.

## CONCLUSION

For the reasons discussed, the Court will deny Defendants' Motion For Separate Trials On Liability And Damages (D.I. 45) pursuant to Federal Rule of Civil Procedure 42(b).

An appropriate Order will be entered.

10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.          )
a Delaware corporation,               )
                                      )
               Plaintiff,             )
                                      )
          v.                          )     Civil Action No. 91-355-SLR
                                      )
MINNESOTA MINING AND                  )
MANUFACTURING COMPANY,                )
a Delaware corporation,               )
                                      )
               Defendant.             )

------------------------------------------------------------

Steven J. Balick, Esquire, of Ashby & Geddes, Wilmington, Delaware; attorneys for plaintiff. Of Counsel: Michael C. Elmer, Esquire, and Stephen T. Sullivan, Esquire, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C.

Robert K. Payson, Esquire, and William J. Marsden, Esquire, of Potter, Anderson & Corroon, Wilmington, Delaware; attorneys for defendant. Of Counsel: Frank P. Porcelli, Esquire, John R. Schiffhauer, Esquire, and Mary D. Mosley-Goren, Esquire, of Fish & Richardson, Boston, Massachusetts; and Terryl K. Qualey, Esquire, and Carolyn A. Bates, Esquire, of Minnesota Mining and Manufacturing Co., St. Paul, Minnesota.

------------------------------------------------------------

**MEMORANDUM OPINION**

Dated: July 26, 1993

Wilmington, Delaware

ROBINSON, District Judge

## I.  INTRODUCTION

Dentsply International, Inc. ("Dentsply") commenced this action seeking a declaratory judgment that its manufacture and sale of certain state-of-the-art dental adhesive systems do not infringe Minnesota Mining and Manufacturing Company's ("3M") U.S. Patent No. 4,719,149 (the "'149 patent"). The patent in suit pertains to a "primer" used in said dental adhesive systems. Both parties presently sell and manufacture such systems. Dentsply's action is grounded on its claim that the '149 patent is invalid and unenforceable. Dentsply also claims 3M threatened it with patent infringement in "bad faith." 3M counterclaims that its patent is valid and infringed by Dentsply. 3M further claims Dentsply willfully infringed the '149 patent and accordingly seeks increased damages. Both parties request payment of their attorneys' fees in connection with this litigation. 3M demands a jury trial on all issues so triable.

Before the Court is Dentsply's motion for bifurcation into sequential jury trials. Dentsply's request contemplates a two-stage jury trial process: The first stage on liability and, depending on the outcome therein, a second stage, immediately after the first and before the same jury, either on Dentsply's claim of bad faith assertion of patent enforcement or on 3M's willful infringement claim and damages. 3M opposes the motion. For reasons that follow, Dentsply's motion to bifurcate will be denied.

## II. STANDARD OF REVIEW

Rule 42(b) of the Federal Rules of Civil Procedure governs the motion at bar. Under Rule 42(b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separate issue or of any number of claims...." Trial courts are given broad discretion when deciding a motion to bifurcate. <u>Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.</u>, 707 F. Supp. 1429, 1433 (D. Del. 1989). Decisions under Rule 42(b) essentially involve a weighing of "the 'overall equities' of the case." <u>Id.</u> at 1433-34. "[B]ifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis." <u>Id.</u> at 1434. Although this Court has "observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues,"[1] it remains true that "[i]n patent cases, as in others, separate trials should be the exception, not the rule." <u>Laitram Corp. v. Hewlett-Packard Co.</u>, 791 F. Supp. 113, 114 (E.D. La. 1992) (citing cases).

## III. DISCUSSION

In support of its motion to bifurcate, plaintiff argues that "[o]f primary concern to Dentsply is the unfair prejudice that would result if the jury hears all of 3M's inflammatory

---

1. <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1433 (citing <u>Smith v. Alyeska Pipeline Serv. Co.</u>, 538 F. Supp. 977, 982 (D. Del. 1982)).

2

willful infringement allegations at the same time the jury decides the liability issues." (D.I. 92 at 11)  Dentsply suggests bifurcation would alleviate any such "unfair prejudice" since 3M, under Dentsply's requested procedure, would present its evidence supporting willful infringement, if at all, in the second phase of the case after the jury reaches a verdict finding liability against Dentsply.

3M counters that bifurcation is inappropriate in the instant case because, according to 3M, there are substantial areas of overlapping evidence and issues making bifurcation inefficient, inconvenient and unfair to 3M.

This Court previously has recognized "that an overlapping of issues is significant to the decision whether to bifurcate." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Akzona, Inc. v. E.I. DuPont De Nemours & Co., 607 F. Supp. 227, 233-34 (D. Del. 1984)).  "The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials." Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1434 (citing Organic Chemicals v. Carroll Products, Inc., 86 F.R.D. 468, 469 (W.D. Mich. 1984)).

Although 3M asserts that several areas of overlap are present, of particular concern is the question of whether evidence supporting 3M's claim against Dentsply for willful infringement properly would be introduced during the liability stage of a bifurcated trial.  Since "unfair prejudice that would

3

result if the jury hears ... 3M's inflammatory willful infringement allegations at the same time the jury decides the liability issues" is Dentsply's "primary concern" in moving to bifurcate (D.I. 92 at 11), and since bifurcation would not alleviate this prejudice if 3M nonetheless was entitled to present evidence of willful infringement during the liability trial, resolution of this question is of substantial importance in deciding the motion at bar.

3M represents that its case both on willful infringement and on patent validity will include evidence of Dentsply's alleged "copying":

> 3M expects to prove Dentsply evaluated 3M's patented products, saw how valuable the innovation would be in the marketplace, and saw that its current products could not compete with the new 3M technology. Therefore, Dentsply was motivated to copy and did copy the innovation and willfully infringe 3M's patent, taking sales away from 3M, the extent of which sales helps to prove the value and validity of the patents -- the motivation for Dentsply's copying.

(D.I. 97 at 10)

In opposing this argument, Dentsply contends that evidence of "copying" and associated evidence of an alleged infringer's intent to infringe "relates primarily to a claim for increased damages, not to liability." (D.I. 107 at 6-7 (citing authorities)) Although this form of evidence may "relate[] primarily" to a claim for willful infringement and increased damages, it is settled that "[c]opying is an indicium of

4

nonobviousness, and is to be given proper weight." <u>Diversitech</u> <u>Corp. v. Century Steps, Inc.</u>, 850 F.2d 675, 679 (Fed. Cir. 1988) (citing <u>Windsurfing International, Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1000 (Fed. Cir.), <u>cert. denied</u>, 477 U.S. 905 (1986) (copying of patented invention is indicative of nonobviousness)).

Since 3M apparently will rely on evidence of Dentsply's alleged copying in support of its willful infringement and its patent validity claims, it appears that this "inflammatory" evidence would be presented during both stages of a bifurcated trial. Therefore, the alleviation of "unfair prejudice" which Dentsply seeks with this motion would not be accomplished, or would be partially accomplished only, by permitting bifurcation.

3M points out that various evidentiary matters relating to the commercial success of the patented technology would be relevant both to patent validity and to damages. In response Dentsply contends, relying upon <u>Paine, Webber, Jackson & Curtis,</u> <u>Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 587 F. Supp. 1112 (D. Del. 1984), that this Court has rejected "the argument that commercial success, as related to nonobviousness, is intertwined with the issue of damages." (D.I. 107 at 9) Contrary to Dentsply's argument, this Court has held that evidence of "'commercial success' is a relevant secondary consideration in a determination of obviousness under 36 U.S.C. section 103, [<u>Paine, Webber</u>, 587 F. Supp. at 1116]; and it is indisputable that such evidence will be considered by a court

assessing damages." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434.

Dentsply further contends that "[c]ommercial success for obviousness purposes is of a sharply different character than use of financial information during [the] damages phase [of a patent infringement trial]." (D.I. 107 at 9)  The Court "acknowledges that the issue of commercial success is not ordinarily determined by a detailed analysis of exhaustive and detailed financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and a big seller." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434 (quoting <u>Paine, Webber</u>, 587 F. Supp. at 1116.  Nonetheless, it is clear from the record that bifurcation in the instant case would require 3M to present at least some, if not a substantial amount of evidence twice, and "although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation." <u>Willemijn Houdstermaatschaapij BV</u>, 707 F. Supp. at 1434.

Accordingly, the Court concludes that the presence of overlapping evidence weighs against bifurcation.  The Court further finds that the requested bifurcation procedure will not serve the "primary" purpose underlying Dentsply's motion, alleviation of "unfair prejudice," since much of the purportedly "inflammatory" allegations relating to willful infringement are

6

included in the overlapping evidence which properly would be presented during both stages of a sequential trial.

Dentsply's second general argument in support of its motion to bifurcate is that sequential trials will increase jury comprehension and ameliorate confusion arising from the complexities of this patent case.  "The burden of showing a significant risk of confusion is on the party requesting bifurcation."  Id. at 1435.  The Court finds, for reasons stated below, that Dentsply has not met its burden in this regard.

Dentsply contends that this is a "highly complex" case. The Court disagrees.  As to the technology at issue, while there are technical complexities which the jury will be required to confront, fundamentally this case is comprehensible because the products involved are to some extent familiar to laymen.  As Dentsply concedes, the patent in suit "deals with products that are used to pre-treat [a] tooth before a filling is placed [in] or a material is bonded to the t[oo]th."  (D.I 107 at 12) Furthermore, although it is true, as Dentsply argues, that the jury in this case will have to consider "varied evidentiary presentations," that is true of almost any civil case, certainly of any patent case, and it does not provide a sufficient basis for bifurcation.  Likewise, the numerous and to some extent complex issues which the jury will tackle in this case are not so unusual or compelling as to warrant bifurcation.

Dentsply's final argument is that bifurcation will promote expedition and judicial economy.  The Court is

7

unpersuaded by this argument for the following reasons. First, as discussed above, there are substantial areas of overlapping evidence and presentation of the same evidentiary materials twice, even to a minor extent, certainly will not promote efficiency and economy. Second, the Court foresees that bifurcation in this case will result in substantial delays as a result of disputes regarding the admissability of evidence during either stage of a sequential trial. See Willemijn Houdstermaatschaapij BV, 707 F. Supp. at 1435. Indeed, the briefing presently before the Court amply supports this prediction. Additionally, it cannot be disputed that two trials are likely to consume more time than one, and under the procedure requested by Dentsply, there will be a second trial irrespective of which party prevails during the first stage of proceedings.

Finally, the Court finds persuasive 3M's contention that it should not be deprived of its "legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action ... brought into the court." Nylok Fastener Corp. v. Industrial Nut Corp., 8 U.S.P.Q.2d 1092, 1093 (N.D. Ohio 1988) (quoting In re Beverly Hills Fire Litigation, 695 F.2d 207, 217 (6th Cir. 1982)). The Court agrees that 3M should be entitled to "present to the jury the whole real-world picture of 3M's innovation and commercial success, Dentsply's [alleged use] of that innovation, and the benefits Dentsply [allegedly] achieved in terms of sales and profits from its [use]; and should

8

not be required to break into pieces what is really one
integrated story."  (D.I. 97 at 25)

IV.  CONCLUSION

        For the reasons stated above, Dentsply's motion to
bifurcate will be denied.  An Order consistent with this
Memorandum Opinion shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DENTSPLY INTERNATIONAL, INC.      )
a Delaware corporation,           )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      Civil Action No. 91-355-SLR
                                  )
MINNESOTA MINING AND              )
MANUFACTURING COMPANY,            )
a Delaware corporation,           )
                                  )
            Defendant.            )

## O R D E R

At Wilmington this 26th day of July 1993, for the
reasons set forth in the Court's accompanying Memorandum Opinion
issued this day;

IT IS ORDERED that Dentsply's motion to bifurcate,
Fed.R.Civ.P. 42(b), will be, and hereby is, DENIED.  (D.I. 91)[1]

_____
United States District Judge

_____

1.  Plaintiff's request for oral argument hereby is denied since
the facts and legal contentions are adequately presented in the
materials before the Court and argument would not significantly
aid the decisional process. (D.I. 109)